UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA, ex rel. ROB BONTA, ATTORNEY GENERAL OF CALIFORNIA,<br><br>        Plaintiffs,<br><br>    v.<br><br>EXXON MOBIL CORPORATION, et al.,<br><br>        Defendant. | No. 3:24-cv-07594-RS |
| SIERRA CLUB, INC., SURFRIDER FOUNDATION, INC., HEAL THE BAY, INC., BAYKEEPER, INC., et al.,<br><br>        Plaintiffs,<br><br>    v.<br><br>EXXON MOBIL CORPORATION, et al.,<br><br>        Defendant. | No. 3:24-cv-07288-RS<br><br>**ORDER RE MOTIONS TO REMAND** |

## I. INTRODUCTION

The State of California sued Exxon Mobil Corporation in California state court, averring that the company bears responsibility for the global plastic waste and pollution crisis due to its allegedly deceptive public messaging about plastic recycling. The same day, a group of

nonprofit organizations including Sierra Club, Inc., Surfrider Foundation, Inc., Heal the Bay, Inc., and Baykeeper, Inc.(collectively, "Nonprofit Plaintiffs") filed a substantially similar suit in the same state court. Defendant removed each case to this court, asserting that maritime jurisdiction, the federal enclave doctrine and/or federal officer jurisdiction apply to the claims.[1] In removing Nonprofit Plaintiffs' suit, Exxon also cited complete diversity, pursuant to 28 U.S.C. § 1332(a), and minimal diversity pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d). Nonprofit Plaintiffs do not contest that, with respect to their claims, complete diversity is satisfied and the amount in controversy is met. The cases are now related, pursuant to the parties' stipulation, and both California and the Nonprofit Plaintiffs move for remand to state court. For the reasons explained below, California's remand motion is granted, and Nonprofit Plaintiffs' remand motion is denied.

## II. BACKGROUND

### A.  California's Complaint

California's 147-page complaint ("Complaint") advances a disturbing tale of alleged corporate greed. According to its allegations, Exxon—the world's largest producer of single-use plastics—"deceived Californians for almost half a century by promising that recycling could and would solve the ever-growing plastic waste crisis." Complaint ¶ 2.[2] All the while, the complaint avers, "ExxonMobil has known that mechanical recycling, and now 'advanced recycling,' will never be able to process more than a tiny fraction of the plastic waste it produces." *Id.* In particular, the state alleges the company "knew that the consequent amount of plastic waste would continue to rise, inevitably leading to ever-increasing plastic pollution of the

---

[1] Exxon's theory of removal marks the latest instance of a fossil fuel company invoking creative bases for federal jurisdiction over pollution-related state law claims. *See, e.g.*, *County of San Mateo v. Chevron Corp.* ("*San Mateo II*"), 32 F.4th 733 (9th Cir. 2022) (affirming remand for lack of federal enclave, federal officer, bankruptcy, admiralty, federal question, or Outer Continental Shelf Lands Act ("OCSLA") jurisdiction); *City & Cnty. of Honolulu v. Sunoco LP*, 39 F.4th 1101, 1106 (9th Cir. 2022) (affirming remand for lack of federal enclave, federal officer, or OCSLA jurisdiction); *Bd. of Cnty. Comm'rs of Boulder Cnty. v. Suncor Energy (U.S.A.) Inc.*, 25 F.4th 1238 (10th Cir. 2022) (same); *See also Rhode Island v. Shell Oil Prods. Co.*, 35 F.4th 44 (1st Cir. 2022); *see also Mayor of Baltimore v. BP P.L.C.*, 31 F.4th 178 (4th Cir. 2022).

[2] California's suit also names as defendants John Does 1 through 100, fictitious stand-ins for anyone else responsible for the alleged legal violations.

environment" because it "knew that once plastic enters the environment, it is extremely costly and difficult to eradicate" given the way it disintegrates into microplastics—that is, "tiny plastic bits measuring five millimeters or less." *Id.* ¶ 3. California claims that, due to Exxon's actions, "single-use plastic chokes our waterways, poisons our oceans, harms already endangered and threatened wildlife, blights our landscapes, contaminates the recycling stream, increases waste management costs, pollutes our drinking water, and expands landfills." *Id.* ¶ 6.

Based on the above allegations, California asserts six state law claims. As relief, California seeks the following: an order compelling Defendant to abate the public nuisance it allegedly created; preliminary and permanent injunctive relief ordering Defendant to cease and desist allegedly deceptive public statements about its plastic operations, including topics such as "advanced recycling" and "chemical recycling"; temporary and permanent equitable relief as needed to protect and/or prevent further pollution; various monetary penalties authorized by state statutes; and fees and costs. *Id.* ¶¶ 463–79.

### B. Nonprofit Plaintiffs' Complaint

Nonprofit Plaintiffs raise similar allegations in their complaint. Declaring that single-use plastics "are harmful, toxic products that cannot be safely disposed through recycling or by other means," they aver that Exxon "created a single-use plastics pollution crisis in California by concealing these facts for decades to sell more plastics." Nonprofit Plaintiffs' Complaint ¶ 1.[3] Because their organizations have missions to prevent the harms caused by plastic pollution, Nonprofit Plaintiffs say they have had to divert significant resources to combat the impact of Exxon's activities. *Id.* ¶ 19.

Nonprofit Plaintiffs' complaint raises two state law claims that mirror two of those alleged in the State's suit. They seek injunctive relief (including abatement), compensatory damages plus interest, and fees and costs. *Id.* ¶¶ 239–241.

### C. Exxon's Grounds for Removal

---

[3] Like the California complaint, Nonprofit Plaintiffs' complaint names as defendants John Does 1 through 10 to include anyone else responsible for the alleged actions.

3

Exxon removed both California's complaint and Nonprofit Plaintiffs' complaint to the Northern District of California. It first removed Nonprofit Plaintiffs' complaint, citing diversity jurisdiction under 28 U.S.C. § 1332(a). It also argued for jurisdiction under the Class Action Fairness Act, contending that the complaint is a "de facto class action" since the claims are "on behalf of [Plaintiffs] and the California public." *See* Nonprofit Plaintiffs' Complaint ¶ 22. Exxon then removed California's complaint, asserting the presence of maritime jurisdiction under 28 U.S.C. § 1333, federal question jurisdiction (via the federal enclave doctrine) under 28 U.S.C. § 1331, and federal officer jurisdiction under 28 U.S.C. § 1442(a)(1).[4]

### III. LEGAL STANDARD

#### A. Removal and Remand

A defendant has the right to remove to federal court "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). Original jurisdiction exists when a state case presents a federal question, involves parties with complete diversity of citizenship plus at least $75,000 as the amount in controversy, or falls under maritime law. *See* 28 U.S.C. §§ 1331, 1332, 1333. Removal is also authorized as to actions against "any officer (or any person acting under that officer) of the United States or of any agency thereof . . . for or relating to any act under color of such office." 28 U.S.C. § 1442(a)(1).

In construing these statutes, "[i]t is to be presumed that a cause lies outside the limited jurisdiction of the federal courts." *Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 684 (9th Cir. 2006) (cleaned up). "The strong presumption against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper, and that the court resolves all ambiguity in favor of remand to state court." *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009) (internal quotation marks omitted).

#### B. Maritime Law

The Constitution grants federal courts original jurisdiction over "all Cases of admiralty and

---

[4] Exxon subsequently filed an amended notice of remand as to Nonprofit Plaintiffs' suit, adding in the additional bases for federal jurisdiction that it identified in removing California's suit.

4

maritime Jurisdiction," art. III, § 2, cl.1, "saving to suitors in all cases all other remedies to which they are otherwise entitled." 28 U.S.C. 1333(1). To determine whether maritime jurisdiction exists over a claim, courts analyze three factors: (1) "whether the tort occurred on navigable water or whether injury suffered on land was caused by a vessel on navigable water"; (2) "whether the incident has 'a potentially disruptive impact on maritime commerce'"; and (3) "whether 'the general character' of the 'activity giving rise to the incident' shows a 'substantial relationship to traditional maritime activity.'" *Earth Island Inst. v. Crystal Geyser Water Co.*, 521 F. Supp. 3d 863, 879 (N.D. Cal. 2021) (quoting *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1995)). Even if this analysis supports maritime jurisdiction, the "saving to suitors" clause that Congress enacted "leave[s] state courts 'competent' to adjudicate maritime causes of action in proceedings 'in personam,' that is, where the defendant is a person, not a ship or some other instrument of navigation." *Ghotra by Ghotra v. Bandila Shipping, Inc.*, 113 F.3d 1050, 1054 (9th Cir. 1997) (quoting *Madruga v. Superior Ct. of Cal.*, 346 U.S. 556, 560–61 (1954)). "This means that when a plaintiff brings a maritime cause of action against a person in state court, a federal court lacks admiralty jurisdiction over that claim" unless the defendant "assert[s] some other basis of jurisdiction." *Cnty. of San Mateo v. Chevron Corp.*, 32 F.4th 733, 763 (9th Cir. 2022) (hereafter "*San Mateo II*").

### C. Federal Enclaves

"Federal enclave jurisdiction refers to the principle that federal law applies in federal enclaves." *City & Cnty. of Honolulu v. Sunoco LP*, 39 F.4th 1101, 1111 (9th Cir. 2022) (citing U.S. Const. art. I, § 8, cl. 17). Such enclaves arise "when the federal government purchases state land with the consent of the state legislature," because at that point "any law existing on that land must derive its authority and force from the United States and is for that reason federal law." *San Mateo II*, 32 F.4th at 749 (internal quotation marks omitted). For federal enclave jurisdiction to apply, such an enclave must be the "locus" of the claim. *Honolulu*, 39 F.4th at 1111.

Where a basis for removal is rooted in a federal question, as is the case with Exxon's assertion of federal enclave jurisdiction, "the 'well–pleaded complaint rule,' . . . provides that

federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *In re NOS Commc'ns, MDL No. 1357*, 495 F.3d 1052, 1057 (9th Cir. 2007) (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987)). Generally speaking, a plaintiff "may avoid federal jurisdiction by exclusive reliance on state law," *Caterpillar*, 482 U.S. at 392, but at the same time, "a plaintiff may not defeat removal by omitting to plead necessary federal questions in a complaint." *Lippitt v. Raymond James Fin. Servs., Inc.*, 340 F.3d 1033, 1041 (9th Cir. 2003).

### D. Federal Officer

Under the statute that provides for federal officer removal, defendants may remove a "civil action . . . that is against or directed to . . . [t]he United States or any agency thereof or any officer (or any person acting under that officer) . . . in an official or individual capacity, for or relating to any act under color of such office." 28 U.S.C. § 1442(a)(1). To demonstrate that this requirement is met, "Defendants must show: (1) they were "acting under" federal officers, (2) they can assert a colorable federal defense, and (3) Plaintiffs' injuries were for or relating to Defendants' actions." *Honolulu*, 39 F.4th at 1106.

### E. *Younger* abstention and the *Colorado River* Doctrine

As for the Nonprofit Plaintiffs' suit, it is undeniably subject to federal jurisdiction due to diversity of citizenship. As a result, the Nonprofit Plaintiffs urge the court to abstain from hearing this case pursuant to either the *Younger* or *Colorado River* line of cases.

*Younger* abstention is grounded in a "longstanding public policy against federal court interference with state court proceedings." *Herrera v. City of Palmdale*, 918 F.3d 1037, 1043–44 (9th Cir. 2019) (quoting *Younger v. Harris*, 401 U.S. 37, 43 (1971)). Under this doctrine, federal courts may abstain when a case concerns "(1) parallel, pending state criminal proceedings, (2) state civil proceedings that are akin to criminal prosecutions, and (3) state civil proceedings that implicate a State's interest in enforcing the orders and judgments of its courts." *ReadyLink Healthcare, Inc. v. State Comp. Ins. Fund*, 754 F.3d 754, 759 (9th Cir. 2014) (internal quotation marks and citations omitted). First identified in *New Orleans Public Service, Inc. v. Council of New Orleans ("NOPSI")*, 491 U.S. 350 (1989), courts have dubbed these the *NOPSI*

1  categories. *See Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72–73 (2013). To warrant
2  *Younger* abstention in a federal case, the ongoing state case must fall into one of the NOPSI
3  categories and provide "an adequate opportunity . . . to raise constitutional challenges." *Bean v.*
4  *Matteucci*, 986 F.3d 1128, 1133 (9th Cir. 2021) (internal quotation marks and citation omitted).
5  Moreover, the requested relief in the federal case must "seek[] to enjoin or ha[ve] the practical
6  effect of enjoining the ongoing state judicial proceeding." *Id.* (internal quotation marks omitted).
7       Distinct from *Younger* abstention, the *Colorado River* doctrine provides that, in rare
8  cases, "there are principles unrelated to considerations of proper constitutional adjudication and
9  regard for federal-state relations which govern in situations involving the contemporaneous
10 exercise of concurrent jurisdictions, either by federal courts or by state and federal courts."
11 *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). "In the
12 interest of '[w]ise judicial administration, giving regard to conservation of judicial resources and
13 comprehensive disposition of litigation,' a district court can dismiss or stay 'a federal suit due to
14 the presence of a concurrent state proceeding.'" *United States v. State Water Res. Control Bd.*,
15 988 F.3d 1194, 1202 (9th Cir. 2021) (quoting *Colorado River*, 424 U.S. at 817–18)). "The
16 instances in which a court can stay an action pursuant to *Colorado River* 'are considerably more
17 limited than the circumstances appropriate for abstention. The former circumstances, though
18 exceptional, do nevertheless exist.'" *Id.* (quoting *Colorado River*, 424 U.S. at 817–18).

### IV. DISCUSSION AS TO CALIFORNIA CLAIMS

     In cases like California's, where a removed action involves state law claims against a person in state court such that maritime jurisdiction only exists if there is an independent jurisdictional basis, a court may first examine the alternative bases for removal. *See, e.g.*, *San Mateo II*, 32 F.4th at 763 (examining whether maritime jurisdiction exists only after determining whether the asserted independent bases for such jurisdiction were present). As applied to California's instant motion, *San Mateo II* counsels in favor of starting with Defendant's arguments as to federal enclave and federal jurisdiction before addressing maritime law.

### A. Federal Enclave

To support its assertion of federal enclave jurisdiction, Exxon highlights that the state's complaint asserts damages to California's "waterways" and their "shorelines," *see* Complaint ¶ 60—a vast expanse which necessarily must include a few federal enclaves. Exxon also points to the complaint's description of pollution in Monterey Bay, a recognized federal enclave, as proof that such jurisdiction exists. *See id.* ¶ 360. Plaintiffs urge the court to reject this argument, given that the complaint expressly disclaims injuries arising on federal lands, which would include federal enclaves, and that it does not seek any relief relating to such injuries. *Id.* n.1.

Exxon's argument is misguided, to say the least. Even as it concedes that the complaint disclaims injuries or relief on all federal lands, Exxon nevertheless contends that, because some California waterways have been deemed federal enclaves in other contexts, California's claims necessarily have a federal enclave locus. California, however, is "'the master[]s of the claim.'" *City of Oakland v. BP PLC*, 969 F.3d 895, 904 (9th Cir. 2020) (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987)). An express disclaimer is "sufficient to eviscerate [a defendant's] grounds for removal." *Hukkanen v. Air and Liquid Systems Corp.*, No. 170-cv-02227-JFW, 2017 WL 1217075, at *2 (C.D. Cal. March 31, 2017). By bringing only state claims in a state court, and expressly disavowing injuries on federal lands, the state has established that neither claims nor relief could lie in federal enclaves, let alone have such enclaves as their loci.

Even were the court to ignore California's express disclaimer, Defendant nevertheless would fail to establish that the loci of the at-issue claims are in federal enclaves. *See, e.g.*, *Ballard v. Ameron Int'l Corp.*, No. 16-cv-06074-JSC, 2016 WL 6216194, at *3 (N.D. Cal. Oct. 25, 2016) (denying removal in asbestos exposure case where, inter alia, only one of seventeen exposure sites was a federal enclave). It is not as if "federal enclave doctrine applies as long as some of the alleged events occurred on the federal enclave."[5] *In re High-Tech Empl. Antitrust*

---

[5] Exxon misstates the law when it suggests that "the locus test is satisfied as long as 'at least some of the[] locations' where the tortious harm occurred are 'federal enclaves.'" Opp. Br. at 14 (citing *Bell v. Arvin Meritor, Inc.*, 2021 WL 11100001, at *2 (N.D. Cal. 2012)). *Bell* concerned a personal injury claim regarding asbestos exposure on military bases, which are unquestionably

8

1  *Litig.*, 856 F. Supp. 2d 1103, 1125 (N.D. Cal. 2012). Simply because plastic pollution touches
2  on federal enclaves does not mean California's claims have their loci there; to the contrary, the
3  claims concern the cultural messaging and corporate decision-making that Exxon allegedly
4  engaged in when promoting the use of recycling as a cure-all to plastic waste.

In making this doomed argument, Exxon strives to distinguish *San Mateo II* and *Honolulu*—two cases where the Ninth Circuit roundly rejected fossil fuel defendants' arguments for federal enclave jurisdiction in similar pollution-related claims—by highlighting the way those defendants argued for conduct-based enclave jurisdiction, rather than the injury-based enclave jurisdiction Exxon raises here. This distinction makes no difference. At bottom, the Ninth Circuit has twice rebuffed the broad reading of federal enclave jurisdiction that Exxon nevertheless asserts. *See Honolulu*, 39 F.4th at 1111 ("Federal enclave jurisdiction needs a direct connection between the injury and conduct."); *see also San Mateo II*, 32 F.4th at 750. Under these precedents, federal enclave jurisdiction is lacking in this case.

### B.     Federal Officer

Exxon's argument for federal officer jurisdiction revolves around rubber. Because the United States government contracted with Exxon's predecessors to produce rubber for World War II-era military use, the company claims the existence of "a causal nexus between its actions, taken pursuant to a federal officer's directions, and [the] plaintiff's claims. *San Mateo II*, 32 F.4th at 755.

This claim verges on the fanciful. Rubber is not the product at issue in the complaint—plastic is. As California notes, the only mention of rubber in their allegations is to its use in advanced recycling processes that Exxon allegedly promotes in a deceptive and plastic-pollution-inducing fashion. *See* Complaint ¶ 267 (describing how "waste tires" are used as feedstock in certain recycling procedures). Defendant protests that the "millions of tons of synthetic rubber

---

federal enclaves—the only asserted exposures that might not have occurred on federal enclaves included cities in Tokyo, Korea, and Germany. *See* 2012 WL 1110001, at *2. Indeed, that case did not even discuss the locus test, instead recognizing that "personal injury actions which arise from incidents occurring in federal enclaves may be removed." *Id.* (internal quotation marks and citation omitted). Put simply, Defendant's artful paraphrasing is misleading.

9

1   that ExxonMobil helped produce at the direction of the federal government contributed to—and
2   thus 'relate to'—this alleged pollution crisis." Opp. 24.  What Defendant appears to sidestep,
3   however, is that the claims in this case are not about pollution in the abstract; they concern
4   Exxon's allegedly self-interested and deceptive promotion of plastics recycling programs that it
5   knew would fail to prevent the current pollution crisis.

6   Defendant also claims that, if it is the largest contributor to plastic waste in California, "it
7   is only because ExxonMobil ascended to industry leadership following its joint efforts with the
8   government to exponentially grow the synthetic-rubber industry during World War II." Opp. at
9   25.  Putting the self-congratulations for winning the war to one side, this argument misses the
10  boat entirely.  Plaintiffs allege Exxon promoted a deceptive marketing campaign to deceive the
11  public about *plastic*.  Whether Exxon's predecessors' past partnership with the United States
12  military to produce a completely different substance (*i.e.*, rubber) also contributed to pollution is
13  completely tangential to the complaint.

14  Even if it were possible to look past the severe disconnect in Defendant's premise, its
15  argument for federal officer jurisdiction would still flunk the merits.  First, nothing suggests that
16  "the challenged acts occurred because of what [Exxon] w[as] asked to do by the government."
17  *See Goncalves v. Rady Children's Hospital. San Diego*, 865 F.3d 1237, 1245 (9th Cir. 2017)
18  (internal quotation marks omitted).  There could not be a wider mismatch between the purported
19  federal directions regarding synthetic rubber production and the deceptive conduct California
20  raises in its complaint.

21  As for the colorable federal defense showing necessary to a federal officer removal,
22  Exxon likewise falls flat.  It suggests that a federal contractor immunity defense as to
23  California's plastics-related claims is viable because the federal government specified the details
24  of its wartime synthetic rubber production.  As just explained, however, that argument fails to
25  track the complaint's actual claims, which involve deception about plastic, not the production of
26  rubber.  At bottom, and much like its arguments for federal enclave jurisdiction, Exxon's
27  asserted rationale for federal officer jurisdiction is completely baseless.
28

### C. Maritime Law

Exxon also asserts admiralty or maritime jurisdiction under 28 U.S.C. § 1333 because at least some of California's asserted injuries occurred in navigable waters.

In *San Mateo II*, the Ninth Circuit rejected a similar argument because "maritime claims brought in state court are not removable to federal court absent an independent jurisdictional basis." 32 F.4th at 763. As explained above, no independent jurisdictional basis supports the removal of California's complaint. Thus, "[e]ven assuming that [California's] claims in this case qualify as maritime claims, [California] chose to bring these claims in state court. Under the 'saving to suitors' clause, these maritime claims are not removable to federal court based on admiralty jurisdiction alone." *Id.*

At oral argument, Exxon's counsel argued that California waived argument about the saving to suitors clause by not raising it until the reply brief. For support, counsel cited *Morris v. Princess Cruises, Inc.*, where the Ninth Circuit noted that "a state plaintiff may waive the improper removal of a savings clause claim." 236 F.3d 1061, 1069 (2001). In that case, however, the state plaintiff *"*fail[ed] to seek remand . . . of claims falling within the court's admiralty jurisdiction." *Id.* Quite the opposite occurred here, where—assuming that such jurisdiction exists—California *does* seek remand. It repeatedly cited *San Mateo II* in its motion, putting Exxon on notice that the case would inform the remand analysis. Thus, Exxon's failure to address the saving to suitors discussion that anchored *San Mateo II*'s holding as to maritime jurisdiction does not raise the same fairness concerns that might occur in the situation where a plaintiff raises an unexpected new argument on reply.

Even accepting the dubious premise that the saving to suitors clause should not factor into the remand decision, California's claims are not maritime in nature. In arguing to the contrary, Exxon must first satisfy the location test by showing the relevant torts occurred on navigable water or a vessel on navigable water caused injury suffered on land. *See Grubart*, 513 U.S. at 534. The latter showing is foreclosed, given that nothing in the complaint concerns vessels, let alone vessels causing harm on land. As for the first showing, it is true that California pleads torts related to navigable water, including, *inter alia*, a state law water pollution claim.

11

*See, e.g.*, Complaint ¶ 449–54. Yet, a close reading of the claims reveals that the alleged tort is "deception," not the actual depositing of plastic into navigable water. *See id.* ¶ 453; *see also id.* ¶ 427 (explaining the alleged conduct supporting the state's public nuisance claim), ¶ 443 (same as to state's pollution of natural resources claim). That deception did not occur in navigable water. In this regard, California's claims are easily distinguishable from the sort of oil spill claims that courts have considered to satisfy the location test. *See, e.g.*, *United States v. City of Redwood City*, 640 F.2d 963, 969 (9th Cir. 1981).

Exxon fares no better on the connection test, which requires showing "a substantial relationship between the activity giving rise to the incident and traditional maritime activity." *Sisson v. Ruby*, 497 U.S. 358, 364 (1990). "The relevant 'activity' is defined not by the particular circumstances of the incident, but by the general conduct from which the incident arose." *Id.*; *see also Executive Jet Aviation, Inc. v. City of Cleveland*, 409 U.S. 249, 253–54 (1972) (holding that, in a case where the alleged harm involved a plane sinking in Lake Erie, the relevant activity was air travel, which did not bear a significant relationship to traditional maritime activity). Here, the activity giving rise to the alleged injuries is Exxon's allegedly deceptive conduct, which does not bear a substantial relationship to traditional maritime activity. At bottom, "[p]ermitting Defendant[] to manufacture federal jurisdiction here using doctrines such as maritime law would abrogate the principle that a plaintiff is 'master of the claim.'" *Earth Island*, 521 F. Supp. 3d at 880 (quoting *Caterpillar*, 482 U.S. at 392).

### D. Conclusion as to California Suit

Because neither federal enclave nor federal officer jurisdiction extends over California's claims, Exxon cannot show the independent basis required for maritime jurisdiction to apply pursuant to the saving to suitors clause. Moreover, maritime jurisdiction would be inapplicable anyway. California's motion to remand is therefore granted.

### V. DISCUSSION AS TO NONPROFITS' CLAIM

Federal jurisdiction over Nonprofit Plaintiffs' complaint is on sure footing, given their concession that diversity jurisdiction is proper. Nonprofit Plaintiffs nevertheless urge the court

to remand their case alongside the California action, arguing for either *Younger* abstention or a creative application of the *Colorado River* doctrine.

*Younger* abstention is not warranted in this instance. To be sure, there is an ongoing state civil proceeding akin to a criminal prosecution: the California action, which has now been remanded to state court and which was still in state court at the time Exxon removed Nonprofit Plaintiffs' complaint. Brought by the state attorney general to abate an alleged nuisance, California's case amounts to a quasi-criminal enforcement proceeding. *See Huffman v. Pursue, Ltd.*, 420 U.S. 592, 604–5 (1975) (finding public nuisance abatement action eligible for *Younger* abstention). That action by the state under state laws clearly implicates important state interests, and there is no reason to think Exxon would be unable to raise constitutional challenges.

That said, to abstain from exercising the jurisdiction that indisputably applies to this case, such exercise would have to raise the risk of "enjoining the ongoing state judicial proceeding" initiated by California. *See Bean*, 986 F.3d at 1133. Here, no such risk exists. For one thing, Nonprofit Plaintiffs could always voluntarily dismiss their claims if concerned that federal court decisions will raise res judicata problems in California's case. For another, federal courts and state courts regularly adjudicate closely related claims in parallel. "The Supreme Court has rejected the notion that federal courts should abstain whenever a suit involves claims or issues simultaneously being litigated in state court merely because whichever court rules first will, via the doctrines of res judicata and collateral estoppel, preclude the other from deciding that claim or issue." *AmerisourceBergen Corp. v. Roden*, 495 F.3d 1143, 1151 (9th Cir. 2007). "Concurrent consideration, not abstention, is the solution." *Id.*

*Colorado River* is also inapplicable to the instant request. "Plaintiff's briefing does not direct the Court to any caselaw, nor can the Court identify any controlling authority, where a district court relied on Colorado River doctrine to remand a case properly removed under diversity jurisdiction." *Stapleton v. Idanks Ltd. Liab. Co.*, No. 6:24-cv-00056-MK, 2024 WL 1939499, at *3 (D. Or. Mar. 22, 2024), *report and recommendation adopted sub nom. Stapleton v. Just My Kicks LLC*, 2024 WL 1932612 (D. Or. May 1, 2024). As another court recognized, "[n]o binding authority indicates remand is an appropriate remedy if *Colorado River* applies." *Naki v. Hawai'i*,

13

No. 23-cv-00435 JAO-BMK, 2024 WL 4456803, at *18 n.12 (D. Haw. Apr. 5, 2024).

At oral argument, Nonprofit Plaintiffs acknowledged that the Ninth Circuit has never blessed a *Colorado River* remand but raised the example of *Abend v. City of Oakland*, No. 06-cv-07459 JSW, 2007 WL 627916 (N.D. Cal. Feb. 26, 2007). There, a district court found remand appropriate pursuant to the *Colorado River* doctrine. *Id.* at *5. No appeal followed, so it remains unclear whether the remand would have been affirmed.[6] At any rate, the facts in that case are distinct; a city had initiated state nuisance proceedings against a shopping center's owners, and the owners responded by filing a state action (which the city subsequently removed) alleging constitutional violations and seeking to enjoin the city's suit. *Id.*, at *1-2. The owners even sought to consolidate the city's nuisance action and their responsive constitutional claims at the state court, only to be rebuffed when the city chose to remove the constitutional claims instead. *Id.*, at *5. In that regard, the situation more closely resembles that which occurred in *Nakash v. Marciano*, 882 F.2d 1411, 1416 (9th Cir. 1989), where the Ninth Circuit affirmed a district court decision to stay a federal action removed by a defendant who was the plaintiff in a related state proceeding. Such role reversal is completely absent here, where Exxon is the defendant in California's case and in Nonprofit Plaintiffs' case, and where the Nonprofit Plaintiffs' sought-after relief cannot possibly conflict with California's ongoing state proceedings (given that it is essentially the same relief that California seeks).

Because no binding authority exists for a *Colorado River* remand, and because the only relevant precedent is both distinguishable and possibly incorrect, Nonprofit Plaintiffs fail to persuade that *Colorado River* is applicable in the instance context. A factor-by-factor analysis is therefore unwarranted, and the motion to remand is denied.

## VI. CONCLUSION

For the reasons explained above, California's case against Exxon is remanded to the state court from whence it came; neither maritime, federal enclave, nor federal officer jurisdiction

---

[6] Motivating the *Abend* decision was the court's concern about "risk[ing] inconsistent rulings" with the state proceedings. 2007 WL 627916, at *4. As discussed with regard to *Younger* abstention, however, the risk of inconsistent rulings between state and federal courts does not override "the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." *Colorado River*, 424 U.S. at 817–18.

14

applies to its claims. The same holds true for Nonprofit Plaintiffs' claims, but because of the diversity jurisdiction that undeniably applies, their motion to remand is denied. *Younger* abstention and/or the invocation of *Colorado River* is unwarranted in this instance.

At oral argument, Exxon's counsel requested a short stay of any remand order so as to sort out whether a longer stay pending appeal might be warranted. California's counsel apparently stipulated to that idea. A short administrative stay is therefore appropriate, and the remand order as to California's case is stayed until 42 days after this ruling. Within 7 days of this ruling, the parties must submit a stipulated briefing schedule for addressing the propriety of a stay pending appeal. The parties should assume that any further stay request will be decided on the papers, with a hearing to be scheduled only if necessary.

**IT IS SO ORDERED.**

Dated: February 24, 2025

RICHARD SEEBORG
CHIEF UNITED STATES DISTRICT JUDGE