IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

RICHARD SEEBORG, CHIEF DISTRICT JUDGE

Sierra Club, Inc., et al,           )
                                    )
                Plaintiffs,         )
            vs.                     )   3:24-cv-07288
                                    )
Exxon Mobil Corporation, et         )
al.,                                )
                                    )
                Defendants.         )
_____)

REPORTER'S TRANSCRIPT OF MOTION TO REMAND

THURSDAY, FEBRUARY 13, 2025

2:31 P.M.

SAN FRANCISCO, CALIFORNIA

_____

Teresa B. Johnson, CVR-M-CM, RVR, RVR-M
U.S. District Court Reporter
250 East North Street, Room 3401
Greenville, SC 29601
California CSR License# 14765

Reporting remotely by video teleconference

                    APPEARANCES OF COUNSEL:


For Plaintiffs:

      Cotchett, Pitre & McCarthy LLP
      BY:  GRACE Y. PARK, ESQUIRE
           TYSON C. REDENBARGER, ESQUIRE
      840, Malcolm Road
      Burlingame, CA  94010
      Appearing in person


For Defendant:

      OMelveny and Myers LLP
      BY:  DAWN SESTITO
           JASON ZARROW
      400 South Hope Street
      LOS ANGELES, CA  90071
      Appearing in person



For Plaintiff The People of the State of California:

      California Office of the Attorney General
      BY:  HALLIE E. KUTAK
      300 S. Spring St 1700
      Los Angeles, CA  90013
      Appearing in person

P R O C E E D I N G S

(Proceedings commence on Thursday, the 13th day of February 2025, at 2:31 p.m.)

THE COURTROOM DEPUTY:  Calling Case 24-cv-7288, Sierra Club versus ExxonMobil Corporation, and related case 24-cv-7594, The People of the State of California versus ExxonMobil Corporation.

Counsel, please come forward and state your appearances.

MS. PARK:  Grace Park of Cotchett, Pitre & McCarthy LLP representing Sierra Club, Surfrider Foundation, Heal the Bay, and Baykeeper.

THE COURT:  Good afternoon.

MS. KUTAK:  Good afternoon, Your Honor.  My name is Hallie Kutak from the California Department of Justice here on behalf of the People of the State of California.

THE COURT:  Good afternoon.

THE COURT REPORTER:  Excuse me.

THE COURTROOM DEPUTY:  Oh, she's having issues.

THE COURT REPORTER:  Excuse me.  This is the court reporter.  I apologize.

THE COURTROOM DEPUTY:  Teresa, what's the matter?

THE COURT REPORTER:  They sound very muffled.

THE COURTROOM DEPUTY:  I can't hear you.

THE COURT REPORTER:  They sound very muffled at the microphone.  They're too close to the microphone.

THE COURT:  Our court reporter is virtual.

THE COURTROOM DEPUTY:  Can you hear the Judge?  Okay.

I think she doesn't want you too close to the mic maybe?

MS. SESTITO:  Okay.  Is this okay?

THE COURT:  Yes.  Go ahead.

MS. SESTITO:  Is this okay?

THE COURT:  Yes.

MS. SESTITO:  Okay.

THE COURT:  Go ahead.

MS. SESTITO:  Good afternoon.  Dawn Sestito of OMelveny and Myers.  I'm here for Defendant ExxonMobil Corporation.  With me at counsel table is Jason Zarrow.

THE COURT:  Very good.  Good afternoon.

So this matter is on for motions by the plaintiff to remand both the case brought by the State of California and by various nonprofit groups.  I'll offer you some tentative views so that you can focus your arguments for me.

With respect to the California case, I don't

think there is any real -- really realistic basis to argue either federal enclave or federal officer jurisdiction that would be applicable here, there being no independent basis for federal jurisdiction on savings to suitors clause, Constitution clause. I even don't think there's any maritime jurisdiction is properly involved here.

Even were we just to look at this from the maritime -- the jurisdiction perspective, I -- I also don't think it's -- that would be supported standing alone, as I really don't think the (indiscernible) in the -- in the complaint bear a substantial relationship to traditional maritime activity.

Although I -- I think that the California state case is subject to remand, that does move us with what to do with the nonprofit entities case, which it does appear there is complete diversity. So that throws us into the realm of applicability under section -- or to a lesser extent the Colorado River Doc. So I -- I do want to hear about that and see where we go -- go from here.

So that being the -- my tentative view, I -- I will not certainly preclude the defendants from arguing about the California state case, but I -- I really don't think that the -- the bases for fighting the remand of

that case are -- are very viable.  And I have to say, of -- of the arguments you made, the federal officer argument, I think, verges on the absurd, quite frankly.

All right.  So that said, because you're going to be arguing both, why don't I have the defense come up?  As I say, I won't preclude discussion of the California state case, but keep in mind I have a pretty strong tentative on that.  So I really want to spend most of our time focused on the nonprofits' case, and what -- what to do it, frankly.

MS. SESTITO:  Okay.  Understood, Your Honor. I'll start by saying if -- if Your Honor (indiscernible) the attorney general case, there's absolutely nothing unusual about having cases that are related and parallel that proceed in state and federal court.  And so I want to -- want to address that thoroughly with *Younger* abstention issues.  I do want to say a couple of things quickly, though, about the state case, keeping in mind your comments.

So our -- our remand motion was focused on the allegations of the complaint.  And I want to start with maritime.  Your Honor mentioned savings to suitors. That was not a ground that was raised in the motion to remand.  It has -- it is believable and -- and we believe has been waived.  And if you give me just a

moment, I will give you -- there's Ninth

Circuit authority --

THE COURT:  Did you argue the waiver point in your papers?

MS. SESTITO:  No, because they had not waived it.  So there was no basis for us to address the savings to suitor clause.  So it was raised for the first --

THE COURT:  Is it my obligation to -- it's jurisdiction question?  I mean, don't I have to make a determination on whether or not there's proper jurisdiction?

MS. SESTITO:  Absolutely.  But the savings to suitor clause is not -- doesn't divest the court of jurisdiction.  It's waivable.  And the case is *Morris versus Princess Cruises*.  The site is 236 F.3d 1061, 1069.  That's a Ninth Circuit case from 2001.  And it says that a "state plaintiff may waive the improper removal under a savings to suitor clause claim."  And the idea is that the plaintiff has the option in a maritime case of filing in state court or in federal court.

The savings to suitors clause typically would bar removal, but it's waivable.  And here the plaintiffs waived it in two ways, actually.  So one is that they didn't raise it in their opening motion to remand.  But

as a procedural defect, those typically have to be raised within 30 days of removal.  And in this case, that also was not done.  It was not raised within 30 days of removal.  So the savings to suitor clause does not divest the Court of jurisdictional under *Morris*. It's, instead, a waivable procedural defect in the removal.

THE COURT:  Assuming for a moment that waiver isn't applicable for whatever reason, if they -- if you didn't have waiver as your argument, why would -- why would you be able to fight the remand with respect to the issue of the savings to suitor clause?

MS. SESTITO:  That was addressed.  There's two issues that were reserved in the *San Mateo* case, Your Honor, by the Ninth Circuit --

THE COURT:  Well, I'm not sure they were reserved, but okay.

MS. SESTITO:  But they were left open.

And if this argument had been raised in the motion to remand, we would have briefed them in our opposition.  It wasn't, so we didn't have that opportunity.  So I can talk about it.  I would say that if Your Honor is going to rely on the savings to suitors, we think it would be appropriate to have briefing on the issue of both waiver and whether or not

these other kind of key issues that were reserved or at least identified by the Ninth Circuit in the *San Mateo* case.

THE COURT:  Okay.  Well, let's -- let's put that one aside.  And let's -- let's go back first. Let's start with maritime jurisdiction standing alone.

MS. SESTITO:  Sure.

THE COURT:  Okay.

MS. SESTITO:  So location.  Did the tort occur in navigable water?  I want to be clear what navigable water is.  That's waters that form a highway or ways of transportation in which commerce can be conducted with other states or countries.  So that includes a lot of ground in the state of California within the state's geographical boundaries.  We identified cases, the Sacramento River, the --

THE COURT:  It is a process of if you can find something in there, some small enclave in the state, all you say is, "There must be some enclaves in the state," that's -- that's not enough to say this is maritime jurisdiction.

MS. SESTITO:  Well, maritime is distinct, Your Honor, from the enclave issue.  So maritime -- the navigable waters, I -- I would submit that their complaint is primarily involving navigable waters, and

that's because their complaint focuses a lot on the coastline and beaches. It's undisputed that the ocean, including the ocean that abuts the coastline, is navigable waters. And so all of that water along an entire coastline --

THE COURT: I think that's a complete stretch. I really do. This isn't a maritime case. We have a lot of maritime cases here, admiralty cases. This isn't a -- that's a complete stretch, I think.

MS. SESTITO: Well, I think looking at the elements, the tort arises on the -- on navigable waters. The second element is whether there's impact -- or potentially disruptive impact of the maritime commerce.

THE COURT: You know, I admire you and the creativity of your arguments, but -- and I -- I respect your right to make that argument. But I -- really, that's all flushed out in the papers. And I -- I'm going there. So I don't want to impose on your time needlessly, so let's move on to a different area.

MS. SESTITO: All right.

THE COURT: The federal enclave issue --

MS. SESTITO: Uh-huh.

THE COURT: -- and again, on the federal officer issue, you've submitted a lot of paper to me. I don't buy it, so let's not spend any time on that.

MS. SESTITO:  Okay.

THE COURT:  But the -- the -- you know, (indiscernible) to Exxon doing double production isn't gonna fly.  So what -- why don't you talk to me a little about the federal enclave jurisdiction?

MS. SESTITO:  Sure.  So federal enclaves are distinct from maritime.  And they have to do with federal -- there are certain definitions for federal enclaves and whether the injury occurs or the conduct issue occurs on that federal enclave.  And here, I don't think there's any dispute that there is at least some injury that has occurred on federal enclave.

THE COURT:  Is that all you need, though? Some -- you'll find -- in state of California, you'll find some piece of federal enclave.  And you say, all we need to do is find just some, you know, piece of the Presidio.  And therefore, then we're -- you know, we got federal enclave jurisdiction.

MS. SESTITO:  Well, the issue, Your Honor, is that if the injury occurs on the federal enclave, it's actually governed by federal law.  And so that what -- that's what provides the basis for removal.  And so I do think that if there is an injury that occurs on a federal enclave that that provides removal jurisdiction.

There are cases that specifically say that it

doesn't have to be, you know, the (indiscernible) argument, like the *Bell* case, which involved asbestos. They didn't find that all of the asbestos exposure occurred on federal enclaves. They found that it was on some of the federal enclave -- that -- that some of the (indiscernible) at issue were federal enclaves. So there's not a requirement that the entirety of the location has to be a federal enclave.

And in this case, remember, the effect of what is alleged in the case --

THE COURT: Have they disclaimed it, federal enclave?

MS. SESTITO: Well, I mean, they disclaim federal -- looking at the specific footnote, they disclaim on federal lands.

THE COURT: Right. They're the masters of their complaint, and they are disclaiming. So you're saying, "Oh. Well, they are going to say that they're -- that they're disclaiming any federal enclave because we can find some in the state of California that doesn't work for them." And I don't see why they can't disclaim.

MS. SESTITO: But they went on then to include allegations that, I think, do include federal enclaves. And there's extensive allegations about conduct and

impacts and injuries across the entirety of the state or across the entirety of the globe.

THE COURT:  And then they -- and to the extent they've done that, they've then carved out any federal enclave.  So you know, what more could they say?

MS. SESTITO:  Well, I -- I think that -- I guess what I would say is it's not clear to us when they are making specific allegations about federal enclaves in the context of the complaint that they're simply not going to be part of the relief that they are seeking, part of the injury that they're seeking.  And when their allegation is when the complaint --

THE COURT:  You -- you would perfectly entitled to say, "Look, they disclaimed it."  If they -- if they try to pull a stunt like that on you, then you can say, "Well, we've got this disclaimer, so they can't -- they can't recover for any injury on federal property."

MS. SESTITO:  And as an example, Your Honor, in paragraph 360, they specifically referenced the Monterrey Bay National Marine Sanctuary, which they seem to agree is a federal enclave.  It's not clear, though, that they're carve out of federal (indiscernible) applies to a marine sanctuary, which is waters, but they're the ones who allege that specific harm in

paragraph 360.

They identify in paragraph 100 and -- or they say that there's 105 water bodies within the state that have been impacted.  And so in light of those allegations, it -- I -- I don't think it's as clear that this footnote can just disclaim it, that they can bring a claim that is asserting injury essentially across the entirety of the state.  They can hold a single company responsible for all of global plastic pollution.

THE COURT:  That doesn't mean they'll prevail on the claim.  I mean, I'm not -- this is -- we're just talking about the right to get the jurisdiction question.

MS. SESTITO:  Sure.

THE COURT:  Your argument would be much stronger if we were -- if they were bringing a claim to cover a geographic area that is dominated by federal enclaves.  And -- and you say, well, there's no -- there's no way they could perceive their -- their whole theory here is really going after things that even with a disclaimer, it doesn't make any sense because there's so much federal enclave territory.  We're talking to the state of California.  It's got a lot of nonfederal enclaves.

So their complaint isn't -- isn't, you know,

subject to a problem right out of the box because of the nature of the area that they're purporting to cover. So that's why I don't see why the disclaimer doesn't provide you the protection that you need.

MS. SESTITO: Yeah. I mean, I think our goal is that there's -- that the allegations are so broad in terms of the conduct within the state of California and the lands that are covered, but also a specific reference to the Monterrey National Marine Sanctuary, which is not -- it's not clear to me, for example, that that footnote -- the footnote doesn't address enclaves; it addresses federal land -- that those things are necessarily co-extensive, and it applies to that particular marine sanctuary. So then there's a specific allegation about it.

It seems like that's part of what they're suing for. And they're asking -- just to be clear, right, there's a public nuisance claim. There's a water pollution claim. They're asking -- it appears that they will be asking for ExxonMobil to go in an actually remove plastic pollution from across the state, anything within the geographic boundaries of the state of California.

THE COURT: And I presume you would say if it got to that point, well, marine (indiscernible) is

federal enclave.

MS. SESTITO:  Well, I mean, as I said, it's not clear that there's bar disclaimers (indiscernible) federal enclave as opposed to federal land.

THE COURT:  Let me ask the -- your counterpart from the state on the waiver issue, and then perhaps also if you want to respond to some of the other points. But in particular, what's your response on the saving -- savings to suitors clause waiver issue?

MS. KUTAK:  Your Honor, I have not read the case that ExxonMobil offered the citation --

THE COURT:  The first case that they mentioned?

MS. KUTAK:  Yes.

But in responding to ExxonMobil's claim in their opposition that jurisdiction on any one of those bases would entitle them to supplemental jurisdiction on a remand, and that's simply not true for maritime jurisdiction.

And even so, I think --

THE COURT:  So that -- you're saying they just don't have the basis to -- to base their claim on maritime jurisdiction.  That's standing alone, right?

MS. KUTAK:  Right.

THE COURT:  But you're also making the

argument that they need an underlying alternative federal basis for jurisdiction because of the savings to suitor clause.

MS. KUTAK:  Correct.

THE COURT:  And they're saying to me, well, they waived that argument.  And then they cite this *Morris* case.  So that's the issue I was looking for you to respond to.

MS. KUTAK:  I see.  The savings to suitors clause is found on separate basis of jurisdiction that we could waive by not opposing.  We were responding to ExxonMobil's claim in their papers that any ground for jurisdiction that they raised would (indiscernible) to supplemental jurisdiction of the rest of claims.  And -- and that's not true for maritime jurisdiction.  Right? If they brought -- if maritime jurisdiction were the only ground that they could show applied, they still would have to stay in state court.  They would not get supplemental jurisdiction over the other claims.

And that aside, I think under the maritime jurisdiction, I don't think this case is a maritime case.  It certainly does not have maritime flavor. ExxonMobil has not explained by the activity giving rise to the complaint -- mainly the deception on recycling has any relationship -- -- more or less a substantial

relationship to traditional maritime activities such that it would make sense for the court to apply admiralty law to this case.

THE COURT: Okay. Back to -- back to you.

MS. SESTITO: Yes, I just -- I know you don't want to hear about federal officer. I just want to make one point for the record, which is just, again, that the scope of the relief that the state is seeking is breathtaking, in terms of seeking a cleanup of plastic by a single company across -- within the entire geographical boundaries --

THE COURT: Oh, I --

MS. SESTITO: -- of the state --

THE COURT: I --

MS. SESTITO: -- of California.

THE COURT: I understand that's your position, but is that -- is this the day to that argue that? I mean, we're really talking about where -- in what court these claims go forward, not whether or not, you know, these -- just what you said, these claims are way out there or not. I mean, that's for another day.

MS. SESTITO: Yes. I understand that. The point I'm trying to make is that given the breadth and scope and their claim to a lot of conduct that's many decades old, they're claiming that plastics last for a

very long time and may take decades or hundreds of years for them to break down.  That is why we tied in the federal officer.  Because if there is plastic or plastic products that were made at the direction of federal officer, and we're now going to be -- they're seeking to hold us responsible --

THE COURT:  But their -- they're so much more specific about microplastics, but it's not about rubber.  And in your argument -- I mean, I don't particularly want to get too deeply into it --

MS. SESTITO:  Sure.

THE COURT:  -- because frankly, I think that one pushes the envelope a bit.  The fact that Exxon was involved in rubber production during World War II is not a basis to say you've got federal officer jurisdiction now in a case that involves microplastic pollution quite specifically alleged against your client.  You -- it just -- it doesn't -- it's not -- it's not your strongest argument.  Let me put it that way.

MS. SESTITO:  Understood, Your Honor.  Well, we'll make those arguments later in terms of the scope of abatement, yes.

THE COURT:  All right.  So I think now let's shift to -- assuming for a moment -- and I will go back and look at this waiver point in *Morris* case.  And I may

ask for briefing as you suggest.  Let me take a look at that.  But for -- for purposes of our discussion today, let -- let us assume we are in a world where the California -- State of California case has gone back to state court, and now we have the nonprofits case.  And the argument that I'm hearing from the nonprofit plaintiffs is you should apply *Younger* abstention, or alternatively, you should -- if you don't think *Younger* abstention works here, then go with *Colorado River* Doc.

Okay.  So let's talk about that.  So seeing that you're up here --

MS. KUTAK:  Your Honor --

THE COURT:  Yes.

MS. KUTAK:  -- may I be heard on part of the maritime jurisdiction?

THE COURT:  Yes.  Go ahead.

MS. KUTAK:  Thank you.

I -- I understand that the court is going to consider additional briefing.  I think that briefing --

THE COURT:  Well, I don't know yet.  Let me go back and look, and I'll tell you if I want additional briefing.

MS. KUTAK:  Of course.  I think that additional briefing would only be helpful proving maritime jurisdiction applied here.  Otherwise, it would

be this exercise -- we argued maritime jurisdiction on the merits.  ExxonMobil did not show that there is a nexus to traditional maritime --

THE COURT:  I -- I understand that's the alternative argument.

MS. KUTAK:  Yes.  And I wouldn't want additional briefing to become an opportunity for a second bite at the apple to --

THE COURT:  I -- I hear you.

MS. KUTAK:  Thank you.

THE COURT:  Okay.  So let's have the nonprofits side come on up.

So on the question of *Young* abstention and *Colorado River*.

MS. SESTITO:  Yes.  So Your Honor, they're not really seeking abstention.  Like what they want is to go back to the forum where they originally filed the case in state court.

THE COURT:  Right.

MS. SESTITO:  They don't want the case to be paused.  They don't want it to be stayed.  They don't want it to be dismissed.  And there's no authority they could find that would allow them to use either of these abstention doctrines to end run our right to remove this case.  And there's no dispute --

THE COURT: If that's true, let's say -- you know, the scenario would be --

MS. SESTITO: Uh-huh.

THE COURT: -- as I understand it, if I have the chronology right, the state of California case was pending in state court when the nonprofits came into state court. And if, in fact, the state of California case is remanded to state court -- remanded to state court --

MS. SESTITO: Uh-huh.

THE COURT: I think the other -- other factors that it's -- this is not a criminal case. But it's got -- it's a civil case with some criminal analog. And I think -- I mean, we can argue whether or not the *Younger* factors are met. But if the *Younger* factors are met, there would -- there would be a basis to remand it under the *Younger* doctrine.

MS. SESTITO: Well, I actually think the parties are wrong in this case. So *Younger* -- like the *Younger* case itself involved a state criminal defendant. So he's been prosecuted for a crime. He had -- he believed the statute he was being prosecuted for was unconstitutional. Instead of raising those federal defenses in the criminal prosecution, he filed a separate federal case. So he was the state court

defendant and a federal court plaintiff.  And the Court said that that was not allowed.  He was seeking to enjoin the state case in filing his federal case.

ExxonMobil is not seeking to enjoin anything. We're just removing, as we're permitted to do under the statute.  We didn't initiate either of these cases. This isn't an attack in any way on it.  We're just trying into the federal forum that the US Code provides for us in a case like this.

And if you look at the cases, they say that -- they refer to this party issue and specifically say *Younger* abstention ordinarily does not apply when the federal plaintiff is also the plaintiff in state court. That's 255 F.3d at 1098, Ninth Circuit en banc from 2001.  So if we're talking about the flavor, right, a flavor is a state court defendant --

THE COURT:  I -- I don't agree with you.  I -- I don't think that's -- *Younger* factors are not the positioning of who's the plaintiff, who's the defendant that you seem to suggest *Younger* says.  *Younger* and the -- the factors that you apply in *Younger* are the nature of the case factors.  They may have -- federal courts may have stated when a case involves parallel pending state criminal proceedings, or state civil proceedings that are akin to criminal prosecutions,

which I think arguably is true here, or state civil proceedings that indicate a state's interest in enforcing the orders and the judgments of its courts. That's *Younger* abstention.  Those are the factors of *Younger* abstention.  It's not the positioning of who's plaintiff and who's defendant in which forum.

MS. SESTITO:  But it's also that the federal court actually has to seek to enjoin or have the practical effect of enjoining beyond going to state proceedings.  And that's -- that's -- that's where --

THE COURT:  Well, it has to implicate a state's interest in enforcing orders and judgments of its courts.

MS. SESTITO:  Well, I think the courts are saying it in different -- there's several of the courts, including *Green* and *Herrera*, that address it as needing to either actually enjoin, be an actual suit to bring an injunction to stop the federal court proceeding, declaratory relief, or in some other way interfere. There has to be interference with the state court action.

And in all of these cases, that was the -- that was the intent.  That was the purpose of doing it. In *Herrera*, that's --

THE COURT:  Would that be the case here if --

if the state case goes forward in state court and then the nonprofit case was here, then what is the risk of conflicting judgments and interference with the state court proceedings?

MS. SESTITO:  But that's inherent in any case where there are similar issues being decided in federal court and state court.  And the Supreme Court has rejected that.

And I'll cite from the *Roden* decision, a Ninth Circuit, 2007 case, 495 F.3d at 1151.  The Supreme Court has rejected the notion that federal court should abstain whenever a suit involves claims or issues simultaneously being mandated in state court merely because whichever court rules first move via the doctrines of res judicata and collateral estoppel preclude the other from deciding that claim or issue. So that is just not enough under *Younger*, Your Honor.

We don't have the critical interference, the ingenuity, the practical effect of enjoining the ongoing state court proceedings.  And in this case, it's particularly inappropriate to apply it.  Because ExxonMobil isn't trying to enjoin a state's lawsuit.

We -- we got served -- they filed the lawsuits on the same day.  Actually, the Sierra Club case was filed first in state court, not second.  But they were

filed the same day.  And ExxonMobil is just seeking to defend itself.  And it has a right to remove.  The court has a virtually unflagging obligation to hear cases that are proper in federal court, as this one is.  And if you allow the nonprofits to --

THE COURT:  Let me ask you this question. Let's just be practical for a moment.

MS. SESTITO:  Uh-huh.

THE COURT:  Does it make a lot of sense for -- as I -- as I understand it, effectively, the nonprofit claims, they're not as -- as extensive, I guess, as the state court claims -- the state case claims, but they're -- they're -- they overlap almost entirely.  I don't think the nonprofit -- they have, I think -- they have both nuisance claims -- and I forget the other claim for relief.  But does it make sense to have the state court -- and this is -- again, assumes that I'm -- I bought the idea that this -- the state case goes back to the -- to the Superior Court.  Does it make sense for this case to stay here and that case to stay there?  And we go about our merry way in a case like this? Shouldn't this be one place?

You might want it to be in federal court, is your answer to that.  But assuming it can't be in federal court and the state case, doesn't it just make

sense for it to be all in one place?

MS. SESTITO:  I don't think the court can remand it just because it makes --

THE COURT:  No.  I'm just asking a question. Does it -- don't you think there are problems associated with having these parallel proceedings in a case of this type?

MS. SESTITO:  I think there are many, many cases that are pending right now in this court, either are similar or parallel to state --

THE COURT:  I'm assuming that that's probably not an optimal situation.

MS. SESTITO:  Right.  But it happens all the time.  And that -- that can't be sufficient to send cases that have proper federal court jurisdiction, that were properly removed, that have diversity jurisdiction -- there's a reason why Congress provided removal jurisdiction for diverse parties.  And the Court can't just walk away from that and decide that it would be more efficient or -- or -- or more -- that the issue should be decided together.  Because what that would -- I -- there have been a substantial number of cases in this court that might no longer be pending here, if the court had the ability to just --

THE COURT:  Okay.  All right.

MS. SESTITO:  But do just want to say one thing, Your Honor, which is that they permitted us to go forward -- remanding the Sierra Club case, would essentially allow them to end run around these jurisdictional laws and end run around federal court jurisdiction and our right, frankly, to have this case removed and heard in a federal forum.

And the fact that they, you know, talked to the California Attorney General and, you know, filed their lawsuits on the same day, they can't be the ones that divest a federal court of jurisdiction based on this kind -- that kind of gamesmanship.  And there's no case -- we don't find a single case that would allow their actions in that way to divest a defendant of their right to have their case heard in federal court.

THE COURT:  Okay.  Ms. Park, go ahead.

MS. PARK:  I think it would be helpful just to walk through the *Younger* factors and to then talk about removing.  With respect to the *Younger* factors, there is a threshold question.  And that threshold question was, Is this the type of case where *Younger* abstention would apply?  And those are what we (indiscernible) for criminal cases, quasi criminal action tables, with respect to judicial enforcement.  This is a quasi criminal action Huffman Pursue, 420 U.S. 582, Citizens

for Free -- Free Press, 933 F.3d 655, Cabrera versus City of (indiscernible) --

THE COURT REPORTER:  Your Honor, this is the court -- this --

MS. PARK:  -- (indiscernible) this is precise -- nuisance is precisely quasi criminal enforcement action.  So is the (indiscernible).

THE COURT REPORTER:  Excuse me --

[Court reporter's microphone is not projecting into the open courtroom.]

THE COURT:  If I find *Younger* abstention is applicable, the answer is to remand?

MS. PARK:  The answer, yes, is to remand.

THE COURT:  You have some cases for me where having found *Younger* applicable, the -- the remedy is to do remand to state court as opposed to stay or dismiss?

MS. PARK:  Yes.  So in *Quackenbush v. Allstate*, the Court held -- the Supreme Court held that federal courts have the power to dismiss or remand to the extent plaintiff's claims are equitable.

THE COURT:  Under *Younger*?

MS. PARK:  Under *Younger* -- or under abstention doctrines in general.  And *Gilbertson versus Albright* confirmed that.  Because while Quackenbush was a *Burford* abstention -- I don't know if I'm saying it

right -- but under *Gilbertson versus Albright*, that was similar, another case.

The other thing is that -- the other case I'd like to refer you to is *Trudy Christiansen versus McVeigh*. The pin cite on that is 2013 Westlaw 5835562. And in this case, the Central District of California said that the court is not categorically barred for remanding damages action in Colorado River and has cited *Quackenbush* for saying that to the extent that there's money damages, maybe the better course of action is to stay. But in R and R Sweat [phonetic], Ninth Circuit case, that case was dismissed even though it was a money damages action.

THE COURT: Just -- just so I address it, I know state law makers *Colorado River* doctrine alternative argument. But as far as I can find, there is no case that is remanded under the *Colorado River* doctrine.

MS. PARK: There is. It's (indiscernible) versus City of Oakland, 2007 Westlaw 6272. And this is a Northern District of California --

THE COURT: So is there any circuit authority that says you can remand using Colorado River doctrine?

MS. PARK: There is no circuit authority, but in this case, the Court did remand a 1983 claim which is

a  constitutional claim based with the component.

THE COURT:  Colorado River?

MS. PARK:  Correct.

THE COURT:  But that's it.

MS. PARK:  But -- but fundamentally here, it is -- the nonprofits are asserting a public nuisance claim under nuisance abatement in that they (indiscernible).  So it does fall squarely within *Quackenbush* in the sense that it is seeking equitable relief.  (indiscernible).  And I think -- I also what's important to know is that with respect to Gilbertson and Albright, they did determine to stay their action given that there was (indiscernible) understanding that the state court did not have the ability to provide damages under the (indiscernible) considering the constitutional issue.  Here (indiscernible) possibly exist are the damages under public nuisance which is a state court claim that the state can alert.  And so I think that is a distinction.

THE COURT:  What's -- what's your response to your counterpart's argument that, you know, your case plainly -- you had jurisdiction over your case because you've got diversity in CAFA.  Well, they argue it's tantamount to a class action, and we don't have to get into all that right now.

MS. PARK:  Uh-huh.

THE COURT:  But under diversity, there's jurisdiction.  So why shouldn't the tail cases just proceed along.  Why -- why should we say -- do something which you say it's not -- it's not unprecedented, but it's certainly not a very prevalent way to proceed.  To say, oh, *Younger* abstention, I'm remanding -- or Colorado River.  Why shouldn't we just have cases go forward?  Because, as counsel says, there are certainly a lot of circumstances in which we've got issues being litigated in the state court the same time they're being litigated in the federal court.  Why not?

MS. PARK:  The *Younger* -- the *Younger* abstention factors do apply here.  And I -- I wanted much --

THE COURT:  Well, what I'm saying is -- well, let's say is the answer to -- let's -- let's assume for a moment that I agree with you.

MS. PARK:  Uh-huh.

THE COURT:  That doesn't automatically mean I remand.  I can do any number of things if I find *Younger* applies, one of which, we better stay the case, or possibly dismiss the case.  Why shouldn't I take one of those options?

MS. PARK:  Because fundamentally *Younger* is

about quality and federalism.  And ExxonMobil is clear that they're just (indiscernible) by asserting a First Amendment claim for relief, which they said that they weren't going to do in -- in opposition.  Federal (indiscernible), the federal contractor (indiscernible) squarely claims for relief that they're seeking by initiating removal into federal court, assumed the federal claims for relief to enjoin the state court action, which is the state court (indiscernible).  And the authority for that is, with respect to the first amendment charge, *Gilbertson v. Albright*, 381 F.3d 965.

THE COURT REPORTER:  I apologize.  Excuse me.

MS. PARK:  And with respect --

THE COURT REPORTER:  This is --

[Court reporter's microphone is not projecting into the open courtroom.]

MS. PARK:  -- to the --

THE COURT:  Ma'am, I'm not sure that you're answering -- now you're talking about comity, the cite for California case seems to encompass your case, which seems a bit (indiscernible) -- let's assume that the aspect of your case is not effectively covered by the State of California case.  So how does it offend the state court -- comity in the state court if we send back the California state court case -- State of California

case to the state court and then stay this one?  Why not?

I mean, I understand you want (indiscernible) to nonprofits and you want your case to proceed.  But in terms of the comity issue, it doesn't create any problem.  Respecting the state court, the state court's going forward.

MS. PARK:  Uh-huh.

THE COURT:  Why not?

MS. PARK:  Again, I believe that Plaintiff, as for the complaint, they initiated the case in state court. ExxonMobil moved on the diversity, but the rule does apply.  And the actions that they are seeking, the federal claims for relief that they are seeking from a federal court is the very type of things that -- that (indiscernible).

And I -- I don't -- I think I do understand what you say.  And again, I think *Gilbertson v. Albright* says -- says why you some remand it to state court, which is when there is federal claims for relief -- or federal relief being sought, in order to enjoin state cause -- state court -- state causes of action, it should be the state court that should assess whether or not that their laws are being are -- are -- are within

the bounds of the Constitution protection.

THE COURT:  But that's right about the State of California's case, but it's not true about your case, particularly.  You're not -- you're -- you're here because there's diversity jurisdiction.  You're not invoking federal claims to defeat the prospect of having this go forward in state court with respect to your case.

MS. PARK:  And -- and I think this is why the -- where the discussion about having a federal plaintiff can't be a state court plaintiff, I think that's kind of where that applies here, is that the -- the question, again, is whether there is -- whether the case offends comity or federalism.  And if the state court plaintiff sees that that state court case isn't going along and then sees as a state -- as a federal plaintiff, this is what (indiscernible) defendant cited teaches, and that is 650 -- my apologies.  That is 76 F.App. 790.

Again, the interests are not about who's the party in a state court action and this is a federal action; it's why is that case being initiated in federal court.  ExxonMobil initiated this case in federal court by removal to assert federal claims for the First Amendment, federal (indiscernible) -- to have the

federal court make determinations on those on this case -- make a determination on this -- on these -- on these claims for relief to enjoin state case -- claims (indiscernible) violations.

THE COURT:  Okay.

MS. SESTITO:  May I respond?

THE COURT:  Yes.  So let me be really clear. ExxonMobil did not initiate a case.  ExxonMobil removed a case that was filed that was removable under ordinary diversity principles.  And I think that counsel's argument makes clear that this isn't about comity at all with them.  This is about forum shopping.  They want to be in the state court.

And with due respect, we didn't create the comity problem.  They created the comity problem by filing a complaint that was removable.  We exercised our right to remove it, a right that's given to us by Congress.  And we're not trying to evade anything.  We haven't filed any motions.  We're not seeking to do anything.  This isn't a circumstance where -- there are cases in the *Colorado River* where a plaintiff waited for years, doesn't get a good outcome, and then assert a different proceeding in a different court on a single facts, because they're -- and that's a clear case of forum shopping.  That's not what happened here.  We just

removed the case.  The cases are at their beginning.

And so to pretend that this is about comity, I think it's clear they don't want the case stayed.  They want to go back and they want to litigate in state court.  They do have to state claims, because they brought a private nuisance claim where they seek damages that are distinct from the claims that the state has brought forward.  And I also want to highlight that these cases -- if the Court isn't persuaded about the state-court-defendant/federal-court-plaintiff distinction in all of the cases, the parties are the same, or they are so intertwined as to be essentially the same entities.  And that is something that the nonprofit plaintiffs argue that they have that kind of relationship with the state.

I'm frankly not sure the state would agree with that.  Because the examples in the cases, like under *Herrera*, it's a husband, wife, and their children. They are closely related.  Or it's a husband and wife that own a company together, a small company.  And the state court action against the husband and the company. And the federal court action is the wife, the husband, and the company.  And in those cases, the court finds that -- the court has found in *Herrera*, Ninth Circuit case, that both parties are intertwined enough that

their interests are the same.

I don't believe, though, that -- that the same can be said for nonprofits, that they have the same kind of relationship as the owner of a corporation or a corporation that they own or family members.  But their interests are so closely aligned that they're essentially the same party.  And so this is frankly just an ordinary case.

Large companies get sued all the time on claims that are similar.  It's extremely common to have -- in cases where there's lots and lots of actions, to have a federal MDL pending at the same time as a state-coordinated proceeding in California.  It happens every day.  And that's really all that this is.

These are two separate lawsuits that were filed by separate parties.  I -- I don't believe they can meet this test of being intertwined.  And I would ask the court to look at *Herrera* that describes those kinds of relationships, or two related corporations.

I don't believe that Sierra Club and the Attorney General are family members.  I don't believe they commonly own a corporation.  I don't believe that they're related corporations.  And presumably, they filed separate lawsuits precisely because they have separate interests.  And so this is just an ordinary

removal that should proceed in state court pursuant to this court's obligation to hear the case.

THE COURT:  So just to bring it finally to its conclusion, I know you wouldn't, you know, agree with me if my decision is that the State of California case goes back to state court.  But were that to occur, your position is, okay, we'll just roll ahead in the two forums.

MS. SESTITO:  Absolutely.  Happens every day, all the time.  Yep.

THE COURT:  Okay.

MS. PARK:  The nonprofits are asserting claim which are, if not private general attorney actions, like a private attorney general action, and would alongside the attorney general.  And --

THE COURT:  You would agree that you're not -- you're not -- as a going forward matter, you're so tied to the attorney -- there are times when you're adverse to the attorney general, I presume.

MS. PARK:  I don't think we've progressed far enough to know.

THE COURT:  Well, there will be a day where perhaps you will, but okay.

But counsel suggests -- and I'll go back and look at it -- but the -- the nature of the inner

relationship has to be different than two parties that happen to have one moment in time in alignment with respect to certain claims going forward, that that's not enough.

MS. PARK: Uh-huh. But the -- the California -- the California's Attorney General Office is suing on behalf of the State of California.

THE COURT: Right.

MS. PARK: And there is nonprofits that can be found in paragraphs 20, 211, 212, and 337 of the complaint. So fundamentally, the fundamentally real parties of interest in both actions are the People of the State of California. And they're asserting the same claims for the same underlying conduct. I can't see how they're not intertwined in this instance.

THE COURT: Okay. I want to go back and look at some things. I may -- I may or may not ask for some additional input from the parties, but I'll go back and take a look and give you a --

MS. SESTITO: Now, if you want very quick point on that one housekeeping issue. So first, just on that last point, the -- the state attorney general files lawsuits all the time. And it can't be that the subject matter of any suit brought by the state attorney general any other case that raises similar claims or similar

issues on behalf of private plaintiffs, the People in the State of California can't proceed in federal court just because the state attorney general has chosen to sue in state court on a similar topic.  But that can't be the rule because the -- the federal courts would be very, very empty if that was the case.

The housekeeping issue, Your Honor, the -- the state's attorneys and I had a conversation yesterday to talk about kind of the next step forward in the case, which I very much appreciate them initiating.  And if -- if -- however the case proceeds, we want to have an opportunity to meet and confer.  And so if the cases -- if the motions to remand are denied, then, of course, the cases will stay here.  We will meet and confer about next steps.

If -- if Your Honor, I hope you will choose to deny the motions to remand.  But if -- if you grant them, one or both, we would ask for a short administrative stay to allow the plaintiffs to meet and confer about next steps, to allow ExxonMobil the ability to evaluate potential appellate options and potentially seek a -- a more formal stay.

And that's something that the state has agreed makes sense to -- through just their remand, not the order itself, but the actual physical remand of the file

42

to state court -- for a 30-day period to allow the parties to meet and confer about the next steps in the case. And I -- I submit -- I haven't had a chance to talk to counsel for the nonprofits, but I would submit that it would make sense as well in that circumstance.

THE COURT: So if my decision was that I want to remand one or both, I -- you -- I -- you have not confronted this to say, "All right, I'm going to remand but it's not -- the remand isn't going to be triggered for some period of time"?

MS. SESTITO: That's right. So if the administrative stay of just the remand --

THE COURT: Do you have some revise for me procedurally where that would have occurred?

MS. SESTITO: Yes. I mean, it has occurred before in this court in other litigation before. Judge Chhabria had stayed a remand.

THE COURT: That's --

MS. SESTITO: And -- and it's just staying the actual mailing of the file to --

THE COURT: I understand.

MS. SESTITO: -- state court so that the parties have an opportunity to either -- both of these issues are appealable, and so we want to review those options and then confer with --

THE COURT:  Understand.  Okay.  And you haven't had an opportunity --

MS. PARK:  I have not had an opportunity to look into this.

THE COURT:  Okay.  Okay.  Thank you.

MS. PARK:  Thank you.

MS. SESTITO:  Thank you, Your Honor.

(Proceeding concludes at 3:22 p.m.)

**\*\*\*\*\*\*\*\***

**C E R T I F I C A T E**

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

_____                    02/27/2025

Teresa B. Johnson, CVR-M-CM, RVR, RVR-M              Date