1   DAWN SESTITO (S.B. #214011)
    dsestito@omm.com
2   MATTHEW R. COWAN (S.B. #281114)
    mcowan@omm.com
3   O'MELVENY & MYERS LLP
    mcowan@omm.com
4   400 South Hope Street, 19th Fl.
    Los Angeles, California 90071-2899
5   Telephone:    (213) 430-6000
    Facsimile:    (213) 430-6407
6
7   DAVID J. LENDER (*pro hac vice*)
    david.lender@weil.com
8   WEIL, GOTSHAL & MANGES LLP
    767 Fifth Avenue
9   New York, New York 10153-0119
    Telephone:    (212) 310-8153
    Facsimile:    (212) 310-8007
10
    *Counsel for Defendant Exxon Mobil Corporation*
11

12              **UNITED STATES DISTRICT COURT**

13             **NORTHERN DISTRICT OF CALIFORNIA**

14

15  SIERRA CLUB, INC.; SURFRIDER                    Case No. 3:24-cv-07288-RS
    FOUNDATION, INC.; HEAL THE BAY,
16  INC.; and BAYKEEPER, INC.; each a              **DEFENDANT EXXON MOBIL
    California Nonprofit,                           CORPORATION'S NOTICE OF
17                                                  MOTION AND MOTION TO
                         Plaintiffs,                DISMISS; MEMORANDUM OF
18                                                  POINTS AND AUTHORITIES IN
           v.                                       SUPPORT THEREOF**
19
    EXXONMOBIL CORPORATION, a New                  **Hearing Date**:    June 5, 2025
20  Jersey Corporation, and DOES 1-10,            **Time**:             1:30 p.m.
                                                   **Location:**        Courtroom 3, 17th Fl.
21                       Defendants.
                                                   Hon. Richard Seeborg
22
                                                   [SPECIAL MOTION TO STRIKE FILED
23                                                  CONCURRENTLY HEREWITH]

24

25

26

27

28

**TABLE OF CONTENTS**

**Page**

NOTICE OF MOTION AND MOTION TO DISMISS ............................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ......................................................... 2

I.     INTRODUCTION ................................................................ 2

II.    STATEMENT OF ISSUES TO BE DECIDED ................................. 4

III.   STATEMENT OF FACTS ....................................................... 5

    A.    Historical Statements ...................................................... 6

    B.    Current Statements About Advanced Recycling ...................... 7

    C.    Plaintiffs' Theory Of Causation ........................................ 8

IV.    ARGUMENT ...................................................................... 8

    A.    Plaintiffs Do Not Allege A Viable Nuisance Claim .................. 8

        1.    Plaintiffs do not allege an actionable theory of nuisance liability ........................................................... 9

        2.    Plaintiffs fail to allege causation ................................. 12

    B.    Plaintiffs Do Not Allege A Viable UCL Claim ...................... 14

        1.    Plaintiffs do not allege unlawful conduct...................... 15

        2.    Plaintiffs do not allege unfair conduct. ........................ 17

        3.    Plaintiffs allege no actionable misrepresentations ........... 18

    C.    Plaintiffs' Complaint Impermissibly Seeks To Regulate Beyond California............................................................ 23

V.     CONCLUSION ................................................................. 25

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

3

<u>**Cases**</u>

4

*AMA Multimedia, LLC v. Wanat,*
  970 F.3d 1201 (9th Cir. 2020).........................................................................................24, 25

5

*Aryeh v. Canon Bus. Sols., Inc.,*
  55 Cal. 4th 1185 (2013) ................................................................................................14, 15

6

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) .......................................................................................................12, 13

7

8

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.,*
  874 F.3d 1064 (9th Cir. 2017).............................................................................................25

9

*Becerra v. Dr Pepper/Seven Up, Inc.,*
  945 F.3d 1225 (9th Cir. 2019).............................................................................................19

10

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ............................................................................................................13

11

*Bigelow v. Virginia,*
  421 U.S. 809 (1975) ............................................................................................................24

12

*Brown v. Madison Reed, Inc.,*
  2023 WL 8613496 (9th Cir. Dec. 13, 2023) .......................................................................19

13

*Burdick v. Superior Ct.,*
  233 Cal. App. 4th 8 (2015)..................................................................................................25

14

*Cal. Med. Ass'n v. Aetna Health of Cal. Inc.,*
  14 Cal. 5th 1075 (2023) ......................................................................................................14

15

*California v. Exxon Mobil Corp.,*
  No. 3:24-v-07594-RS (Jan. 9, 2025)..................................................................................... 5

16

*Citizens for Odor Nuisance Abatement v. City of San Diego,*
  8 Cal. App. 5th 350 (2017)..................................................................................................12

17

*City of Los Angeles v. Barr,*
  941 F.3d 931 (9th Cir. 2019)...............................................................................................16

18

19

*City of Merced Redev. Agency v. Exxon Mobil Corp.,*
  2015 WL 471672 (E.D. Cal. Feb. 4, 2015) .........................................................................10

20

*City of Modesto Redev. Agency v. Superior Court,*
  119 Cal. App. 4th 28 (2004)........................................................................................9, 10, 11

21

*City of San Diego v. U.S. Gypsum Co.,*
  30 Cal. App. 4th 575 (1994).................................................................................................. 9

22

*Cnty. of Santa Clara v. Atl. Richfield Co.,*
  137 Cal. App. 4th 292 (2006)....................................................................................... 3, 9, 10

23

24

*Doe v. CVS Pharm., Inc.,*
  982 F.3d 1204 (9th Cir. 2020).............................................................................................17

25

*Edmundson v. Procter & Gamble Co.,*
  537 F. App'x 708 (9th Cir. 2013) ........................................................................................19

26

*Edmunson v. Procter & Gamble Co.,*
  2011 WL 1897625 (S.D. Cal. May 17, 2011)......................................................................19

27

*Fischer v. United States,*
  603 U.S. 480 (2024).............................................................................................................16

28

1

## TABLE OF AUTHORITIES
### (continued)

2
**Page(s)**

3  *Garcia v. Sony Computer Ent. Am., LLC*,
   859 F. Supp. 2d 1056 (N.D. Cal. 2012) ................................................. 18

4  *George v. Susanville Elementary Sch. Dist.*,
   103 Cal. App. 5th 349 (2024)................................................................ 16

5

6  *Hinds Invs., L.P. v. Angioli*,
   445 F. App'x 917 (9th Cir. 2011) ...................................................... 9, 10

7  *Hodsdon v. Mars, Inc.*,
   891 F.3d 857 (9th Cir. 2018)............................................................ 17, 21

8  *HomeLight, Inc. v. Shkipin*,
   721 F. Supp. 3d 1019 (N.D. Cal. 2024) ............................................... 14

9  *In re Ethereummax Inv. Litig.*,
   2023 WL 6787827 (C.D. Cal. June 6, 2023) ........................................ 19

10

11  *In re Turner*,
    859 F.3d 1145 (9th Cir. 2017)............................................................... 14

12  *Int'l Shoe Co. v. Washington*,
    326 U.S. 310 (1945).............................................................................. 24

13  *Khoja v. Orexigen Therapeutics, Inc.*,
    899 F.3d 988 (9th Cir. 2018)................................................................... 5

14  *Kirsopp v. Yamaha Motor Co.*,
    2014 WL 12577429 (C.D. Cal. Aug. 27, 2014)................................... 18

15  *Kottle v. Nw. Kidney Ctrs.*,
    146 F.3d 1056 (9th Cir. 1998) .............................................................. 20

16

17  *Leocal v. Ashcroft*,
    543 U.S. 1 (2004).................................................................................. 16

18  *Mitchell v. Gonzales*,
    54 Cal. 3d 1041 (1991) ......................................................................... 12

19  *Myers v. Starbucks Corp.*,
    2020 WL 13302437 (C.D. Cal. July 29, 2020)..................................... 22

20  *Nat'l Shooting Sports Found., Inc. v. State*,
    5 Cal. 5th 428 (2018) ............................................................................ 16

21  *Newcal Indus., Inc. v. Ikon Off. Sol.*,
    513 F.3d 1038 (9th Cir. 2008).......................................................... 19, 22

22

23  *Oestreicher v. Alienware Corp.*,
    544 F. Supp. 2d 964 (N.D. Cal. 2008) ................................................. 19

24  *Orange Cnty. Water Dist. v. Alcoa Global Fasteners, Inc.*,
    12 Cal. App. 5th 252 (2017)................................................................. 13

25  *Patricia A. Murray Dental Corp. v. Dentsply Int'l, Inc.*,
    19 Cal. App. 5th 258 (2018).............................................................. 19, 23

26  *People by James v. PepsiCo, Inc.*,
    222 N.Y.S.3d 907 (2024)................................................................. 14, 22

27  *People ex rel. Gallegos v. Pac. Lumber Co.*,
    158 Cal. App. 4th 950 (2008) (UCL) ................................................... 20

28

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*People v. ConAgra Grocery Products Co.*,
   17 Cal. App. 5th 51 (2017) ........................................................................................... 9

*Realtek Semiconductor Corp. v. MediaTek, Inc.*,
   2024 WL 1975478 (N.D. Cal. May 3, 2024) ............................................................... 20

*Rezner v. Bayerishe Hypo-Und Vereinsbank AG*,
   2011 WL 6329854 (N.D. Cal. Nov. 8, 2011) ............................................................... 15

*Schwarzenegger v. Fred Martin Motor Co.*,
   374 F.3d 797 (9th Cir. 2004) ........................................................................................ 24

*Sepanossian v. Nat'l Ready Mix Co.*,
   97 Cal. App. 5th 192 (2023) ......................................................................................... 19

*Sponchiado v. Apple Inc.*,
   2019 WL 6117482 (N.D. Cal. Nov. 18, 2019) ............................................................. 23

*State of Cal. Auto. Dismantlers Ass'n v. Interins. Exch.*,
   180 Cal. App. 3d 735 (1986) ........................................................................................ 24

*Team Enters., LLC v. W. Inv. Real Estate Tr.*,
   647 F.3d 901 (9th Cir. 2011) ............................................................................... 3, 9, 10

*Walker v. Dreyer's Grand Ice Cream, Inc.*,
   2006 WL 2642535 (N.D. Cal. Sept. 14, 2006) ........................................................... 17

*Will Co. v. Lee*,
   47 F.4th 917 (9th Cir. 2022) ......................................................................................... 25

*Williams v. Yamaha Motor Co.*
   1015, 1020 (9th Cir. 2017) ........................................................................................... 24

*Wilson v. Frito-Lay N. Am., Inc.*,
   2013 WL 1320468 (N.D. Cal. Apr. 1, 2013) ............................................................... 18

*X Corp. v. Ctr. for Countering Digital Hate Ltd.*,
   724 F. Supp. 3d 921 (N.D. Cal. 2024) ......................................................................... 25

*Yamashita v. LG Chem, Ltd.*,
   62 F.4th 496 (9th Cir. 2023) ......................................................................................... 25

*Young v. New Haven Advocate*,
   315 F.3d 256 (4th Cir. 2002) ........................................................................................ 25

**<u>Statutes</u>**

42 U.S.C. § 13101(b) ........................................................................................................ 2

Alameda County Waste Management Authority Mandatory Recycling Ord. 2012-
   01 ..................................................................................................................................... 5

Cal. Bus. & Prof. Code § 17204 ..................................................................................... 14

Cal. Bus. & Prof. Code § 17208 ..................................................................................... 14

Cal. Fish & Game Code § 12000 .................................................................................... 16

Cal. Fish & Game Code § 5650 ...................................................................................... 15

Cal. Fish & Game Code § 5650.1(a) .............................................................................. 16

Cal. Fish & Game Code § 5652 ...................................................................................... 15

Cal. Gov't Code § 12600(b) ........................................................................................... 17

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS
NO. 3:24-CV-07288-RS

**TABLE OF AUTHORITIES**
(continued)

Page(s)

Cal. Gov't Code § 12607 ........................................................................................ 17

Cal. Pub. Res. Code § 14500 ................................................................................... 5

Cal. Pub. Res. Code § 14576(a) ............................................................................. 11

Cal. Pub. Res. Code § 18000 ............................................................................... 2, 5

Cal. Pub. Res. Code § 18015 ................................................................................... 5

Cal. Pub. Res. Code § 18017 ................................................................................... 5

Cal. Pub. Res. Code § 40000 ................................................................................... 5

Cal. Pub. Res. Code § 41780.01 .............................................................................. 5

Cal. Pub. Res. Code § 42300 ................................................................................... 5

Cal. Pub. Res. Code § 42649 ................................................................................... 5

Cal. Pub. Res. Code § 42649.2 ................................................................................ 5

Cal. Pub. Res. Code § 42924.5 ................................................................................ 5

Cal. Pub. Res. Code §§ 14547 ................................................................................. 5

City of San Mateo Mun. Code § 27.86.030 ............................................................. 5

Los Angeles Mun. Code § 66.00.1 ........................................................................... 5

Los Angeles Mun. Code § 66.03(i) .......................................................................... 5

Sacramento City Code § 13.10.34 ............................................................................ 5

San Diego Mun. Ord. §§ 66.0705 ............................................................................ 5

San Diego Mun. Ord. §§ 66.0706 ............................................................................ 5

San Francisco Environment Code § 1903 ................................................................ 5

San Jose Code of Ordinances § 20.70.470 ............................................................... 5

**Other Authorities**

Cal. Civ. Jury Instructions § 430 ........................................................................... 12

*Permit*, MERRIAM WEBSTER, https://www.merriam-webster.com/dictionary/permit;
  *Permit*, BLACK'S LAW DICTIONARY (12th ed. 2024) ............................................. 16

*Permit*, OXFORD ENGLISH DICTIONARY,
  https://www.oed.com/search/dictionary/?scope=Entries&q=permit ...................... 16

## NOTICE OF MOTION AND MOTION TO DISMISS

**TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

Please take notice that on June 5, 2025, at 1:30 p.m. or as soon thereafter as the matter may be heard, in Courtroom 3 of the San Francisco Courthouse, located at 450 Golden Gate Avenue, Floor 17, San Francisco, CA 94102, Defendant Exxon Mobil Corporation ("ExxonMobil"), by and through its undersigned counsel, will and hereby does move the Court for an order dismissing the Complaint filed by Plaintiffs Sierra Club, Inc.; Surfrider Foundation, Inc.; Heal The Bay, Inc.; and Baykeeper, Inc.

ExxonMobil seeks dismissal, with prejudice, pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), based upon this Notice of Motion, the accompanying Memorandum of Points and Authorities,, any oral argument the Court may permit, and all pleadings and papers on file in this action and on such other matters as may be presented to the Court at or before the hearing.

Dated: March 27, 2025                              O'MELVENY & MYERS LLP


By:    */s/ Dawn Sestito*

*Counsel for Defendant Exxon Mobil Corporation*

1

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2

**I.     INTRODUCTION**

3      Plastic pollution has no place in the environment. For decades, public and private actors

4   concerned with plastic pollution have promoted recycling as one solution among many. The State

5   of California, for example, has long declared that "[f]acilitating the recycling of plastics is in the

6   best interests of the state." Cal. Pub. Res. Code § 18000. Federal law, too, reflects a "national

7   policy" in favor of recycling. 42 U.S.C. § 13101(b). Plaintiffs, four environmental organizations,

8   have also long advocated recycling, urging the public to "aim to recycle anything made of

9   plastic."[1]

10      In this lawsuit, Plaintiffs seek to hold ExxonMobil liable for allegedly promoting the

11   benefits and recyclability of plastic—just as the State of California, the federal government, and

12   Plaintiffs themselves have done for years. Unsurprisingly, Plaintiffs' theory of how

13   ExxonMobil's speech could have caused them harm is beyond attenuated. Plaintiffs contend that

14   ExxonMobil "created a single-use plastics pollution crisis," Compl. ¶ 1, by engaging in a

15   "decades-long campaign asserting that single-use plastics trash is harmless and can be disposed of

16   easily and safely," *id.* ¶ 3. Of course, ExxonMobil does not manufacture single-use plastics or

17   advertise them to consumers. Nevertheless, Plaintiffs' theory appears to be that ExxonMobil set

18   out to convince the public that single-use plastics are recyclable to increase consumer demand for

19   single-use plastics, which in turn would increase demand for ExxonMobil's plastic polymers, the

20   raw material used to make some plastic products. "Consumers," Plaintiffs allege, "purchased

21   more plastics made from virgin polymers than they otherwise would have" because of

22   ExxonMobil's statements, *id.* ¶ 138, which in turn resulted in environmental harm.

23      The idea that consumers made purchasing decisions based on ExxonMobil's statements as

24   opposed to, for example, their own needs—or policies enacted by the State of California, which

25   for decades has vigorously promoted plastic recycling—is, to put it mildly, a real stretch. Even

26   more of a stretch is the premise, unstated in Plaintiffs' Complaint, that ExxonMobil's statements

27

28

[1] Bob Schildgen, *Where Can I Recycle #3 Through #6 Plastic?*, SIERRA (Sept. 21, 2015), https://www.sierraclub.org/sierra/2015-5-september-october/ask-mr-green/where-can-i-recycle-3-through-6-plastic.

were so effective in convincing consumers to buy plastic products they otherwise would not have bought that ExxonMobil's statements can be said to have *caused*, or even materially contributed to, a "single-use plastics pollution crisis."

Given the serious nature of Plaintiffs' accusations, one would expect their claims to be backed by detailed allegations. But Plaintiffs' 241-paragraph Complaint is notably light on the specific ExxonMobil statements that they contend caused the alleged crisis. Instead, in support of Plaintiffs' allegation that ExxonMobil engaged in an overwhelming campaign of deception, the Complaint collects only a handful of statements—most of them made decades ago—that are not actionable on their face. For example, the Complaint cites a 1983 statement in *The New York Times* that "[m]any plastics can be recovered, processed, and then turned into new products," without reference to any specific product. Compl. ¶ 127. That statement is entirely true, not remotely deceptive, and not remotely actionable. More recently, Plaintiffs cite statements about ExxonMobil's advanced recycling operations in Baytown, Texas, such as an ExxonMobil annual sustainability report stating "that 'deployed together' with mechanical recycling, 'advanced' recycling offers a 'huge opportunity' to 'strengthen circularity' and 'help address the plastic waste challenge.'" *Id*. ¶ 140. Nothing about that accurate statement provides any support for Plaintiffs' extraordinary allegations of a decades-long, nationwide campaign of deception.

Plaintiffs nevertheless rely on those allegations to accuse ExxonMobil of nuisance and unfair competition. Those claims fail many times over. Starting with their nuisance claims, Plaintiffs must show that ExxonMobil promoted plastic "for a hazardous use." *Cnty. of Santa Clara v. Atl. Richfield Co.*, 137 Cal. App. 4th 292, 309-10 (2006); *see also Team Enters., LLC v. W. Inv. Real Estate Tr.*, 647 F.3d 901, 912 (9th Cir. 2011). At most, Plaintiffs allege that ExxonMobil promoted recycling. But so did Plaintiffs. And so do the federal government, the State of California, and municipalities across this State. Recycling cannot be deemed a hazardous use when federal, state, and local policymakers encourage it. Moreover, Plaintiffs do not allege facts in support of causation. In one conclusory paragraph, Plaintiffs allege that consumers purchased more plastic because of ExxonMobil's statements. But they do not allege ExxonMobil's statements were so effective in altering consumer demand that they materially

altered global pollution levels. Indeed, the notion that plastic pollution—a global challenge—was caused by a handful of statements scattered across decades by one raw-material supplier is wholly implausible. Nor do Plaintiffs explain why ExxonMobil's statements about recycling caused plastic to make its way into the environment. There is a fundamental illogic to their claim: Why would statements about recycling cause products *not* to be recycled and instead end up on beaches or in waterways?

Plaintiffs' UCL claims fare no better. ExxonMobil obviously did not, for example, "permit" pollution "to pass into" the waters of this State within the meaning of California's Fish & Game Code. Nor does ExxonMobil's "conduct profit[] from its harms to public trust resources," Compl. ¶ 235—ExxonMobil does not make money *because* the environment suffers. And the decades-old statements Plaintiffs allege to be deceptive are time-barred and not misleading—in fact, some cited documents do not even say what Plaintiffs claim.

Perhaps the clearest signal that Plaintiffs' lawsuit is defective, though, is what it would mean for them. If Plaintiffs are right that promoting recycling creates liability for plastic pollution, then *they* are liable under the Fish & Game Code, for they too promoted recycling. Not only that, Plaintiffs' theory would mean that they, the federal government, and the State of California are liable for public nuisance. Needless to say, a theory that would render the Plaintiffs, the federal government, and the State of California liable to the public is not one that is likely to find support in the law. So it is here.

For these reasons and those that follow, Plaintiffs' Complaint should be dismissed.

## II.    STATEMENT OF ISSUES TO BE DECIDED

1. Have Plaintiffs pleaded a viable nuisance claim?

2. Have Plaintiffs pleaded a viable UCL claim?

3. Have Plaintiffs alleged in-state conduct that this Court is authorized to adjudicate and adequately alleged facts to support personal jurisdiction?

## III.    STATEMENT OF FACTS[2]

Everyone agrees that plastic pollution is a serious problem. For decades, policymakers, including the State of California and its municipalities, have vigorously promoted recycling as one solution.[3] To this day, the State encourages "[m]aximizing the reuse and recycling of all materials sold in California."[4] The State has even told the public that "with recycling, there's no such thing as too much of a good thing."[5] Plaintiffs have likewise encouraged consumers to "recycle anything made of plastic,"[6] calling "recycling" a key "proposal[] for avoiding or mitigating [environmental] problems," and holding educational events "to help get kids aware and excited about recycling."[7]

In this lawsuit, Plaintiffs contend that ExxonMobil is responsible for the effects of global

---

[2] For purposes of this Motion to Dismiss only, ExxonMobil accepts as true the Complaint's well-pleaded factual allegations. The Court may consider the underlying documents Plaintiffs cite in their Complaint "as though … part of the complaint itself" under the doctrine of "incorporation by reference," which "prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018).

[3] Cal. Pub. Res. Code § 14500 et seq.; *id.* § 18000, *id.* § § 40000 et seq.; *id.* § § 42300 et seq.; *id.* § 41780.01; *id.* § 42649; *id.* § 42924.5; *id.* § 42649.2; *id.* § § 14547, 18017; *id.* § 18015; Los Angeles Mun. Code § 66.00.1; *id.* § 66.03(i); Sacramento City Code § 13.10.34; San Diego Mun. Ord. § § 66.0705, 66.0706; San Francisco Environment Code § 1903; City of San Mateo Mun. Code § 27.86.030; San Jose Code of Ordinances § 20.70.470; Alameda County Waste Management Authority Mandatory Recycling Ord. 2012-01.

[4] *California's Statewide Commission on Recycling Markets and Curbside Recycling*, CALRECYCLE (June 30, 2022), https://www2.calrecycle.ca.gov/Docs/Web/121911 ("Maximizing the reuse and recycling of all materials sold in California is vital to the state's larger effort to build a circular, remanufacturing economy with less pollution."); *see also CalRecycle Programs*, CALRECYCLE, https://calrecycle.ca.gov/Plastics/ (last visited Feb. 25, 2025) ("California is addressing plastic waste by building a circular economy with efforts to: … Invest and expand domestic recycling").

[5] *It's in Your Hands*, CALRECYCLE (2024), *see* Dkt. 21-8, *California v. Exxon Mobil Corp.*, No. 3:24-v-07594-RS (Jan. 9, 2025).

[6] Schildgen, *supra* note 1.

[7] *The America's Cup Comes to San Francisco Bay*, BAYKEEPER NEWS (Summer 2011), at 2, https://baykeeper.org/files/newsletters/SFBaykeeper_Newsletter_11-Summer_web.pdf; Melissa Aguayo, *Schools Get a Kick Out of Recycling*, HEAL THE BAY (Apr. 25, 2012), http://healthebay.org/schools-get-a-kick-out-of-recycling/; *see also* Eveline Bravo, *Behind the Scenes: Recycling with Chivas USA*, HEAL THE BAY (Apr. 5, 2011), https://healthebay.org/behind-the-scenes-recycling-with-chivas-usa/ ("We even brought out the 'bag monster' to get the message across that there are many things that can go in the blue bins to be recycled, including those pesky single-use plastic bags.").

plastic pollution. In support, Plaintiffs cite virtually nothing. The Complaint proffers a handful of historical statements about plastic and "mechanical recycling"—i.e., "collecti[ng], sorting, and processing [plastic] materials" for reuse—dating back to the 1960s, none of which appeared on product-packaging or labels that consumers were likely to see when making purchasing decisions. Compl. ¶ 7; *id.* ¶¶ 112-28. And it collects a handful of current statements about ExxonMobil's advanced recycling operations in Texas. *Id.* ¶¶ 140-44. In total, only 10 paragraphs of Plaintiffs' 241-paragraph Complaint even cite an alleged misstatement. None of those statements is alleged to have been directed at or made in California.

### A.    Historical Statements

Parts IV.D.1 and 2 of the Complaint collect a few historical statements about plastic— some dating as far back as "the 1960s." Compl. ¶ 113. These allegations fall into two buckets.

*First*, Plaintiffs allege that Mobil Corporation misleadingly suggested in the 1960s and early 1970s that plastic products could be disposed of safely in landfills. *See id.*, Part IV.D.1. In support of this theory, paragraphs 113 and 114 allege that Mobil Corporation deceptively compared the benefits of "foam meat trays and egg cartons" to similar paper products—e.g., that the foam products took up less space in landfills, reduced transportation costs (because they are lighter), and generated fewer emissions in the manufacturing process. *Id.* ¶¶ 113-14. Meanwhile, paragraph 115 faults Mobil Corporation for stating that foam "does not decompose readily" when landfilled. *Id.* ¶ 115. Besides these three paragraphs, Plaintiffs' Complaint identifies no other statements in support of their theory that ExxonMobil misleadingly represented that single-use products could safely be disposed of in landfills.

*Second*, Plaintiffs allege that ExxonMobil misleadingly suggested in the 1980s and 1990s that "mechanical" recycling was an economical solution to disposing of plastic waste. *See id.*, Part IV.D.2. In support, paragraph 120 quotes a 1989 statement by the National Polystyrene Recycling Company that "[r]ecycling polystyrene is a highly automated and efficient process" that involves a "few simple steps." *Id.* ¶ 120. Paragraph 126 alleges that, around the same time, Mobil Chemical Company made false statements about the biodegradability of "'Hefty' brand trash bags, resulting in settlements with the Federal Trade Commission and the attorneys general

for seven states," *id*. ¶ 126, including California. Paragraph 127 cites a Mobil Chemical 1983 statement in *The New York Times* truthfully stating that "[m]any plastics can be recovered, processed and then turned into new products." *Id*. ¶ 127. (Before suing ExxonMobil, Plaintiffs had endorsed the same sentiment, recently encouraging consumers not only to "aim to recycle anything made of plastic," but also to "keep in mind the possibilities for creative reuse of plastic," for which "loads of ideas exist" (some "ingenious")).[8] Paragraph 127 of the Complaint also cites a film from the 1990s by the American Plastics Council (not ExxonMobil) explaining that plastic packaging uses fewer resources than other materials and that "recycled plastic is used as raw material for other products like park benches, camping gear, backpacks and even some clothes." *Id*. Besides these three paragraphs, Plaintiffs' Complaint identifies no other statements to the public in support of their theory that ExxonMobil misleadingly represented the economic feasibility of plastic recycling.

## B.    Current Statements About Advanced Recycling

Part IV.D.3 of Plaintiffs' Complaint challenges statements about ExxonMobil's advanced recycling operations in Texas. According to Plaintiffs, advanced recycling "is an industry catch-all term for a variety of processes—including pyrolysis, gasification, hedrolysis, methanolysis, and more—that are intended to break a polymer down to its basic chemical elements." Compl. ¶ 10. Those basic chemical elements can then be reused to manufacture new products, like fuel or other plastic products. Plaintiffs allege that ExxonMobil "promotes advanced recycling as the panacea for the obvious inadequacy of mechanical recycling." *Id.* ¶ 140. But the few statements about advanced recycling identified in the Complaint say nothing of the sort.

In paragraph 140, Plaintiffs quote a statement by ExxonMobil that "'deployed together with mechanical recycling, 'advanced' recycling offers a 'huge opportunity' to 'strengthen circularity' and 'help … address the plastic waste challenge.'" *Id*. In paragraph 142, Plaintiffs fault ExxonMobil for truthfully telling its customers that certain of its products are "certified circular"; Plaintiffs even cite the "disclaimer" where ExxonMobil explains exactly what certified

---

[8] *See* Schildgen*, supra* note 1; *see also Rise Above Plastics*, SURFRIDER FOUNDATION, https://www.surfrider.org/programs/rise-above-plastics ("Our mission" includes "advocating for a reduction of single-use plastics and the recycling of all plastics").

circular means. *Id*. ¶ 142. And paragraph 144 challenges ExxonMobil's alleged claim "that approximately 90% of plastic waste processed at Baytown is transformed into *basic molecules*" to "make a range of products" with "independent estimates from industry experts" that only 25% of plastic waste is converted into feedstocks for *new plastics*. *Id*. ¶ 144.[9] Besides these three paragraphs, Plaintiffs' Complaint identifies no other statements in support of their theory that ExxonMobil misleadingly represented anything about advanced recycling.

### C.    Plaintiffs' Theory Of Causation

So how do Plaintiffs get from these 10 paragraphs to the conclusion that ExxonMobil "caused the single-use plastics pollution crisis"? Compl. ¶ 3. The Complaint does not say. Its entire causal theory hangs on the allegation that "[c]onsumers purchased more plastics made from virgin polymers than they otherwise would have," *id.* ¶ 138, "based in part on the false notion that single-use plastic can be recycled or safely disposed," *id*. ¶ 14. How much more? Of what specific plastic products? Was the increase sufficient to materially alter pollution levels? How did the plastic that ExxonMobil allegedly promoted end up in the environment? Was it littered in violation of state and local law? Is it the result of deficient municipal landfilling practices? Did it wash ashore from the Pacific Ocean? These and other basic questions about how ExxonMobil's alleged actions could have plausibly caused any of the harm that Plaintiffs allege are entirely unanswered in the Complaint.

## IV.    ARGUMENT

### A.    Plaintiffs Do Not Allege A Viable Nuisance Claim

Plaintiffs' nuisance claims fail for two reasons. *First*, Plaintiffs do not allege an actionable theory of nuisance liability. In California, a product manufacturer can be held liable in nuisance if it instructs consumers to use or dispose of a product in a hazardous manner—for example, if it instructs consumers to use lead paint inside their homes or instructs businesses to pour toxic chemicals down the drain. Plaintiffs do not allege that ExxonMobil did anything like that. *Second*,

---

[9] James Bruggers, *The Missing Equations at ExxonMobil's Advanced Recycling Operation*, INSIDE CLIMATE NEWS (Nov. 1, 2023), https://insideclimatenews.org/news/01112023/missing-equations-exxonmobils-advanced-recycling-operation/ (emphasis added) (incorporated by reference at Compl. ¶ 144 n.158).

Plaintiffs do not allege facts plausibly showing causation. On the contrary, the unstated causal theory underlying their Complaint—namely, that a handful of isolated statements across decades by a raw-material supplier so dramatically altered consumer demand for plastic that they materially increased pollution levels—is implausible on its face.

1.    *Plaintiffs do not allege an actionable theory of nuisance liability*

Over the past several decades, California courts have rigorously policed the boundary between nuisance and products liability as plaintiffs have come up with ever more inventive ways to challenge the harms allegedly caused by products they do not like. "The law of nuisance is not intended to serve as a surrogate for ordinary products liability." *City of Modesto Redev. Agency v. Superior Court*, 119 Cal. App. 4th 28, 39 (2004) (citing *City of San Diego v. U.S. Gypsum Co.*, 30 Cal. App. 4th 575 (1994)); *see also, e.g.*, *Hinds Invs., L.P. v. Angioli*, 445 F. App'x 917, 919 (9th Cir. 2011); *Santa Clara*, 137 Cal. App. 4th at 313.

Under this body of case law, claims challenging the "manufacture, distribution, and supplying" of an allegedly harmful product, and "any failure to warn" consumers about the dangers of such a product, "do[] not fall within the context of nuisance, but [are] better analyzed through the law of negligence or products liability, which have well-developed precedents to determine liability." *City of Modesto*, 119 Cal. App. 4th at 42. There is a narrow exception to this general rule: Product manufacturers can be held liable in nuisance if the manufacturer knowingly promoted the product for a hazardous use or designed a hazardous waste disposal system. *Santa Clara*, 137 Cal. App. 4th at 309-10. Thus, for example, lead paint manufacturers can be held liable on nuisance claims for "their affirmative promotion of lead paint for interior use," which they "*knew to be hazardous.*" *People v. ConAgra Grocery Products Co.*, 17 Cal. App. 5th 51, 84 (2017). As the Ninth Circuit has summarized, a product manufacturer may be liable for nuisance under California law if it: "(1) affirmatively instructs the polluting entity to dispose of hazardous substances in an improper or unlawful manner, or (2) manufactures or installs the disposal system" that pollutes. *Team Enters.*, 647 F.3d at 912 (citation omitted).

Plaintiffs do not state an actionable nuisance claim under this doctrine. The Complaint alleges that ExxonMobil misrepresented: (i) that plastic could safely be "landfilled," Compl.

¶¶ 112-16; (ii) that mechanical recycling was "economically feasible," *id.* ¶¶ 117-38; and (iii) the benefits of advanced recycling, *id.* ¶¶ 139-45. Even assuming that ExxonMobil actually made the kinds of statements that Plaintiffs allege, *but see* Section IV.B.3, *infra*, those statements do not amount to promoting plastic for any particular use by consumers. They are not akin to "instructing the purchaser to use [plastic] in a hazardous manner," *Santa Clara*, 137 Cal. App. 4th at 309, or to dispose of plastic "improperly," *City of Modesto*, 119 Cal. App. 4th at 43. On the contrary, Plaintiffs' whole theory, alleged in the Complaint's very first paragraph, is that plastic is harmful to the environment *regardless* of how it is used—Plaintiffs simply want consumers to use less. Compl. ¶ 1 ("harmful, toxic products that cannot be safely disposed through recycling or other means"). Plaintiffs' allegations thus amount to the contention that ExxonMobil failed to warn (or misled) consumers about the consequences of their plastic consumption—namely, that plastic could or would *necessarily* cause environmental harm because "[s]ingle-use plastics are toxic products that cannot be safely disposed." *Id.* ¶ 4; *see also, e.g.*, *id.* ¶ 5 ("impossible to safely landfill, recycle, or burn").

As controlling case law confirms, that is not a viable nuisance theory. Take, for instance, the Ninth Circuit's decision in *Team Enterprises*. There, a dry cleaner claimed that the manufacturer of a recycling system for PCE-laden wastewater was liable in nuisance because its system resulted in toxic wastewater being poured down the drain. 647 F.3d at 906, 912. As relevant here, the Ninth Circuit held that the nuisance claim failed as a matter of law because the manufacturer did not give the dry cleaner "instructions to dispose" of the toxic wastewater "in the ground." *Id.* at 912 (quotations and alterations omitted). In *Hinds*, the Ninth Circuit went one step further: It affirmed the dismissal of a nuisance claim where the defendant "recommend[ed]" disposing of toxic wastewater by pouring it down the drain, but did not affirmatively instruct users to discharge solvent wastes improperly. 445 F. App'x at 919-20.

This is a much easier case. ExxonMobil did not recommend improper disposal of plastic, much less direct "the improper [disposal] of [plastic] wastes." *Hinds*, 445 F. App'x at 919 (quotations omitted); *see also, e.g.*, *City of Merced Redev. Agency v. Exxon Mobil Corp.*, 2015 WL 471672, at *22 (E.D. Cal. Feb. 4, 2015) (no nuisance liability where plaintiff did "not assert

Defendants instructed purchasers of its MTBE-containing gasoline to *use* it in a hazardous manner" or "affirmatively promote[] any such *use*"); *City of Modesto*, 119 Cal. App. 4th at 42 ("manufacturing or selling solvents to dry cleaners, with knowledge of the hazards of those substances, without alerting the dry cleaners to proper methods of disposal" not actionable). ExxonMobil did not tell consumers how to use or dispose of any specific plastic product. At most, ExxonMobil is alleged to have encouraged the public to use products made of a material that Plaintiffs think is harmful for the environment, while failing to warn (or misleading) consumers about those environmental risks. That is not a viable nuisance theory.

Plaintiffs cannot repackage their claims by arguing that ExxonMobil is liable in nuisance for encouraging consumers to recycle. Not only is that theory absent from the Complaint, but it fails as a matter of law on its face. Although not a complete solution to plastic waste, recycling is in no way a hazardous use. How could it be? There is nothing inherently hazardous about recycling itself, unlike, for example, using lead paint inside homes and pouring solvents down the drain. And State, municipal, and federal policy affirmatively "encourage[s]" people to recycle. *See* Cal. Pub. Res. Code § 14576(a); *see supra* at p. 2 & n.3. It should go without saying that uniform public policy does not promote the hazardous use of a product—and ExxonMobil cannot be held liable in nuisance for encouraging something that is not itself a hazardous use.

Indeed, if recycling were a hazardous use, the State and its municipalities—and even Plaintiffs themselves—would likewise be liable for the alleged plastic-pollution nuisance. After all, the State, its municipalities, and Plaintiffs themselves have adopted policies and made express statements encouraging people to recycle, which on Plaintiffs' theory here eventually leads to plastic waste. This Court should reject out of hand a theory that would render Plaintiffs liable to each other and the State and municipalities liable to the public. Plaintiffs may have soured on the environmental benefits of recycling, but that does not make recycling a hazardous use or give rise to liability under California nuisance law.

2.    *Plaintiffs fail to allege causation*

"Causation is an essential element of a public nuisance claim." *Citizens for Odor Nuisance Abatement v. City of San Diego*, 8 Cal. App. 5th 350, 359 (2017) ("*CONA*"). Plaintiffs' claims also fail on this element.

Plaintiffs contend that ExxonMobil's public statements about plastics "caused the single-use plastics pollution crisis." Compl. ¶ 3. But the only causal allegation contained in Plaintiffs' Complaint is that "[c]onsumers purchased more plastics made from virgin polymers than they otherwise would have." *Id*. ¶ 138; *see also id*. ¶ 14 ("As a result of ExxonMobil's conduct, consumers have expanded their use of plastics[.]"). Not only is that barebones allegation "conclusory," *Ashcroft v. Iqbal*, 556 U.S. 662, 680-82 (2009), but it is manifestly insufficient to plead causation. That ExxonMobil's statements led *some* consumers to choose plastic over alternative materials does not mean that ExxonMobil's statements were a "substantial factor," *CONA*, 8 Cal. App. 5th at 359, in bringing about the "single-use plastics pollution crisis," Compl. ¶ 1. If only a few consumers' purchasing decisions were influenced by ExxonMobil's statements, then those statements could not be the cause of the alleged nuisance because they would have had only a "trivial" effect on plastic pollution levels, Cal. Civ. Jury Instructions § 430, like throwing "a lighted match into a forest fire," *Mitchell v. Gonzales*, 54 Cal. 3d 1041, 1053 (1991). To state a viable nuisance claim, Plaintiffs would need to allege that ExxonMobil's statements so effectively altered consumer behavior that they materially impacted pollution levels—i.e., that they *actually* caused or contributed to the alleged nuisance.

There is a good reason that the Complaint includes no such allegations: It would be difficult, if not impossible, to allege consistent with Rule 11 that a handful of statements scattered across multiple decades so materially altered consumer purchasing behavior that they affected statewide (or global) pollution levels. Most of the statements alleged in the Complaint were not even available to consumers when they were making purchasing decisions—they were not, for example, on product packaging or other notices that would immediately attract consumer attention at the moment of purchase. And it is completely implausible to claim that general statements about "foam egg cartons and meat trays" from the 1960s, Compl. ¶ 113, a *New York*

12

*Times* statement from 1983, *id.* ¶ 127, and so on, Section III.A-B., *supra*, could have

fundamentally altered the way consumers think about and consume plastic. That is especially true

given that State, federal, and municipal policymakers have consistently and vigorously urged the

public to recycle (as have Plaintiffs themselves). *Supra* at pp. 2, 5-6. If anything affected

consumer beliefs about plastic recyclability, it would have been this consistent chorus from

government officials and environmental organizations, not isolated statements by ExxonMobil.

On top of that, "the complaint itself gives reasons to believe that" allegedly mistaken

views on the recyclability of single-use plastics were *not* the reason consumers bought products

involving those plastics in any event. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 568 (2007); *see*

*Orange Cnty. Water Dist. v. Alcoa Global Fasteners, Inc.*, 12 Cal. App. 5th 252, 342-43 (2017)

("A defendant's conduct is not a substantial factor in bringing about harm … if the harm would

have been sustained even if the defendant had not acted."). For one thing, "[f]ast food items are

the most common form of single-use plastic pollution." Compl. ¶ 87. Plaintiffs offer no facts

plausibly showing that consumers would have purchased materially less fast food—or been

willing to pay higher prices—if only they had known more about the environmental risks of

single-use plastic. For another, the challenge of plastic waste is not a secret. "Since the 1980s,"

Plaintiffs allege, "ExxonMobil has admitted to the public that its products are the cause of single-

use plastic pollution." *Id.* ¶ 146. In all likelihood, consumers purchased single-use-plastic

products not because they misunderstood plastic recyclability or the potential harms to the

environment, but rather because they valued other things more highly, like cost and convenience.

As between this "obvious alternative explanation" for consumers' plastic consumption and the

theory indirectly adverted to in the Complaint, the notion that isolated statements by a raw

material supplier scattered across decades caused or even materially contributed to global plastic

pollution "is not a plausible conclusion." *Iqbal*, 556 U.S. at 682.

Plaintiffs' Complaint also makes no effort whatsoever even to theoretically link the rise in

plastic pollution to ExxonMobil's statements about recycling. The Complaint does not say, for

example, how it believes that plastic from single-use products made its way into the environment.

To the extent Plaintiffs believe that plastic made its way into the environment because consumers

or businesses littered, it goes without saying that ExxonMobil's statements about *recycling* could not have caused people to *litter*—if anything, the opposite would be true. Maybe Plaintiffs' theory is instead that plastic makes its way into the environment during the recycling process or from landfills—but ExxonMobil's statements likewise are not the cause of defects in municipal recycling and landfilling practices. Or maybe the plastic washes ashore from the Pacific Ocean— but Plaintiffs likewise offer no allegations plausibly explaining any causal connection between ExxonMobil's statements and plastic pollution in the Pacific. In short, the Complaint provides no factual allegations plausibly explaining how ExxonMobil's statements could have caused or materially contributed to not only increased levels of plastic *consumption*, but also increased levels of plastic *pollution* in the environment. It "seems" instead that Plaintiffs want to impose liability on ExxonMobil "for the acts of" third parties who actually pollute (whether intentionally or inadvertently), which is "contrary to every norm of established jurisprudence." *People by James v. PepsiCo, Inc*., 222 N.Y.S.3d 907, 914 (2024) (rejecting argument in context of duty).

### B.    Plaintiffs Do Not Allege A Viable UCL Claim

Plaintiffs' UCL claim likewise fails for multiple reasons. *First*, Plaintiffs' claim fails for lack of statutory standing. Private plaintiffs can sue under the UCL only if they have "lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204. "The phrase 'as a result of' in its plain and ordinary sense means 'caused by' and requires a showing of a causal connection or reliance on the alleged misrepresentation." *Cal. Med. Ass'n v. Aetna Health of Cal. Inc.*, 14 Cal. 5th 1075, 1096 (2023) ("*CMA*"). Here, there is no alleged causal connection between ExxonMobil's statements and the resources Plaintiffs allegedly diverted to mitigate the effects of plastic waste. *See* Section IV.A.2, *supra*; *see also, e.g.*, *In re Turner*, 859 F.3d 1145, 1151 (9th Cir. 2017) (affirming dismissal for failure to allege causation under UCL); *HomeLight, Inc. v. Shkipin*, 721 F. Supp. 3d 1019, 1024 (N.D. Cal. 2024) (similar).

*Second*, most of the statements underlying Plaintiffs' UCL claim are from outside the limitations period. The UCL's statute of limitations is four years. Cal. Bus. & Prof. Code § 17208. Under the "common law accrual rules" applicable to the UCL, *Aryeh v. Canon Bus. Sols., Inc.*, 55 Cal. 4th 1185, 1193 (2013), Plaintiffs' claims based on statements from decades

ago are time barred. The statements were made outside the limitations period. *See* Compl. ¶¶ 112-128, 139 (statements from "1960s" to 2005). Those statements allegedly caused global plastic waste impacting California well before 2021. *See*, *e.g.*, *id.* ¶ 155 (alleging $428 million in statewide plastic-pollution expenditures in 2015). And Plaintiffs themselves allege that they took action to address plastic pollution well before that time. *See*, *e.g.*, Compl. ¶¶ 165 ("focus on combatting plastic pollution" "since 2006"), 177-79 ("beach clean up activities since 2001"), 197 (diversion of resources "[s]ince 2019"). Under a straightforward application of settled limitations principles, Plaintiffs cannot bring a UCL claim based on statements made decades ago.[10]

*Last*, Plaintiffs allege no viable theory of UCL liability for the reasons set out below.

### 1. *Plaintiffs do not allege unlawful conduct*

Under the "unlawful prong," plaintiffs can plead a UCL claim based on business practices that violate some other local, state, or federal law. *See*, *e.g.*, *Rezner v. Bayerishe Hypo-Und Vereinsbank AG*, 2011 WL 6329854, at *5 (N.D. Cal. Nov. 8, 2011). Here, Plaintiffs allege that ExxonMobil violated provisions of the Fish & Game Code making it unlawful to "deposit," "permit to pass into" or "place" pollution into the waters of this State. Compl. ¶ 232. Plaintiffs' Complaint does not explain how, exactly, they think ExxonMobil violated this statute. They do not allege that ExxonMobil "deposited" pollution in California waters. They do not allege that ExxonMobil "placed" pollution where it could pass into California waters. Cal. Fish & Game Code § 5650. Nor do they allege that ExxonMobil abandoned, disposed of, or threw away pollution within 150 feet of the high water mark of the waters of this State. Cal. Fish & Game Code § 5652.

---

[10] Within the limitations period, Plaintiffs challenge a few statements about ExxonMobil's advanced recycling operations in Texas. *See* Compl. ¶¶ 140-44. Although these statements are not time-barred, *see Aryeh*, 55 Cal. 4th at 1199, Plaintiffs have no viable theory of statutory standing. The Complaint does not allege that *contemporaneous* statements about plastic have affected consumer demand for plastic so as to increase the amount of resources Plaintiffs have diverted. That is, Plaintiffs do not allege that consumers purchased more single-use plastics because of statements ExxonMobil made about advanced recycling in the last few years. They do not allege that any such increase materially affected the amount of plastic pollution in California. And they do not allege that they diverted additional resources because of ExxonMobil's recent statements about its operations in Texas.

By process of elimination, Plaintiffs' theory must be that by promoting plastics, ExxonMobil "permit[ted]" pollution "to pass into" State waters. But that theory fails too, for two independent reasons. *First*, it rests on the same deficient causal chain described above. *See* Section IV.A.2, *supra*. *Second*, it stretches the word "permit" beyond its breaking point.

To "permit" has a well-settled meaning. It means "to consent expressly or formally" or to "authorize."[11] *See George v. Susanville Elementary Sch. Dist.*, 103 Cal. App. 5th 349, 356 (2024) ("dictionary definitions" inform ordinary meaning); *City of Los Angeles v. Barr*, 941 F.3d 931, 940 (9th Cir. 2019). That definition is confirmed by context. All the words surrounding "permit" ("deposit," "place," "dispose of," etc.) presuppose that the alleged violator has *control* over the polluting item. *See*, *e.g.*, *Fischer v. United States*, 603 U.S. 480, 487 (2024) ("a word is given more precise content by the neighboring words with which it is associated"). The same is true if "permit" is read in line with its dictionary definition: A defendant exercises some degree of control over pollution when it consents to someone polluting or authorizes them to pollute.

Plaintiffs' theory, by contrast, would require reading "permit" to mean something like to "indirectly cause." Not only is that reading untenable as a matter of text and context, but it would also pose serious problems for Plaintiffs themselves. They too would be liable for substantial civil penalties, Cal. Fish & Game Code § 5650.1(a) (up to $25,000 per violation), if the statute reaches anyone who in some sense "caused" plastic pollution by promoting recycling. After all, they also promoted recycling and thus could be said to have "permitted" plastic pollution under their own theory. The idea that prominent environmental organizations are liable under the Fish & Game Code for promoting recycling is absurd, underscoring that Plaintiffs' reading must be rejected. *Nat'l Shooting Sports Found., Inc. v. State*, 5 Cal. 5th 428, 433 (2018)*.* Indeed, Plaintiffs' grasping interpretation would make indirectly contributing to plastic pollution under § 5650 a *crime*. Cal. Fish & Game Code § 12000; *see Leocal v. Ashcroft*, 543 U.S. 1, 12 (2004). As

---

[11] *See Permit*, MERRIAM WEBSTER, https://www.merriam-webster.com/dictionary/permit; *Permit*, BLACK'S LAW DICTIONARY (12th ed. 2024) ("1. To consent to formally; to allow (something) to happen, esp. by an official ruling, decision, or law ..."); *Permit*, OXFORD ENGLISH DICTIONARY, https://www.oed.com/search/dictionary/?scope=Entries&q=permit ("to allow or give consent to (a person or thing) to do or undergo something").

between a plain-text interpretation of a statute that appropriately cabins its scope and an atextual interpretation that opens up unanticipated civil and criminal liability, there can only be one answer. Because ExxonMobil is not alleged to have authorized or consented to—i.e., permitted—any pollution of State waters, Plaintiffs' claim that ExxonMobil acted unlawfully under the Fish & Game Code fails. *See, e.g.*, *Walker v. Dreyer's Grand Ice Cream, Inc.*, 2006 WL 2642535, at *2 (N.D. Cal. Sept. 14, 2006) (UCL claim fails where plaintiff fails to allege "predicate" violation).

> 2.    *Plaintiffs do not allege unfair conduct.*

A defendant can also violate the UCL by acting unfairly. Plaintiffs offer two theories of unfairness. Neither is viable.

*First*, Plaintiffs allege that ExxonMobil's conduct contravenes the State's policy of preventing pollution. Compl. ¶ 234. Ironically, the provision Plaintiffs cite is part of a statute vesting in the *Attorney General* the authority to litigate pollution cases. *See* Cal. Gov't Code §§ 12600(b), 12607. Regardless, there is no "close nexus between the challenged act and the legislative policy" here, because there is no nexus at all between ExxonMobil's alleged marketing statements as a supplier of the raw materials for plastic products and the state policy embodied in a statute authorizing the Attorney General to sue to remediate pollution. *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 866 (9th Cir. 2018).[12] If there were, any marketing for any product that ends up being discarded—recyclable or not—would be actionable under the UCL. Plaintiffs cannot stake out an unfairness claim by casting public policy at that high a level of generality. *See id.* at 866-67 (insufficient to identify only a "general policy" against some type of social ill, like "child or slave labor" or "urban blight"). Indeed, if any public policy is relevant here, it is the State's overwhelming policy *in favor of* recycling. *See supra* at pp. 2, 5-6 & n.3. But ExxonMobil is not

---

[12] California courts apply multiple tests to determine whether conduct is "unfair." *See, e.g.*, *Doe v. CVS Pharm., Inc.*, 982 F.3d 1204, 1214-15 (9th Cir. 2020). ExxonMobil understands Plaintiffs' allegation in paragraph 234 to arise under the "tethering" test, which asks "whether the challenged conduct is tethered to an[] underlying constitutional, statutory or regulatory provision." *Id.* at 1214 (quotations omitted). Plaintiffs appear to allege that ExxonMobil's conduct violates the public policy reflected in Section 12600.

alleged to have violated that policy; if anything, it is alleged to have *furthered* that policy by promoting the virtues of recycling, just like the State and Plaintiffs themselves.

*Second*, Plaintiffs allege that ExxonMobil's "conduct profits from its harms to public trust resources." Compl. ¶ 235. It is difficult to make sense of this allegation. All this Court needs to know, however, is that the Complaint does not allege facts supporting this theory. Although the Complaint alleges that ExxonMobil indirectly profits from conduct (consumer purchases of plastic products) that Plaintiffs apparently believe leads (through unspecified mechanisms) to pollution that harms public trust resources, the Complaint does not allege that ExxonMobil profits from those harms to the public trust resources themselves. In other words, the Complaint does not allege that ExxonMobil makes money *because* the environment suffers, as Plaintiffs' theory of UCL liability would require.

### 3.    *Plaintiffs allege no actionable misrepresentations*

Plaintiffs' remaining UCL theory is that ExxonMobil misrepresented the benefits or recyclability of plastic. Compl. ¶¶ 233, 236. Plaintiffs allege no actionable misrepresentations.

Misrepresentation-based UCL claims must "satisfy the stringent pleading requirements of Federal Rule of Civil Procedure 9(b)." *Kirsopp v. Yamaha Motor Co.*, 2014 WL 12577429, at *10 (C.D. Cal. Aug. 27, 2014); *Wilson v. Frito-Lay N. Am., Inc.*, 2013 WL 1320468, at *5 (N.D. Cal. Apr. 1, 2013) (similar). Here, only 10 paragraphs in the Complaint even arguably satisfy 9(b)'s particularity requirement, as paragraphs 113, 114, 115, 120, 126, 127, 140, 142, 143, and 144 are the only ones that identify actual statements.[13] Accordingly, we focus here only on these paragraphs.

In evaluating those paragraphs, the standard is whether the cited statement is "false" or "has the likely effect of misleading or deceiving" consumers. *Garcia v. Sony Computer Ent. Am., LLC*, 859 F. Supp. 2d 1056, 1062 (N.D. Cal. 2012). This analysis must be conducted from the perspective of "a reasonable … ordinary consumer within the target population." *Sepanossian v.*

---

[13] The remainder of the Complaint, by contrast, consists mainly of: empty rhetoric with no supporting factual assertions (*e.g.*, Compl. ¶¶ 106, 116, 136); cherrypicked statements from internal documents, which obviously are not actionable (*e.g.*, *id*. ¶¶ 98, 100-01, 106, 121); and public studies about the problems with recycling or harms from plastic waste (*id*. ¶¶ 80, 117).

1   *Nat'l Ready Mix Co.*, 97 Cal. App. 5th 192, 200 (2023); *Patricia A. Murray Dental Corp. v.*

2   *Dentsply Int'l, Inc.*, 19 Cal. App. 5th 258, 272 (2018) ("targeted consumer").

3        The handful of statements comprising ExxonMobil's alleged "campaign" of recycling

4   deception cover three topics: (1) comparative benefits of paper and plastic; (2) economic

5   feasibility of recycling; and (3) ExxonMobil's advanced recycling program. None is actionable.

6   Indeed, in many instances, Plaintiffs simply misrepresent what the documents say or divorce the

7   statements from context. *See Becerra v. Dr Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1229 (9th Cir.

8   2019); *see also In re Ethereummax Inv. Litig.*, 2023 WL 6787827, at *27 (C.D. Cal. June 6,

9   2023).

10        a. Historical statements comparing paper and plastic. The Complaint alleges that,

11   "[b]eginning in the 1960s," Mobil Chemical "falsely contended that landfilling plastic was more

12   environmentally friendly than paper." Compl. ¶ 113. For starters, a claim that landfilling plastic is

13   "more environmentally friendly than paper" is not an "objectively verifiable fact." *Edmunson v.*

14   *Procter & Gamble Co.*, 2011 WL 1897625, at *3 (S.D. Cal. May 17, 2011) ("subjective

15   representations related to product superiority … not actionable under the UCL"). Whether one

16   product is more or less "environmentally friendly" than another is an "abstract" question that

17   depends on weighing different environmental values, not an objectively provable or disprovable

18   fact. *See Brown v. Madison Reed, Inc.*, 2023 WL 8613496, at *2 (9th Cir. Dec. 13, 2023);

19   *Edmundson v. Procter & Gamble Co.*, 537 F. App'x 708, 709 (9th Cir. 2013) ("general,

20   subjective, unverifiable" claims not actionable); *Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d

21   964, 973–74 (N.D. Cal. 2008) (claims of "higher performance," "longer battery life," "richer

22   multimedia experience," and "faster access to data" not actionable); *see also Newcal Indus., Inc.*

23   *v. Ikon Off. Sol.*, 513 F.3d 1038, 1053 (9th Cir. 2008).

24        In any event, none of the statements cited by Plaintiffs says that plastic is more

25   "environmentally friendly" than paper. Mobil stated, for example, that foam cartons and trays

26   "offer a number of environmental advantages when compared with other packaging materials,"

27   Compl. ¶ 113, which is true. Foam containers can "compress to a fraction of their original size

28   when packed in a sanitary landfill," thereby "occup[ying] less space," "reduce[] transportation

1  costs" (because of lighter weight); and "generate[] fewer air emissions." *Id*. ¶ 114. ExxonMobil

2  also truthfully stated that plastic cartons "have one-tenth of the bulk of paper bags and therefore

3  take up less room in landfills." *Id*. ¶ 114. And it accurately stated that foam "does not decompose

4  readily and provides a stable, clean fill." *Id*. ¶ 115. Truthfully reciting some of the benefits of a

5  material (e.g., less bulky) cannot be reasonably understood as a representation that the material is

6  objectively more "environmentally friendly" under all possible circumstances and has no

7  countervailing disadvantages.

8       b. Historical statements about the economic feasibility of recycling. The next section of

9  Plaintiffs' Complaint alleges that ExxonMobil misleadingly "promote[d] recycling as a viable

10  option." Compl. ¶ 119. By this, Plaintiffs appear to mean that ExxonMobil represented that

11  recycling was an economical solution to fully or substantially eradicate plastic waste. Here, too,

12  Plaintiffs identify no statements to that effect.[14]

13       Instead, the centerpiece of Plaintiffs' theory is a statement by the National Polystyrene

14  Recycling Company that "[r]ecycling polystyrene is a highly automated and efficient process that

15  does not rely on expensive or experimental technology" and then recited the "steps" involved.

16  Compl. ¶ 120.[15] The Complaint does not allege that any of that is false. And a statement truthfully

17  describing the polystyrene recycling process does not reasonably imply that plastics recycling

18  writ large was a complete, economical solution to plastic pollution.

19  

20  [14] Plaintiffs cite "an internal 1991 memorandum" describing "lobbying efforts to Congress."
   Compl. ¶ 125. It is not clear whether this internal document describing lobbying strategy is meant
21  to support Plaintiffs' misrepresentations claims. If it is, the allegation clearly fails. An internal
   document cannot deceive consumers. And any theory of liability predicated on lobbying is clearly
22  foreclosed by the *Noerr-Pennington* doctrine, which holds that "claims … premised [on] First
   Amendment-protected petitioning," including lobbying or advocacy, "cannot form a basis for …
23  state-law claims," including under the UCL. *Realtek Semiconductor Corp. v. MediaTek, Inc.*,
   2024 WL 1975478, at *5 (N.D. Cal. May 3, 2024); *People ex rel. Gallegos v. Pac. Lumber Co.*,
24  158 Cal. App. 4th 950, 966 (2008) (UCL); *see also Kottle v. Nw. Kidney Ctrs.*, 146 F.3d 1056,
   1059 (9th Cir. 1998) ("[L]obbying or advocacy before any branch of either federal or state
25  government" represents the heartland of the "broad[] … sweep of the *Noerr-Pennington*
   doctrine.").
26  
   [15] Paragraph 124 alleges that ExxonMobil "praised" trade associations for "explaining that many
27  plastics are easily recyclable." Compl. ¶ 124. That statement is true. Many plastics *are* easily
   recyclable. And Plaintiffs identify no basis to hold ExxonMobil liable for praising statements
28  made by trade groups.

1    Paragraph 126 alleges that ExxonMobil misrepresented that "Hefty" brand trash bags

2  were biodegradable, "resulting in settlements with the Federal Trade Commission and the

3  attorneys general for seven states." Regardless of whether that was false, this allegation does not

4  support the theories of liability alleged. For one thing, a statement about one product's

5  biodegradability does not advance Plaintiffs' claim that ExxonMobil misrepresented that

6  *recycling* was an economical solution to plastic waste. For another, the truthfulness of

7  ExxonMobil's statement was promptly litigated and resolved decades ago, and that information

8  has sat within the domain of "public knowledge" ever since. *See, e.g.*, *Hodsdon*, 891 F.3d at 867

9  (failing to disclose matter of "public knowledge" is not actionable under UCL). The idea that this

10  statement had lasting effects decades later is not credible.

11    Last, Plaintiffs cite 1983 statements  in *The New York Times* and a film by the American

12  Plastics Council. Compl. ¶ 127. The *New York Times* piece did not state or suggest that recycling

13  was a technologically or economically viable solution to global plastic waste concerns. Instead, it

14  made the far more modest claim that "[m]any plastics can be" recycled, which (obviously) is true.

15  So too for the film's truthful statements that plastic packaging uses fewer resources and is cheaper

16  to transport than bulkier materials, and that "recycled plastic is used as raw material for other

17  products like park benches, camping gear, backpacks and even some clothes." *Id*. Those

18  statements are true and not misleading. Contrary to Plaintiffs' mischaracterization, they do not

19  suggest that recycling will solve the issue of plastic pollution around the world.

20    c. Statements about advanced recycling. The same fundamental problems plague the

21  Complaint's challenge to ExxonMobil's recent statements about its advanced recycling

22  operations in Texas. The Complaint introduces this section by stating that "ExxonMobil promotes

23  advanced recycling as the panacea for the obvious inadequacy of mechanical recycling." Compl.

24  ¶ 140. But the statements cited in support say nothing like that. Instead, they say that advanced

25  recycling, in combination with traditional recycling, "offers a 'huge opportunity' to 'strengthen

26  circularity' and 'help … address the plastic waste challenge.'" *Id*. Describing a technology as

27  offering an opportunity to help with a problem is not a representation that it is "the panacea" to

28  the problem. Nor would any of the quoted statements be actionable, even if the Complaint had not

21

mischaracterized them. Whether advanced recycling presents a "huge opportunity" to "strengthen circularity" that could "help" address plastic waste is not an "objectively verifiable fact"; instead, these are nonactionable vague, aspirational, and "subjective representations" about advanced recycling's potential environmental impact. *Newcal*, 513 F.3d at 1053; *Myers v. Starbucks Corp.*, 2020 WL 13302437, at *4 (C.D. Cal. July 29, 2020) ("aspirational language" nonactionable); *see also PepsiCo.*, 222 N.Y.S.3d at 916 (dismissing claim "for Defendants' aspirational statements to curtail a plastic footprint").

Paragraph 142 next quotes from a subsection of an ExxonMobil sustainability report. It is highly unlikely that any consumers of plastic products made purchasing decisions based on that report, especially given that it does not mention or promote any specific consumer products. Nevertheless, the report also is not even arguably misleading. It states:

> We sell certified-circular plastics corresponding to the amount of plastic waste we transform back into usable raw materials. We do this using a mass balance attribution approach that has been used in other industries for many years. What is mass balance attribution? In short, it is an accounting process that can be used in complex value chains like ours in which one input (e.g., plastic waste) is mixed with other inputs in a way that the different inputs cannot be physically traced throughout the system. This widely used approach helps our customers match the volume of their certified-circular plastic purchase to a corresponding amount of plastic waste that we transformed into usable raw materials.
>
> Our advanced recycling facilities and process are certified via an independent, third-party certification system called International Sustainability and Carbon Certification (ISCC) PLUS. ISCC is governed by an association with more than 240 members, including research institutes and NGOs.[16]

It is not clear from the Complaint what Plaintiffs think is misleading about this statement. Indeed, the Complaint itself quotes all the "disclaimer[s]," Compl. ¶ 142—which are actually just body text—explaining how mass-balance attribution works and what the third-party certificates mean. To the extent Plaintiffs mean to challenge not the sustainability report, but rather ExxonMobil's communications about advanced recycling with its customers, Plaintiffs' claims

---

[16] *Expanding the Plastics Life Cycle*, EXXON MOBIL (Jan. 8, 2024), https://corporate.exxonmobil.com/sustainability-and-reports/sustainability/creating-sustainable-solutions/expanding-the-plastics-life-cycle (last accessed Mar. 27, 2025) (incorporated by reference at Compl. ¶¶ 8 & n.2; 9 & n.4; 117 & nn.123-25; 140; and 142).

1  would fail for an additional reason. The "target audience" for ExxonMobil's statements about

2  certified circular polymers are not end consumers, but businesses that purchase virgin polymers

3  and convert them into plastic products for *their* customers, "like Taco Bell." *Id.* ¶ 107. These are

4  highly sophisticated businesses who are not likely to be misled by ExxonMobil's full disclosures.

5  *Dentsply*, 19 Cal. App. 5th at 272 (UCL claim failed where target audience not misled); *see also*

6  *Sponchiado v. Apple Inc.*, 2019 WL 6117482, at *5 (N.D. Cal. Nov. 18, 2019) (dismissing UCL

7  claim where disclaimers render challenged misstatements non-misleading).

8        Finally, paragraph 144 mischaracterizes the document it cites. According to Plaintiffs,

9  ExxonMobil said "that approximately 90% of plastic waste processed at Baytown is transformed

10  into *basic molecules*." Compl. ¶ 144 (emphasis added). Plaintiffs suggest this is misleading

11  because "independent estimates from industry experts suggest that the actual conversion rate is no

12  higher than 25%." *Id*. But the article from *Inside Climate News* was not discussing the conversion

13  rate into basic molecules; it "estimate[d] that no more than 25 percent of the incoming plastic

14  waste could be converted *into feedstocks for new plastics*."[17] There is no inconsistency between

15  the statement that 90% of the waste is processed into basic molecules and an alleged third party

16  "estimate" that only 25% of those basic molecules can be used as feedstock for new plastic.[18]

17        **C.    Plaintiffs' Complaint Impermissibly Seeks To Regulate Beyond California**

18        Plaintiffs say this case is about "marketing." Compl. ¶ 7; *see also* Dkt. 19 at 1. But none

19  of the marketing cited in the Complaint is alleged to have been made in or targeted at California.

20

21

---

22  [17] Bruggers, *supra* note 9 (emphasis added) (incorporated by reference at Compl. ¶ 144 n.158).

23  [18] Paragraph 143 contains a similar mischaracterization. Plaintiffs allege that ExxonMobil stated
    "it *will process* at least a billion pounds of plastic in its chemical advanced recycling facilities by

24  2026." Compl. ¶ 143 (emphasis added). But the cited document actually states that ExxonMobil
    "expect[s] to grow" its "recycling *capacity*" to 1 billion pounds. *Annual Report 2022*, EXXON

25  MOBIL, at iv, https://perma.cc/7SSS-SNAN (emphasis added) (incorporated by reference at
    Compl. ¶ 143 n.155). There is a meaningful difference between actually processing waste and

26  expected waste-processing capacity. In any event, this paragraph does not allege a misstatement.
    Plaintiffs' point seems to be that advanced recycling will have "little real impact." Compl. ¶ 143.

27  ExxonMobil disagrees. But Plaintiffs' opinion that advanced recycling may not work to reduce
    plastic pollution or "conflicts with zero-carbon and circular economy goals," *id*. ¶ 144, does not

28  mean that ExxonMobil made any statements of fact that are false and misleading.

It should go without saying that California law cannot be used to regulate marketing in other states. *See, e.g.*, *Bigelow v. Virginia*, 421 U.S. 809, 822-23 (1975) ("Virginia Legislature could not have regulated the advertiser's activity in New York, and obviously could not have proscribed the activity in that State."); *State of Cal. Auto. Dismantlers Ass'n v. Interins. Exch*, 180 Cal. App. 3d 735, 746 (1986) ("California has no jurisdiction to regulate or prosecute … activities conducted in another state."). Thus, California law cannot be used to regulate, for example, articles in *The New York Times*, *see, e.g.*, Compl. ¶¶ 113-14, 127, or statements about advanced recycling published to ExxonMobil's website from Texas, *id*. ¶¶ 140, 142.

Perhaps California law could apply to out-of-state statements that ExxonMobil specifically directed at California. But the Complaint contains no such allegations. Plaintiffs do not allege that any of the statements recited in the Complaint targeted California. And in context, it is clear that those statements were either directed at other states (like New York) or were made for a nationwide or worldwide audience (like statements on ExxonMobil's website). That poses not only a merits problem, but also a jurisdictional problem.

This Court cannot exercise personal jurisdiction over ExxonMobil based on statements ExxonMobil did not purposefully direct at California.[19] To exercise personal jurisdiction over ExxonMobil, Plaintiffs must allege that it established "minimum contacts" with California. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). In tort cases, like this one, minimum contacts requires that the defendant "purposefully direct his activities toward the forum." *AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1208 (9th Cir. 2020); *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). Purposeful direction, in turn, requires that "defendant must have "(1) committed an intentional act, (2) expressly aimed at the forum state,

---

[19] Courts may "exercise specific jurisdiction over a non-resident defendant only when three requirements are satisfied: (1) the defendant either purposefully directs its activities or purposefully avails itself of the benefits afforded by the forum's laws; (2) the claim arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction comports with fair play and substantial justice, i.e., it is reasonable." *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1020 (9th Cir. 2017). Since the purposeful direction requirement is not met, ExxonMobil does not address the other two requirements in detail, but there are no allegations to support them either.

1    (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Axiom*

2    *Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1069 (9th Cir. 2017).

3        Plaintiffs do not allege that ExxonMobil expressly aimed the challenged statements at

4    California. Instead, they allege that ExxonMobil made statements aimed at, and disseminated to, a

5    nationwide audience—in print publications (*The New York Times*) or online (ExxonMobil's

6    website). That is insufficient. "Mere passive operation of a website," the Ninth Circuit has held,

7    "is insufficient to demonstrate express aiming." *Will Co. v. Lee*, 47 F.4th 917, 922 (9th Cir. 2022)

8    (citing *AMA Multimedia*, 970 F.3d at 1209-10). So too for traditional print media. It should be

9    self-evident that publishing a statement in *The New York Times* is not express aiming at

10   California. "Providing access to information is not enough to confer jurisdiction in any state

11   where that information is available." *X Corp. v. Ctr. for Countering Digital Hate Ltd.*, 724 F.

12   Supp. 3d 921, 937 (N.D. Cal. 2024); *see also Burdick v. Superior Ct.*, 233 Cal. App. 4th 8, 21

13   (2015) ("[T]he fact that the newspapers' websites could be accessed anywhere, including [the

14   forum state], does not by itself demonstrate that the newspapers were intentionally directing their

15   website content to a [forum state] audience." (quoting *Young v. New Haven Advocate*, 315 F.3d

16   256, 263 (4th Cir. 2002), and collecting cases)).[20]

17   **V.    CONCLUSION**

18       For the foregoing reasons, ExxonMobil respectfully requests that the Court dismiss

19   Plaintiffs' Complaint with prejudice in its entirety.

20                                       Respectfully submitted,

21   Dated: March 27, 2025
                                         O'MELVENY & MYERS LLP

22

23                                       By:    */s/ Dawn Sestito*

24   _____

25   [20] To the extent Plaintiffs allege that ExxonMobil extracted oil and gas and operated refineries in
     California or that it owns a subsidiary here, Compl. ¶¶ 34-35, they do not allege any connection
     between those activities and the conduct that forms the basis of the Complaint. Similarly,
26   Plaintiffs allege that ExxonMobil predecessors operated single-use plastic packaging plants in
     California, *id.* ¶ 36, but do not identify when, for how long, or how those plants have any
27   connection to the "marketing" claims in this case. Those activities, therefore, do not suffice to
     establish specific jurisdiction either. *Yamashita v. LG Chem, Ltd.*, 62 F.4th 496, 506 (9th Cir.
28   2023) (specific jurisdiction "requires a close connection between contacts and injury").

1

2          DAWN SESTITO (S.B. #214011)
          MATTHEW R. COWAN (S.B.
          #281114)

3          O'MELVENY & MYERS LLP
          400 South Hope Street, 19th Floor

4          Los Angeles, CA 90071-2899
          Telephone: (213) 430-6000

5          Facsimile: (213) 430-6407
          dsestito@omm.com

6          mcowan@omm.com

7          DAVID J. LENDER (pro hac vice)
          david.lender@weil.com

8          WEIL, GOTSHAL & MANGES LLP
          767 Fifth Avenue

9          New York, New York 10153-0119
          Telephone: (212) 310-8153

10         Facsimile: (212) 310-8007

11         *Counsel for Defendant*
         *Exxon Mobil Corporation*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS
NO. 3:24-CV-07288-RS