DAWN SESTITO (S.B. #214011)
dsestito@omm.com
MATTHEW R. COWAN (S.B. #281114)
O'MELVENY & MYERS LLP
mcowan@omm.com
400 South Hope Street, 19th Fl.
Los Angeles, California 90071-2899
Telephone:    (213) 430-6000
Facsimile:    (213) 430-6407

DAVID J. LENDER (admitted *pro hac vice*)
david.lender@weil.com
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153-0119
Telephone:    (212) 310-8153
Facsimile:    (212) 310-8007

*Counsel for Defendant Exxon Mobil Corporation*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SIERRA CLUB, INC.; SURFRIDER FOUNDATION, INC.; HEAL THE BAY, INC.; and BAYKEEPER, INC.; each a California Nonprofit,<br><br>Plaintiffs,<br><br>v.<br><br>EXXONMOBIL CORPORATION, a New Jersey Corporation, and DOES 1-10,<br><br>Defendants. | Case No. 3:24-cv-07288-RS<br><br>**DEFENDANT EXXON MOBIL CORPORATION'S SPECIAL MOTION TO STRIKE (CAL. CODE CIV. PROC. § 425.16); MEMORANDUM AND POINTS OF AUTHORITIES**<br><br>**Hearing Date**:    June 5, 2025<br>**Time**:    1:30 p.m.<br>**Location:**    Courtroom 3, 17th Fl.<br><br>Hon. Richard Seeborg<br><br>[MOTION TO DISMISS FILED CONCURRENTLY HEREWITH] |

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND SPECIAL MOTION TO STRIKE...................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................. 2

    I.     INTRODUCTION ........................................................................................... 2

    II.    BACKGROUND ............................................................................................ 3

    III.   LEGAL STANDARDS.................................................................................... 6

    IV.   ARGUMENT .................................................................................................. 8

           A.     Step 1: Plaintiffs' Claims Arise From Protected Petitioning And Speech Activities........................................................................... 8

           B.     Step 2: Plaintiffs Cannot Demonstrate A Probability Of Success On The Merits. ...................................................................... 16

                 1.     Plaintiffs Cannot Show A Probability Of Success On Their Nuisance Claims.................................................................... 16

                 2.     Plaintiffs Cannot Show A Probability Of Success On Their UCL Claim. ..................................................................... 17

    V.    CONCLUSION .............................................................................................. 21

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Americans for Prosperity Found. v. Bonta*,
594 U.S. 595 (2021)................................................................................................... 12

*Aryeh v. Canon Bus. Sols., Inc.*,
55 Cal. 4th 1185 (2013) ............................................................................................ 18

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..................................................................................................... 7

*Baral v. Schnitt*,
1 Cal. 5th 376 (2016) ..................................................................................... 1, 7, 9, 16

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)..................................................................................................... 8

*Biro v. Keyes*,
2022 WL 18277783 (C.D. Cal. Nov. 10, 2022), *report and recommendation adopted*,
2023 WL 218789 (Jan. 13, 2023)................................................................................ 8

*Brown v. Madison Reed, Inc.*,
2023 WL 8613496 (9th Cir. Dec. 13, 2023) .............................................................. 19

*Cal. Med. Ass'n. v. Aetna Health of Cal. Inc.*,
14 Cal. 5th 1075 (2023) ............................................................................................ 18

*Citizens for Odor Nuisance Abatement v. City of San Diego*,
8 Cal. App. 5th 350 (2017).......................................................................................... 17

*City of Modesto Redev. Agency v. Superior Court*,
119 Cal. App. 4th 28 (2004)................................................................................. 16, 17

*City of Montebello v. Vasquez*,
1 Cal. 5th 409 (2016) ................................................................................................ 16

*Clifford v. Trump*,
339 F. Supp. 3d 915 (C.D. Cal. 2018), *aff'd*, 818 F. App'x 746 (9th Cir. 2020)....................... 8

*Cnty. of Santa Clara v. Atl. Richfield Co.*,
137 Cal. App. 4th 292 (2006)..................................................................................... 16

*ComputerXpress, Inc. v. Jackson*,
93 Cal. App. 4th 993 (2001)................................................................................. 11, 13

*Cross v. Cooper*,
197 Cal. App. 4th 357 (2011)....................................................................................... 9

*Doe v. CVS Pharmacy, Inc.*,
982 F.3d 1204 (9th Cir. 2020)............................................................................... 18, 19

*DuPont Merck Pharm. Co. v. Superior Ct.*,
78 Cal. App. 4th 562 (2000), *as modified* (Jan. 25, 2000) ........................................... 10, 13, 14

*Dziubla v. Piazza*,
59 Cal. App. 5th 140 (2020)....................................................................................... 15

*Edmunson v. Procter & Gamble Co.*,
2011 WL 1897625 (S.D. Cal. 2011) .......................................................................... 19

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Fashion 21 v. Coal. for Humane Immigrant Rts. of L.A.*,
117 Cal. App. 4th 1138 (2004), *as modified on denial of reh'g* (May 18, 2004) ...................... 7

*FilmOn.com Inc. v. DoubleVerify Inc.*,
7 Cal. 5th 133 (2019) ............................................................................................ 14, 15

*Geiser v. Kuhns*,
13 Cal. 5th 1238 (2022) ................................................................................................ 8

*Hinds Invs., L.P. v. Angioli*,
445 F. App'x 917 (9th Cir. 2011) ............................................................................... 17

*Hodsdon v. Mars, Inc.*,
891 F.3d 857 (9th Cir. 2018)................................................................................... 19, 21

*In re Mobil Oil Corp.*,
116 F.T.C. 113 (1993)................................................................................................ 14

*Indus. Waste & Debris Box Serv., Inc. v. Murphy*,
4 Cal. App. 5th 1135 (2016)..................................................................................... 8, 13

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) ........................................................................................ 5

*Luo v. Volokh*,
102 Cal. App. 5th 1312 (2024)..................................................................................... 2

*Martin Baker Aircraft Co. v. Teledyne Risi, Inc.*,
2020 WL 13304064 (C.D. Cal. Oct. 6, 2020) ............................................................. 7

*McGarry v. Univ. of San Diego*,
154 Cal. App. 4th 97 (2007)......................................................................................... 8

*McIntyre v. Ohio Elections Comm'n*,
514 U.S. 334 (1995) ................................................................................................... 11

*Mendoza v. ADP Screening & Selection Servs., Inc.*,
182 Cal.App.4th 1644 (2010)..................................................................................... 15

*Mills v. Alabama*,
384 U.S. 214 (1966) ................................................................................................... 11

*Newcal Indus., Inc. v. Ikon Off. Sol.*,
513 F.3d 1038 (9th Cir. 2008) .................................................................................... 20

*Nunes v. Meredith*,
2022 WL 2214205 (E.D. Cal. June 21, 2022)............................................................. 8

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*,
890 F.3d 828 (9th Cir. 2018)........................................................................................ 7

*Rohde v. Wolf*,
154 Cal. App. 4th 28 (2007)......................................................................................... 7

*Ross v. Seyfarth Shaw LLP*,
96 Cal. App. 5th 722 (2023)....................................................................................... 15

*Sepanossian v. Nat'l Ready Mix Co., Inc.*,
97 Cal. App. 5th 192 (2023)....................................................................................... 20

iii

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Simpson Strong-Tie Co. v. Gore*,
  49 Cal. 4th 12 (2010) ................................................................................................. 15

*Somers v. Apple, Inc.*,
  729 F.3d 953 (9th Cir. 2013)......................................................................................... 8

*Sponchiado v. Apple Inc.*,
  2019 WL 6117482 (N.D. Cal. Nov. 18, 2019)............................................................ 20

*Team Enterprises, LLC v. W. Inv. Real Est. Tr.*,
  647 F.3d 901 (9th Cir. 2011) ...................................................................................... 16

*United States v. Saathoff*,
  708 F. Supp. 2d 1020 (S.D. Cal. 2010) ...................................................................... 11

*Vess v. Ciba-Geigy Corp. USA*,
  2001 WL 290333 (S.D. Cal. Mar. 9, 2001), *aff'd in part, rev'd in part and remanded*,
  317 F.3d 1097 (9th Cir. 2003)................................................................................. 9, 14

*Vess v. Ciba-Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003)....................................................................................... 7

*Walker v. Dreyer's Grand Ice Cream, Inc.*,
  2006 WL 2642535 (N.D. Cal. Sept. 14, 2006) ........................................................... 18

*White v. Lee*,
  227 F.3d 1214 (9th Cir. 2000)..................................................................................... 11

*Wilbanks v. Wolk*,
  121 Cal. App. 4th 883 (2004)...................................................................................... 13

**Statutes**

Cal Gov't Code § 12607 ................................................................................................. 19

Cal. Bus. & Prof. Code § 17204 ................................................................................ 3, 18

Cal. Bus. & Prof. Code § 17208 .................................................................................... 18

Cal. Civ. Proc. Code § 425.16(b)(1) ...................................................................... passim

Cal. Civ. Proc. Code § 425.16(b)(2) .......................................................................... 1, 21

Cal. Civ. Proc. Code § 425.16(c)(1) .................................................................. 1, 6, 8, 21

Cal. Civ. Proc. Code § 425.16(e)(3) .............................................................. 1, 10, 12, 21

Cal. Civ. Proc. Code § 425.16(e)(4) ....................................................................... passim

Cal. Civ. Proc. Code § 425.17(c) .................................................................................. 15

Cal. Code Civ. Proc. § 425.16(a) ................................................................................. 2, 6

Cal. Gov't Code §12600(b)............................................................................................ 19

Cal. Pub. Res. Code §§ 14500 ........................................................................................ 4

## NOTICE OF MOTION AND SPECIAL MOTION TO STRIKE

### TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:

Please take notice that on June 5, 2025, at 1:30 p.m. or as soon thereafter as the matter may be heard, in Courtroom 3 of the San Francisco Courthouse, located at 450 Golden Gate Avenue, Floor 17, San Francisco, CA 94102, Defendant Exxon Mobil Corporation ("ExxonMobil"), by and through its undersigned counsel, will and hereby does move the Court for an order (1) striking Plaintiffs Sierra Club, Inc.; Surfrider Foundation, Inc.; Heal The Bay, Inc.; and Baykeeper, Inc.'s (collectively, "Plaintiffs") nuisance and unfair competition claims in their entirety and with prejudice pursuant to Cal. Civ. Proc. Code § 425.16(b)(1)-(2), (e)(3)-(4), and (2) awarding ExxonMobil attorneys' fees and costs pursuant to Cal. Civ. Proc. Code § 425.16(c)(1). In the alternative, and at a minimum, the Court should (1) strike the allegations in Paragraphs 113-15, 120, 123-25, 126-27, 140, 142, and 144 of the Complaint pursuant to Cal. Civ. Proc. Code § 425.16(b)(1)-(2), (e)(3)-(4), and *Baral v. Schnitt*, 1 Cal. 5th 376, 393 (2016), and (2) award ExxonMobil attorneys' fees and costs pursuant to Cal. Civ. Proc. Code § 425.16(c)(1).

This Special Motion to Strike is based upon this Notice of Motion, the accompanying Memorandum of Points and Authorities, any oral argument the Court may permit, and all pleadings and papers on file in this action and on such other matters as may be presented to the Court at or before the hearing of this Motion.

Dated: March 27, 2025                                 O'MELVENY & MYERS LLP


                                                      By:     */s/ Dawn Sestito*
                                                      _____

                                                      *Counsel for Defendant Exxon Mobil*
                                                      *Corporation*

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.    INTRODUCTION**

For more than a half-century, plastics, recycling, and pollution have been topics of public debate and legislation. During that time, ExxonMobil has exercised its First Amendment rights to share its policy perspectives and petition for reasonable regulations. Plaintiffs have done the same. At times, the parties' viewpoints have aligned—for many years, both sides recognized the growing problem of plastic waste and encouraged recycling as part of the solution. Plaintiffs have now switched both policy positions and tactics; instead of debating these issues in the marketplace of ideas, Plaintiffs have "partnered" with the California Attorney General to sue ExxonMobil for viewpoints with which they now disagree. Using claims for nuisance and unfair competition, Plaintiffs attack ExxonMobil's speech and petitioning on plastics-related issues dating back half a century.

These claims cannot survive California's anti-SLAPP law.[1] Concerned by "a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances"—i.e., "Strategic Lawsuits Against Public Participation," or "SLAPP"—the Legislature enacted California's anti-SLAPP law "to encourage continued participation in matters of public significance." Cal. Code Civ. Proc. Code § 425.16(a). Under the anti-SLAPP statute, if a defendant "show[s] that the opposing party's claim implicates [protected] activity" at Step 1, the burden shifts "to the opposing party to demonstrate 'the merit of the claim by establishing a probability of success'" at Step 2. *Luo v. Volokh*, 102 Cal. App. 5th 1312, 1321-22 (2024).

Step 1 is easily satisfied here, since there can be no real question that Plaintiffs' claims arise from protected conduct. Plaintiffs' nuisance and unfair ("UCL") competition claims are premised on a theory that ExxonMobil engaged in a "decades-long campaign" to influence public opinion on plastics and related legislation, Compl. ¶ 3, including by "lobby[ing] regulators," *id.* ¶ 123, "lobbying . . . Congress," *id.* ¶ 125, "speak[ing] . . . on important policy

---

[1] For avoidance of doubt, ExxonMobil also objects to personal jurisdiction, for reasons set forth in its concurrently filed motion to dismiss ("MTD").

issues," *id.* ¶ 124, and "engag[ing] with the consumer in multiple ways," including through publications like *The New York Times*, *id.* ¶¶ 126-27. By their own terms, these are all quintessential petitioning and speech activities. The claims challenge three categories of statements, which concern: (1) the advantages of plastics, (2) the benefits of "mechanical" recycling, and (3) "advanced" recycling as a solution to address the plastic waste challenge. All of these statements were made as part of the public discourse concerning plastics, and some of them were in direct response to proposed legislation concerning plastics and recycling. Indeed, Plaintiffs challenge these statements precisely *because* they purportedly influenced public policies and behaviors. Compl. ¶¶ 3, 13.

At Step 2, Plaintiffs cannot show a probability of success because their nuisance and UCL claims fail as a matter of law, as set forth in ExxonMobil's concurrently filed motion to dismiss. In order to state a viable nuisance claim, Plaintiffs would have to allege sufficient facts to make it plausible that ExxonMobil promoted plastic for a hazardous use, but they allege nothing more than promotion of recycling—a *non*-hazardous use that Plaintiffs themselves have advocated for decades. Not only do Plaintiffs fail to allege any actionable conduct, they also fail to articulate any plausible theory of causation. Plaintiffs do not and cannot explain how a handful of statements promoting plastic *recycling* are to blame for plastic *pollution* in California's environment. Plaintiffs' UCL claim likewise suffers from several fundamental flaws: (1) Plaintiffs lack statutory standing, Cal. Bus. & Prof. Code § 17204; (2) Plaintiffs' claim is time-barred, in whole or in part, since most of the challenged statements are decades old, *id.* § 17208; and (3) Plaintiffs fail to allege any actionable unlawful, unfair, or deceptive conduct, *id.* § 17200.

The anti-SLAPP statute was designed to prevent meritless lawsuits exactly like this one. The Court should grant this motion and dismiss Plaintiffs' claims with prejudice.

## II.    BACKGROUND

ExxonMobil is a Texas-headquartered, New Jersey corporation that sells polymers to companies that transform them into finished products. Compl. ¶ 33,  ExxonMobil does not sell polymers to individual consumers in California or elsewhere. *See id.* ¶¶ 107-08.

For more than a half-century, plastics, recycling, and pollution have been topics of

widespread debate across the country—including in California, which has been legislating on these issues since the 1980s.[2] ExxonMobil, along with other industry members, has exercised its First Amendment rights to participate in this public dialogue and to petition for reasonable regulations. ExxonMobil has shared its perspectives with policymakers and the public through statements in national news outlets, in public reports, and on its website. *See* Compl. ¶¶ 114, 117, 125, 127.

Plaintiffs have spoken and petitioned on the very same topics—though they have at times taken different policy positions. *See id.* ¶¶ 158-60, 166, 182-83, 196-203. Notably, Plaintiffs— along with the federal government, the State of California, and municipalities across the State— have long promoted recycling and engaged in "substantial legislative efforts … seeking to address plastic pollution" through recycling. *Id.* ¶¶ 158-59 (Sierra Club), 166 (Surfrider), 183 (Heal the Bay), 196-97 (Baykeeper).

As part of this ongoing public dialogue, ExxonMobil has discussed the practical and environmental benefits of plastics in the various publications and other public remarks to which Plaintiffs cite.[3] In statements challenged by Plaintiffs, ExxonMobil has explained that plastics are

[2] *See, e.g.*, Cal. Pub. Res. Code §§ 14500 *et seq.* (California Beverage Container Recycling and Litter Reduction Act of 1986) (bottle bill designed to encourage recycling and reduce litter); *id.* §§ 40000 *et seq.* (California Integrated Waste Management Act of 1989) (mandating waste-reduction measures with goal of reducing, recycling, or composting 75% of California's solid waste by 2020); *id.* §§ 42300 e*t seq.* (Rigid Plastic Packaging Container Act of 1991) (requiring packaging manufacturers to use post-consumer recycled material and encouraging recycling); *id.* § 18000 (1988 law requiring resin identification label to facilitate plastic recycling); *id.* § 41780.01 (2011 law mandating that "75 percent of solid waste generated be source reduced, recycled, or composted by the year 2020, and annually thereafter"); *id.* § 42649 (2012 law mandating commercial recycling); *id.* § 42924.5 (2017 law requiring state agencies to facilitate recycling onsite); *id.* § 42649.2 (2019 law requiring business to allow customers access to recycling); *id.* §§ 14547, 18017 (2021 law establishing plastic recycling content standards); *id.* § 18015 (2022 law requiring certain labeling and coding of plastic bottles and containers).

[3] Notably, many of the articles, studies, and other sources Plaintiffs cite recognize these same benefits. *See, e.g.*, World Economic Forum, *The New Plastic Economy: Rethinking the future of plastics* (Jan. 2016), https://www3.weforum.org/docs/WEF_The_New_Plastics_Economy.pdf, at 10 (last accessed Mar. 27, 2025) (incorporated by reference at Compl. ¶ 92 & n.74) ("[p]lastics and plastic packaging are an integral and important part of the global economy," and "can also benefit the environment: [plastic's] low weight reduces fuel consumption in transportation, and its barrier properties keep food fresh longer, reducing food waste"); University of Cambridge, *The ImpEE Project* (2005), https://perma.cc/GVX7-UNHH, at 10 (last accessed Mar. 20, 2025) (incorporated by reference at Compl. ¶¶ 57 & n.36, 62 & n.37 ) ("[p]lastics can be very energy efficient" and "take[] less energy to manufacture" than glass). Under "the doctrine of incorporation by reference," the Court can consider the documents Plaintiffs cited in their

DEFENDANT'S NOTICE OF MOTION AND SPECIAL MOTION TO STRIKE
NO. 3:24-CV-07288-RS

essential to modern life—plastic wrap preserves food and minimizes waste; agricultural film conserves water while helping food grow; plastic bottles deliver clean drinking water; plastic packaging ensures that medical equipment remains sterile; and plastic materials form the building blocks for computers, mobile phones, vehicles, and more. *See* Compl. ¶¶ 43, 105, 111, 142. ExxonMobil has also underscored that plastics have important environmental benefits: they take up less space in landfills; reduce transportation costs and emissions (because they are lighter); and have a smaller carbon footprint than alternatives such as paper, aluminum, and glass. *See id.* ¶¶ 12, 113-15.

ExxonMobil has recognized the problem of plastic pollution—a complex, worldwide problem driven by many factors. *See id.* ¶¶ 146, 148.[4] ExxonMobil has echoed Plaintiffs' own advocacy in encouraging the public to recycle. *See id.* ¶ 127. ExxonMobil has invested billions of dollars in promoting circularity, funding non-profits to combat plastic waste, and developing innovative technologies. *See id.* ¶¶ 140-42. Its efforts have included developing advanced recycling technologies that convert hard-to-recycle plastics—like bags, films, and polystyrene foam—into their molecular building blocks, which then become the raw material for new products.[5] *Id.* ¶¶ 9, 142.[6]

---

Complaint "as though … part of the complaint itself," which "prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018).

[4] Mobil Corporation, *The Coast (Should Be) Clear*, N.Y. TIMES (July 28, 1988), available at https://timesmachine.nytimes.com/timesmachine/1994/09/08/181749.html?pageNumber=25 (incorporated by reference at Compl. ¶¶ 146 & n.161; 148 & n.163)).

[5] Again, many of the studies, reports, and other sources Plaintiffs cite encourage recycling as a key solution to pollution. *See, e.g.,* Renée Cho, *Recycling in the U.S. Is Broken. How Do We Fix It?*, COLUMBIA CLIMATE SCHOOL (Mar. 13, 2020), https://news.climate.columbia.edu/2020/03/13/fix-recycling-america/ (incorporated by reference at Compl. ¶ 55 & n.31) ("'[W]e can't take our eyes off recycling.'"); CleanRobotics, *Recycling Strategies: Downcycling and Upcycling Explained* (June 13, 2023), https://cleanrobotics.com/recycling-strategies-downcycling-and-upcycling-explained/ (incorporated by reference at Compl. ¶ 56 & n.32) ("[D]owncycling still plays a role in reducing waste and promoting sustainability."); World Economic Forum, *supra* note 3, at 5 (incorporated by reference at Compl. ¶ 92 & n.74) ("Increasing plastic recycling would capture significant material value and help reduce greenhouse gas emissions.").

[6] *Expanding the Plastics Life Cycle*, EXXON MOBIL (Jan. 8, 2024), https://corporate.exxonmobil.com/sustainability-and-reports/sustainability/creating-sustainable-

---

5

ExxonMobil has also voiced its support for policies and regulations that balance the need to combat plastic pollution with the reality that certain plastics are essential to modern life. *See, e.g.*, *id.* ¶¶ 123-25. Some of ExxonMobil's policy positions are at odds with Plaintiffs', which seek to minimize (or even eliminate) plastics and advanced recycling technologies.

This lawsuit is part of a self-described "coordinated campaign" with the California Attorney General. *People of the State of California v. Exxon Mobil Corp., et al.*, No. 3:24-cv-07594-RS (N.D. Cal.), Dkt. 1-1.[7] Like the Attorney General, Plaintiffs assert UCL and nuisance claims premised on ExxonMobil's protected speech and petitioning activities. Plaintiffs' Complaint challenges ExxonMobil's alleged "campaign" to influence public opinion on plastics, recycling, and related regulations through (1) historical statements that plastic has environmental advantages, (2) historical statements that encourage "mechanical" recycling as one solution to the plastic waste problem, and (3) recent statements concerning "advanced" recycling. As set forth below, these claims are barred by California's anti-SLAPP statute and fail as a matter of law.

## III.    LEGAL STANDARDS

California's anti-SLAPP statute empowers defendants to seek early dismissal of meritless lawsuits that attack the exercise of their First Amendment rights. The Legislature enacted the statute to address "a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition." Cal. Civ. Proc. Code § 425.16(a). The statute allows defendants to file a special motion to strike state-law claims arising from protected speech and/or petitioning activities. *Id.* § 425.16(b)(1), (c)(1); *see also Vess v. Ciba-Geigy Corp.*

solutions/expanding-the-plastics-life-cycle (last accessed Mar. 27, 2025) (incorporated by reference at Compl. ¶¶ 8 & n.2; 9 & n.4; 117 & nn.123-25; 140; and 142).

[7] *Heal the Bay Sues Big Plastic*, HEAL THE BAY (Sept. 23, 2024), https://healthebay.org/heal-the-bay-sues-big-plastic/ (last accessed Mar. 27, 2025) ("Today's action marks the first step in a coordinated campaign.... Bonta's office today filed a concurrent lawsuit against Big Plastic."); Cal. Dep't. of Just., *Attorney General Bonta, Environmental NGOs Discuss Plastics Deception Lawsuit Against ExxonMobil*, YOUTUBE (Sept. 23, 2024), https://www.youtube.com/watch?v=OR24jmO_uNY, at 00:24:50 (last accessed Mar. 27, 2025) (Attorney General Rob Bonta: "We're proud to file ours and—side-by-side with you."); Dana Cronin, *ExxonMobil Touted Recycling as a Fix to Plastic Waste. That Was a Lie, California Says*, KQED (Sept. 23, 2024), https://www.kqed.org/news/12005945/exxonmobil-touted-recycling-as-a-fix-to-plastic-waste-that-was-a-lie-california-says (last accessed Mar. 27, 2025) (Counsel for Plaintiffs: "'I think the joint public-private partnership here is going to be a tremendous benefit to the overall prosecution of the case against Exxon.'").

DEFENDANT'S NOTICE OF MOTION AND SPECIAL MOTION TO STRIKE
NO. 3:24-CV-07288-RS

*USA*, 317 F.3d 1097, 1109 (9th Cir. 2003) (statute applies to state-law claims in federal court). The statute must be "construed broadly" to protect litigants' rights to exercise their First Amendment rights "without the fear of being harassed subsequently by derivative tort actions." *Rohde v. Wolf*, 154 Cal. App. 4th 28, 35 (2007) (cleaned up).

The anti-SLAPP statute establishes a two-step process. First, the defendant must make a prima facie showing that the challenged claim "aris[es] from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue." Cal. Civ. Proc. Code § 425.16(b)(1). The defendant can make this showing as to the entirety of a claim or as to specific allegations underlying a claim that arise from protected conduct. *See Baral v. Schnitt*, 1 Cal. 5th 376, 393 (2016) (confirming that "courts may rule on plaintiffs' specific claims of protected activity" even where "mixed with assertions of unprotected activity"). Either way, the defendant's burden at Step 1 "is not an onerous one." *Martin Baker Aircraft Co. v. Teledyne Risi, Inc.*, 2020 WL 13304064, at \*3 (C.D. Cal. Oct. 6, 2020) (citation omitted).

Second, once the defendant makes its prima facie showing, the burden shifts to the plaintiff to "establish that there is a probability that the plaintiff will prevail" on the challenged claim. *Fashion 21 v. Coal. for Humane Immigrant Rts. of L.A.*, 117 Cal. App. 4th 1138, 1145 (2004), *as modified on denial of reh'g* (May 18, 2004) (alteration omitted). If the plaintiff fails to satisfy its burden at Step 2, the challenged claim is dismissed—or, where only specific allegations are challenged, those allegations "are eliminated from the complaint." *Baral*, 1 Cal. 5th at 396.

Where (as here) an anti-SLAPP motion challenges only the legal sufficiency of a claim, the standard set forth in Federal Rule of Civil Procedure 12(b)(6) applies. *See Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834-35 (9th Cir. 2018). Under Rule 12(b)(6), a complaint survives only if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations and citations omitted).[8] Mere "labels and conclusions" are insufficient. *Bell*

---

[8] A plaintiff has no right to discovery when responding to an anti-SLAPP motion challenging the legal sufficiency of a claim. *See Planned Parenthood*, 890 F.3d at 834-35; *Biro v. Keyes*, 2022

*Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013) (citation omitted). Only the pleadings, documents incorporated by reference, and facts subject to judicial notice may be considered. *Clifford v. Trump*, 339 F. Supp. 3d 915, 922-23 & n.4 (C.D. Cal. 2018), *aff'd*, 818 F. App'x 746 (9th Cir. 2020). If the plaintiff fails to meet its burden, the Court must strike the claim and award the defendant attorneys' fees and costs. Cal. Civ. Proc. Code § 425.16(c)(1).

## IV.    ARGUMENT

### A.    Step 1: Plaintiffs' Claims Arise From Protected Petitioning And Speech Activities.

Step 1 is satisfied because Plaintiffs' claims are premised on ExxonMobil's protected petitioning and speech activities. The anti-SLAPP statute protects *any* act in furtherance of the "right of petition or free speech … in connection with a public issue." Cal. Civ. Proc. Code § 425.16(b)(1), (e)(4). A "public issue" is broadly interpreted to include any topic of "widespread ... interest," *Geiser v. Kuhns*, 13 Cal. 5th 1238, 1253 (2022), or "of concern to a substantial number of people," *McGarry v. Univ. of San Diego*, 154 Cal. App. 4th 97, 110 (2007).

There is no question that plastics, recycling, and pollution are "public issues." Plaintiffs concede that these have been topics of widespread public interest for many decades. *See* Compl. ¶¶ 106 (historical "concern" about single-use plastic), 119 (historical "concerns about pollution"), 85 (referencing the "concerned public"), 156 (voter survey gauging "level of worry about plastic waste"), 234 (describing plastic pollution as a matter of "statewide concern"). Indeed, these same topics have been the subject of extensive legislation in California since the 1980s. *See supra* at note 2; *Indus. Waste & Debris Box Serv., Inc. v. Murphy*, 4 Cal. App. 5th 1135, 1149 (2016) ("government involvement and oversight on an ongoing basis demonstrates widespread public interest" in waste disposal and environmental issues); *Cross v. Cooper*, 197 Cal. App. 4th 357,

WL 18277783, at *7, *11 (C.D. Cal. Nov. 10, 2022), *report and recommendation adopted*, 2023 WL 218789 (Jan. 13, 2023) (granting anti-SLAPP motion and rejecting request for discovery); *Nunes v. Meredith*, 2022 WL 2214205, at *7 (E.D. Cal. June 21, 2022) (same).

8

377 (2011) (legislative activities reflect heightened concern and public interest in subjects addressed by statute).

Plaintiffs' claims take direct aim at ExxonMobil's rights to petition and speak freely in connection with plastics-related issues. The Complaint asserts claims for nuisance and unfair competition, both of which are premised on a theory that ExxonMobil engaged in a "decades-long campaign" to lobby public officials and influence public opinion on plastics and related legislation—in other words, quintessential petitioning and speech activities. *See* Compl. ¶ 3. Plaintiffs claim to challenge only ExxonMobil's "marketing," *see id.* ¶ 1; Dkt. 19 at 1, but the entire gravamen of the Complaint is that these statements were intended to—and in fact did— "convince the public" and "regulators" that "single-use plastic was environmentally friendly." Compl. ¶ 123; *see also id.* ¶¶ 124 (criticizing ExxonMobil's support for "trade associations' abilities to 'unif[y] their state government affairs operations'" and "'[s]peak with one voice on important policy issues'"), 125 (describing ExxonMobil's "lobbying efforts"), 13 ("ExxonMobil has opposed reasonable regulation of single-use beverage containers and packaging" and "stymied state-by-state regulation of single-use plastic bags and straws"). Notably, the vast majority of statements that Plaintiffs attack were made in newspapers and other such publications and do not promote particular products. In any event, even marketing statements may be protected under the anti-SLAPP statute where they concern a public issue. *See Vess v. Ciba-Geigy Corp. USA*, 2001 WL 290333, at *9 (S.D. Cal. Mar. 9, 2001), *aff'd in part, rev'd in part and remanded*, 317 F.3d 1097 (9th Cir. 2003); *infra* at pp. 13-14.

Plaintiffs' nuisance and UCL claims accordingly arise entirely from protected conduct and should therefore be dismissed in toto. In the alternative, and at a minimum, the specific allegations underlying Plaintiffs' nuisance and UCL claims, discussed individually below, arise from protected conduct and should be stricken from the Complaint—which, as discussed in Section IV(B), is fatal to Plaintiffs' claims. *See Baral*, 1 Cal. 5th at 393 (holding that courts can consider and strike specific allegations challenging protected conduct). Those allegations challenge three basic categories of statements, each of which falls squarely within the protections of the anti-SLAPP statute.

**Category 1 - historical statements that plastic products have environmental advantages.** Paragraphs 113 and 114 challenge statements concerning the environmental advantages of foam containers and plastic bags vis-à-vis similar paper products—e.g., statements that foam and plastic products take up less space in landfills, reduce transportation costs (because they are more lightweight), and generate fewer emissions in the manufacturing process. Compl. ¶¶ 113-14. Paragraph 115 challenges a statement from a company pamphlet that foam "does not decompose readily" when landfilled, and that decomposition "may cause instability in a landfill." *Id.* ¶ 115. Although the Complaint attaches none of the referenced statements, at least one of them—a 1988 *New York Times* piece titled "Truth, Fiction, and Solid Waste"—was made in direct response to an op-ed that was critical of plastics. *Id.* ¶ 114.[9]

As these statements themselves make clear, they were made in the context of a public "debate over the country's solid waste problem" at a time when states nationwide were considering plastics-related legislation. *Id.* ¶ 114[10]; *see supra* at note 2 (summarizing plastics-related legislation in California throughout the 1980s and 1990s). Indeed, Plaintiffs object to these statements precisely *because* they were allegedly intended to influence public opinion and policy on plastics-related issues in a manner that conflicts with Plaintiffs' own policy objectives. Compl. ¶ 13.

The anti-SLAPP statute clearly protects statements made in furtherance of ExxonMobil's rights to speak and petition on issues of public concern. The right to speak freely and persuade others to one's own point of view is at the core of First Amendment speech protections, and Plaintiffs explicitly challenge ExxonMobil's exercise of this right. *See* Cal. Civ. Proc. Code § 425.16(b)(1), (e)(3)-(4); *see also DuPont Merck Pharm. Co. v. Superior Ct.*, 78 Cal. App. 4th 562, 566 (2000), *as modified* (Jan. 25, 2000) (DuPont's lobbying activities, as well as its

---

[9] Mobil Corporation, *Truth, Fiction, and Solid Waste*, N.Y. TIMES (July 28, 1988), available at https://timesmachine.nytimes.com/timesmachine/1988/07/28/291988.html?pageNumber=27 (last accessed Mar. 27, 2025) (incorporated by reference at Compl. ¶ 114 & n.119).

[10] Mobil Corporation, *Recycling: The Momentum Grows*, N.Y. TIMES (May 17, 1990), available at https://timesmachine.nytimes.com/timesmachine/1990/05/17/155590.html?pageNumber=29 (last accessed Mar. 27, 2025) (incorporated by reference at Compl. ¶ 114 & n.120).

"advertising, marketing, and public relations activities … seeking to influence the decisions of regulatory and legislative bodies," protected under anti-SLAPP statute); *United States v. Saathoff*, 708 F. Supp. 2d 1020, 1039 (S.D. Cal. 2010) (efforts to "persuade public officials on the merits or demerits of policy proposals" are "generally protected by the Petition Clause of the First Amendment"). That ExxonMobil's speech relates to issues of public concern is made particularly obvious by the Complaint's reliance on statements made in quintessential public fora, like newspapers and pamphlets distributed to the public without reference to any particular product. *See ComputerXpress, Inc. v. Jackson*, 93 Cal. App. 4th 993, 1007 (2001) (anti-SLAPP statute protects speech on a public issue in any "public forum," including various "forms of public communication"); *White v. Lee*, 227 F.3d 1214, 1226-27 (9th Cir. 2000) ("[D]istribut[ing] flyers and publish[ing] a newsletter in the advocacy of a politically controversial viewpoint [constituted] 'the essence of First Amendment expression.'" (quoting *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 347 (1995))); *Mills v. Alabama*, 384 U.S. 214, 219 (1966) ("The Constitution specifically selected the press, which includes not only newspapers, books, and magazines, but also humble leaflets and circulars, to play an important role in the discussion of public affairs." (citation omitted)). These Category 1 statements easily satisfy Step 1.

**Category 2 - historical statements that encourage "mechanical" recycling as one solution to plastic waste.** Paragraph 114 references statements in the *New York Times* in 1990 that encouraged Americans to help resolve "the country's nagging solid waste problem … by participating in the recycling efforts established by companies and communities alike." Compl. ¶ 114.[11] Paragraph 120 quotes a 1989 statement by the National Polystyrene Recycling Company that "[r]ecyling polystyrene is a highly automated and efficient process." *Id.* ¶ 120; *see also id.* ¶ 124 n.131 (challenging statement that "many plastics are easily recyclable"). Paragraph 127 cites *New York Times* statements from 1983 that "[m]any plastics can be recovered, processed and then turned into new products," along with a film from the 1990s by the American Plastics Council explaining that "recycled plastic is used as raw material for other products like park

---

[11] *Recycling: The Momentum Grows*, supra note 10 (incorporated by reference at Compl. ¶ 114 & n.120).

DEFENDANT'S NOTICE OF MOTION AND SPECIAL MOTION TO STRIKE
NO. 3:24-CV-07288-RS

benches, camping gear, backpacks and even some clothes." *Id.* ¶ 127. These statements, like those in Category 1, were made in the midst of a nationwide policy debate about plastics- and recycling-related legislation. *See supra* note 2.

Notably, these statements echo Plaintiffs' own efforts to promote and encourage recycling. *See supra* at p. 4. The anti-SLAPP statute protects ExxonMobil's freedom to speak on matters of public concern and to advocate for reasonable recycling measures—just as it has protected Plaintiffs' right to advocate for both the same and contrary positions at various times. *See* Cal. Civ. Proc. Code § 425.16(b)(1), (e)(3)-(4).

Some of these Category 2 statements were made not by ExxonMobil, but by trade associations such as the American Plastics Council. *See* Compl. ¶¶ 120, 127. For the avoidance of doubt, ExxonMobil does not concede that speech by a trade association is attributable to its members. Moreover, it is well-settled that the First Amendment protects both an individual's freedom to participate in trade associations and a trade association's right to speak and petition— and bars the imposition of liability based on associational conduct. *See Americans for Prosperity Found. v. Bonta*, 594 U.S. 595, 606 (2021) (First Amendment protects right to associate for "a wide variety of political, social, economic, educational, religious, and cultural ends," and "is especially important in preserving political and cultural diversity and in shielding dissident expression from suppression by the majority"). Associational speech and conduct is protected by the anti-SLAPP statute. *See* Cal. Civ. Proc. Code § 425.16(b)(1), (e)(3)-(4).

**Category 3 - recent statements concerning "advanced" recycling.** Paragraph 140 attacks a statement by ExxonMobil that, "'deployed together' with mechanical recycling, 'advanced' recycling offers a 'huge opportunity' to 'strengthen circularity' and 'help … address the plastic waste challenge.'" Compl. ¶ 140. Paragraph 144 challenges ExxonMobil's statements concerning the amount of plastic waste that has been processed at its advanced recycling facilities in Baytown and its aspiration to process an even higher volume of plastic waste by 2026. *Id.* ¶ 144.[12]

---

[12] James Bruggers, *The Missing Equations at ExxonMobil's Advanced Recycling Operation*, Inside Climate News (Nov. 1, 2023), https://insideclimatenews.org/news/01112023/missing-

DEFENDANT'S NOTICE OF MOTION AND SPECIAL MOTION TO STRIKE
NO. 3:24-CV-07288-RS

Paragraph 142 quotes from a public "Sustainability Report," an informational statement of ExxonMobil's views on the best ways to balance "the societal benefits plastics provide" and the "global issue of plastic waste." *Id.* ¶ 142.[13] That report describes the scientific and technical processes involved in advanced recycling, explains that ExxonMobil "sells certified-circular plastics corresponding to the amount of plastic waste we transform back into usable raw materials," and makes clear that certifications are "not a claim that our certified-circular polymers contain any 'recycled content' or carry GHG benefits," but "an assurance that we followed a rigorous mass balance attribution system that is certified by a third-party"—all for the purpose of being "transparent" about ExxonMobil's products and "circularity goals." *Id.*

These, too, are statements on issues of public concern—and as set forth in ExxonMobil's motion to dismiss, there is nothing untruthful about them. These statements are protected under Sections 425.16(e)(3) and (4) of the anti-SLAPP statute for the reasons set forth above.

Plaintiffs criticize (unfairly) ExxonMobil's advanced recycling efforts as "greenwashing," asserting that statements like these are intended to promote the company's reputation and boost its profits. Compl. ¶¶ 119, 139–45. But the fact that a statement may result in commercial benefit does not make it any less a matter of public interest, and does not transform the statement from an exercise of a company's First Amendment right to a pure "marketing" statement, as Plaintiffs suggest. *See id.*; *Murphy*, 4 Cal. App. 5th at 1150 ("Whether speech has a commercial or promotional aspect is not dispositive of whether it addresses a matter of public interest."); *ComputerXpress*, 93 Cal. App. 4th at 1007–1008 (statements on defendants' website regarding publicly traded corporation concerned public issue); *DuPont*, 78 Cal. App. 4th at 567 (pharmaceutical company's statements regarding widely used drug were statements on public issue); *Wilbanks v. Wolk*, 121 Cal. App. 4th 883, 894, 898–901 (2004) (statements by author to

---

equations-exxonmobils-advanced-recycling-operation/ (incorporated by reference at Compl. ¶ 144 n.158).

[13] *Expanding the Plastics Life Cycle*, supra note 6 (incorporated by reference at Compl. ¶¶ 8 & n.2; 9 & n.4; 117 & nn.123-25; 140; and 142). The report makes clear that it was "prepared at shareholders' request" and designed "for informational purposes only and [] not intended as an advertisement for ExxonMobil's … businesses, products, or services." *Id.* (disclaimer pop-up).

promote books encompassed matters of public interest).

Even statements made to promote a commercial product may be protected under the anti-SLAPP statute where they concern a public issue. *See Vess*, 2001 WL 290333, at *9 (holding that pharmaceutical company's allegedly misleading "speech promoting Ritalin to the [American Psychiatric Association] and to the public" was protected under Section 425.16(e)(3)).[14] It is therefore irrelevant whether certain statements in Category 3 have a commercial aspect—those statements constitute speech on indisputable issues of public concern, and are plainly protected under the anti-SLAPP statute.

*    *    *

Only one of the statements challenged in the Complaint does not fit cleanly into the protected categories above. Paragraph 126 alleges that in the early 1990s, ExxonMobil's predecessor made false statements about the biodegradability of "'Hefty' brand trash bags, resulting in settlements with the Federal Trade Commission and the attorneys general for seven states," including California. Compl. ¶ 126.[15] (The challenged statements were made over thirty years ago; ExxonMobil does not currently manufacture or sell trash bags to consumers.)

These statements, like those in Category 1, describe the environmental benefits of plastics and fit into the broader public debate in the 1990s surrounding plastics and waste disposal issues. *See supra* at note 2. As noted above, the fact that a statement has a commercial motive does not make it any less a matter of public interest. *Supra* at pp. 13-14; *see FilmOn.com Inc. v. DoubleVerify Inc.*, 7 Cal. 5th 133, 153 (2019) ("Some commercially oriented speech will, in fact, merit anti-SLAPP protection."). The statements in Paragraph 126 should therefore be protected

---

[14] To the extent Plaintiffs claim that the challenged statements are misleading and thus unprotected, that misunderstands the anti-SLAPP statute. The truth or falsity of ExxonMobil's statements is irrelevant to the question of whether they were made in furtherance of its free-speech rights—the only relevant inquiry at Step 1. *See DuPont*, 78 Cal. App. 4th at 566 (holding that "[w]hether or not [the challenged statements] were true should be considered in the second part of the analysis …. In determining whether the alleged conduct is constitutionally protected it is sufficient to determine the conduct constituted speech protected by the First Amendment."). In any event, ExxonMobil's statements were not false or misleading, as explained below. *See infra* at Section IV.B.

[15] The settlement made clear that it did "not constitute an admission by [ExxonMobil's predecessor] that the law has been violated." *In re Mobil Oil Corp.*, 116 F.T.C. 113, 119 (1993).

14

for same reasons as other Category 1 statements.

That said, the statements in Paragraph 126 are unlike the other Category 1 statements because they concern a specific consumer product. As a result, Plaintiffs may argue that these statements fall under the anti-SLAPP statute's commercial-speech exemption, which applies to certain "representations of fact about [defendant's] or a business competitor's business operations, goods, or services" made "for the purpose of obtaining approval for, promoting, or securing sales or leases of, or commercial transactions in, the person's goods or services." Cal. Civ. Proc. Code § 425.17(c). That narrow exemption has no application here.

There is a split of authority in California as to whether the anti-SLAPP statute's commercial-speech exemption applies to *any* speech other than pure comparative advertising where (unlike here) one party compares its goods or services to those of a competitor. Although the California Supreme Court has not directly reached this issue, it has twice observed that Section 425.17(c) "exempts 'only a subset of commercial speech'—specifically, comparative advertising." *FilmOn.com*, 7 Cal. 5th at 147; *Simpson Strong-Tie Co. v. Gore*, 49 Cal. 4th 12, 33 (2010) ("'[T]he Legislature appears to have enacted section 425.17, subdivision (c), for the purpose of exempting … cases involving comparative advertising by businesses.'" (citation omitted)).

Many California Courts of Appeal have likewise recognized that "[t]he commercial exception … applies only to comparative advertising." *Ross v. Seyfarth Shaw LLP*, 96 Cal. App. 5th 722, 740 (2023).[16] Other Courts of Appeal have reached a different result. *See WasteXperts, Inc. v. Arakelian Enters., Inc.*, 103 Cal. App. 5th 652, 665 (2024) (finding that "[t]he issue [in *FilmOn.com*] was not whether the commercial speech exemption applied"). ExxonMobil respectfully disagrees with those decisions, which are not controlling here. The great weight of authority confirms that the commercial-speech exemption only applies to comparative

---

[16] *See also Dziubla v. Piazza*, 59 Cal. App. 5th 140, 154 (2020) ("We are doubtful that Piazza's Alert can be fairly described as primarily an effort to sell goods or services, but even assuming it was the Alert does not contain the comparative advertising that marks the commercial speech exception."); *Mendoza v. ADP Screening & Selection Servs., Inc.*, 182 Cal.App.4th 1644, 1652 (2010) ("[T]he Legislature appears to have enacted section 425.17, subdivision (c), for the purpose of exempting from the reach of the anti-SLAPP statute cases involving comparative advertising by businesses.").

advertising—which is consistent with the directive that exemptions to the anti-SLAPP statute "are to be 'narrowly construed.'" *City of Montebello v. Vasquez*, 1 Cal. 5th 409, 419–20 (2016). Because Plaintiffs do not allege that the statements in Paragraph 126 constitute comparative advertising, or compare Mobil's Hefty bags to any competing product, the commercial-speech exemption should not apply to these statements.[17]

    **B.**    <u>**Step 2: Plaintiffs Cannot Demonstrate A Probability Of Success On The Merits.**</u>

Because ExxonMobil has satisfied its burden on Step 1, the burden shifts to Plaintiffs to demonstrate a probability of prevailing on their claims, applying the standard set forth in Rule 12(b)(6). Plaintiffs cannot satisfy that burden. As set forth in ExxonMobil's concurrently filed motion to dismiss, there is no merit to their nuisance and UCL claims, which both fail as a matter of law and cannot be saved by discovery or cured by amendment. Those claims must therefore be stricken now.

    *1.*    *Plaintiffs Cannot Show A Probability Of Success On Their Nuisance Claims.*

Plaintiffs' nuisance claims fail as a matter of law because they do not, and cannot, allege either (1) actionable conduct or (2) causation. *See generally* MTD, Section IV.A.

First, Plaintiffs fail to allege an actionable theory of nuisance liability under California law. To enforce the boundary between products liability and nuisance, California law precludes nuisance liability for claims challenging the "manufacture, distribution, and supplying" of an allegedly harmful product, and "any failure to warn" consumers about the dangers of such a product, *unless* the defendant knowingly promoted a product for hazardous use or designed a hazardous waste-disposal system. *See City of Modesto Redev. Agency v. Superior Court*, 119 Cal. App. 4th 28, 39 (2004); *Cnty. of Santa Clara v. Atl. Richfield Co.*, 137 Cal. App. 4th 292, 313 (2006); *see also Team Enterprises, LLC v. W. Inv. Real Est. Tr.*, 647 F.3d 901, 912 (9th Cir. 2011) (describing exception). Plaintiffs allege nothing of the sort—neither statements allegedly

---

[17] Even if the Court were to disagree and conclude that these Hefty bags statements were exempt from the anti-SLAPP statute, the remaining allegations underlying Plaintiffs' claims—which, as discussed above, clearly arise from protected conduct—would nonetheless need to be stricken from the Complaint. *See Baral*, 1 Cal. 5th at 393.

encouraging recycling, nor statements promoting the use of plastic products, could possibly "fall within the context of nuisance," because neither constitutes promotion for a hazardous use or design of a hazardous waste-disposal system. *City of Modesto*, 119 Cal. App. 4th at 42. Even if Plaintiffs were correct that plastic is inherently "toxic" to the environment, Compl. ¶ 4; *id.* ¶¶ 1, 5, that cannot support a viable nuisance claim. *Hinds Invs., L.P. v. Angioli*, 445 F. App'x 917, 920 (9th Cir. 2011) (affirming dismissal absent allegations of affirmative instructions for hazardous disposal of waste).

Second, Plaintiffs cannot plausibly allege causation, "an essential element of a public nuisance claim." *Citizens for Odor Nuisance Abatement v. City of San Diego*, 8 Cal. App. 5th 350, 359 (2017) ("*CONA*"). Plaintiffs' entire causal theory of ExxonMobil's nuisance liability for California's "plastic pollution crisis" hinges on one allegation: that "[c]onsumers purchased more plastics made from virgin polymers than they otherwise would have." Compl. ¶ 138; *see also id.* ¶ 14 (similar). That conclusory allegation cannot satisfy the causation element, which requires Plaintiffs to allege facts making it plausible that ExxonMobil's statements were a "substantial factor" in causing the "pollution crisis." *CONA*, 8 Cal. App. 5th at 359. Put simply, it is not plausible that less than a dozen statements by ExxonMobil (a raw materials supplier), over more than 50 years ago, about plastics and recycling altered end-consumer purchasing decisions about "single use plastic" enough to materially affect statewide plastic pollution. The implausibility of that theory is confirmed by the countless other factors necessarily shaping consumer decisions— including years of statements from government officials and environmental organizations (and Plaintiffs themselves) consistently promoting plastic recycling. *See supra* at p. 4. Even if Plaintiffs were able to establish that ExxonMobil's statements about recycling materially increased plastic *consumption*, Plaintiffs still could not causally link ExxonMobil to increased plastic *pollution* in the environment, which requires intentional or accidental third-party littering. Fundamental principles of causation foreclose ExxonMobil's liability for such acts.

### 2.    *Plaintiffs Cannot Show A Probability Of Success On Their UCL Claim.*

Plaintiffs' UCL claim likewise fails as a matter of law for several independent reasons: (1) lack of statutory standing, (2) untimeliness, and (3) the absence of any unlawful, unfair, or

17

deceptive conduct. *See generally* MTD, Section IV.B.

First, Plaintiffs lack statutory standing because they cannot allege an economic injury "as a result of" ExxonMobil's conduct. Cal. Bus. & Prof. Code § 17204. In other words, as explained above, Plaintiffs cannot allege a "causal connection" between ExxonMobil's statements and their own alleged resource-diversion to fight plastic pollution. *Cal. Med. Ass'n. v. Aetna Health of Cal. Inc.*, 14 Cal. 5th 1075, 1096 (2023); *see* MTD, Section IV.B.1; MTD at 12-14 (collecting cases dismissing for lack of causal connection).

Second, the UCL's four-year statute of limitations bars any liability for most of Plaintiffs' allegations, which challenge statements ranging from the "1960s" to 2005, Compl. ¶¶ 112-128, 139; Cal. Bus. & Prof. Code § 17208; *Aryeh v. Canon Bus. Sols., Inc.*, 55 Cal. 4th 1185, 1193 (2013). Any plastic-pollution injury from those dated statements, and any alleged resource-diversion by Plaintiffs, accrued well before 2021. *E.g.*, Compl. ¶ 167 (diversion of resources "[s]ince 2019"); *id.* ¶¶ 177-79, 197 (similar, outside limitations period); *see also id.* ¶ 155 (2015 statewide plastic-pollution expenditures).[18]

Third, Plaintiffs fail to allege actionable conduct under any of the UCL's three liability prongs: (a) unlawfulness, (b) unfairness, or (c) misrepresentations.

a. No unlawfulness. An "unlawful prong" claim fails absent allegations of an underlying violation of some other local, state, or federal law. *Walker v. Dreyer's Grand Ice Cream, Inc.*, 2006 WL 2642535, at *2 (N.D. Cal. Sept. 14, 2006). The only underlying statutes Plaintiffs cite are Cal. Fish & Game Code §§ 5650, 5652, which broadly speaking, make it "unlawful to deposit, permit to pass into, or place where it can pass into the waters of the state" certain kinds of pollution. Applying basic interpretive principles to the statutes' plain text, the Complaint lacks any allegation that ExxonMobil deposited, placed, or permitted plastic (or anything else) to pass into the waters of the state. MTD, Section IV.B.1.

b. No unfairness. Plaintiffs also fail to allege any "unfair" conduct. *Doe v. CVS Pharmacy, Inc.*, 982 F.3d 1204, 1214-15 (9th Cir. 2020) (describing tests for unfair conduct). First, Plaintiffs

---

[18] The few timely, contemporary statements Plaintiffs challenge concerning ExxonMobil's Texas-based advanced-recycling operations fail for lack of standing. *See* MTD at 14-15 n.10.

18

appear to allege that ExxonMobil violated the UCL's "unfair prong" by contravening the policy underlying Cal. Gov't Code Sections 12600(b) and 12607. *See* Compl. ¶ 234; *see also* MTD at 176-1 & n.12. Putting aside the fact that those provisions vest power in the Attorney General to litigate pollution cases, the "general policy" against environmental harm writ large is far too abstract to support UCL liability. *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 866 (9th Cir. 2018). If the law were otherwise, marketing any disposable product that is later littered would violate the UCL. MTD at 17-18.

Second, Plaintiffs allege that ExxonMobil acted unfairly because its "conduct profits from its harms to public trust resources." Compl. ¶ 235. But the Complaint does not allege that ExxonMobil harms public trust resources, much less profits from such harms. It alleges that ExxonMobil profits indirectly from downstream plastic purchases by end consumers, which (implicitly, without specifically alleging how) contributes to plastic pollution down the line. Assuming that profiting from "harm to public trust resources" could be unfair under the UCL, *see Doe*, 982 F.3d at 1214 (explaining definitions of unfairness), Plaintiffs do not, and cannot, allege that ExxonMobil engaged in any such conduct.

c. No misrepresentations. Finally, none of the Complaint's 10 paragraphs containing the statements Plaintiffs challenge can support UCL liability under a misrepresentation theory.

Start with "Category 1," the historical statements about environmental benefits of plastics. *See supra* at p. 10 (citing Compl. ¶¶ 113-15). A statement that plastic is "more environmentally friendly than paper," Compl. ¶ 113, is subjective, unverifiable, and "abstract"—it is not an actionable statement of "objectively verifiable fact." *Brown v. Madison Reed, Inc.*, 2023 WL 8613496, at *2 (9th  Dec. 13, 2023); *Edmunson v. Procter & Gamble Co.*, 2011 WL 1897625, at *3 (S.D. Cal. May 17, 2011); MTD at 19 (collecting cases). In addition, Paragraphs 113, 114, and 115 constitute nothing more than truthful descriptions of certain "advantages" that plastic materials have over paper packaging (*e.g.*, less "bulk," do "not decompose"). Compl. ¶¶ 113-15. The truthful descriptions in Category 1 are non-misleading.

Category 2—historical statements encouraging "mechanical" recycling—likewise contains nothing more than truthful, non-misleading statements. *Id.* ¶¶ 119, 120, 127. The

Complaint does not allege that the National Polystyrene Recycling Company spoke inaccurately in 1989 by claiming, "[r]ecycling polystyrene is a highly automated and efficient process that does not rely on expensive or experimental technology" or when describing the "steps" involved in recycling. *Id.* ¶ 120. Nor can Plaintiffs plausibly allege that the statements in Paragraph 127 (from a 1983 *New York Times* piece and a film by the American Plastics Council) misrepresented anything when they stated that "[m]any plastics can be" recycled; plastic packaging uses fewer resources and is cheaper to transport than bulkier materials; and "recycled plastic is used as raw material for other products like park benches, camping gear, backpacks and even some clothes." *Id.* ¶ 127. All of that is indisputably true.

Turning to the more recent statements about advanced recycling in Category 3, the same flaws foreclose UCL liability. The statements that advanced recycling, in combination with traditional recycling, "offers a 'huge opportunity' to 'strengthen circularity' and 'help … address the plastic waste challenge,'" *id.* ¶ 140, constitute nonactionable, subjective, and aspirational statements about advanced recycling's potential environmental impact. *See Newcal Indus., Inc. v. Ikon Off. Sol.*, 513 F.3d 1038, 1053 (9th Cir. 2008); *see also supra* at pp. 12-13. Paragraph 142 partially quotes from an ExxonMobil sustainability report, which is facially non-misleading (especially to the sophisticated target audience of businesses (not individuals) who purchase polymers from ExxonMobil to make plastic, Compl. ¶ 107). The report accurately describes the process for obtaining third-party circularity certificates and explains what "mass balance attribution" means, including through specific "disclaimers," *id.* ¶ 142; *Sepanossian v. Nat'l Ready Mix Co., Inc.*, 97 Cal. App. 5th 192, 200 (2023) (misleadingness assessed based on "target population"); *Sponchiado v. Apple Inc.*, 2019 WL 6117482, at *5 (N.D. Cal. Nov. 18, 2019) (disclaimers rendered challenged statements non-misleading). And Paragraph 144 challenges ExxonMobil's statements concerning the amount of plastic waste it has processed at its advanced recycling facilities in Baytown only by mischaracterizing ExxonMobil's statements. Contrary to the Complaint, ExxonMobil's alleged statement about how much plastic it converts into "*basic molecules,*" Compl. ¶ 144 (emphasis added), cannot possibly contradict "estimates from industry

experts" about how much plastic is "converted into feedstocks for *new plastics*."[19] MTD at 23 & n. 18 (explaining how Paragraph 143 similarly conflates how much plastic ExxonMobil "will process" with ExxonMobil's aspirational "expect[ation] to grow" its "recycling capacity").

Finally, the allegations that, in the 1990s, ExxonMobil's predecessor made false statements about the biodegradability of "'Hefty' brand trash bags, resulting in settlements with the Federal Trade Commission" and state attorneys general cannot support a UCL claim, either. Compl. ¶ 126. To start, any such statements about "biodegradability" bear no causal connection to Plaintiffs' UCL claim that ExxonMobil misrepresented the benefits of *recycling*. Nor could those decades-old statements mislead any consumers today (or any time within the limitations period), given that they were publicly litigated and resolved long ago, negating any past misleadingness. *See Hodsdon*, 891 F.3d at 867 (matters of public knowledge not actionable).

## V.    CONCLUSION

For the foregoing reasons, ExxonMobil respectfully requests that the Court dismiss Plaintiffs' nuisance and unfair competition claims in their entirety and with prejudice—or, in the alternative and at a minimum, strike the allegations in Paragraphs 113-15, 120, 123-25, 126-27, 140, 142, and 144 of the Complaint. *See* Cal. Civ. Proc. Code § 425.16(b)(1)-(2), (e)(3)-(4). In either event, the Court should award ExxonMobil attorneys' fees and costs. *Id.* § 425.16(c)(1).

Dated: March 27, 2025                                O'MELVENY & MYERS LLP


By:     */s/ Dawn Sestito*
        Dawn Sestito

DAWN SESTITO (S.B. #214011)
MATTHEW R. COWAN (S.B. #281114)
O'MELVENY & MYERS LLP
400 South Hope Street, 19th Floor
Los Angeles, CA 90071-2899
United States
Telephone:    (213) 430-6000
Facsimile:    (213) 430-6407
dsestito@omm.com

---

[19] Bruggers, *supra* note 12 (incorporated by reference at Compl. ¶ 144 n.158).

21

mcowan@omm.com

DAVID J. LENDER (*pro hac vice forthcoming*)
david.lender@weil.com
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153-0119
Telephone:    (212) 310-8153
Facsimile:    (212) 310-8007

*Counsel for Defendant Exxon Mobil Corporation*

DEFENDANT'S NOTICE OF MOTION AND SPECIAL MOTION TO STRIKE
NO. 3:24-CV-07288-RS