NIALL P. McCARTHY (SBN 160175)
nmccarthy@cpmlegal.com
TYSON C. REDENBARGER (SBN 294424)
tredenbarger@cpmlegal.com
GRACE Y. PARK (SBN 239928)
gpark@cpmlegal.com
COTCHETT, PITRE & McCARTHY, LLP
San Francisco Airport Office Center
840 Malcolm Road
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SIERRA CLUB, INC.;<br>SURFRIDER FOUNDATION, INC.;<br>HEAL THE BAY, INC.; and<br>BAYKEEPER, INC.; each a California<br>Nonprofit,<br><br>     Plaintiffs,<br><br>     vs.<br><br>EXXONMOBIL CORPORATION, a New<br>Jersey Corporation, and DOES 1-10,<br><br>     Defendants. | Case No. 3:24-cv-07288-RS<br><br>NON-PROFITS' OPPOSITION TO<br>EXXONMOBIL'S SPECIAL MOTION TO<br>STRIKE (CAL. CODE CIV. PROC. §§ 425.17;<br>425.16)<br><br>Judge: Hon. Richard Seeborg<br><br>Place:  Philip Burton Federal Building<br>        450 Golden Gate Avenue<br>        San Francisco, California 94102<br>        Courtroom 3, 17th Floor<br><br>Date:  June 5, 2025<br><br>Time:  1:30 p.m. |

**TABLE OF CONTENTS**

PAGE

I.    INTRODUCTION ................................................................................................................1

II.   STATEMENT OF ISSUES TO BE DECIDED ..................................................................2

III.  BACKGROUND .................................................................................................................3

    A.    ExxonMobil's Branding of its Products as Environmentally Sustainable ...............3

    B.    ExxonMobil's Branding of Itself as an Environmentally Conscious Corporate
    Citizen .....................................................................................................................4

    C.    ExxonMobil's Comparison of its Plastic to Competitors' Biodegradable Products .6

    D.    ExxonMobil's Reliance on Others' Statements .........................................................6

IV.   LEGAL STANDARD ..........................................................................................................7

V.    ARGUMENT .......................................................................................................................7

    A.    The Public Good Exemptions Apply, Cal. Civ. Proc. Code § 425.17 ......................7

        1.    The Public Interest Exemption Applies, Cal. Civ. Proc. Code § 425.17(b)..8

            i.    This Action is Solely in the Public Interest or on Behalf of the
            General Public ................................................................................8

            ii.    Non-Profits do not Seek Relief Greater than or Different from the
            Relief Sought for the General Public .............................................9

            iii.    If Successful, Non-Profits Would Enforce Important Rights and
            Confer Significant Benefits to the General Public .........................10

            iv.    Private Enforcement is Necessary and Places a Disproportionate
            Financial Burden on Non-Profits ...................................................11

        2.    The Commercial Speech Exemption Applies, Cal. Civ. Proc. Code
        § 425.17(c)..................................................................................................12

            i.    The Commercial Speech Exemption is not Limited to Comparative
            Advertising ....................................................................................13

            ii.    ExxonMobil is Primarily Engaged in the Business of Selling Goods
            or Services ......................................................................................14

            iii.    ExxonMobil's Statements Concern Its or a Business Competitor's
            Operations, Goods, or Services .....................................................14

i

iv.    ExxonMobil's Statements were Made to Obtain Approval for, Promote, or Secure Commercial Transactions in its Goods or Services ..................................................................................16

v.    ExxonMobil's Intended Audience were Actual or Potential Customers.................................................................................17

vi.    ExxonMobil's Statements Arose out of or Within the Context of a Regulatory Approval Process, Proceeding, or Investigation...........17

B.    The Anti-SLAPP Statute Does not Apply, Cal. Civ. Proc. Code § 425.16.............18

1.    ExxonMobil Fails to Satisfy the First Prong of the Anti-SLAPP Statute ...18

i.    ExxonMobil has Failed to Satisfy § 425.16(b)(1)............................18

ii.    ExxonMobil has Failed to Satisfy §§ 425.16(e)(1), (e)(2)..............18

iii.    ExxonMobil has Failed to Satisfy § 425.16(e)(3) ...........................19

iv.    ExxonMobil has Failed to Satisfy § 425.16(e)(4) ...........................19

2.    Non-Profits have Adequately Alleged Their Claims Under the Second Prong of the Anti-SLAPP Statute.................................................................21

i.    Non-Profits have Adequately Alleged Their Nuisance Claim ........21

ii.    Non-Profits have Adequately Alleged Their UCL Claim ...............23

C.    Non-Profits are Entitled to Attorney's Fees and Costs, Cal. Civ. Proc. Code § 425.16(c)(1)...............................................................................................25

VI.    CONCLUSION .........................................................................................................25

# TABLE OF AUTHORITIES

PAGE(S)

**CASES**

*Ashcroft v. Iqbal*
    556 U.S. 662 (2009) ...................................................................................................7

*Batis v. Dun & Bradstreet Holdings, Inc.*
    106 F.4th 932 (9th Cir. 2024) ..........................................................................7, 9, 10

*Bell Atl. Corp. v. Twombly*
    550 U.S. 544 (2007) ...................................................................................................7

*Blanchard v. DIRECTV, Inc.*
    123 Cal.App.4th 903 (2004) .....................................................................................12

*Breazeale v. Victim Servs., Inc.*
    878 F.3d 759 (9th Cir. 2017) .....................................................................................2

*Brenton v. Metabolife Internat., Inc.*
    116 Cal.App.4th 679 (2004) .....................................................................................13

*California Med. Assn. v. Aetna Health of California Inc.*
    14 Cal.5th 1075 (2023) .............................................................................................23

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*
    20 Cal.4th 163 (1999) ...............................................................................................24

*Candelore v. Tinder, Inc.*
    19 Cal.App.5th 1138 (2018) .....................................................................................24

*Center for Biological Diversity, Inc. v. FPL Group, Inc.*
    166 Cal.App.4th 1349 (2008) ...................................................................................10

*Citizens for Odor Nuisance Abatement v. City of San Diego*
    8 Cal.App.5th 350 (2017) .........................................................................................22

*City & Cnty. of San Francisco v. Purdue Pharma L.P.*
    491 F.Supp.3d 610 (N.D. Cal. 2020) .................................................................21, 24

*City of Modesto Redevelopment Agency v. Super. Court*
    119 Cal.App.4th 28 (2004) .......................................................................................21

*Club Members for an Honest Election v. Sierra Club*
    45 Cal.4th 309 (2008) .................................................................................................8

*Demetriades v. Yelp, Inc.*
    228 Cal.App.4th at 312 .............................................................................................16

*DuPont Merck Pharm. Co. v. Superior Ct.*
    78 Cal.App.4th 562 (2000) .......................................................................................17

i

*Durkin v. City & Cnty. of San Francisco*
   90 Cal.App.5th 643 (2023), review denied (June 28, 2023) .......................................................21

*Dyer v. Childress*
   147 Cal.App.4th 1273 (2007)......................................................................................................20

*E.D.C. Techs., Inc. v. Seidel*
   225 F.Supp.3d 1058 (N.D. Cal. 2016)........................................................................................18

*ExxonMobil Corp. v. Bonta et al.*
   Case No. CV 25-00011 (E.D. Tex.) ..............................................................................................1

*ExxonMobil Corporation v. Arjuna Capital, LLC*
   Case No. CV 24-0069-P (N.D. Tex) ..............................................................................................1

*FilmOn.com Inc. v. DoubleVerify Inc.*
   7 Cal.5th 133 (2019)................................................................................................1, 13, 17, 20

*Geiser v. Kuhns*
   13 Cal.5th 1238 (2022)...............................................................................................................20

*Glob. Plasma Sols., Inc. v. IEE Indoor Env't Eng'g*
   600 F.Supp.3d 1082 (N.D. Cal. 2021)........................................................................................18

*Hebbe v. Pliler*
   627 F.3d 338 (9th Cir. 2010).........................................................................................................7

*Ileto v. Glock Inc.*
   349 F.3d 1191 (9th Cir. 2003).....................................................................................................21

*JAMS, Inc. v. Sup. Ct.*
   1 Cal.App.5th 984 (2016)............................................................................................................14

*Kasky v. Nike, Inc.*
   27 Cal.4th 939 (2002).................................................................................................................14

*Keep Our Mountains Quiet v. Cnty. of Santa Clara*
   236 Cal.App.4th 714 (2015)........................................................................................................11

*L.A. Taxi Coop., Inc. v. The Indep. Taxi Owners Assn. of Los Angeles*
   239 Cal.App.4th 918 (2015)...................................................................................................18, 25

*Lind v. City of San Luis Obispo*
   109 Cal.340 (1895)........................................................................................................................9

*Lindsay v. Patenaude & Felix APC*
   107 Cal.App.5th 335 (2024)...................................................................................................10, 11

*Long Beach Unified School District v. Santa Catalina Isl. Co.*
   2023 WL 9001451 (C.D.Cal., 2023) ...........................................................................................24

*Morgan v. AT&T Wireless Servs., Inc.*
   177 Cal.App.4th 1235 (2009).......................................................................................................24

ii

*Nat'l Fair Hous. All. v. A.G. Spanos Const., Inc.*
    542 F.Supp.2d 1054 (N.D. Cal. 2008)................................................................................23

*Newtok Vill. v. Patrick*
    21 F.4th 608 (9th Cir. 2021)...............................................................................................24

*People v. ConAgra Grocery Products Co.*
    17 Cal.App.5th 51 (2017)..............................................................................................21, 22

*Physicians Com. for Responsible Med. v. Tyson Foods Inc.*
    119 Cal.App.4th 120 (2004).................................................................................................13

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*
    890 F.3d 828 (9th Cir.), *amended*, 897 F.3d 1224 (9th Cir. 2018) .............................7, 21

*Rand Res., LLC v. City of Carson*
    6 Cal.5th 610 (2019)............................................................................................................19

*RiverWatch v. Cnty. of San Diego Dep't of Env't Health*
    175 Cal.App.4th 768 (2009).................................................................................................11

*San Francisco Baykeeper, Inc. v. State Lands Com.*
    242 Cal.App.4th 202 (2015).................................................................................................11

*Serova v. Sony Music Ent.*
    13 Cal.5th 859 (2022)..........................................................................................................14

*Simpson Strong-Tie Co. v. Gore*
    49 Cal.4th 12 (2010)...............................................................................................7, 12, 13

*Six4Three, LLC v. Facebook, Inc.*
    330 Cal.Rptr.3d 661 (2025)..................................................................................................14

*Smith v. State Farm Mutual Automobile Ins. Co.*
    93 Cal.App.4th 700 (2001)...................................................................................................24

*People ex rel. Strathmann v. Acacia Rsch. Corp.*
    210 Cal.App.4th 487 (2012)........................................................................................ *passim*

*Tourgeman v. Nelson & Kennard*
    222 Cal.App.4th 1447 (2014)...........................................................................................8, 10

*Venuto v. Owens-Corning Fiberglas Corp.*
    22 Cal.App.3d 116 (1971).......................................................................................................9

*WasteXperts, Inc. v. Arakelian Enters., Inc.*
    103 Cal.App.5th 652 (2024), *review denied* (Sept. 25, 2024).........................................13

*Watershed Enforcers v. Department of Water Resources*
    185 Cal.App.4th 969 (2010).................................................................................................24

*People ex rel. Van de Kamp v. Am. Art Enters., Inc.*
    33 Cal.3d 328 (1983)...............................................................................................................9

iii

*Xu v. Huang*
  73 Cal.App.5th 802 (2021)...............................................................................................20

**STATUTES**

Cal. Civ. Code § 3493 ...........................................................................................................9

Cal. Civ. Proc. Code § 425.16...............................................................................18, 20, 25

Cal. Civ. Proc. Code § 425.16(b) .......................................................................2, 10, 18, 21

Cal. Civ. Proc. Code § 425.16(c) ....................................................................................2, 25

Cal. Civ. Proc. Code § 425.16(d) ....................................................................................11, 12

Cal. Civ. Proc. Code § 425.16(e) .................................................................................. *passim*

Cal. Civ. Proc. Code § 425.17 ...................................................................................... *passim*

Cal. Civ. Proc. Code § 425.17(b) ...................................................................................8, 11, 12

Cal. Civ. Proc. Code § 425.17(c) ....................................................................................12, 13

Cal. Civ. Proc. Code § 425.17(e) .........................................................................................2

**RULES**

Fed. R. Civ. Proc. 8 .......................................................................................................2, 7, 10

Fed. R. Civ. Proc. 12 .....................................................................................................2, 7, 10

**OTHER AUTHORITIES**

S.B. 515 Sen., 5/06/2003 ...............................................................................................11, 17

NON-PROFITS' OPPOSITION TO EXXONMOBIL'S SPECIAL MOTION TO STRIKE (Cal. Civ. Proc. Code §§ 425.17; 425.16)
Case No. 3:24-CV-07288-RS

## I.      INTRODUCTION

In 1992, California enacted the anti-SLAPP statute "to protect nonprofit corporations and common citizens 'from large corporate entities and trade associations'" who retaliate when publicly called out for prioritizing their own wealth over the health and wellbeing of Californians. *FilmOn.com Inc. v. DoubleVerify Inc.*, 7 Cal.5th 133, 143 (2019). When it became clear that "the same types of businesses who used the SLAPP action were inappropriately using the anti-SLAPP motion against their public-interest adversaries," *People ex rel. Strathmann v. Acacia Rsch. Corp.*, 210 Cal.App.4th 487, 499 (2012), California codified the "Public Interest Exemption" and the "Commercial Speech Exemption" to the anti-SLAPP statute eleven years later. Cal. Civ. Proc. Code § 425.17.

This case presents the quintessential scenario where these two exemptions—sometimes called the "Public Good Exemptions"—apply. The Sierra Club, Inc., The Surfrider Foundation, Inc., Heal the Bay, Inc., and Baykeeper, Inc. ("Non-Profits") filed this lawsuit for the benefit of all Californians and to hold Defendant Exxon Mobil Corporation ("ExxonMobil") accountable for its decades-long campaign to misrepresent the disposability and recyclability of its plastic products, and in the process, greenwashing the ExxonMobil brand as an environmentally conscious corporate citizen.

Undaunted by California's anti-SLAPP statute or the Public Good Exemptions, ExxonMobil filed a SLAPP suit against Non-Profits in the Eastern District of Texas, asserting claims for disparagement, defamation and business torts arising from the complaint in this action.[1] Doubling down, ExxonMobil filed a frivolous anti-SLAPP motion in this action. (Dkt. 33, MTS). This scorched-earth tactic comes as no surprise. ExxonMobil has sued *its own shareholders* for voicing environmental concerns.[2] ExxonMobil now seeks to bully Non-Profits into silence through their bogus legal maneuvering.

The Public Interest Exemption applies because Non-Profits filed this lawsuit for Californians' health and the State's natural resources. They do not seek any relief greater than or different from the relief they seek for Californians. Non-Profits are longtime experts in the field of plastics pollution. They filed this lawsuit in addition to the California Attorney General to help level the playing field

---

[1] *ExxonMobil Corp. v. Bonta et al.*, Case No. CV 25-00011 (E.D. Tex.).
[2] *ExxonMobil Corp. v. Arjuna Capital, LLC*, Case No. CV 24-0069-P (N.D. Tex.).

1

and in furtherance of their core missions.

Separately, the Commercial Speech Exemption applies as ExxonMobil's references to "environmental sustainability" are not to further the public discourse on plastics, plastics waste disposal, or recycling. Rather, ExxonMobil uses these topics to brand itself as an environmentally conscious corporate citizen that has long engaged in recycling and develops and sells sustainable products. ExxonMobil does this to sell even more of its plastic products. In a word: greenwashing.[3]

Although *both* Public Good Exemptions apply, the Court only needs to hold that one applies to deny ExxonMobil's anti-SLAPP motion. Denial under either exception means that ExxonMobil cannot seek an interlocutory appeal. Cal. Civ. Proc. Code § 425.17(e); *Breazeale v. Victim Servs., Inc.*, 878 F.3d 759, 765 (9th Cir. 2017). Even if the Court finds that both exemptions do not apply, ExxonMobil's anti-SLAPP motion cannot meet either of the two prongs under § 425.16(b)(1).

ExxonMobil's burden under the first prong is to show that Non-Profits' claims arise from their protected activity under § 425.16(e). ExxonMobil has failed to meet this burden. Incredibly, ExxonMobil seeks anti-SLAPP protection for *other people's statements*—not their own. Principally, ExxonMobil applies the wrong standard under § 425.16(e)(4) in a futile attempt to seek anti-SLAPP protection for its commercial speech.

Because ExxonMobil's motion fails under the first prong, the Court does not need to proceed to the second prong, which requires an assessment of the legal sufficiency of Non-Profits' complaint under Rules 8(a) and 12(b) of the Federal Rules of Civil Procedure. Non-Profits have more than adequately alleged a nuisance and UCL claim under these Rules.

For the reasons in this opposition and the concurrently filed opposition to ExxonMobil's motion to dismiss, the Court should deny ExxonMobil's special motion to strike in its entirety and award Non-Profits their attorneys' fees and costs under Cal. Civ. Proc. Code § 425.16(c)(1).

## II.    STATEMENT OF ISSUES TO BE DECIDED

1.    Does the Public Interest Exemption apply?

---

[3] *Greenwashing*: "[T]he act or practice of making a product, policy, activity, *etc.* appear to be more environmentally friendly or less environmentally damaging than it really is." MERRIAM-WEBSTER DICTIONARY, *available at* https://www.merriam-webster.com/dictionary/greenwashing.

2.    Does the Commercial Speech Exemption apply?

3.    Has ExxonMobil shown that Non-Profits' claims arise from its protected activity?

4.    Have Non-Profits adequately alleged their nuisance and UCL claims?

## III.   BACKGROUND

ExxonMobil seeks to: (1) dismiss Non-Profits' nuisance and UCL claims; or (2) strike ¶¶ 113-115, 120, 123-127, 140, 142, and 144 of the complaint. (MTS at 1, 21). The exhibits relied on in those twelve paragraphs are described below.

### A.    ExxonMobil's Branding of its Products as Environmentally Sustainable

Exhibits[4] 1, 2, and 3 (¶ 113 n.116; ¶ 114 n.118; ¶ 115 n.121) are nearly identical pamphlets prepared by: (1) ExxonMobil's Environmental Protection Group, Plastics Division (Ex. 1 at 4); and (2) the Society of the Plastics Industry's Tray and Carton Division. (Ex. 2 at 3). ExxonMobil explained that these were prepared for "merchants and packers who use foam packaging material." (Ex. 3). ExxonMobil stated that "as a major manufacturer of polystyrene foam meat trays and egg cartons," (Ex. 1 at 1), it "should tell our customers about the environmental aspects of our products, just as we tell them about other qualities." (*Id.*). ExxonMobil further stated, "we believe that our products are not only ecologically sound, but they offer a number of environmental benefits compared with" "paper, glass, metal, fabric, or wood." (*Id.*).

Exhibit 18 (¶ 126 n.134) is ExxonMobil's March 29, 1990, news release to the public that "it will continue to manufacture its Hefty waste bags with an environmentally safe additive which speed their decomposition when exposed to sunlight, but will delete the references to degradability on the packaging." (*Id.*). "Mobil said that it had included the additive in Hefty waste bags since June of last year in response to degradable products being marketed by competitors and strong consumer preference for such products." (*Id.*).

Exhibit 20 (¶ 127 n.135) is ExxonMobil's ad in *The Daily Breeze*. In this ad to potential customers, ExxonMobil stated it "is a leader in plastics. Among other things, we make tough Hefty bags, Hefty disposable plates, egg cartons, a wide variety of films, heat-retaining 'clamshells' for fast

---

[4] These exhibits are attached to the declaration of Grace Y. Park in support of Non-Profits' request for judicial notice.

foods, and we're a leader in manufacturing plastic bread bags that lock in freshness. If placed end-to-end, the three underline billion underline bread bags Mobil produces each year could encircle the earth 38 times." (Emphasis in original). The ad states: "As for plastics being polluters in a 'throwaway society,' underline don't you believe it underline. Many plastics can be recovered, processed and then turned into new products." (Emphasis in original). The ad bears ExxonMobil's trademarked logo.

**B.    ExxonMobil's Branding of Itself as an Environmentally Conscious Corporate Citizen**

Exhibit 4 (¶ 113 n.117) is ExxonMobil's 2005 Corporate Citizenship Report distributed to its shareholders.[5] In the Corporate Citizenship Report, ExxonMobil told investors it was "improving environmental performance of our products," including "[a]dvanced materials for plastics that offer lower weight and better fuel mileage, as well as being recyclable." (*Id.* at 2).

Exhibit 6 (¶ 114 n.120) is ExxonMobil's May 17, 1990, ad in the *New York Times* (and *Los Angeles Times*) to potential customers. ExxonMobil touted that it "opened the country's first commercial plant to recycle polystyrene foam products," "joined with seven other leading plastics manufacturers to form the National Polystyrene Recycling Company," and is a "founding member of the Council for Solid Waste Solutions." The ad further stated: "We're delighted that Mobil Chemical Company, the manufacturer of about a fourth of the 23 billion plastics used each year in America, is pioneering this national recycling effort." The ad bears ExxonMobil's trademarked logo.

Exhibit 7 (¶ 120 n.127) is National Polystyrene Recycling Company's ("NPRC") 1990 ad to potential customers – the same year McDonald's Corporation defected from NPRC, "switch[ed] from plastic foam to paper packaging for its hamburgers," and "g[a]ve [NPRC] a quarter of red ink."[6] Contrary to NPRC's representations in Exhibit 7, NPRC's Vice-President told the New York Times: "The quality of the material we were getting from McDonald's was terrible," and "the material we were producing at the plant was not sufficient to meet the needs of customers."[7]

---

[5] *Available at* https://ir.exxonmobil.com/news-releases/news-release-details/exxonmobil-issues-2005-corporate-citizenship-report-highlights (organizing Report under "Investors").

[6] Exhibit 8. John Holusha, *A Setback for Polystyrene: The Defection by McDonald's May Undo Two Years of Recycling Efforts*, NEW YORK TIMES, November 18, 1990.

[7] *Id.*

Exhibit 9 (¶ 123 n.129) is ExxonMobil's June 6, 1991, ad in the *New York Times* to potential customers. ExxonMobil stated that "The Council for Solid Waste Solutions, an industry task force that includes Mobil, is working on increasing plastics recycling." The ad bears ExxonMobil's trademarked logo.

Exhibit 10 (¶ 123 n.129) is ExxonMobil's internal August 1997 newsletter "published monthly for employees of Exxon Chemical Company." (*Id.* at 3). The internal newsletter stated that "The American Plastics Council (APC) and the Society of Plastics Industries (SPI) have unified their state government affairs operations." (*Id.* at 2).

Exhibit 11 (¶ 123 n.129) is ExxonMobil's 2013 newsletter for employees and shareholders.[8] The newsletter stated that ExxonMobil is a member of the "American Chemistry Council" which "launched a program to inform the public of the many benefits of plastics, *Plastics Make it Possible*." (*Id.* at 2). The program "focus[es] on the areas of greatest interest to consumers and of greatest importance to ACC's member companies," including "smart packaging, transportation, fashion, homes, medicine, safety, and environmental sustainability." (*Id.* at 1-2).

Exhibit 13 (¶ 123 n.129) is ExxonMobil's curriculum designed to "acquaint adult audiences (employees, community groups, teachers, *etc.*), as well as students, with the many everyday products that are made from chemicals—particularly *petro*chemicals," and to "communicate the environmental responsibility of the chemical industry—particularly Exxon and Exxon Chemical." (*Id.* at 1) (emphasis in original).

Exhibit 14 (¶ 123 n.129; ¶ 140 n.154) is ExxonMobil's internal newsletter, *Mobil Chemical Today*, for its employees and shareholders. The internal newsletter stated that the company "was a co-founder of the National Polystyrene Recycling Company" and "helped establish the Partnership for Plastics Progress." (*Id.* at 10).

Exhibit 15 (¶ 123 n.129) is Plastics Recycling Foundation's 1988 Annual Report identifying ExxonMobil as "Directorate Members" of the organization. (*Id.* at 10).

---

[8] Exhibit 12, *available at* https://corporate.exxonmobil.com/-/media/global/files/newsroom/publications-and-reports/the-lamp-2017.pdf ("Beginning in the 1940s, *The Lamp* editors retooled the magazine away from its strictly internal focus to include external audiences, particularly shareholders.")

5

Exhibit 17 (¶ 125 n.132) is ExxonMobil's internal memorandum seeking regulatory approval of its polymers and single-use plastic products. In the memorandum, ExxonMobil urged against "banning products, requiring biodegradability and mandating extensive recycling requirements" in light of its, among other things, "joint venture to reprocess post-consumer foam," and "Tucker Housewares and Hefty lines of containers and bags for community recycling." (*Id.* at 1).

Exhibit 21 (¶ 127 n.136) is ExxonMobil's internal September 1997 newsletter, which told its employees that colleagues teach children "plastic packaging uses less of our precious resources to make and transport than other materials like paper, glass, and steel," and "recycled plastic is used as raw material for other products like park benches, camping gear, backpacks and even some clothes."

Exhibit 22[9] (¶¶ 140, 142) are excerpts from ExxonMobil's website today describing its advanced recycling operations "develop[ing] plastic solutions that enable our customers to make products that society can more easily recycle."

**C.    ExxonMobil's Comparison of its Plastic to Competitors' Biodegradable Products**

Exhibit 5 (¶ 114 n.119) is ExxonMobil's July 28, 1988, ad in the *New York Times* (and *Los Angeles Times*) to potential ExxonMobil customers. The ad compared plastic waste disposal to paper and wood disposal. (*Id.*). The content of the ad largely follows ExxonMobil's statements in Exhibits 1-3, *supra*. The ad bears ExxonMobil's trademarked logo. (*Id.*).

**D.    ExxonMobil's Reliance on *Others'* Statements**

Exhibit 16[10] (¶ 123 n. 129) is authored by the Center for Climate Integrity. It is not authored by ExxonMobil.

Exhibit 19 (¶ 126 n.134) is authored by Jennifer Lawrence, a reporter for *Advertising Age*. It is not authored by ExxonMobil.

Exhibit 23[11] (¶ 144 n. 157) is an article authored by National Resources Defense Council. It is not authored by ExxonMobil.

---

[9] *Available at* https://corporate.exxonmobil.com/sustainability-and-reports/sustainability/creating-sustainable-solutions/expanding-the-plastics-life-cycle.

[10] *Available at* https://climateintegrity.org/uploads/media/Fraud-of-Plastic-Recycling-2024.pdf.

[11] *Recycling Lies: "Chemical Recycling" of Plastic is just Greenwashing Incineration*, *available at* https://nrdc.org/sites/default/files/chemical-recycling-greenwashing-incineration-ib.pdf.

Exhibit 24[12] (¶ 144 n. 158) is an article authored by James Bruggers, a reporter for *Inside Climate News*. It is not authored by ExxonMobil.

## IV.    LEGAL STANDARD

"[W]hen an anti-SLAPP motion to strike challenges only the legal sufficiency of a claim, a district court should apply the Federal Rule of Civil Procedure 12(b)(6) standard and consider whether a claim is properly stated." *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir.), *amended*, 897 F.3d 1224 (9th Cir. 2018). A claim must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Iqbal*, 556 U.S. at 678, "even if doubtful in fact." *Twombly*, 550 U.S. at 555. When evaluating a motion to dismiss, "[a] court must accept as true all of the allegations contained in a complaint," *Iqbal*, 556 U.S. at 678, construe the pleading in the light most favorable to the party opposing the motion, and resolve all doubts in the pleader's favor. *See Hebbe v. Pliler*, 627 F.3d 338, 340 (9th Cir. 2010).

## V.    ARGUMENT

### A.    The Public Good Exemptions Apply, Cal. Civ. Proc. Code § 425.17

"[B]efore engaging in [the merits] analysis [under § 425.16], a court must consider any claims by the plaintiff that a statutory exemption contained in section 425.17 applies." *Batis v. Dun & Bradstreet Holdings, Inc.*, 106 F.4th 932, 936 (9th Cir. 2024); *Strathmann*, 210 Cal.App.4th at 498. "The commercial speech exemption, like the public interest exemption, 'is a statutory exception to section 425.16' and 'should be narrowly construed.'" *Simpson Strong-Tie Co. v. Gore*, 49 Cal.4th 12, 22 (2010).

/ /

---

[12] *The Mission Equations at ExxonMobil's Advanced Recycling* Operation, *available at* https://insideclimatenews.org/news/01112023/missing-equations-exxonmobils-advanced-recycling-operation/

        **1.**      <u>The Public Interest Exemption Applies, Cal. Civ. Proc. Code § 425.17(b)</u>

The Public Interest Exemption, § 425.17(b) applies to any action brought *solely* in the public interest or on behalf of the general public if all of the following conditions exist:

(1)    The plaintiff does not seek any relief greater than or different from the relief sought for the general public or a class of which the plaintiff is a member;

(2)    The action, if successful, would enforce an important right affecting the public interest, and would confer a significant benefit, whether pecuniary or nonpecuniary, on the general public or a large class of persons; and

(3)    Private enforcement is necessary and places a disproportionate financial burden on the plaintiff in relation to the plaintiff's stake in the matter

*Club Members for an Honest Election v. Sierra Club*, 45 Cal.4th 309, 316 (2008). To determine whether the public interest exemption applies, the court "rel[ies] on the allegations of the complaint because the public interest exception is a threshold issue based on the nature of the allegations and scope of relief sought in the prayer." *Strathmann*, 210 Cal.App.4th at 499.

        i.      *This Action is <u>Solely</u> in the Public Interest or on Behalf of the General Public*

"[T]he term 'public interest' is used to define suits brought for the public's good or on behalf of the public." *Club Members*, 45 Cal.4th at 318. The term "solely" "expressly conveys the Legislative intent that § 425.17(b) not apply to an action that seeks a more narrow advantage for a particular plaintiff." *Id.* Here, Non-Profits assert two claims for: (1) private and public nuisance, (Compl. ¶¶ 208-228); and (2) UCL violations, (*id.* ¶¶ 229-238), "on behalf of themselves and the California public." (*Id.* ¶¶ 22, 227).

With respect to the UCL claim, Non-Profits seek solely injunctive relief. (Compl. ¶ 241.a). On the face of the complaint, Non-Profits' UCL claim is solely for the public interest and on behalf of Californians to remedy and prevent ExxonMobil's wrongful conduct. *See Tourgeman v. Nelson & Kennard*, 222 Cal.App.4th 1447, 1461 (2014) (Public Interest Exemption applies to UCL claim seeking solely injunctive relief in the public interest on behalf of the general public). Here, Non-Profits do not seek any advantage for themselves to the exclusion of Californians.

The same holds true with respect to private and public nuisance. Non-Profits do not allege each element of a private nuisance claim in their complaint to obtain relief personal to them. (Compl.

¶¶ 157-207; 216-223). Instead, Non-Profits allege each element of a private nuisance claim – including damages – to establish *standing* to assert a public nuisance claim.[13] "A private person may maintain an action for a public nuisance, if it is specially injurious to himself, but not otherwise." Cal. Civ. Code § 3493. "The injury which may entitle a private person to maintain an action to abate a public nuisance must be an injury to plaintiff's private property, or to a private right incidental to such private property." *Venuto v. Owens-Corning Fiberglas Corp.*, 22 Cal.App.3d 116 (1971). "[A]n injury [] to the health and comfort of an individual, is in its nature special and peculiar and does not cause a damage which can properly be said to be common or public, however numerous may be the cases of similar damage arising from the same cause." *Lind v. City of San Luis Obispo*, 109 Cal.340, 344 (1895). "Where [] the nuisance is a private as well as a public one, there is no requirement that the plaintiff suffer damage different in kind from that suffered by the general public and he does not lose his rights as a landowner merely because others suffer damage of the same kind, or even of the same degree." *Venuto*, 22 Cal.App.3d at 124.

With respect to the nuisance claim, Non-Profits seek statewide injunctive, abatement, and nuisance damages for the nuisance claim. (Compl. ¶¶ 227; 240.a; ¶ 240.b); *see Batis*, 106 F.4th at 936 ("plaintiffs can still invoke the public interest exemption even if their lawsuit seeks monetary relief."); *People ex rel. Van de Kamp v. Am. Art Enters., Inc.*, 33 Cal. 3d 328, 333 (1983) ("California's general nuisance statute expressly permits the recovery of damages in a public nuisance action brought by a specially injured party, it does not grant a damage remedy in actions brought on behalf of the People to abate a public nuisance."). Heal the Bay and each Non-Profit do not seek monetary relief for private nuisance; each do not seek any advantage for themselves to the exclusion of Californians.

> ii.    *Non-Profits do not Seek Relief Greater than or Different from the Relief Sought for the General Public*

"A claim brought on behalf of the general public might include some kind of individual relief, in which case, it would have to be determined under section 425.17(b)(1) whether that relief is greater

---

[13] Indeed, as explained in the concurrently filed opposition to the motion to dismiss, ExxonMobil has not at all challenged Non-Profits' standing with respect to their public nuisance claim. (*See* Opp'n to MTD at § IV.A.3).

than or different from the relief sought for the general public."[14] *Strathmann*, 210 Cal. App.4th at 501. "California courts have only barred plaintiffs from invoking the public interest exemption when they seek relief to which other class members would not be entitled on the face of the complaint." *Batis*, 106 F.4th at 937. "It matters not whether all class members are likely to ultimately establish entitlement to all forms of requested relief, as long as nothing in the complaint inherently precludes them from doing so." *Id.* (named plaintiff's claim for "highly individualized" emotional distress damages did not seek greater or different relief from putative class when putative class members were not precluded from such relief on the face of the complaint).

Here, the relief Non-Profits seek for themselves is identical to the relief they seek for Californians. They seek statewide injunctive relief for the UCL claim and statewide injunctive, abatement, and nuisance damages for the nuisance claim. *Lindsay v. Patenaude & Felix APC*, 107 Cal.App.5th 335, 346 (2024) ("the relief Lindsay sought for herself was identical to that which she sought for the plaintiff class."). Non-Profits do not seek to obtain any separate, private relief of any kind.

### iii.    *If Successful, Non-Profits Would Enforce Important Rights and Confer Significant Benefits to the General Public*

Should Non-Profits prevail in this action,[15] they would enforce important rights and confer significant benefits to the general public. The rights Non-Profits seek to enforce are coextensive with the common law Public Trust Doctrine, which functions "largely as a public property right of access to certain public trust natural resources for various public purposes." *Center for Biological Diversity, Inc. v. FPL Group, Inc.*, 166 Cal.App.4th 1349, 1360 (2008). "The doctrine protects expansive public

---

[14] Whether Non-Profits seek greater or different relief in the Texas action, brought by ExxonMobil against the Non-Profits, is not relevant to the Public Interest Exemption inquiry. *Tourgeman*, 222 Cal.App.4th at 1461–62 ("there is no language in *any* of the provisions of section 425.17 that suggests that a court may consider relief sought by the plaintiff in *other* lawsuits between the parties in determining whether an 'action' is subject to the public interest exception.") (emphasis in original).

[15] The phrase "if successful," means Non-Profits are "not required to present *evidence* demonstrating that [their] action would in fact" enforce important rights or confer significant benefits." *Tourgeman*, 222 Cal.App.4th at 1463 (emphasis in original). Because the Public Good Exemptions apply, the court does not need to consider whether Non-Profits have satisfied Rules 8 and 12(b) of the Federal Rules of Civil Procedure under the second prong of § 425.16(b)(1).

10

use of trust property," "encompassing not just navigation, commerce, and fishing, but also the public right to hunt, bathe or swim." *San Francisco Baykeeper, Inc. v. State Lands Com.*, 242 Cal.App.4th 202, 233 (2015). It is "flexible, accommodating changing public needs." *Id.* "[A]n increasingly important public use is the preservation of trust lands in their natural state, so that they may serve as ecological units for scientific study, as open space, and as environments which provide food and habitat for birds and marine life, and which favorably affect the scenery and climate of the area." *Id.*; *see Keep Our Mountains Quiet v. Cnty. of Santa Clara*, 236 Cal.App.4th 714, 739 (2015) ("The preservation of biological resources . . . [is] of interest to the general public"); *RiverWatch v. Cnty. of San Diego Dep't of Env't Health*, 175 Cal.App.4th 768, 782 (2009) ("litigation conferred 'a significant benefit to the environment and thus to the public at large.'").

Should Non-Profits prevail, this action would enforce important rights for the California public by requiring ExxonMobil to remedy and prevent its decades-long plastic pollution that has harmed California's natural resources and human health.

> iv.     *Private Enforcement is Necessary and Places a Disproportionate Financial Burden on Non-Profits*

Finally, private enforcement is necessary and places a disproportionate burden on Non-Profits.

The legislative history shows that the Public Good Exemptions were intended to provide private attorneys general, like Non-Profits, with the same protection against SLAPP motions as governmental prosecutors under Cal. Civ. Proc. Code § 425.16(d). "There are certain statutes that protect public health or consumers that allow for enforcement by private attorneys general, without an injured plaintiff." S.B. 515 Sen., 5/06/2003. "Conceptually, these are virtually identical to when the D.A. or Attorney General enforces those same statutes." *Id.* "Since the statute already exempts actions filed by public prosecutors, it should provide a parallel protection when people are acting only in the public interest as private attorneys general, and are not seeking any special relief for themselves." *Id.*; *compare* Cal. Civ. Code Proc. § 425.16(d) *with* Cal. Civ. Proc. Code § 425.17(b); *see Strathmann*, 210 Cal.App.4th at 501 ("[S]ection 425.17(b) was intended to exempt [] private attorney general actions from the anti-SLAPP statute."); *Lindsay*, 107 Cal.App.5th at 347 (similar).

That the California Attorney General has filed a lawsuit to vindicate similar rights does not

11

render the Non-Profits "unnecessary." Non-Profits should not lose the benefits of the Public Interest Exemption because the California Attorney General has filed a similar lawsuit. Likewise, the California Attorney General should not lose the benefit of § 425.16(d) because Non-Profits have filed a similar lawsuit. This particularly rings true since § 425.17(b) was designed to "provide a parallel protection when people are acting only in the public interest." S.B. 515 Sen., 5/06/2003. Non-Profits remain necessary as longtime experts in the field of plastics pollution who have a decades-long commitment to protecting the environment. Non-Profits filed this lawsuit in addition to the California General to help level the playing field and in furtherance of their core missions.

With respect to financial burden, a case is disproportionately burdensome if the "cost of the plaintiffs' legal victory transcends their personal interest." *Blanchard v. DIRECTV, Inc.*, 123 Cal.App.4th 903, 915-16 (2004). Non-Profits do not seek any relief that would be personal to them. Rather, they seek statewide injunctive relief for the UCL claim and statewide injunctive, abatement, and nuisance damages for the nuisance claim.

Non-Profits' lawsuit seeks to benefit Californians—not themselves. The Public Interest Exemption applies.

          2.      <u>The Commercial Speech Exemption Applies, Cal. Civ. Proc. Code § 425.17(c)</u>

The Commercial Speech Exemption applies when:

(1)     the cause of action is against a person primarily engaged in the business of selling goods or services, including but not limited to securities or financial instruments;

(2)     arises from a statement or conduct by that person consisting of representations of fact about that person's or a business competitor's business operations, goods, or services;

(3)     the statement or conduct was made either for the purpose of obtaining approval for, promoting, or securing sales, or commercial transactions in, the person's goods or services or in the course of delivering the person's goods or services; and

(4)     the intended audience for the statement or conduct

      (i)     is an actual or potential buyer or customer; or

      (ii)    arose out of or within the context of a regulatory approval process, proceeding, or investigation.

*See Simpson Strong-Tie*, 49 Cal. 4th at 30 (articulating four prongs of commercial exemption test). ExxonMobil's statements and conduct are squarely within the commercial speech exemption. *See*

*Brenton v. Metabolife Internat., Inc.*, 116 Cal.App.4th 679, 688 (2004) (§ 425.17(c) "appears to remove [plaintiff's] unfair practices claim from the types of claims against which an anti-SLAPP motion can be filed."); *Physicians Com. for Responsible Med. v. Tyson Foods Inc.*, 119 Cal.App.4th 120, 128 (2004) (defendant's misleading statements about its chicken products to promote the sale of those products "comes squarely within" commercial speech exemption).

> i.      *The Commercial Speech Exemption is not Limited to Comparative Advertising*

As a preliminary matter, ExxonMobil's contention that the Commercial Speech Exemption applies only to comparative advertising, (MTS at 15; 15 n.16), is incorrect for three reasons.

*First*, ExxonMobil's interpretation is contrary to the plain language of the statute, which applies the Commercial Speech Exemption to "that person's *or* a business competitor's business operations, goods, or services." Cal. Civ. Proc. Code § 425.17(c)(1) (emphasis added). Framed in the disjunctive, the exemption applies to representations of *either*: (1) ExxonMobil's "business operations, goods, or services;" *or* (2) its "business competitor's business operations, goods, or services." "The plain language and the legislative history each confirm that the statement or conduct giving rise to the cause of action must consist of factual representations about the speaker's (or a competitor's) goods, services, or business operations." *Simpson Strong-Tie*, 49 Cal.4th at 33.

*Second*, the cases that ExxonMobil rely on confirm that the California Supreme Court applies the Commercial Speech Exemption in the disjunctive. *See FilmOn.com*, 7 Cal.5th at 148 n.4 (exemption does not apply "because [defendant] was not making representations about its own business but [plaintiff's], and [plaintiff and defendant] were not competitors."); *Simpson Strong-Tie Co.*, 49 Cal.4th at 33 (same).

Moreover, the California Court of Appeals recently confirmed that the Commercial Speech Exemption is not restricted to comparative advertising. *FilmOn* does not "implicitly require courts to make a preliminary finding about whether the case involved 'comparative advertising.'" *WasteXperts, Inc. v. Arakelian Enters., Inc.*, 103 Cal.App.5th 652, 665 (2024), *review denied* (Sept. 25, 2024). "Rather than narrowing application of the exception to the single context of comparative advertising, given 'the Legislature's decision to explicitly require consideration of certain contextual factors—

like speaker, audience, and purpose,' application of the exception should be directed by its four statutory elements." *Six4Three, LLC v. Facebook, Inc.*, 330 Cal. Rptr. 3d 661, 673 (2025), *review filed* (Apr. 21, 2025).

*Third*, "the legislative history of section 425.17 indicates it was drafted to track constitutional principles governing regulation of commercial speech based upon guidelines discussed in [*Kasky v. Nike, Inc.*, 27 Cal.4th 939 (2002)]." *JAMS, Inc. v. Superior Ct.*, 1 Cal.App.5th 984, 994 (2016). "In doing so, it followed '*Kasky's* guidelines on commercial speech, focusing on the speaker, the content of the message, and the intended audience." *Id.* With respect to "content," "[c]ommercial speech routinely "'relates to a matter of significant public interest or controversy.'" *Serova v. Sony Music Ent.*, 13 Cal.5th 859, 875 (2022). "Many, if not most, products may be tied to public concerns including the environment, energy, economic policy, or individual health and safety." *Id.* "Yet even when commercial speech touches on important public issues, the State retains the power to ensure commercial information flows 'cleanly as well as freely.'" *Id.* "Thus, advertising that links a product to a current public debate, even an important one, is not immunized from regulation." *Id.*

Under the correct standard, ExxonMobil's speech falls within the Commercial Speech Exemption.

####        ii.    *ExxonMobil is Primarily Engaged in the Business of Selling Goods or Services*

ExxonMobil is "the world's largest producer of polymers to make single-use plastics," (Compl. ¶ 1), and is or has been involved in every stage of single-use plastic extraction, development, and sales. (*Id.* ¶¶ 36, 38; *see* MTS at 3). This prong is easily satisfied.

####        iii.    *ExxonMobil's Statements Concern Its <u>or</u> a Business Competitor's Operations, Goods, or Services*

ExxonMobil's statements concern its business operations, its goods or services, or a competitor's goods or services.

With respect to business operations, ExxonMobil brands itself as an environmentally conscious corporate citizen, *i.e.*, greenwashing. For example, in its May 17, 1990, ad in the *Los Angeles Times*, ExxonMobil said it "opened the country's first commercial plant to recycle

14

polystyrene foam products," "joined with seven other leading plastics manufacturers to form the National Polystyrene Recycling Company" and is a "founding member of the Council for Solid Waste Solutions." (Ex. 6; *see* Ex. 9 ("The Council for Solid Waste Solutions, an industry task force that includes Mobil, is working on increasing plastics recycling."); Ex. 10 ("[APC and SPI] have unified their state government affairs operations."); Ex. 11 (ExxonMobil is a member of the "American Chemistry Council" which "launched a program to inform the public of the many benefits of plastics, *Plastics Make it Possible*."); Ex. 13 (curriculum designed to "communicate the environmental responsibility of the chemical industry—particularly Exxon and Exxon Chemical."); Ex. 14 (ExxonMobil "was a co-founder of the National Polystyrene Recycling Company" and "helped establish the Partnership for Plastics Progress."); Ex. 15 (identifying Mobil Chemical Co. and Exxon Chemical Co. as "Directorate Members" of Plastics Recycling Foundation)).

ExxonMobil's greenwashing continues to this day: "We are helping to address the plastic waste challenge through advanced recycling." (Ex. 22).

With respect to goods and services, ExxonMobil brands its products as environmentally friendly. For example, in its October 2, 1983, ad in *The Daily Breeze*, ExxonMobil stated it "is a leader in plastics. Among other things, we make tough Hefty bags, Hefty disposable plates, egg cartons, a wide variety of films, heat-retaining 'clamshells' for fast foods, and we're a leader in manufacturing plastic bread bags that lock in freshness. If placed end-to-end, the three billion bread bags Mobil produces each year could encircle the earth 38 times." (Ex. 20; *see* Ex. 18 (ExxonMobil "included the additive in Hefty waste bags since June of last year in response to degradable products being marketed by competitors and strong consumer preference for such products.")).

Moreover, ExxonMobil's contention that the Commercial Speech Exemption applies only when the speech "promotes particular products" (MTS at 9, 10), is incorrect. Commercial speech routinely "relates to a matter of significant public interest or controversy," "despite not pertaining to specific products and despite sometimes appearing outside traditional advertising formats." *Serova*, 13 Cal.5th at 875. Indeed, given the ubiquity of ExxonMobil's polymers, plastic additives, and single-use plastics, (Compl. ¶¶ 43, 107, 108; Ex. 20 ("If placed end-to-end, the three billion bread bags Mobil produces each year could encircle the earth 38 times")), ExxonMobil does not need to identify

15

a particular branded product to promote its business, goods, or services to the public.

Finally, with respect to its competitor's business operations, goods, or services, ExxonMobil stated that its polymers and single-use plastic "are not only ecologically sound, but they offer a number of environmental benefits compared with" "paper, glass, metal, fabric, or wood." (Ex. 1 at 1; *see* Ex. 5 (comparing plastic waste disposal to paper and wood disposal); Ex. 7 (ad to potential polystyrene recycling customers after McDonald's "switch[ed] from plastic foam to paper packaging for its hamburgers"); Ex. 21 (ExxonMobil newsletter that "plastic packaging uses less of our precious resources to make and transport than other materials like paper, glass, and steel")).

iv.    *ExxonMobil's Statements were Made to Obtain Approval for, Promote, or Secure Commercial Transactions in its Goods or Services*

ExxonMobil's statements were made to obtain approval for its products with potential regulators, promote sales of its single-use plastic products to consumers, and secure commercial transactions of its polymers to makers of single-use plastic products.

With respect to "approval for," ExxonMobil's internal memorandum highlights the company's activities "reprocess[ing] post-consumer foam," operating a "grocery sack recycling program now involving 4,000 stores," and selling "Tucker Housewares and Hefty lines of containers and bags for community recycling" to urge against "banning products, requiring biodegradability and mandating extensive recycling requirements." (Ex. 17).

With respect to "promoting sales," ExxonMobil explained that, to secure sales, it "should tell our customers about the environmental aspects of our products, just as we tell them about other qualities," (Exs. 1-3), and it launched a program that "focus[es] on the areas of greatest interest to consumers and of greatest importance to ACC's member companies," including "smart packaging, transportation, fashion, homes, medicine, safety, and environmental sustainability." (Ex. 11 at 1-2).

With respect to "commercial transactions," ExxonMobil explained to its investors that it was "improving environmental performance of our products," (Ex. 4), and explained to makers of single-use plastic products that it was "[d]eveloping plastic solutions that enable our customers to make products that society can more easily recycle." (Ex. 22); *see Demetriades v. Yelp, Inc.*, 228 Cal.App.4th at 312 ("Although Yelp only receives direct revenue from those businesses that advertise,

16

such businesses would not be advertising on Yelp without the potential benefit they could obtain from users' reviews and without assurances that potential patrons of their business establishments would be reading only reliable reviews.").

v.     *ExxonMobil's Intended Audience were Actual or Potential Customers*

ExxonMobil's own statements show that its intended audience were potential customers of its products, including "merchants and packers who use foam packaging material," (Ex. 3), "adult audiences (employees, community groups, teachers, etc.)," (Ex. 13 at 1), students, (*id.*; Ex. 21), and single-use plastic manufacturers. (Ex. 22) (advanced recycling is aimed at "[d]eveloping plastic solutions that enable our customers to make products that society can more easily recycle.").

vi.     *ExxonMobil's Statements Arose out of or Within the Context of a Regulatory Approval Process, Proceeding, or Investigation*

ExxonMobil's reliance on *DuPont Merck Pharm. Co. v. Superior Ct.*, 78 Cal.App.4th 562 (2000), *as modified* (Jan. 25, 2000), for the proposition that its lobbying activities fall outside the commercial speech exemption, (MTS at 10, 13, 14), is unfounded. Section 425.17 was enacted to "overturn [the] DuPont Merck case." S.B. 515 Sen., 5/06/2003. Specifically, § 425.17(c)(2) provides that the Commercial Speech Exemption applies to a "statement or conduct [that] arose out of or within the context of a regulatory approval process, proceeding, or investigation." "[L]obbying activities to gain regulatory authority to market a product [] can be viewed in the context of its offering in furtherance of business considerations and may be characterized as commercial speech which does not enjoy full constitutional first amendment protection." S.B. 515 Sen., 5/06/2003; *see FilmOn.com Inc.*, 7 Cal.5th at 148.

Here, Exhibit 17[16] is ExxonMobil's internal memorandum concerning regulatory approval of its polymers and single-use plastic products. Specifically, ExxonMobil urges against "banning products, requiring biodegradability and mandating extensive recycling requirements" in light of its, among other things, "joint venture to reprocess post-consumer foam," and "Tucker Housewares and Hefty lines of containers and bags for community recycling." (*Id.* at 1).

---

[16] Tellingly, ExxonMobil does not assert that its challenged speech constitutes lobbying or legislative activities under §§ 425.16(e)(1) or 425.16(e)(2). *See infra* at § V.B.1.ii.

17

For decades, ExxonMobil has referenced plastics waste disposal, recycling, and sustainability to promote itself as an environmentally conscious corporate citizen. ExxonMobil brands itself this way to sell even more of its plastic products. The Commercial Speech Exemption applies.

**B.    The Anti-SLAPP Statute Does not Apply, Cal. Civ. Proc. Code § 425.16**

Because each of the two Public Good Exemptions apply, the Court does not need to engage in the anti-SLAPP analysis set forth under § 425.16. *See Glob. Plasma Sols., Inc. v. IEE Indoor Env't Eng'g*, 600 F.Supp.3d 1082, 1090 (N.D. Cal. 2021); *E.D.C. Techs., Inc. v. Seidel*, 225 F.Supp.3d 1058, 1066 (N.D. Cal. 2016). But even if the Court were to consider ExxonMobil's motion under § 425.16(b)(1), ExxonMobil has failed to satisfy its burden under the first prong, which provides that a "cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech . . . in connection with a public issue shall be subject to a special motion to strike." Cal. Civ. Proc. Code § 425.16(b)(1).

1.    ExxonMobil Fails to Satisfy the First Prong of the Anti-SLAPP Statute

i.    *ExxonMobil has Failed to Satisfy § 425.16(b)(1)*

With respect to a "cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech," Cal. Civ. Proc. Code § 425.16(b)(1), ExxonMobil is not the author of Exhibits 16, 19, 23, and 24. As ExxonMobil is not the "person" "act[ing]" in "furtherance of [its] right of petition or free speech," (Compl. ¶¶ 123, 126, and 144), these allegations do not fall within the ambit of the anti-SLAPP statute.

ii.    *ExxonMobil has Failed to Satisfy §§ 425.16(e)(1), (e)(2)*

ExxonMobil's motion to strike is replete with unfounded assertions that its challenged actions are "direct response[s] to proposed legislation," (MTS at 3), "petition[s] for reasonable regulations," (*id.* at 4), "lobby[ing to] public officials," and petitions to "convince regulators." (*Id.* at 9).

Yet ExxonMobil has not asserted that its challenged speech falls under §§ 425.16(e)(1) or 425.16(e)(2). Nor can it do so in reply. *L.A. Taxi Coop., Inc. v. The Indep. Taxi Owners Assn. of Los Angeles*, 239 Cal.App.4th 918, 926 n.7 (2015) (raising § 425.16(e)(2) for the first time in reply brief "forfeits" that argument).

Section 425.16(e)(1) includes: "any written or oral statement or writing made before a

18

legislative . . . or any other official proceeding." Section 425.16(e)(2) includes: "any written or oral statement or writing made in connection with an issue under consideration or review by a legislative . . or any other official proceeding authorized by law." "By requiring the communication to be in connection 'with *an issue* under consideration or review,'" § 425.16(e)(2) "contemplate[s] an ongoing—or, at the very least, immediately pending—official proceeding." *Rand Res., LLC v. City of Carson*, 6 Cal.5th 610, 627 (2019) (emphasis in original).

Here, ExxonMobil has not and cannot assert that any allegation or exhibit in the complaint arises from a "written or oral statement or writing made before [] an official proceeding" or "in connection with an issue under consideration or review [] by an official proceeding," contemporaneously or otherwise.

### iii.     *ExxonMobil has Failed to Satisfy § 425.16(e)(3)*

ExxonMobil makes passing reference to § 425.16(e)(3), (MTS at 10, 12, 13, 14, 21), which includes: "any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest."

However, Exhibits 10, 11, 13, 14, 17, and 21 were not made in "a place open to the public" or in a "public forum." Rather, these are ExxonMobil's internal memoranda and curricula, (Exs. 13, 17), or internal newsletters with limited distribution to shareholders "upon request." (Exs. 10, 11, 14, 21).

### iv.     *ExxonMobil has Failed to Satisfy § 425.16(e)(4)*

Principally, ExxonMobil asserts that its conduct is subject to anti-SLAPP protection under § 425.16(e)(4), which includes: "any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." ExxonMobil contends that all it must do is show that the challenged statements concern a "public issue" or an "issue of public interest." (MTS at 8; *see id.* at 8-16). Specifically, ExxonMobil contends, "[i]t is [] irrelevant whether certain statements [] have a commercial aspect—those statements constitute speech on indisputable issues of public concern, and are plainly protected under the anti-SLAPP statute." (*Id.* at 14). That is incorrect.

The California Supreme Court has "articulated a two-step inquiry for deciding whether the activity from which a lawsuit arises falls within section 425.16(e)(4)'s protection: first, we ask what

19

public issue or issues the challenged activity implicates, and second, we ask whether the challenged activity contributes to public discussion of any such issue." *Geiser v. Kuhns*, 13 Cal.5th 1238, 1243 (2022) (citing *FilmOn*, 7 Cal.5th at 149-150). Section 425.16(e)(4) "demands 'some degree of closeness' between the challenged statements and the asserted public interest." *FilmOn.com*, 7 Cal.5th at 150. "The fact that 'a broad and amorphous public interest' can be connected to a specific dispute is not sufficient to meet the statutory requirements." *Dyer v. Childress*, 147 Cal.App.4th 1273, 1280 (2007). ExxonMobil has entirely omitted the second step from its analysis.

ExxonMobil evades the second prong of the § 425.16(e)(4) inquiry because its statements constitute commercial speech—not a "public issue" or "an issue of public interest." "[E]ven if speech does not meet all elements of section 425.17, the commercial nature of the speech remains a relevant 'contextual cue' in determining whether it merits protection under the catchall provision" embodied in § 425.16(e)(4). *Xu v. Huang*, 73 Cal.App.5th 802, 814 (2021); *FilmOn.com*, 7 Cal.5th at 148 ("context matters under [§ 425.16(e)(4)], and commercial context is no exception."). "[T]he identity of the speaker, the intended audience, and the purpose of the [speech] informs the analysis under both section 425.17 *and* section 425.16." *Xu*, 73 Cal.App.5th at 814 (emphasis in original). "Conduct 'in furtherance of business considerations' is less likely to qualify as protected activity under the catchall provision." *Id.* at 818; *id.* at 819 (finding that all defendants' statements were in furtherance of "business considerations" and none were "worthy of anti-SLAPP protection.").

As set forth *supra* at § V.B.1, each of ExxonMobil's statements are commercial speech in furtherance of business considerations. Environmental sustainability is certainly a "public issue" of "public interest." But ExxonMobil's references to environmental sustainability are not aimed at furthering the public discourse on this topic. Rather, ExxonMobil brands itself as an environmentally conscious corporate citizen that "opened the country's first commercial plant to recycle polystyrene foam products," (Ex. 6), and is "[e]xpanding our advanced recycling capacity to help further broaden the range of plastics that can be recycled." (Ex. 22). Its statements are intended to convince the public that it "enable[s] our customers to make products that society can more easily recycle," (Ex. 22), which are "ecologically sound [and] offer environmental benefits compared with" "paper, glass, metal, fabric, or wood." (Ex. 1). This is because ExxonMobil has long been aware of "strong

consumer preference for such [environmentally friendly] products." (Ex. 18).

ExxonMobil has not met its prong one burden under §§ 425.16(e)(1), (e)(2), (e)(3), or (e)(4).

2.    <u>Non-Profits have Adequately Alleged Their Claims Under the Second Prong of the Anti-SLAPP Statute</u>

"If the moving party fails to satisfy the first prong [under § 425.16(b)(1)], the motion is properly denied without proceeding to second prong." *Durkin v. City & Cnty. of San Francisco*, 90 Cal.App.5th 643, 651 (2023), *review denied* (June 28, 2023).

ExxonMobil's motion to strike fails if "the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." Cal. Civ. Proc. Code § 425.16(b)(1); *Planned Parenthood Fed'n of Am.*, 890 F.3d at 834. For the reasons set forth in Non-Profits' concurrently filed opposition to ExxonMobil's motion to dismiss and for the reasons below, Non-Profits have more than asserted the legal sufficiency of its nuisance and UCL claims.

i.    *Non-Profits have Adequately Alleged Their Nuisance Claim*

ExxonMobil gives two reasons why Non-Profits' nuisance claim fails. Both lack merit.

*First*, ExxonMobil incorrectly claims that Non-Profits must allege it promoted its products for a "hazardous use." (MTS at 16; MTD at 9). Contrary to ExxonMobil's argument, a plaintiff can state a nuisance claim by, among other theories, alleging that defendant created a hazardous condition, assisted in creating a system that caused hazards, or promoted conduct that resulted in nuisance. *See e.g., People v. ConAgra Grocery Prods. Co.*, 17 Cal.App.5th 51, 91 (2017); *City & Cnty. of San Francisco v. Purdue Pharma L.P.*, 491 F.Supp.3d 610, 675-676 (N.D. Cal. 2020); *City of Modesto Redevelopment Agency v. Super. Court*, 119 Cal.App.4th 28, 40-41 (2004); *Ileto v. Glock Inc.*, 349 F.3d 1191, 1199, 1211, fn. 26 (9th Cir. 2003).

Here, Non-Profits have adequately alleged a nuisance claim by explaining in detail that ExxonMobil's affirmative conduct – misleading consumers, distributing billions of pounds of non-recyclable polymers, that never biodegrade, *etc.*,—has caused the hazardous condition. (Compl. ¶109) (ExxonMobil is the largest producer of single-use plastic waste, producing billions of pounds of single-use plastic polymers per year—at just one processing plant); *id.* ¶ 8 (ExxonMobil has known since the 1980s that recycling and other forms of disposal were not viable and that only 9%

21

of plastics are recycled, while less than 1% of certain plastics are recycled); *id.* ¶ 106 (despite knowing that plastics were not capable of safe disposal, "ExxonMobil misleadingly promoted the safe disposal and recyclability of its products to sell more virgin plastic polymers"); *id.* ¶ 117 (ExxonMobil knows that its plastic becomes pollution). These allegations adequately allege that ExxonMobil's affirmative conduct *causes* hazardous conditions in California. (*Id.* ¶¶ 3, 146-150; *see* Opp'n to MTD at § IV.A.1).

*Second*, ExxonMobil contends that Non-Profits' "entire causal theory of [its] nuisance liability for California's 'plastic pollution crisis' hinges on one allegation: that "[c]onsumers purchased more plastics made from virgin polymers than they otherwise would have." (MTS at 17).

But the causation element in nuisance claims "is satisfied if the conduct of a defendant is a substantial factor in bringing about the result." *ConAgra,* 17 Cal.App.5th at 101 (citing *Citizens for Odor Nuisance Abatement v. City of San Diego,* 8 Cal.App.5th 350, 359 (2017)). "'The substantial factor standard is a relatively broad one, requiring only that the contribution of the individual cause be more than negligible or theoretical. Thus, a force which plays only an 'infinitesimal' or 'theoretical' part in bringing about injury, damage, or loss is not a substantial factor, but a very minor force that does cause harm is a substantial factor.'" *ConAgra,* 17 Cal.App.5th at 102.

Here, Non-Profits have adequately alleged that ExxonMobil promoted and sold massive amounts of non-biodegradable, non-recyclable plastic for decades, while repeatedly pushing a misleading narrative on how to dispose of the plastic, which was a substantial factor in creating California's plastic pollution problem. (Compl. ¶¶ 4, 9, 45, 46, 109). ExxonMobil has known for decades that single-use plastic recycling wages a losing battle against the exponential increase in virgin plastic production each year. (*Id.* ¶ 44). Yet, ExxonMobil has deceptively marketed consumer products as having an environmental benefit, such as being biodegradable (*Id.* ¶ 12), or environmentally friendly because plastics will be "recycled." (*Id.* ¶ 119; s*ee id.* ¶¶ 128-29). Simultaneously, ExxonMobil has deflected blame for the plastic pollution crisis by convincing the public that recycling and litter prevention are the true solutions to ever-increasing plastic pollution. (*Id.* ¶137; *see* Opp'n to MTD at § IV.A.2).

/ /

NON-PROFITS' OPPOSITION TO EXXONMOBIL'S MOTION TO STRIKE (Cal. Civ. Proc. Code §§ 425.17; 425.16)
Case No. 3:24-CV-07288-RS

ii.    *Non-Profits have Adequately Alleged Their UCL Claim*

ExxonMobil gives three reasons why Non-Profits' UCL claim fails. These also lack merit.

*First*, ExxonMobil contends that Non-Profits "cannot allege a 'causal connection' between ExxonMobil's statements and their own alleged resource-diversion to fight plastic pollution." (MTS at 18). The California Supreme Court, however, doubted that the UCL "imports a proximate cause requirement from the substantive law of negligence into the test for UCL standing." *California Med. Assn. v. Aetna Health of California Inc.*, 14 Cal.5th 1075, 1096 (2023). But even if such a proximate causation test applies between ExxonMobil's "statements" and Non-Profits' resource diversion, Non-Profits' "decision to devote resources [] was not a supervening or superseding cause under the law of proximate causation if it were to apply." *Id.* at 1097. ExxonMobil misleadingly promoted the disposability and recyclability of its products to sell more virgin plastic polymers, and sold exorbitant amounts of non-biodegradable, non-recyclable plastic for decades. It was highly foreseeable that the public would alert Non-Profits, among the most prominent environmental experts in the nation, to divert resources independent of litigation costs in support of their long-standing missions to combat single-use plastic pollution. (*See* Opp'n to MTD at § IV.B.1).

*Second*, ExxonMobil's argument that the four-year statute of limitations has run on Non-Profits' UCL claim fares no better. (MTS at 18). "Under the continuing violation doctrine, a plaintiff's complaint will not be time-barred if the defendant's related wrongful acts continue into the statute of limitations time frame. As a consequence, the statute of limitations only begins to run [] upon the last act in a series of related wrongful acts." *Nat'l Fair Hous. All. v. A.G. Spanos Const., Inc.*, 542 F.Supp.2d 1054, 1061 (N.D. Cal. 2008). Here ExxonMobil's conduct continued into 2024, and likely continues to this day. (*See* Opp'n to MTD at § IV.B.1).

*Third*, ExxonMobil contends that Non-Profits do not adequately assert UCL claims under each of the three unlawful, unfair, and fraudulent prongs. (MTS at 18-21).

With respect to the "unlawful" prong, ExxonMobil contends, "[a]pplying basic interpretive principles to the statutes' plain text, the Complaint lacks any allegation that ExxonMobil deposited, placed, or permitted plastic (or anything else) to pass into the waters of the state." (MTS at 18). ExxonMobil's interpretation, however, is too narrow, as "'[l]aws providing for the conservation of

23

natural resources' [] should be construed liberally,'" *Watershed Enforcers v. Dep't of Water Res.*, 185 Cal.App.4th 969, 979 (2010), and in line with nuisance law. *Long Beach Unified School District v. Santa Catalina Isl. Co.*, 2023 WL 9001451, at *7 (C.D.Cal., 2023). (*See* Opp'n to MTD at § IV.B.2).

With respect to the "unfair" prong, ExxonMobil contends "the 'general policy' against environmental harm writ large is far too abstract to support UCL liability," and that Non-Profits nevertheless fail to "allege that ExxonMobil harms public trust resources, much less profits from such harms." (MTS at 19). The test for an "unfair" practice is "intentionally broad, thus allowing courts maximum discretion to prohibit new schemes to defraud." *Candelore v. Tinder, Inc.*, 19 Cal.App.5th 1138, 1155 (2018) (citing *Smith v. State Farm Mutual Automobile Ins. Co.*, 93 Cal.App.4th 700, 718-19 (2001)). If a business activity "offends an established public policy or . . . is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers," then it is unfair under the UCL. *Id*. "[A] practice may be deemed unfair even if not specifically proscribed by some other law." *Purdue Pharma L.P.*, 491 F.Supp.3d 610, 694 (citing *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal.4th 163, 180 (1999)) (rejecting Defendants argument that the City cannot state a claim under the UCL's unfair prong because prescription opioids "have a useful and legitimate medical purpose.")

Moreover, Non-Profits have alleged harms and profits from such harms to California's natural resources. In the complaint, Non-Profits allege that "[t]he virgin polymers that ExxonMobil produces enjoy massive economies of scale, while the price reflects none of the externalities, like safely managing discarded plastic or the injuries to people and the environment as a result of plastic pollution." (Compl. ¶ 53; *see* Opp'n to MTD at § IV.B.3).

With respect to the "fraudulent" prong, Non-Profits do not assert a fraudulent or misrepresentation claim under the UCL. (Compl. ¶¶ 232-236). ExxonMobil attempts to recharacterize the complaint as one asserting a fraud claim—but that is not accurate. *See Newtok Vill. v. Patrick,* 21 F.4th 608, 616 (9th Cir. 2021) ("A plaintiff is the master of his complaint and responsible for articulating cognizable claims."). The types of claims available under the UCL are "disjunctive, a business practice need only meet one of the three criteria to be considered unfair competition." *Morgan v. AT&T Wireless Servs., Inc.,* 177 Cal.App.4th 1235, 1253 (2009). Consequently,

24

ExxonMobil's argument that "Plaintiffs allege no actionable misstatements" is entirely misplaced. (*See* Opp'n to MTD at § IV.B.4).

### C. Non-Profits are Entitled to Attorney's Fees and Costs, Cal. Civ. Proc. Code § 425.16(c)(1)

"If the court finds that a special motion to strike is frivolous or is solely intended to cause unnecessary delay, the court shall award costs and reasonable attorney's fees to a plaintiff prevailing on the motion, pursuant to Section 128.5." Cal. Civ. Proc. Code § 425.16(c)(1). *See L.A. Taxi Coop., Inc.*, 239 Cal.App.4th at 933 (awarding attorney's fees and costs when moving party had no "reasonable basis" to believe that Public Good Exemptions did not apply).

ExxonMobil, a large multi-national corporation, had no reasonable basis for filing an anti-SLAPP motion against four well-known environmental non-profits asserting claims solely on behalf of the California public for its commercial speech. *Both* the Public Interest and Commercial Speech Exemptions squarely apply in this action, and ExxonMobil had no reasonable basis to assert its anti-SLAPP motion other than to delay prosecution of the merits of this action. Moreover, ExxonMobil's attempts to compound its frivolousness and delay by filing the Texas lawsuit against Non-Profits further warrant sanctions in this action.

## VI. CONCLUSION

For the reasons above and for the reasons set forth in the concurrently filed opposition to the motion to dismiss, ExxonMobil's special motion to strike under Cal. Civ. Proc. Code § 425.16 should be denied in its entirety.

Dated: May 1, 2025

Respectfully submitted,
COTCHETT, PITRE & MCCARTHY, LLP

*/s/ Grace Y. Park*
NIALL P. McCARTHY
TYSON C. REDENBARGER
GRACE Y. PARK
*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I, Grace Y. Park, certify that on May 1, 2025, this document entitled Non-Profits' Opposition to ExxonMobil's Special Motion to Strike was filed electronically in the Court's ECF; thereby upon completion the ECF system automatically generated a "Notice of Electronic Filing" as service through CM/ECF to registered e-mail addresses of parties of record in this case.

 /s/ Grace Y. Park
GRACE Y. PARK

Non-Profits' Opposition to ExxonMobil's Motion to Strike (Cal. Civ. Proc. Code §§ 425.17; 425.16)
Case No. 3:24-CV-07288-RS