DAWN SESTITO (S.B. #214011)
dsestito@omm.com
MATTHEW R. COWAN (S.B. #281114)
mcowan@omm.com
O'MELVENY & MYERS LLP
400 South Hope Street, 19th Fl.
Los Angeles, California 90071-2899
Telephone:    (213) 430-6000
Facsimile:    (213) 430-6407

DAVID J. LENDER (*pro hac vice*)
david.lender@weil.com
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153-0119
Telephone:    (212) 310-8153
Facsimile:    (212) 310-8007

*Counsel for Defendant Exxon Mobil Corporation*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SIERRA CLUB, INC.; SURFRIDER FOUNDATION, INC.; HEAL THE BAY, INC.; and BAYKEEPER, INC.; each a California Nonprofit,<br><br>Plaintiffs,<br><br>v.<br><br>EXXONMOBIL CORPORATION, a New Jersey Corporation, and DOES 1-10,<br><br>Defendants. | Case No. 3:24-cv-07288-RS<br><br>**DEFENDANT EXXON MOBIL CORPORATION'S REPLY IN SUPPORT OF SPECIAL MOTION TO STRIKE (CAL. CODE CIV. PROC. § 425.16)**<br><br>**Hearing Date**:    July 17, 2025<br>**Time**:    1:30 p.m.<br>**Location:**    Courtroom 3, 17th Fl.<br><br>Hon. Richard Seeborg |

**TABLE OF CONTENTS**

Page

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................ 1

I.    INTRODUCTION ................................................................................................. 1

II.   ARGUMENT ........................................................................................................ 2

    A.    Step 1:  Plaintiffs Fail To Rebut ExxonMobil's Prima Facie Showing That Plaintiffs' Claims Arise From Protected Petitioning And Speech Activities. ................................................................................ 2

        1.    The 12 Allegations All Arise From Protected Conduct. ................. 2

        2.    The Public-Interest Exemption Does Not Apply. ......................... 11

    B.    Step 2:  Plaintiffs Fail To Show *Any* Probability Of Success On The Merits. ......................................................................................... 13

        1.    Plaintiffs Show No Probability Of Success On Their Nuisance Claim. ............................................................................... 13

        2.    Plaintiffs Show No Probability Of Success On Their UCL Claim. ...................................................................................... 14

III.  CONCLUSION .................................................................................................. 15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aryeh v. Canon Bus. Sols., Inc.*,
  55 Cal. 4th 1185 (2013) ............................................................................................. 15

*Baral v. Schnitt*,
  1 Cal. 5th 376 (2016) ................................................................................................... 2

*Batis v. Dun & Bradstreet Holdings, Inc.*,
  106 F.4th 932 (9th Cir. 2024) .................................................................................... 13

*Bernardo v. Planned Parenthood Fed'n of Am.*,
  115 Cal. App. 4th 322 (2004) ................................................................................. 5, 7

*Brenton v. Metabolife Int'l, Inc.*,
  116 Cal. App. 4th 679 (2004) ...................................................................................... 5

*Cal. Med. Assn. v. Aetna Health of Cal. Inc.*,
  14 Cal. 5th 1075 (2023) ............................................................................................. 14

*City of Modesto Redev. Agency v. Super. Ct.*,
  119 Cal. App. 4th 28 (2004) ...................................................................................... 14

*City of Montebello v. Vasquez*,
  1 Cal. 5th 409 (2016) ................................................................................................... 4

*City of San Diego v. U.S. Gypsum Co.*,
  30 Cal. App. 4th 575 (1994) ...................................................................................... 14

*Club Members for an Honest Election v. Sierra Club*,
  45 Cal. 4th 309 (2008) ............................................................................................... 13

*Contemp. Servs. Corp. v. Staff Pro*,
  152 Cal. App. 4th 1043 (2007) .................................................................................... 7

*Dean v. Friends of Pine Meadow*,
  21 Cal. App. 5th 91 (2018) .......................................................................................... 9

*FilmOn.com Inc. v. DoubleVerify Inc.*,
  7 Cal. 5th 133 (2019) ............................................................................................... 3, 4

*Hawran v. Hixson*,
  209 Cal. App. 4th 256 (2012) ...................................................................................... 7

*Hodsdon v. Mars, Inc.*,
  891 F.3d 857 (9th Cir. 2018)....................................................................................... 15

*Howard Jarvis Taxpayers Ass'n v. Powell*,
  105 Cal. App. 5th 955 (2024) .................................................................................... 12

*Hu & Assocs., LLC v. New Life Senior Wellness Ctr., LLC*,
  2017 WL 10591754 (C.D. Cal. July 7, 2017)............................................................. 5

*In re R.M.J.*,
  455 U.S. 191 (1982)...................................................................................................... 13

*Indus. Waste & Debris Box Serv., Inc. v. Murphy*,
  4 Cal. App. 5th 1135 (2016) ........................................................................................ 3

*People ex rel. Strathmann v. Acacia Rsch. Corp.*,
  210 Cal. App. 4th 487 (2012) ............................................................................... 12, 13

ii

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*Physicians Comm. for Responsible Med. v. Tyson Foods Inc.*,
   119 Cal. App. 4th 120 (2004) .................................................................................. 5

*Sandlin v. McLaughlin*,
   50 Cal. App. 5th 805 (2020) ............................................................................. 4, 12

*Serova v. Sony Music Entm't*,
   13 Cal. 5th 859 (2022) ........................................................................................... 6

*Simpson Strong-Tie Co. v. Gore*,
   49 Cal. 4th 12 (2010) ......................................................................................... 4, 7

*Stewart v. Rolling Stone LLC*,
   181 Cal. App. 4th 664 (2010) ................................................................................ 3

*Sunset Millenium Assocs., LLC v. LHO Grafton Hotel, L.P.*,
   146 Cal. App. 4th 300 (2006) ................................................................................ 5

*Tourgeman v. Nelson & Kennard*,
   222 Cal. App. 4th 1447 (2014) ............................................................................ 12

*UCP Int'l Co. Ltd. v. Balsam Brands Inc.*,
   420 F. Supp. 3d 966 (N.D. Cal. 2019) .............................................................. 4, 5

*Wilbanks v. Wolk*,
   121 Cal. App. 4th 883 (2004) ................................................................................ 3

*Xu v. Huang*,
   73 Cal. App. 5th 802 (2021) ............................................................................. 3, 4

*Xu v. Yamanaka*,
   2014 WL 342271 (N.D. Cal. Jan. 30, 2014) ......................................................... 5

**Statutes**

Cal. Civ. Code § 3491 .................................................................................................. 13

Cal. Civ. Code § 3493 .................................................................................................. 13

Cal. Code Civ. Proc. § 425.16 (e)(3)-(4)..................................................................... 2, 8

Cal. Code Civ. Proc. § 425.16(b)(1) .................................................................... 2, 3, 8, 9

Cal. Code Civ. Proc. § 425.16(d) ................................................................................ 12

Cal. Code Civ. Proc. § 425.17(b) ................................................................................ 12

Cal. Code Civ. Proc. § 425.17(b)(1) ............................................................................ 11

Cal. Code Civ. Proc. § 425.17(b)(3) ............................................................................ 11

Cal. Code Civ. Proc. § 425.17(c) .................................................................................. 8

Cal. Code Civ. Proc. § 425.17(c)(1).......................................................................... 5, 6, 7

Cal. Code Civ. Proc. § 425.17(c)(2)............................................................................... 7

Cal. Code Civ. Proc. § 731............................................................................................ 13

DEFENDANT'S REPLY ISO SPECIAL MOTION TO STRIKE
NO. 3:24-CV-07288-RS

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

There is no dispute that Plaintiffs' claims challenge ExxonMobil's speech and petitioning on issues concerning plastics, recycling, and pollution, which have been topics of widespread debate and legislation for decades.  Nor is there any dispute that ExxonMobil's statements on these issues were entirely truthful—Plaintiffs have now abandoned their claim that ExxonMobil made "actionable misstatements."  Dkt. 34 at 21.  At bottom, then, this lawsuit seeks to punish ExxonMobil for expressing viewpoints that Plaintiffs do not like.  The anti-SLAPP statute was designed to prevent exactly this type of attack on the exercise of First Amendment rights.

As the anti-SLAPP statute requires, ExxonMobil has made a prima facie showing that the 12 allegations underlying Plaintiffs' claims arise from protected speech and petitioning conduct.  The burden is now on Plaintiffs to rebut that showing as to all 12 allegations ("Step 1") or establish a probability of prevailing on the merits of their claims ("Step 2").  Plaintiffs have done neither.  Instead, Plaintiffs take a scattershot approach, cherry-picking language from dozens of documents—most of which are not even challenged in their Complaint or ExxonMobil's Motion—to argue that ExxonMobil's speech as a whole is unprotected.

That is not how the anti-SLAPP statute works.  The Court is required to evaluate the 12 allegations that underlie Plaintiffs' claims and are challenged in ExxonMobil's Motion—it need not, and should not, consider extraneous materials cited in the Opposition.[1]  ExxonMobil accordingly addresses below Plaintiffs' scattershot arguments in the appropriate anti-SLAPP framework.  Section II.A.1 walks through the 12 allegations and demonstrates that each one (a) challenges protected conduct and (b) falls outside the narrow confines of the commercial-speech exemption.  Section II.A.2 addresses Plaintiffs' bold and erroneous assertion that their lawsuit is immune from anti-SLAPP scrutiny under the public-interest exemption—which has no application where, as here, Plaintiffs seek compensatory damages and the Attorney General has filed parallel claims.  Section III explains that Plaintiffs have shown no probability of success on the merits because their nuisance and UCL claims fail at the threshold and as a matter of law.

---

[1] These include Exhibits 2-3, 8-19, 21, and 23 (the "Extraneous Exhibits").

## II.    ARGUMENT

### A.    Step 1:  Plaintiffs Fail To Rebut ExxonMobil's Prima Facie Showing That Plaintiffs' Claims Arise From Protected Petitioning And Speech Activities.

#### 1.    The 12 Allegations All Arise From Protected Conduct.

Plaintiffs' claims boil down to 12 allegations—contained in Paragraphs 113-15, 120, 123-27, 140, 142, and 144—that ExxonMobil misled the public about the dangers of single-use plastics by lobbying against plastics-related regulations and making statements about the environmental benefits of plastics, mechanical recycling, and advanced recycling.[2]  The Opposition strays far beyond those 12 allegations, citing superfluous materials that have no bearing on Plaintiffs' claims or ExxonMobil's Motion.  The task before the Court is to evaluate the 12 allegations challenged in the Motion—and only those allegations—and determine which ones arise from acts in furtherance of ExxonMobil's rights of petition or free speech.  *See* Cal. Code Civ. Proc. § 425.16(b)(1), (e)(3)-(4); *Baral v. Schnitt*, 1 Cal. 5th 376, 393 (2016) ("courts may rule on plaintiffs' specific claims of protected activity" even where "mixed with assertions of unprotected activity").  As explained below, all 12 allegations arise from protected conduct—and none of them fall within the narrow commercial-speech exemption.

**Paragraphs 113 and 115** challenge ExxonMobil's historical statements concerning the environmental advantages of foam and plastic vis-à-vis other materials—e.g., statements that foam and plastic take up less space in landfills and reduce transportation costs because they are lighter.  Compl. ¶¶ 113, 115.  In support of these allegations, the Opposition cites:  (a) a 1971 pamphlet distributed via press release that responds to claims by "critics" about the environmental benefits of foam containers, Ex. 1 at 3, 5, and (b) a 2005 Corporate Citizen Report that describes ExxonMobil's environmental policy positions and goals, Ex. 4 at 3.[3]

*Sections 425.16(b)(1) and (e)(3).*  As set forth in the Motion, the statements challenged in Paragraphs 113 and 115 fall under Sections 425.16(b)(1) and (e)(3) of the anti-SLAPP statute.  Those sections protect "any act" in furtherance of a defendant's right of petition or free speech in

---

[2] ExxonMobil does not oppose Plaintiffs' request for consideration of documents actually referenced in the Complaint under the doctrine of incorporation by reference.  Dkt. 35-1.

[3] Plaintiffs also cite two Extraneous Exhibits:  a statement by Society of the Plastics Industry— *not* ExxonMobil (Ex. 2), and a press release that describes the 1971 pamphlet (Ex. 3).

connection with a public issue, Cal. Code Civ. Proc. § 425.16(b)(1), including any statement "made in a place open to the public," *id.* § 425.16(e)(3). Plaintiffs *do not dispute* that those sections cover Paragraphs 113 and 115—nor can they dispute that, since these were public statements made in the context of an ongoing debate over the country's "solid waste problem" and plastics-related policies and legislation. Ex. 1 at 5; *see* Mot. at 4 n.2 (summarizing plastics-related legislation in California throughout the decades).

*Section 425.16(e)(4).* Although the Court need not reach the issue, these statements are also protected under the anti-SLAPP statute's catch-all provision, Section 425.16(e)(4), which applies to "any other conduct in furtherance of the exercise of the constitutional right of petition or … free speech." Plaintiffs contend that Section 425.16(e)(4) imposes a more exacting standard than Sections 425.16(b)(1) and (e)(3), and that ExxonMobil cannot meet that standard because the statements in Exhibit 1 have a commercial aspect. Opp. at 20. But Plaintiffs have *no response* to the cases cited in ExxonMobil's Motion, which hold that even statements with a commercial aspect are protectable under Section 425.16(e)(4) where, as here, they concern an issue of public importance. *See Indus. Waste & Debris Box Serv., Inc. v. Murphy*, 4 Cal. App. 5th 1135, 1150 (2016) (consultant's for-profit report); *Wilbanks v. Wolk*, 121 Cal. App. 4th 883, 894, 898-901 (2004) (author's statements to promote books); *accord Stewart v. Rolling Stone LLC*, 181 Cal. App. 4th 664, 678 (2010) (no "authority for the proposition that commercial speech is categorically disentitled to protection under the anti-SLAPP statute").[4]

Indeed, Plaintiffs' own cited authorities confirm that "[s]ome commercially oriented speech will, in fact, merit anti-SLAPP protection." *FilmOn.com Inc. v. DoubleVerify Inc.*, 7 Cal. 5th 133, 140 (2019). In those cases, the anti-SLAPP statute did not apply because the challenged statements were made for an entirely commercial purpose in an entirely private setting. *Id.* (confidential reports sold to private companies for marketing research); *Xu v. Huang*, 73 Cal. App. 5th 802, 806 (2021) (statements made by insurance agent to competitor's customers in private setting). Here, the challenged statements were made to the public in response to "critics"

---

[4] Nor do Plaintiffs have any response to cases reaching the same conclusion under Section 425.16(e)(3). Mot. at 13-14 (citing *Vess* and *ComputerXpress*).

and in the context of an ongoing policy debate concerning plastics. Ex. 1 at 3, 5. These statements are plainly protected under the anti-SLAPP statute, even if they resulted in some commercial benefit to ExxonMobil or its predecessors.

*Commercial Speech Exemption.* Nor are the statements in Paragraphs 113 and 115 subject to the commercial-speech exemption, as Plaintiffs suggest. "Unlike the anti-SLAPP statute, which is 'construed broadly,'" its exemptions must be "'narrowly construed,'" *Sandlin v. McLaughlin*, 50 Cal. App. 5th 805, 818 (2020) (quoting *City of Montebello v. Vasquez*, 1 Cal. 5th 409, 419-20 (2016)—and Plaintiffs "bear the burden of proving each of [their] elements." *Xu*, 73 Cal. App. 5th at 813 (citing *Simpson Strong-Tie Co. v. Gore*, 49 Cal. 4th 12, 22, 26 (2010)).

As an initial matter, Plaintiffs have no response to the line of cases holding that the exemption applies only to pure comparative advertising where (unlike here) one party compares its goods or services to a competitor's. Mot. at 15 & n.16 (collecting cases). Despite Plaintiffs' suggestion to the contrary, the California Supreme Court has not addressed the split of authority on this issue; *FilmOn.com* observes that Section 425.17(c) "exempts 'only a subset of commercial speech'—specifically, comparative advertising." 7 Cal. 5th at 147; *see Simpson*, 49 Cal. 4th at 33 (Section 425.17(c) applies to "cases involving comparative advertising"). This reading is consistent with the Court's directive that the commercial-speech exemption be "narrowly construed." *City of Montebello*, 1 Cal. 5th at 419-20. Plaintiffs do not allege that *any* challenged statement constitutes comparative advertising, which should end this Court's analysis.[5]

Even if the commercial-speech exemption were to extend beyond the realm of comparative advertising, Plaintiffs have not satisfied their burden to establish that it applies to the statements challenged in Paragraphs 113 and 115. Among other reasons, the exemption only applies to speech made "for the purpose of obtaining approval for, promoting, or securing sales or leases of, or commercial transactions in, the person's goods or services[.]" Cal. Code Civ. Proc.

---

[5] Plaintiffs argue in passing that Exhibits 1, 5, 7, and 21 "compare" plastic to other materials, Opp. at 16, but that is a far cry from comparative advertising, in which the speaker compares its specific goods or services to those of a specific competitor. *See UCP Int'l Co. Ltd. v. Balsam Brands Inc.*, 420 F. Supp. 3d 966, 977 (N.D. Cal. 2019) (speaker named competitor and called their artificial trees "bad imitations" and "copies" of speaker's own products).

§ 425.17(c)(1).[6] As discussed above, the challenged statements were made not for the purpose of promoting sales or commercial transactions, but to respond to public criticism and participate in the public debate concerning plastics-related issues. *Supra* at 3-4.

Unlike classic commercial speech, the 1971 pamphlet and 2005 Corporate Citizen Report do not direct consumers to purchase ExxonMobil's products, *cf. UCP*, 420 F. Supp. 3d at 977 ("If you are considering purchasing a Flip Tree, I hope you will purchase it from [defendant]"), or propose a commercial transaction. *See Bernardo v. Planned Parenthood Fed'n of Am.*, 115 Cal. App. 4th 322, 344 (2004) (holding, under broader *Kasky* doctrine, that statements expressing defendant's "positions on disputed scientific and medical issues of public interest" were not commercial because "none ... proposed a commercial transaction"). And the fact that these statements may have some commercial aspect does not transform them from an exercise of ExxonMobil's First Amendment rights to commercial speech. *Supra* at 3-4; *Hu & Assocs., LLC v. New Life Senior Wellness Ctr., LLC*, 2017 WL 10591754, at *12 (C.D. Cal. July 7, 2017) (fact that statement "could have" promotional effect not sufficient); *Sunset Millenium Assocs., LLC v. LHO Grafton Hotel, L.P.*, 146 Cal. App. 4th 300, 313 (2006) (hotel's speech expressing environmental concerns about competitor's expansion project was not commercial).

**Paragraph 114** challenges ExxonMobil's historical statements discussing the environmental benefits of plastic and encouraging Americans to recycle plastic waste. Compl. ¶ 114. In support of these allegations, the Opposition cites: (a) the 1971 pamphlet addressed above, (b) a Mobil op-ed from 1988 titled *Truth, fiction, and solid waste*,[7] which was made in

---

[6] Plaintiffs' reliance on the broader commercial-speech doctrine articulated in *Kasky*, Opp. at 14, is unavailing. "[U]nlike the commercial speech issues discussed in *Kasky*, the commercial speech exception here is specifically codified in the [anti-SLAPP] statute and has its own meaning and exceptions." *Xu v. Yamanaka*, 2014 WL 342271, at *3 (N.D. Cal. Jan. 30, 2014).

Plaintiffs' citation to *Brenton* and *Tyson* is likewise misplaced. The commercial-speech exemption was enacted during the pendency of those appeals, and the courts considered only whether the exemption was enforceable and retroactive. *Brenton v. Metabolife Int'l, Inc.*, 116 Cal. App. 4th 679, 688 (2004); *Physicians Comm. for Responsible Med. v. Tyson Foods Inc.*, 119 Cal. App. 4th 120, 128 (2004). Neither case involved an analysis of the exemption's factors—which, as set forth below, weigh decidedly against application of the exemption in this case.

[7] The Complaint refers to the *New York Times* versions of Exhibits 5, 6, and 20, Comp. ¶¶ 114, 127, but the Opposition attaches versions allegedly published in the *Los Angeles Times* and *Daily Breeze*—presumably in an effort to establish a basis for personal jurisdiction. There is no such basis, as explained in ExxonMobil's concurrently filed motion to dismiss reply ("MTD Reply").

DEFENDANT'S REPLY ISO SPECIAL MOTION TO STRIKE
NO. 3:24-CV-07288-RS

direct response to a newspaper column by Sylvia Porter "in the debate over the country's solid waste problem," Ex. 5, and (c) a Mobil op-ed from 1990 titled *Recycling: The momentum grows*, which encouraged Americans to help resolve "the country's nagging solid waste problem … by participating in the recycling efforts established by companies and communities alike," Ex. 6.

Again, Plaintiffs *do not dispute* that these statements are protected under Sections 425.16(b)(1) and 425.16(e)(3) of the anti-SLAPP statute, and for good reason:  as the statements themselves confirm, they were made in the context of a public "debate over the country's solid waste problem," and in direct response to critical commentary, at a time when states across the country were considering plastics-related legislation.  Exs. 5, 6.  And although the Court need not reach the issue, these statements are also protected under Section 425.16(e)(4)'s catch-all provision for the reasons discussed above.  *See supra* at 3-4.  The anti-SLAPP statute protects ExxonMobil's freedom to speak on matters of public concern and to advocate for reasonable recycling measures—just as it has protected Plaintiffs' right to do the same.

The challenged statements in the op-eds are not subject to the commercial-speech exemption.  Opp. at 15, 16.  Even assuming that the exemption applies beyond comparative advertising, *but see supra* at 4, Plaintiffs cannot satisfy their burden to establish *any* of the commercial speech factors.  First, the challenged statements are not "representations of fact about [ExxonMobil's] or a business competitor's business operations, goods, or services."  *See* Cal. Code Civ. Proc. § 425.17(c)(1).  Plaintiffs' arguments to the contrary are unavailing:

- Plaintiffs' assertion that ExxonMobil "does not need to identify a particular branded product to promote its business, goods, or services" because its products are "ubiquitous," Opp. at 15-16, is erroneous, and contradicts the plain language of Section 425.17(c)(1).[8]
- Plaintiffs claim that the 1988 op-ed "compar[es] plastic waste disposal to paper and wood disposal," Opp. at 16, but this vague statement hardly qualifies as a factual representation about a competitor's goods.  *See supra* n.5.

---

[8] Plaintiffs' reliance on *Serova v. Sony Music Entm't*, 13 Cal. 5th 859, 876 (2022), is misplaced. That case was decided under the inapplicable *Kasky* test; here, Section 425.17(c) requires a specific "representation of fact" about operations, goods, or services.  *Supra* n.6.

6

- Plaintiffs' contention that portions of the 1990 op-ed *not* challenged in the Complaint might qualify as factual representations, Opp. at 15, is both inaccurate and irrelevant. If the challenged statement itself giving rise to the cause of action does not include qualifying factual representations, it is not sufficient to satisfy § 425.17(c)(1) even if "accompanied" by statements that do contain such representations. *Simpson*, 49 Cal. 4th at 31-33; *accord Hawran v. Hixson*, 209 Cal. App. 4th 256, 272-73 (2012).

Second, the challenged statements were made not to promote sales, Cal. Code Civ. Proc. § 425.17(c)(1), but to respond to critics as part of the ongoing public debate concerning plastics and to encourage Americans to recycle. *See supra* at 3-4; *Contemp. Servs. Corp. v. Staff Pro*, 152 Cal. App. 4th 1043, 1054 (2007) (email sent to customers "to 'set the record straight' with regard to plaintiffs' allegations … and not to obtain approval for, promote, or secure business" not commercial speech). There is no call-to-action to consumers or proposed commercial transaction, and the mere fact that the statements may have had a commercial benefit does not transform them into commercial speech. *See supra* at 3-4.

Third, these statements do not target ExxonMobil's customers, *see* Cal. Code Civ. Proc. § 425.17(c)(2)—rather, they were made in op-eds published in national newspapers and intended for a broad audience. *See Bernardo*, 115 Cal. App. 4th at 349 (holding, even under broader *Kasky* doctrine, that website statements "were not directed to any particular audience").

**Paragraph 120** challenges a 1989 statement by the National Polystyrene Recycling Company ("NPRC") that "[r]ecyling polystyrene is a highly automated and efficient process." Compl. ¶ 120; Ex. 7.[9] As set forth in the Motion, statements by trade associations like NPRC are not attributable to members and cannot form the basis for liability here. Mot. at 12. Plaintiffs have no response to this, or to the established proposition that the First Amendment protects both an individual's freedom to associate and a trade association's right to speak and petition. *See id.*

Even if the challenged statement could be attributed to ExxonMobil, it would fall directly within the scope of the anti-SLAPP statute, which protects ExxonMobil's freedom to speak on matters of public concern and advocate for reasonable recycling measures. *See* Cal. Code Civ.

---

[9] The Opposition also cites an extraneous news article (Ex. 8) that should be disregarded.

DEFENDANT'S REPLY ISO SPECIAL MOTION TO STRIKE
NO. 3:24-CV-07288-RS

Proc. § 425.16(b)(1), (e)(3)-(4).  Plaintiffs do not dispute that the challenged statement is protected under Sections 425.16(b)(1) and 425.16(e)(3), and it would also be encompassed by Section 425.16(e)(4)'s catch-all provision.  *Supra* at 3-4.

Nor does the challenged statement constitute commercial speech.  It is an informational document distributed to the general public by NPRC.  It is not comparative advertising, contains no factual representations about ExxonMobil's or any competitor's business operations, goods, or services, and was not made for purposes of promoting sales of ExxonMobil's products to customers.  *Supra* at 4, 6-7; Cal. Code Civ. Proc. § 425.17(c).

**Paragraphs 123, 124, and 125** allege that ExxonMobil campaigned to "convince the public" and "regulators" that "single-use plastic was environmentally friendly," Compl. ¶ 123, including by "lobby[ing] regulators," *id.*, "lobbying ... Congress," *id.* ¶ 125, and supporting "trade associations' abilities to 'unif[y] their state government affairs operations'" and "'[s]peak with one voice on important policy issues,'" *id.* ¶ 124; *see also id.* ¶ 13 ("ExxonMobil has opposed reasonable regulation" and "stymied state-by-state regulation of single-use plastic bags and straws").  These are quintessential petitioning, speech, and associational activities that are clearly protected by the anti-SLAPP statute.  *See* Cal. Code Civ. Proc. § 425.16(b)(1), (e)(3)-(4).

Plaintiffs cite nine documents that purportedly reflect ExxonMobil's petitioning and associational activities (Exhibits 9-17) and argue that *those documents* are not protected by the anti-SLAPP statute, either because they constitute commercial speech or were not authored by ExxonMobil.  Opp. at 6, 15, 16, 17.  That deliberately misunderstands ExxonMobil's position—namely, that the *conduct* challenged in Paragraphs 123-125 is protected under the anti-SLAPP statute.  Mot. at 8-9.  The documents that supposedly evidence that conduct are superfluous, both to Plaintiffs' claims and to the Motion, and need not be considered by the Court.[10]

Plaintiffs' suggestion that the commercial-speech exemption was intended to wipe out protections for lobbying conduct, Opp. at 17, is dead wrong.  Those protections are enshrined in

_____

[10] These documents are irrelevant for other reasons as well.  Plaintiffs acknowledge that at least three of them are "internal," Opp. at 5, 6 (Exs. 10, 14, and 17), and two of them were not authored by ExxonMobil (Exs. 15, 16).  For obvious reasons, those documents cannot form the basis for Plaintiffs' claims that ExxonMobil's *external* conduct misled the public.

the statute itself, which applies to "any act … in furtherance of the [defendant's] right of petition." Cal. Code Civ. Proc. § 425.16(b)(1). Plaintiffs quote out of context a snippet of Section 425.17's legislative history addressing "false and misleading statements" made by companies in "the context of a regulatory approval process" to obtain "approval of their products." Opp. at 17; S.B. 515 Sen., 5/06/2003. That has nothing to do with this case. The Complaint does not challenge statements ExxonMobil made in regulatory or other official proceedings (nor does the Opposition cite any such documents).[11] Rather, the Complaint challenges ExxonMobil's efforts to petition for reasonable regulations and share its perspectives with policymakers—core First Amendment conduct that is clearly protected by Section 425.16(b)(1), (e)(3), and (e)(4) of the anti-SLAPP statute. *See* Mot. at 10–11 (collecting cases); *Dean v. Friends of Pine Meadow*, 21 Cal. App. 5th 91, 101, 104 (2018) (Section 425.17 did not apply to petitioning activity "[e]ven if there was some commercial element to [that] conduct").

**Paragraph 127** challenges ExxonMobil's historical statements that encourage mechanical recycling and explain (truthfully) that many plastics can be recycled into new products. Compl. ¶ 127. The Opposition cites: (a) a 1982 Mobil statement titled *Observations*, which states that "Many plastics can be recovered, processed and then turned into new products," Ex. 20, and (b) statements that ExxonMobil allegedly made to "schoolchildren" in the 1990s that "plastic packaging uses less of our precious resources to make and transport" and "recycled plastic is used as raw material for other products," *see* Ex. 21 at 3.[12]

The challenged statements in Paragraph 127 were made in the context of the public dialogue concerning plastics and recycling, and are clearly protected under Sections 425.16(b)(1) and 425.16(e)(3)—which Plaintiffs do not dispute. These statements are also protected under 425.16(e)(4). *Supra* at 3-4.

The commercial-speech exemption does not apply. Plaintiffs do not allege that these statements constitute comparative advertising, and cannot satisfy the commercial-speech factors:

---

[11] As a result, Section 425.16(e)(1) and (2)—which apply to statements made in the course of "official proceedings"—have no application here. Opp. at 17 n.16.

[12] Exhibit 21 is an internal Mobil newsletter from 1997 that quotes the same language as Paragraph 127, but is otherwise extraneous and irrelevant.

- Although *Observations* does refer to products sold by Mobil in 1982, the portion challenged in Paragraph 127 does not. *Supra* at 7. Plaintiffs do not allege that any of ExxonMobil's educational presentations to schoolchildren made factual representations about specific operations, goods, or services of ExxonMobil or its competitors. *Supra* n.5.

- The purpose of these statements was not to promote sales, but to further the public conversation about the benefits of recycling and to encourage recycling. *Supra* at 7.

- These statements did not target actual or potential customers. *Observations* was addressed to a national audience of newspaper readers, and ExxonMobil's educational presentations were made to "schoolchildren," Ex. 21 at 3, not customers.

**Paragraphs 140, 142, and 144** challenge ExxonMobil's more recent statements concerning advanced recycling. Paragraphs 140 and 142 attack statements from a public "Sustainability Report" (Exhibit 22), an informational statement of ExxonMobil's views on the best ways to balance "the societal benefits plastics provide" and the "global issue of plastic waste." Compl. ¶¶ 140, 142.[13] Paragraph 140 challenges a statement that, "'deployed together' with mechanical recycling, 'advanced' recycling offers a 'huge opportunity' to 'strengthen circularity' and 'help … address the plastic waste challenge.'" *Id.* ¶ 140. Paragraph 142 challenges statements describing the advanced recycling process, explaining that ExxonMobil "sells certified-circular plastics corresponding to the amount of plastic waste we transform back into usable raw materials," and stating that certifications are "not a claim that our certified-circular polymers contain any 'recycled content' or carry GHG benefits." *Id.* ¶ 142; Ex. 22 at 4.

Paragraph 144 challenges ExxonMobil's statements concerning the amount of plastic waste that has been processed at its advanced recycling facilities in Baytown and its aspiration to process an even higher volume of plastic waste by 2026. *Id.* ¶ 144. The Opposition cites an *Inside Climate News* article that contains the challenged statements by ExxonMobil (Ex. 24).

Although Plaintiffs unfairly criticize these statements as "greenwashing," they have no meaningful substantive response to the fact that these statements are truthful, address issues of

---

[13] The Opposition also cites two Extraneous Exhibits: a 1994 "internal newsletter" that is not referenced in these paragraphs and has nothing to do with advanced recycling (Ex. 14), and a third-party article that criticizes ExxonMobil (Ex. 23).

10

public concern that are the subject of debate and proposed legislation, and are protected under Sections 425.16(b)(1) and (e)(3) of the anti-SLAPP statute. These statements are also protected under Section 425.16(e)(4) for the reasons set forth above. *Supra* at 3-4.

Plaintiffs' contention that the Sustainability Report constitutes commercial speech is misplaced. The report describes ExxonMobil's advanced recycling process and sustainability goals for the express purpose of sharing information and being "transparent." Ex. 22 at 4. The report is prefaced by a disclaimer making clear that it was "prepared at shareholders' request" and designed "for informational purposes only and [] not intended as an advertisement for ExxonMobil's … businesses, products, or services." Mot. at 13 n.13. Plaintiffs have no response to this language—which was cited in the Motion—and do not cite a single case holding that similar statements constitute commercial speech.

**Paragraph 126** alleges that in the early 1990s, ExxonMobil's predecessor made false statements about the biodegradability of "'Hefty' brand trash bags, resulting in settlements with the [FTC] and [state] attorneys general." Compl. ¶ 126.[14] Plaintiffs do not dispute that the challenged statements fit into the broader public debate at the time surrounding plastics and waste disposal issues, or that these statements are protectable under Sections 425.16(b)(1) and (e)(3). And Plaintiffs do not argue that the challenged statements constitute commercial speech. As set forth in the Motion, those statements do concern a former Mobil product, but do not constitute comparative advertising or fall within the narrow commercial-speech exemption. Mot. at 15-16.

### 2.    The Public-Interest Exemption Does Not Apply.

In a final attempt to avoid the anti-SLAPP statute, Plaintiffs invoke the public-interest exemption, which excludes lawsuits "brought solely in the public interest or on behalf of the general public" if, among other things, "[p]rivate enforcement is necessary" and the plaintiff "does not seek any relief greater than or different from the relief sought for the general public." Cal. Code Civ. Proc. § 425.17(b)(1), (3). This exemption does not apply for at least two reasons.

---

[14] The Opposition cites two Extraneous Exhibits: a Mobil press release noting its *removal* of the challenged statements from Hefty bags (Ex. 18), and a news article about the removal (Ex. 19).

11

First, the exemption only applies where "[p]rivate enforcement is necessary" because no public entity is able or willing to pursue the claim. *See Howard Jarvis Taxpayers Ass'n v. Powell*, 105 Cal. App. 5th 955, 967 (2024) (exemption applies where "no public entity has enforced the right that the plaintiff seeks to vindicate"); *Tourgeman v. Nelson & Kennard*, 222 Cal. App. 4th 1447, 1464 (2014) (private enforcement necessary where "[i]t is undisputed that no public entity has sought to enforce the rights that [plaintiff] sought to vindicate in his lawsuit"). Here, Plaintiffs filed this lawsuit as part of a "coordinated campaign" with the California Attorney General, in what Plaintiffs' counsel describes as a "joint public-private partnership."[15] The Attorney General challenges the same conduct, and asserts the same claims, as Plaintiffs do here. Mot. at 2. Not only is private enforcement unnecessary, it is wholly duplicative.

Plaintiffs assert that they "should not lose the benefits of the Public Interest Exemption because the California Attorney General has filed a similar lawsuit," Opp. at 12, but that is exactly what the Legislature intended. Where "the Attorney General … has intervened to prosecute," there is no need to encourage duplicative private lawsuits, and the exemption does not apply.[16] *People ex rel. Strathmann v. Acacia Rsch. Corp.*, 210 Cal. App. 4th 487, 504 (2012).

Second, in order for the public interest exemption to apply, the lawsuit "must be brought 'solely' in the public's interest; 'a litigant seeking *any* personal relief [is barred] from relying' on the exemption." *Sandlin*, 50 Cal. App. 5th at 823 (emphasis added); *see* Cal. Code Civ. Proc. § 425.17(b). Here, the plain language of the Complaint makes clear that Plaintiffs are seeking relief "*on behalf of themselves* and the California public." Compl. ¶ 22 (emphasis added). Plaintiffs' public and private nuisance claim seeks compensatory damages for alleged injuries that are specific and unique to them. *Id.* ¶ 240(b); *see id.* ¶ 223 (alleging that Plaintiffs had to "divert[] organizational resources to prevent and mitigate the harms from single-use plastic pollution and to clean up plastic pollution in waterways on its own private property"). Plaintiffs do not (and cannot) seek the same compensatory damages on behalf of the "general public." *See*

---

[15] *See* Mot. at 6 n.7 (citing statements by Plaintiffs and their counsel).

[16] Plaintiffs claim they should have the "same protection … as governmental prosecutors," Opp. at 11, but the public-enforcement exemption they cite does not apply. Among other reasons, it is limited by its own terms to "enforcement action[s]" brought "in the name of the people of the State of California" by a qualifying "public prosecutor." Cal. Code Civ. Proc. § 425.16(d).

DEFENDANT'S REPLY ISO SPECIAL MOTION TO STRIKE
NO. 3:24-CV-07288-RS

Cal. Code Civ. Proc. § 731; Cal. Civ. Code § 3491 (listing remedies for public nuisance). Plaintiffs' claim that they were required to allege these "damages … to establish standing," Opp. at 9, is obfuscation—to assert a private nuisance claim, Plaintiffs had to allege a "specially injurious" harm, but were not required to seek compensatory damages.  Cal. Civ. Code § 3493.

It is also irrelevant that the non-monetary injunctive relief Plaintiffs seek is coextensive with that sought on the public's behalf.  As Plaintiffs' own cases confirm, to qualify for the exemption, the "entire action" must be brought "solely in the public interest." *Club Members for an Honest Election v. Sierra Club*, 45 Cal. 4th 309, 312 (2008); *Batis v. Dun & Bradstreet Holdings, Inc.*, 106 F.4th 932, 937 (9th Cir. 2024) (collecting cases and holding that exemption does not apply where "plaintiffs sought damages for themselves that they did not seek for other members of the putative class"); *Strathmann*, 210 Cal. App. 4th at 503 (exemption does not apply where plaintiff seeks "personal relief").  The public-interest exemption is plainly inapplicable.

**B.      Step 2:  Plaintiffs Fail To Show *Any* Probability Of Success On The Merits.**

Plaintiffs' claims fail at the threshold because, in this "case … about whether ExxonMobil misled the public about dangers from single use plastic," Dkt. 19 at 1, Plaintiffs have abandoned their allegation that ExxonMobil made "actionable misstatements."  Dkt. 34 at 21; Dkt. 32 at 19-23; MTD Reply at 8-9.  That *alone* bars Plaintiffs' claims, since it has long been established that truthful speech—even "[c]ommercial speech"—is "entitled to the protections of the First Amendment" and cannot give rise to liability.  *In re R.M.J.*, 455 U.S. 191, 203 (1982).  Moreover, Plaintiffs' failure to allege any misrepresentations forecloses them from showing any probability of success on the merits of their nuisance and UCL claims, both of which are premised on the existence of "misleading marketing."  Compl. ¶ 7; *see* MTD Reply at 8-9.  Those claims fail for other reasons as well, as summarized below and explained in the MTD Reply.

**1.      Plaintiffs Show No Probability Of Success On Their Nuisance Claim.**

First, Plaintiffs fail to allege any conduct actionable in nuisance.  Plaintiffs contend that the actionable conduct underlying their claim is "misleading consumers" and distributing polymers that "caused the hazardous condition."  Dkt. 35 at 21.  But not only do Plaintiffs fail to actually allege deceptiveness, they also impermissibly "pleaded a products liability action, not a

13

nuisance action." *See City of San Diego v. U.S. Gypsum Co.*, 30 Cal. App. 4th 575, 585 (1994). Plaintiffs' nuisance theory is that ExxonMobil made promotional statements about plastic, a material allegedly unsafe for the environment when used as intended (or as reasonably anticipated), and "failed to disclose" these environmental dangers. Dkt. 34 at 10, 13. These allegations of dangerousness from a "reasonably foreseeable" consumer use are quintessential product-liability claims. *See City of Modesto Redev. Agency v. Super. Ct.*, 119 Cal. App. 4th 28, 42 (2004). Plaintiffs' only response is to dispute whether they must allege ExxonMobil "promoted its products for a 'hazardous use'" to state a nuisance claim. Dkt. 35 at 21. Plaintiffs are wrong—but in any event, Plaintiffs appear to agree that a nuisance claim cannot be grounded on product-liability allegations, Dkt. 34 at 8, so their nuisance claim fails. MTD Reply at 2-5.

Second, Plaintiffs' nuisance claims lack plausible allegations of causation, for two reasons: (a) even if plastic consumption allegedly increased contemporaneously with ExxonMobil's (non-misleading) statements, Dkt. 35 at 22, that correlation alone cannot establish causation, especially without specific factual allegations supporting a plausible inference that ExxonMobil's statements actually caused a meaningful increase in plastic consumption; and (b) even if ExxonMobil's statements plausibly caused an increase in plastic *consumption*, Plaintiffs still lack allegations causally linking those statements to an increase in *pollution*— especially for statements promoting *recycling*. MTD Reply at 5-8; Dkt. 35 at 22 (claiming ExxonMobil "convinc[ed] the public that recycling and litter prevention are … true solutions").

**2.    Plaintiffs Show No Probability Of Success On Their UCL Claim.**

Plaintiffs likewise fail to show any probability of success on the merits of their UCL claim. First, UCL standing requires Plaintiffs to adequately plead that their alleged diversion-of-resources injury was "*caused by* the unfair practice that is the gravamen of the claim." *See Cal. Med. Assn. v. Aetna Health of Cal. Inc.,* 14 Cal. 5th 1075, 1086 (2023) (alterations omitted) (cited by Dkt. 35 at 23). Plaintiffs have failed to allege causation. *Supra* at 14.

Second, Plaintiffs assert that claim survives the four-year UCL statute-of-limitations under the "continuing violation doctrine." Dkt. 34 at 17; Dkt. 35 at 23. But Plaintiffs never explain how any "factors that might warrant application of the continuing violation doctrine" might

14

apply. *Aryeh v. Canon Bus. Sols., Inc.*, 55 Cal. 4th 1185, 1198 (2013); *see also* MTD Reply at 10. Nor could they, especially as Plaintiffs allege that they started acting to address the plastic-pollution problem much more than four years before they brought suit. Dkt. 32 at 15.

Third, Plaintiffs fail to allege any unlawful or unfair conduct. Starting with unlawfulness, Plaintiffs' contention that ExxonMobil's alleged marketing statements "permit[ted]" plastic to pass into state waters under the Fish & Game Code is facially irreconcilable with that word's settled ordinary meaning, i.e., to provide formal consent or authorization. Dkt. 34 at 17-19; MTD Reply at 10-12. Neither the statute's purpose nor Plaintiffs' spurious reference to "nuisance law" could possibly justify departing from the plain text. *Contra* Dkt. 35 at 23-25; *see also* MTD Reply at 10-12. Plaintiffs' unfairness theory, based on generalized allegations of environmental "harms and profits," fares no better. Dkt. 35 at 24. Among other flaws, MTD Reply at 12-13, Plaintiffs fail to allege the required "close nexus" to a public or "legislative policy," as neither Section 12600 nor the public trust doctrine have anything to with the Complaint's alleged "deceptive marketing campaign," Dkt. 27 at 8; MTD Reply at 12-13; *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 866-67 (9th Cir. 2018); *contra* Dkt. 35 at 23-24.

## III.     CONCLUSION

The Court should grant ExxonMobil's Motion and dismiss Plaintiffs' claims—or at minimum, strike the challenged allegations. Because the Motion is well-founded in fact and law, Plaintiffs' request for sanctions is frivolous and should be denied.

Respectfully submitted,

Dated: May 22, 2025                    O'MELVENY & MYERS LLP


By:     */s/ Dawn Sestito*
          Dawn Sestito

DAWN SESTITO (S.B. #214011)
MATTHEW R. COWAN (S.B. #281114)
O'MELVENY & MYERS LLP
400 South Hope Street, 19th Floor
Los Angeles, CA 90071-2899
Telephone:   (213) 430-6000
Facsimile:    (213) 430-6407
dsestito@omm.com

mcowan@omm.com

DAVID J. LENDER (*pro hac vice*)
david.lender@weil.com
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153-0119
Telephone:    (212) 310-8153
Facsimile:    (212) 310-8007

*Counsel for Defendant Exxon Mobil
Corporation*

DEFENDANT'S REPLY ISO SPECIAL MOTION TO STRIKE
NO. 3:24-CV-07288-RS