UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SIERRA CLUB, INC., et al.,

           Plaintiffs,

    v.

EXXON MOBIL CORPORATION, et al.,

           Defendants.

Case No.  24-cv-07288-RS

**ORDER GRANTING IN PART, DENYING IN PART MOTION TO DISMISS**

## I. INTRODUCTION

Plaintiffs, a group of environmental non-profits, aver that Defendant Exxon Mobil Corporation created a public nuisance by producing plastic polymers, distributing them widely throughout the California economy, and promoting them for single-use purposes by suggesting that they are disposable when in fact they are not.  According to their complaint, Defendant's conduct also violated California's Unfair Competition Law ("UCL") because it amounts to unlawful or unfair business practices.  After the case's initial filing in state court, Defendant removed it and a related case filed by California's attorney general to this federal court.  That attorney general's case was subsequently remanded in a decision that Defendant has since appealed.  This case remains in federal court, where Defendant now moves to dismiss the claims or, alternatively, to strike large portions of the complaint.

Defendant's motion to dismiss is denied in part and granted in part, as the complaint plausibly avers the nuisance claim but not its UCL counterpart.  The motion to strike is denied, as the complaint enjoys the public interest exemption to California's anti-SLAPP law.

United States District Court
Northern District of California

## II. BACKGROUND

The prior order in this case recounts the background of this dispute. In relevant part, Plaintiffs aver that Exxon is the world's largest producer of single-use plastics that are not disposable: because they are derived from oil, they cannot be safely placed in landfills. Nor are they truly recyclable, not even via advanced methods. Given the data on recycling efficiency and the chemistry in plastic polymers, Plaintiffs allege that inevitably, single-use plastics break down into microplastics that pollute the land, air, sea, and even human bodies. These substances are harmful and last, effectively, forever.

Such pollution is not only inevitable but also something Exxon knew would happen. Taking the allegations in the complaint as true and drawing inferences in favor of the non-movant, as required at this stage of the litigation, Exxon understood that single-use plastic was technically and economically impossible to dispose of safely and, undeterred, sought to profit by increasing its production. In the process, Exxon knowingly misrepresented the feasibility of disposing the plastics it produces and distributes, hiding their catastrophic impact from the public to increase its bottom line, as telling the truth might have turned single-use plastics consumers off the product. Between its production, distribution, and misrepresentations about single-use plastics, Exxon injured the California public that now contends with choked beaches and waterways wasted with wrappers. To Plaintiffs, this all amounts to private and public nuisance violations of California Civil Code §§ 3479 and 3480, as well as UCL violations. For relief, Plaintiffs seek a forced abatement injunction, an injunction against further UCL violations, compensatory damages, and attorneys fees and costs.

## III. LEGAL STANDARD

### A. Motion to Dismiss

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While "detailed factual allegations" are not required, a complaint must have sufficient factual allegations to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. v. Twombly*, 550 U.S. 544,

United States District Court
Northern District of California

555, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  This standard asks for "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  The determination is a context-specific task requiring the court "to draw on its judicial experience and common sense."  *Id.* at 679.

A motion to dismiss a complaint under Rule 12(b)(1) of the Federal Rules of Civil Procedure challenges the court's subject matter jurisdiction over the asserted claims.  It is the plaintiff's burden to prove jurisdiction at the time the action is commenced.  *Tosco Corp. v. Cmtys. For Better Env't*, 236 F.3d 495, 499 (9th Cir. 2001), *overruled on other grounds by Hertz Corp. v. Friend*, 559 U.S. 77 (2010); *Morongo Band of Mission Indians v. Cal. State Bd. of Equalization*, 858 F.2d 1376, 1380 (9th Cir. 1988).  "A Rule 12(b)(1) jurisdictional attack may be facial or factual."  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  "In a facial attack, the challenger asserts that the allegations contained in the complaint are insufficient on their face to invoke federal jurisdiction."  *Id.*  Accordingly, when considering this type of challenge, the court is required to "accept as true the allegations of the complaint." *U.S. ex rel. Lujan v. Hughes Aircraft Co.*, 243 F.3d 1181, 1189 (9th Cir. 2001).  By contrast, in a factual attack, "the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction."  *Safe Air*, 373 F.3d at 1039.  In resolving a factual attack on jurisdiction, the court need not presume the truthfulness of the plaintiff's allegations and it may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment.  *Id.*  Once a factual challenge has been raised to the court's subject matter jurisdiction, the party opposing dismissal must "present affidavits or any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction." *Id.* (quoting *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003)).

A motion to dismiss a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims alleged in the complaint.  *See Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011).  Dismissal under Rule 12(b)(6) may be

United States District Court
Northern District of California

based on either the "lack of a cognizable legal theory" or on "the absence of sufficient facts alleged under a cognizable legal theory." *Id.* at 1242 (internal quotation marks and citation omitted). When evaluating such a motion, the court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party. *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1140 (9th Cir. 2017). "[C]onclusory allegations of law and unwarranted inferences," however, "are insufficient to defeat a motion to dismiss for failure to state a claim." *Caviness v. Horizon Cmty. Learning Ctr., Inc.*, 590 F.3d 806, 812 (9th Cir. 2010) (internal quotation marks and citation omitted).

### B.  Motion to Strike

Rule 12(f) permits a court to strike "any redundant, immaterial, impertinent, or scandalous matter" from a pleading. The purpose of a Rule 12(f) motion to strike is "to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial[.]" *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (quotation omitted). A motion to strike should be granted only if it will eliminate serious risks of prejudice to the moving party, delay, or confusion of issues. *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1528 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994). "Motions to strike are regarded with disfavor [ ] because of the limited importance of pleadings in federal practice and because they are often used solely to delay proceedings." *Capella Photonics, Inc. v. Cisco Sys., Inc.*, 77 F.Supp.3d 850, 858 (N.D. Cal. 2014) (quotation omitted). "Nonetheless, the Court may properly grant motions to strike when a defense or a claim is insufficient as a matter of law." *Zep Solar Inc. v. Westinghouse Solar Inc.*, No. 11-cv-06493-JSW, 2012 WL 1293873, at *1 (N.D. Cal. Apr. 16, 2012) (citation omitted). "[A] district court shall view the pleadings in the light most favorable to the pleader." *Id.* If there is any doubt whether the challenged matter might bear on an issue in the litigation, the motion to strike should be denied, and assessment of the sufficiency of the allegations left for adjudication on the merits. *See Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F.Supp.2d 1048, 1057 (N.D. Cal. 2004).

# IV. DISCUSSION

## A.  Personal Jurisdiction

Exxon contends that the court lacks personal jurisdiction over it because Plaintiffs do not aver that Exxon directed its activities at California, the forum state.  In its view, Plaintiffs did not allege that it targeted California with its promotion of recycling the single-use plastics it creates; rather, the alleged statements were to nationwide audiences.

This argument lacks merit.  The claims here are not so limited as Exxon implies by focusing on the promotion of recycling alone—when, in fact, Exxon has purposefully availed itself of the privilege of doing business in California.  Courts may "exercise specific jurisdiction over a non-resident defendant only when three requirements are satisfied: (1) the defendant either purposefully directs its activities or purposefully avails itself of the benefits afforded by the forum's laws; (2) the claim arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction comports with fair play and substantial justice, i.e., it is reasonable." *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1020 (9th Cir. 2017) (cleaned up). Here, Exxon allegedly extracts, stores, and refines oil and gas in facilities within the state; it also allegedly develops plastic additives and chemicals and produces single-use plastics in California factories.  Such products, moreover, appear in stores and businesses across California for purchase.  In this way, Plaintiffs' claims "arise[] out of or relate[] to the defendant's forum-related activities." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). Moreover, it is reasonable to exercise jurisdiction in this state, where Exxon operates single-use plastic packaging plants across the state.

Defendant protests that purposeful direction—the typical heuristic for minimum contacts in tort law—requires that it "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1069 (9th Cir. 2017) (citation omitted).  The Ninth Circuit, however, has repeatedly cautioned that the distinction between the purposeful direction test and the purposeful availment inquiry typically applied to contract disputes does not

impose "a rigid dividing line." *Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1107 (9th Cir. 2020); Indeed, the first prong "may be satisfied by purposeful availment," "by purposeful direction," or "by some combination thereof." *Davis v. Cranfield Aerospace Sols., Ltd.*, 71 F.4th 1154, 1162 (9th Cir. 2023), *cert. denied*, 144 S. Ct. 826 (2024). "[T]here's no need to adhere to an iron-lad doctrinal dichotomy to analyze specific jurisdiction." *Id.* In this instance, Exxon's purposeful availment of California's lands and marketplaces more than suffices to establish jurisdiction. Moreover, Exxon has run ads promoting the recycling of its single-use plastics to California consumers, demonstrating some degree of purposeful direction as well.

### B. Nuisance

Exxon contends that the nuisance claims fail for two distinct reasons.

#### 1. Nuisance vs. Products Liability

A nuisance is "[a]nything which is injurious to health ... or is indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property . . ." CAL. CIV. CODE § 3479. Public nuisances "'affect[ ] at the same time an entire community or neighborhood, or any considerable number of persons ....'[.]" *City & Cnty. of San Francisco v. Purdue Pharma L.P.*, 491 F. Supp. 3d 610, 669 (N.D. Cal. 2020) (citing CAL. CIV. CODE §3480). "A public nuisance cause of action is established by proof that a defendant knowingly created or assisted in the creation of a substantial and unreasonable interference with a public right." *People v. ConAgra Grocery Prod. Co.*, 17 Cal.App.5th 51, 79 (2017). Here, Plaintiffs aver a public nuisance claim by also alleging all the elements of a private nuisance claim, thus securing standing. *See* CAL. CIV. CODE § 3493 ("A private person may maintain an action for a public nuisance, if it is specially injurious to himself, but not otherwise.").

Defendant does not challenge Plaintiff's standing to bring a public nuisance claim, instead contending that this whole complaint is truly just a products liability case in disguise. "The law of nuisance is not intended to serve as a surrogate for ordinary products liability." *City of Modesto Redev. Agency v. Superior Court*, 119 Cal. App. 4th 28, 39 (2004); *see also, e.g., Hinds Invs., L.P.*

United States District Court
Northern District of California

*v. Angioli*, 445 F. App'x 917, 919 (9th Cir. 2011) (holding that nuisance claims were properly dismissed where the complaint failed to allege affirmative acts or instructions and instead made claims that sounded in products liability). In Exxon's view, the only exception that would allow a plaintiff to plead a product-liability type fact pattern as a nuisance claim is when product manufacturers knowingly promote a product "for a hazardous use" or design a hazardous waste disposal system. *See Cnty. of Santa Clara v. Atl. Richfield Co.*, 137 Cal. App. 4th 292, 309–10 (2006).

Plaintiffs rightly respond that nuisance law is not so narrow. "A public nuisance cause of action is not premised on a defect in a product or a failure to warn but on affirmative conduct that assisted in the creation of a hazardous condition." *ConAgra*, 17 Cal. App. 5th at 91 (citation omitted). The complaint avers affirmative acts, i.e., that Exxon assisted in the creation of the hazardous plastics pollution crisis by affirmatively producing and distributing plastics that it knew could not be safely disposed of or destroyed. *See* Complaint ¶¶ 217 ("ExxonMobil, by acting as described herein, created plastic pollution that was harmful to health"), 211 (averring Exxon "caus[ed] single-use plastic pollution in California waterways and coasts, soil and air, and its associated harms"). Plaintiffs detail how "ExxonMobil's Business Model Aims to Increase the Production of Virgin Polymers" that it knew would be harmful. *Id.* ¶¶ 103–11.

True, products liability may arise where a manufacturer such as Exxon fails to warn of, or misdescribe, the product's risks "when used or misused in an intended or reasonably foreseeable way." *Williams v. J-M Mfg. Co.*, 102 Cal. App. 5th 250, 262 (2024). It seems highly likely that Plaintiffs here could have pled a products liability claim on the same facts they raise to support the nuisance claim.

That said, the fact that this claim *could be* a products liability one does not foreclose its viability as a nuisance claim instead. In *Purdue*, the district court upheld a public nuisance claim that the city of San Francisco brought against a swath of opioid manufacturers and distributors. *See* 491 F. Supp. 3d at 669. The city alleged the marketing defendants used deceptive advertising to increase demand and sales of opioids and that other defendants manufactured, distributed, and

dispensed more opioids than they knew would be necessary for legitimate medical use. As in this case, the defendants there sought dismissal of the public nuisance claim for failure to allege affirmative conduct and (as will be discussed more below) failure to allege causation. Those defendants, like Exxon here, argued that nuisance liability is only viable if the Defendant allegedly engaged in conduct "with knowledge of the hazard that such use would create." *See ConAgra*, Cal. App. 5th at 83. Moreover, they contended, the only path to liability for a manufacturer was if it knowingly promoted the product for hazardous use. *See Purdue*, 491 F. Supp. 3d at 675 (describing Defendants' argument and reliance on *Santa Clara*, 137 Cal. App. 4th at 292).

Yet the court highlighted how "[n]othing in *Santa Clara* suggests that promotion is the *only* form of 'affirmative conduct' necessary to state a public nuisance claim." *Id.* Indeed, *any* action that "assists in creating a system that causes" hazardous conditions can amount to affirmative action liable under nuisance law. *See City of Modesto Redevelopment Agency v. Superior Court*, 119 Cal. App. 4th 28, 40–41 (2004). Although *Santa Clara* found that promoting lead paint could be affirmative conduct supporting a nuisance claim, "the court did not limit affirmative conduct to promotional acts" in the context of product manufacturers. *Purdue*, 491 F. Supp. 3d at 675. In fact, the court cited to a 2003 Ninth Circuit case upholding a nuisance claim against gun manufacturers and distributors who "knowingly establish[ed], suppl[ied], and maintain[ed] an over-saturated firearms market that facilitates easy access for criminal purposes." *Id.* (citing *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1198 (2003)).

This case maps neatly onto *Purdue* and *Glock*. Like Purdue, Exxon allegedly produced products despite knowing that they were being abused and diverted for unlawful purposes (there, illegal sale and use; here, illegal pollution). Like Glock, Exxon knowingly established, maintained, and supplied a product market that facilitates the harm—there, easy access to guns for crimes; here, easy access to plastics that inevitably pollute the environment.[1]

---

[1] In reply, Exxon notes subsequent caselaw to *Glock* that cast doubt on its reasoning. *See in re Firearm Cases*, 126 Cal. App. 4th 959, 990–91 (2005) (finding similar nuisance claims failed for lack of causation evidence, noting the complaint "attempts to reach too far back in the chain of distribution when it targets the manufacturer of a legal, non-defective product that lawfully

1    Exxon urges a narrow focus on the statements it allegedly made in promoting plastics,

2    suggesting that *only* the statements could be actionable here because *only* promotion of a product

3    can become a nuisance.  "At most, ExxonMobil is alleged to have encouraged the public to use

4    products made of a material that Plaintiffs think is harmful for the environment, while failing to

5    warn (or misleading) consumers about those environmental risks.  That is not a viable nuisance

6    theory."  Mot. at 17.  Defendant's framing is incorrect.  Taking all allegations as true, and

7    considering the complaint in the light most favorable to Plaintiff, ExxonMobil *created products*

8    *that it knew would harm the environment and lied about the inevitable harm by suggesting it could*

9    *be mitigated through recycling.*  The additional allegations of creating and distributing these

10   products mean that pro-recycling statements need not carry the weight of the case by themselves.

11   Thus, the arguments that there is nothing inherently hazardous about recycling are a distraction;

12   the inherently hazardous activity here is creating indestructible plastics and distributing them for

13   single-use contexts while hiding their true nature by promoting them as recyclable.  To say

14   Plaintiffs' theory would hold themselves liable for pro-recycling statements is disingenuous—

15   Plaintiffs, unlike Defendant, do not participate in the plastics production chain.

16        **2.  Causation**

17        "Causation is an essential element of a public nuisance claim."  *Citizens for Odor Nuisance*

18   *Abatement v. City of San Diego*, 8 Cal. App. 5th 350, 359 (2017) ("CONA").  A plaintiff must

19   establish causation in fact, which requires facts demonstrating that the defendant's conduct was a

20   "substantial factor in bringing about the result."  *ConAgra*, 17 Cal. App. 5th at 101. Additionally,

21   a plaintiff must establish that the defendant's wrongful conduct was not "too remote from the

22   current hazard to be its 'legal cause,'" i.e., proximate cause. *Id.* at 103.

23        Defendant argues Plaintiffs' claims fail on this element because its statements about

24

25   _____

26   distributes its product only to those buyers licensed by the federal government").  That case,
     however, went on to note it did "not hold that the theories asserted would never be tenable under
     different evidence."  *Id.* at 992.  In other words, the failure was evidentiary, not theoretical.  The
27   latter is what matters at this stage in the case.

28

United States District Court
Northern District of California

1    recycling could not have caused consumers to purchase more plastics from virgin polymers than

2    they otherwise would have.  The complaint avers only a handful of such statements, scattered

3    across several decades, so Exxon says most consumers would've made purchasing decisions

4    irrespective of its promotion of recycling activity.  Some of the statements (i.e., regarding foam

5    egg cartons in 1960s) could not plausibly have changed consumer behavior, while others are

6    insufficiently connected to the harm (i.e., no facts showing that consumers would have purchased

7    materially less fast food or paid higher prices if they had known that single-use plastics would

8    never degrade in the environment).

9        Plaintiffs effectively rebut this argument by highlighting the broad "substantial factor"

10   theory of causation in nuisance law and citing the numerous averments in the complaint about

11   Defendant's pollution-causing activities.  The factual causation element in nuisance claims "is

12   satisfied if the conduct of a defendant is a substantial factor in bringing about the result."

13   *ConAgra*, 17 Cal.App.5th at 101 (citing *CONA*, 8 Cal.App.5th at 359).  "The substantial factor

14   standard is a relatively broad one, requiring only that the contribution of the individual cause be

15   more than negligible or theoretical.  Thus, a force which plays only an 'infinitesimal' or

16   'theoretical' part in bringing about injury, damage, or loss, is not a substantial factor, but a very

17   minor force that does cause harm is a substantial factor."  *Id.* at 102 (citations omitted).  Here,

18   Plaintiffs plausibly aver that Exxon's activities are a substantial factor in California's plastic

19   pollution crisis.  The Complaint details how Defendant promoted and sold massive amounts of

20   non-biodegradable, non-recyclable plastic for decades, all the while pushing a misleading

21   narrative that suggested the plastic could be disposed of safely.  Specific paragraphs detail that

22   Exxon is a major producer of the polymers that make single-use plastics,  Compl. ¶¶ 40–43; how

23   single-use plastics are not recyclable, ¶¶ 66–74; and the degree to which they litter California

24   lands and waterways, ¶¶ 89–90.  The Complaint specifically avers that, as a result of Exxon's

25   creation and promotion of these products, consumers purchased more of them than they otherwise

26   would have.  ¶¶ 130–38.  That makes sense, considering it is the largest producer.

27        Yet again, Exxon aims to distract from its role in creating these products by focusing on

28

United States District Court
Northern District of California

the degree to which Plaintiffs allege that its statements about the plastics caused the crisis.  If all Plaintiffs had were the statements, they would fall short of a plausible causal link, for all the reasons Exxon details.  *See* Mot. at 19 ("In all likelihood, consumers purchased single-use-plastic products not because they misunderstood plastic recyclability or the potential harms to the environment, but rather because they valued other things more highly, like cost and convenience.")  Yet, Plaintiffs have more than the promotional statements—i.e., detailed factual allegations about single-use plastics creation and distribution.  It is plausible that consumers purchased single-use because of the averred conduct: but for that conduct, those products would not have been purchasable because Exxon would not have created and distributed the underlying plastics for single-use.  In this way, the averments about Exxon's statements are merely part and parcel of a larger alleged course of action that, when viewed in totality, sufficiently states a nuisance claim.  Moreover, the statements themselves are notable, not merely for what they say, but what they omit—that is, Exxon's knowledge that the polymers it produced would never degrade and thus would inevitably create a pollution crisis.

As with factual causation, proximate cause is also present here.  Proximate cause "is ordinarily concerned, not with the fact of causation, but with the various considerations of policy that limit an actor's responsibility for the consequences of his conduct."  *Ferguson v. Lieff, Cabraser, Heimann & Bernstein*, 30 Cal. 4th 1037, 1045 (2003) (quoting *Mosley v. Arden Farms Co.*, 26 Cal. 2d 213, 221 (1945) (Traynor, J. concurring)) (internal quotation marks omitted). "[C]ourts place great emphasis on 'foreseeability of harm' in determining whether a public nuisance claim sufficiently alleges proximate cause."  *Purdue*, 491 F. Supp. 3d at 679.  Here, the complaint adequately avers that Exxon foresaw the harm that has resulted from its single-use plastics business.  Exxon does not seem to dispute that fact, choosing instead to attempt wrenching the case out of its actual context and turning it into one about a handful of statements over a series of decades.  While those statements *standing alone* are not plausibly alleged to have proximately caused the pollution crisis, they combine with the other averments in the complaint and amount to a plausible claim.

1

2

3

4

5

6

7

8

9

10

11

United States District Court
Northern District of California

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### C.  UCL Claims

California's UCL law prohibits "unfair competition," defined as "any unlawful, unfair, or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."  Cal. Bus. & Prof. Code § 17200.  A subsequent section permits anyone injured, who has lost money or property as a result of unfair competition, to bring an action for relief.  *Id.* § 17204.

#### 1.  Statutory Standing

Defendant first contends that Plaintiffs have not lost money or property as a result of the unfair competition alleged.  "Here, there is no alleged causal connection between ExxonMobil's statements and the resources Plaintiffs allegedly diverted to mitigate the effects of plastic waste." Mot. at 14.  Citing the four-year statute of limitations for UCL violations, Defendant adds, most of the statements described in the complaint are too old to support the claims.

This argument reprises Defendant's errant misframing of the case as one about statements, when in fact, it is about statements *and* production and distribution.  The complaint more than sufficiently avers that Plaintiffs have had to divert resources to pollution mitigation efforts that would not be necessary but for Defendant's production and distribution of single-use plastics that it knew would never degrade but which it nevertheless promoted as recyclable.  Under California law, an organization's "diversion of resources" to respond to challenged conduct can establish "injury in fact" and "lost money or property" for the purpose of UCL standing.  *California Med. Assn. v. Aetna Health of California Inc.*, 14 Cal. 5th 1075, 1095 (2023).  The Complaint is rife with averments that Plaintiffs had to divert significant resources to combat plastic pollution as a result of Exxon's conduct.  *See* ¶¶ 158–62, 164–72, 176–90, 192–96.  That is sufficient to satisfy standing**.**

#### 2.  Unlawful

Defendant next contends that the complaint fails to state a claim under the UCL's unlawful prong because it does not plausibly aver that Exxon violated the cited Fish & Game statutes.  The motion's textual analysis of those statutes rightly concludes the only possible theory is that it "permit[ted]" pollution "to pass into" state waters by producing single-use plastics, distributing

1    them, and promoting them as recyclable or otherwise safely disposable.

2         To "permit" has a plain meaning—that is, "to consent expressly or formally" or to

3    "authorize." *See George v. Susanville Elementary Sch. Dist.*, 103 Cal. App. 5th 349, 356 (2024)

4    ("dictionary definitions" inform ordinary meaning); *City of Los Angeles v. Barr*, 941 F.3d 931,

5    940 (9th Cir. 2019). Context confirms that definition. The statutory language surrounding "permit"

6    ("deposit," "place," "dispose of," etc.) assume that the alleged violator has control over the

7    polluting item. *See, e.g.*, *Fischer v. United States*, 603 U.S. 480, 487 (2024) ("a word is given

8    more precise content by the neighboring words with which it is associated").

9         Plaintiffs fail to identify any case in which the cited Fish and Game Code supported

10   liability under the UCL for a product manufacturer whose products were littered by consumers.

11   Instead, Plaintiffs simply cite to a case that lauded the importance of those laws. *See Watershed*

12   *Enforcers v. Department of Water Resources*, 185 Cal.App.4th 969, 979 (2010) (describing them

13   as being "of great remedial and public importance" such that they "should be construed liberally").

14   Such support is insufficient for the premise. Plainly, the complaint does not aver Exon deposited

15   or placed plastics into the waters. The only fitting term is "permit to pass into," but as Exxon

16   explains, the term "permit" invokes a sense that the actor had agency over the substance at the

17   moment of passage. Although Exxon could fairly be said to have caused pollution (by creating

18   single-use plastics and distributing them widely under the guise of recyclability), it cannot be

19   portrayed fairly as having *permitted* such pollution. There is no allegation that it controlled the

20   plastics it produced after distributing them. Moreover, to allow such a strained theory would

21   essentially mean any manufacturer is liable for pollution under the UCL—no matter how distant

22   they were from the actual person who passed the plastic into the waters. "Every business that sells

23   or provides single-use plastic products would be exposed to crushing civil penalties and criminal

24   liability" if shown to have known that it would "inevitably become pollution." Reply. Br. at 16.

25        Plaintiffs, perhaps predicting this line of thinking, urge the court to apply nuisance law

26   theories to the UCL. They cite a district court case for the proposition that, where the defendant

27   was not the party that placed the nuisance on a property, courts focus on the defendant's state of

28

United States District Court
Northern District of California

1    mind to determine whether liability is appropriate.  *See Long Beach Unified Sch. Dist. V. Santa*

2    *Catalina Island Co.*, No. 2:19-cv-1139-MEMF-AS, 2023 WL 9001451, at *7 (C.D. Cal. 2023).

3    Yet they provide no basis for the idea that the UCL's use of "permit" "should therefore be

4    interpreted in line with nuisance law."  Opp. Br. at 19.  With no support for that idea, and in light

5    of the nuisance claim already upheld by this order, applying common law nuisance concepts to an

6    entirely distinct statutory framework is inappropriate.  Those concepts support the nuisance law

7    claim, not the UCL claim deriving from it.  Plaintiffs thus fail to aver their unlawful theory of

8    UCL liability plausibly.

9            **3. Unfair**

10           Defendant also argues that Plaintiffs fail to make out any UCL violations under the

11   "unfair" prong.  California courts apply a variety of tests to determine whether conduct is unfair,

12   *see, e.g.*, *Doe v. CVS Pharm., Inc.*, 982 F.3d 1204, 1214–15 (9th Cir. 2020), one of which is the

13   "tethering" test, which asks "whether the challenged conduct is tethered to an[] underlying

14   constitutional, statutory or regulatory provision."  *Id.* at 1214.  As Defendants fairly note, a UCL

15   claim is insufficient where it only identifies a general policy against a social ill as the one being

16   unfairly violated.  *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 866–67 (9th Cir. 2018).  Plaintiffs'

17   theory, moreover, has no backstop: virtually all human activity can be said to harm the

18   environment in some capacity such that it could be framed as "unfair" under UCL law.

19           At oral argument, Plaintiffs contended that the averred practices in the complaint are unfair

20   because they misrepresented the truth about Exxon's products' and the means by which they

21   might be disposed after use.  The problem for Plaintiffs, however, is that the UCL already

22   provides for challenges to such misrepresentation-based business practices—the law has a third

23   prong for fraud, one which Plaintiffs have specifically disclaimed.  As Defendant highlights, the

24   complaint would fail under that prong's heightened scrutiny in light of Federal Rule of Civil

25   Procedure 9(b) and the particularity required for fraud claims.  Because Plaintiffs waived that

26   theory of liability, they cannot now use generalized allegations to squeeze a misrepresentation-

27   based claim into the unfairness prong.  Such result would violate standard statutory construction

United States District Court
Northern District of California

1 | rules and stretch the meaning of unfair so wide that it swallows fraudulent prong.  Plaintiffs

2 | therefore fail to state a claim that Defendant violated the UCL through unfair conduct.

3 | **D.  Motion to Strike**

4 | Together with its motion to dismiss, Exxon alternatively urges the court to strike the

5 | allegations in ¶¶ 113, 114, 115, 120, 123, 124, 125, 126, 127, 140, 142, and 144 of the complaint,

6 | invoking CAL. CIV. PROC. CODE § 425.16(b)(1)-(2), (e)(3)-(4).  The cited law was passed to

7 | address "a disturbing increase in lawsuits brought primarily to chill the valid exercise of the

8 | constitutional rights of freedom of speech and petition."  CCPC § 425.16(a).  Via this so-called

9 | anti-SLAPP statute, civil defendants may file a special motion to strike state-law claims arising

10 | from protected speech or petitions.  *Id.* § 425.16(b)(1)(, (c)(1).  This statute aimed "to protect

11 | nonprofit corporations and common citizens from large corporate entities and trade associations"

12 | who retaliate with strategic lawsuits against public participation.  *FilmOn.com Inc. v.*

13 | *DoubleVerify Inc.*, 7 Cal. 5th 133, 143 (2019).

14 | Under the statute's burden-shifting framework, the moving defendant first must show the

15 | opposing party's claim implicates protected activity; upon the satisfaction of that burden, Plaintiff

16 | then must demonstrate a probability of success to withstand the motion.  *See Luo v. Volokh*, 102

17 | Cal. App. 5th 1312, 1321–22 (2024).  Before such analysis may begin, however—*see Batis v. Dun*

18 | *& Bradstreet Holdings, Inc.*, 106 F.4th 932, 936 (9th Cir. 2024)— the opposing party may invoke

19 | the Public Interest or the Commercial Speech Exemptions that California codified into the statute

20 | eleven years into its existence.  *See People ex rel. Strathmann v. Acacia Rsch. Corp.*, 210 Cal.

21 | App. 4th 487, 499 (2012) ("the same types of business who used the SLAPP action were

22 | inappropriately using the anti-SLAPP motion against their public-interest adversaries").

23 | While Plaintiffs have invoked both statutory exemptions; the court need only examine one

24 | of them to find that this complaint is exempted.  The Public Interest Exemption, CCPC

25 | § 425.17(b), states that the anti-SLAPP statute does not apply "to any action brought solely in the

26 | public interest or on behalf of the general public" if the following conditions exist: "(1) The

27 | plaintiff does not seek any relief greater than or different from the relief sought for the general

28 |

United States District Court
Northern District of California

ORDER GRANTING IN PART, DENYING MOTION TO DISMISS, AND DENYING MOTION TO STRIKE
CASE NO.  24-cv-07288-RS

15

public or a class of which the plaintiff is a member"; "(2) The action, if successful, would enforce an important right affecting the public interest, and would confer a significant benefit, whether pecuniary or nonpecuniary, on the general public or a large class of persons"; and "(3) Private enforcement is necessary and places a disproportionate financial burden on the plaintiff in relation to the plaintiff's stake in the matter."

Here, all three conditions are met. First, Plaintiffs persuasively demonstrate that they brought this case solely in the public interest or on behalf of the general public. "[T]he term 'public interest' is used to define suits brought for the public's good or on behalf of the public." *Club Members for an Honest Election v. Sierra Club*, 45 Cal. 4th 309, 318 (2008). The relief sought as to the UCL claim is solely injunctive and completely state-wide, and as for the nuisance claim, the requested relief is for statewide injunctive and abatement recovery. Even though the abatement is technically compensatory, "plaintiffs can still invoke the public interest exemption even if their lawsuit seeks monetary relief." *Batis*, 106 F.4th at 936. The point is, no particular plaintiff stands to gain anything the public would not.

Defendant responds that the exemption only applies where private enforcement is necessary because no public entity has enforced the right at issue. *See Howard Jarvis Taxpayers Ass'n v. Powell*, 105 Cal. App. 5th 955, 967 (2024) (finding the exemption applicable where "no public entity has enforced the right that plaintiff seeks to vinidicate"); *see also Tourgeman v. Nelson & Kennard*, 222 Cal. App. 4th 1447, 1464 (2014) (same). Because the state AG also filed its own suit in a coordinate campaign with these plaintiffs, averring the same conduct and the same claims, Exxon says private enforcement is not only unnecessary but in fact wholly duplicative.

Yet, the cited cases do not say that the exemption only applies when no public entity has enforced the right. Although the statute requires that "private enforcement is necessary," the fact that public enforcement is ongoing does not necessarily mean private counterparts are not also needed. It could be the case, as perhaps is true here, that sometimes the public enforcement mechanism requires complementary private enforcement in litigating a given action.

Defendant next contends that a lawsuit seeking any personal relief cannot qualify as being

ORDER GRANTING IN PART, DENYING MOTION TO DISMISS, AND DENYING MOTION TO STRIKE
CASE NO. 24-cv-07288-RS

"solely" in the public interest. Because the complaint seeks relief "on behalf of [Plaintiffs] and the California public," Exxon says it flunks the exemption's textual hook. It cites the complaint allegations that Plaintiffs have had to "divert[] organizational resources to prevent and mitigate the harms from single-use plastic pollution and to clean up plastic pollution in waterways on its own private property." The public has not necessarily had to do this, or at least the complaint doesn't allege as much, so Exxon argues that Plaintiffs' bid for personal relief scuttles the notion that their action is in the public interest.

This contention is too lawyerly. Plaintiffs' references to personal harms evince their standing. The relief sought would protect the public interest in pollution-free environments. Nothing in the complaint ties any remedy to a particular plaintiff, so "plaintiffs [have not] sought damages for themselves that they did not seek for other members of the putative class." *But see Batis*, 106 F.4th at 937. At bottom, for Defendant to say "the public-interest exemption is plainly inapplicable" is boldly unfounded. Even a cursory glance at the complaint confirms that Plaintiffs brought this case solely to protect public interests.

In short, this case satisfies the Public Interest Exemption and the motion to strike is therefore denied.

## V. CONCLUSION

For the reasons explained *supra*, Defendant's motion to dismiss is granted in part and denied in part. It is denied with respect to Plaintiffs' first claim, which plausibly avers that Defendant contributed to the creation of a public nuisance in the form of single-use plastic pollution. The motion is granted, however, with respect to Plaintiffs' second claim, averring violations of the California UCL. Plaintiffs have leave to amend that claim within the next 30 days. Finally, Defendant's motion to strike is denied pursuant to the statutory exemption for public interest litigation.

**IT IS SO ORDERED**.

Dated: September 5, 2025

_____
RICHARD SEEBORG
Chief United States District Judge