April 23, 2026

**Via ECF**
The Hon. Richard Seeborg
United States District Court
Northern District of California
450 Golden Gate Avenue
San Francisco, CA 94102

Re: *Sierra Club, et al., v. ExxonMobil Corp.*, No. 3:24-cv-07288-RS (N.D. Cal.)

Dear Judge Seeborg:

Plaintiffs Sierra Club, Inc., Surfrider Foundation, Inc., Heal the Bay, Inc., and Baykeeper, Inc., ("Non-Profits"), and Defendant ExxonMobil Corporation ("Exxon") have a dispute concerning certain terms in the proposed protective order in this case. Counsel have conferred several times by email and phone but reached an impasse on April 15, 2026. Non-Profits' draft proposed order is attached as **Exhibit 1**; Exxon's draft is attached as **Exhibit 2**. Both Exhibits track any disputed changes made to the model order. No hearings or case deadlines are currently set. No trial date has been set.

<u>**Non-Profits' Argument**</u>

**Definition of "Expert" – § 2.7.**
The Non-Profits propose the Northern District's model definition of "expert," minus the overbroad limitation of "past or current employee of a Party or of a Party's competitor." Such a grossly overbroad limitation would greatly disadvantage the Non-profits who expect to hire experts or consultants from the plastics industry. Indeed, many of the critical issues in this case (*e.g.,* the recyclability of plastics, toxins contained in plastic polymer, Exxon's marketing campaigns, and Exxon's knowledge of the harms of plastics) are undoubtedly known by "past or current employee of a Party or of a Party's competitor." To completely *exclude* that broad category of qualified potential consultants or experts (*including any former <u>competitor</u> without any <u>time limitation</u>, even if several years*), in a case where qualified experts are limited, prejudices Non-Profits greatly.

**Access To and Use of Protected Material – §§ 7, 7.1.**
Exxon proposes that any "discovery," not just protected materials, be subject to the protective order. However, the parties will undoubtedly exchange non-confidential and public information. Requiring limitations on the use of non-confidential or public information, while also imposing repercussions related to the use of such public information, is overly burdensome and unnecessary.

**Expert Disclosure and Access to Confidential Information – §§7.3(c), 7.4.**
The Non-profits oppose the proposed requirement that (i) Non-profits disclose the experts they intend to show highly confidential information to, and (ii) disclose specific information they intend to share, as outlined in Exxon's § 7.4. In addition to the tactical advantage of early expert disclosure and a preview of the categories of documents allowing Exxon to object to, delay, and possibly prevent the Non-Profits from hiring experts or consultants causes real prejudice. Indeed, in a case where the Non-Profits are not competitors, and where qualified experts may have

1

connections to the oil and plastics industry, Exxon is likely to object to many of the relevant and highly qualified experts that are available.  For example, Non-Profits may seek to hire an expert or consultant who previously worked for a competitor, whose expertise would be critical to Non-Profits in proving their claim (*e.g.,* Exxon's unreasonable or knowing conduct).  As drafted, Exxon would be able to preclude Non-Profits from retaining and using potentially qualified experts in this case.  Courts in this district have held that giving one side the ability to "veto" experts is prejudicial.  *See In re Lithium Ion Batteries Antitrust Litig.,* No., 2017 WL 930317, at *3 (N.D. Cal. Mar. 9, 2017) (rejecting defendants' "veto power over any future experts, consultants, and mock jury pool members, which would severely disrupt their ability to prepare for trial.")

Additionally, § 7.4 unfairly advantages Exxon. Exxon is certainly going to designate more information "highly confidential" than the Non-Profits.  Exxon can then unilaterally disclose its information to its own experts without disclosing the experts' identities or any work product to the Non-profits.  On the other hand, if the Non-Profits wish to hire an expert, they must comply with the onerous and one sided § 7.4.  These imbalances are blatantly prejudicial and unnecessary, especially since the protective order already requires experts and consultants to sign and be bound by the protective order prior to receiving confidential or highly confidential information.  *Id.*

Moreover, Exxon has not met its burden to show that harm *will* result if §7.4 is not adopted.  *See Rabin v. Google LLC*, 702 F. Supp. 3d 880, 881 (N.D. Cal. 2023) ("burden is upon the party seeking the order to 'show good cause' by demonstrating harm or prejudice that will result from the discovery." . . . "For good cause to exist, the party seeking protection bears the burden of showing <u>specific</u> prejudice or harm will result if no protective order is granted.") (citations omitted, emphasis added).  Indeed, all Exxon mentions is "ExxonMobil is *likely* to produce competitively sensitive material—including trade secrets, technical information regarding its advanced recycling business, business planning information, and financial and customer information—that *could* cause competitive harm."  *See* below (emphasis added).  This generic and speculative description does not satisfy the required burden.  *Id*. at 882 (Google failed to "specifically show that it will be prejudiced or harmed in *this* particular case if its proposed restrictions are not adopted.")

The cases cited by Exxon also support Non-Profits' position or are distinguishable.  *See Corley v. Google, Inc*., 2016 WL 3421402, at *3 (N.D. Cal. June 22, 2016) ("protective order should permit the parties to withhold the identities of non-testifying experts"); *In re Google Assistant Priv. Litig*., No. 5:19-cv-04286-BLF (N.D. Cal.) Dkt. 94 (Google specifically justified restrictive protections by  identifying specific information including "how the technology works," "analytics regarding its speech recognition software," "how Google stores user data, including how it is encrypted" and others).  *Doe v. Kaiser Found. Health Plan, Inc.*, 2023 WL 8281690, at *1 (N.D. Cal. Nov. 30, 2023) (case involved specific technical information not at issue here, including "detailed information about . . . Kaiser's website that could lead to security risks, source code, and trade secrets and financial and other information that would be harmful to Kaiser if disclosed.").  Indeed, in *In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, the "Court modifie[d] the Protective Order to remove the requirement that the receiving party identify the categories of documents that are sought to be provided to the expert."  2024 WL 251404, at *13 (N.D. Cal. Jan. 23, 2024). Accordingly, here, the Court should delete § 7.4 as Exxon has not met its burden, or at a minimum, remove the requirement to disclose the categories of documents to be shared.

**Export Controls – § 12.3**
Exxon has not identified any material that may be subject to export controls nor any specific regulations. Additionally, the clause is unnecessary given the existing protection in the protective order. *See Ltd. v. Boeing Co.*, 2025 WL 2400458, at *2 (W.D. Wash. July 1, 2025) (export controls defined to include specific laws).

<u>**ExxonMobil's Position**</u>

The Parties are largely in agreement that the Northern District of California Model Protective Order for Litigation Involving Patents, Highly Sensitive Confidential Information and/or Trade Secrets ("Highly Confidential Model Protective Order"), a two-tier protective order, applies, but disagree over its expert disclosure provision for "Highly Confidential" material, as well as some other miscellaneous provisions.

***The parties agree that the Highly Confidential Model Protective Order, a two-tier model protective order, is necessary to protect ExxonMobil's highly sensitive information.*** Both Plaintiffs and ExxonMobil agree that the two-tier model protective order is appropriate for this action. This case will require ExxonMobil to produce information about its business plans, competitive strategy, pricing and customer information, product development, and sales and distribution volumes. Plaintiffs have already requested such information. For example, Plaintiffs' Request for Production ("RFP") No. 1 requests "All DOCUMENTS YOU produced to the California Attorney General in response to subpoenas regarding single-use plastic pollution." The aforementioned documents already include materials that reflect business planning, technical information about ExxonMobil's advanced recycling operations, and customer information. Further, Plaintiffs' RFP No. 66 requests "DOCUMENTS sufficient to show the quantity, amount, value (including dollar amount paid by each customer to YOU), and types of products manufactured and sold by YOU . . . ," and RFP No. 67 requests specific customer information.

"The law gives a court 'broad latitude to grant protective orders to prevent disclosure of materials for many types of information, including, but not limited to, trade secrets or other confidential research, development, or commercial information.'" *Bayside Sols., Inc. v. Avila*, 2022 WL 3215010, at *2 (N.D. Cal. Aug. 9, 2022) (quoting *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1211 (9th Cir. 2002)). Courts in this district have found the two-tier model appropriate in similar cases. In *In re Social Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, 2024 WL 251404, at *9 (N.D. Cal. Jan. 23, 2024) ("*SMAC*"), the court found the two-tier model protective order appropriate because "commercially sensitive, closely guarded information regarding how Defendants' respective social media online platforms operate and generate revenue . . . are likely to be the subject of discovery."

Here, Plaintiffs have already requested competitively sensitive business information regarding ExxonMobil's polymer business, as described above, and they agree the two-tier model protective order is proper. *See Bayside*, 2022 WL 3215010, at *2 (two-tier model protective order appropriate where "Plaintiff anticipates the need to disclose financial information, customer names, employee lists, business proposals, and business pitches," which "may result in competitive harm."); *Doe v. Kaiser Found. Health Plan*, 2023 WL 8281690, at *3 (N.D. Cal. Nov. 30, 2023) (two-tier model "to be the most appropriate model protective order"

3

where discovery was likely to involve "highly confidential business information or alleged trade secrets"); *see also Mendoza v. Tesla, Inc.*, 2025 WL 3514689, at *2 (N.D. Cal. Dec. 8, 2025).

***The Court should uphold the Highly Confidential Model Protective Order's provision for prior disclosure of experts who receive "Highly Confidential – Attorney's Eyes Only" materials.*** While Plaintiffs agree that the two-tier model protective order is appropriate, Plaintiffs object to its expert disclosure provision. First, ExxonMobil maintains that "expert" should be defined to include "past or current employee or consultant of a Party or of a Party's competitor." The inclusion of a "past or current employee" is consistent with the Highly Confidential Model Protective Order, and the inclusion of "consultant" comprehensively safeguards ExxonMobil's highly sensitive business information.

Second, Section 7.4(a)(2) requires parties seeking to disclose "Highly Confidential – Attorneys' Eyes Only" material to experts to first provide, among other information, the expert's name, current employer(s), and any source of compensation or funding for work in the expert's field within the past five years. Courts in this district have consistently recognized that "the model order for use in highly sensitive cases contains 'presumptively reasonable conditions' for managing the discovery of highly sensitive materials." *Corley v. Google, Inc.*, 2016 WL 3421402, at *1 (N.D. Cal. June 22, 2016) (quoting *Barnes & Noble, Inc. v. LSI Corp.*, 2012 WL 601806 (N.D. Cal. Feb. 23, 2012)). Courts in this district have also rejected similar challenges to the Highly Confidential Model Protective Order's early expert disclosure provisions. *See In re Google Assistant Priv. Litig.*, 2020 WL 4698810, at *1 (N.D. Cal. Aug. 13, 2020) ("The Court finds, in concurrence with innumerable decisions in this District, that section 7.4 [on expert disclosure] is inherently reasonable and further, that it is appropriate to adopt, with modest modifications, in this case."); *Kaiser*, 2023 WL 8281690, at *7 (denying proposed limitation of provision to require prior disclosure of only experts who are current officers or employees of a competitor); *see also Mendoza*, 2025 WL 3514689, at *2 (finding early expert disclosure provision in protective order appropriate despite not "rais[ing] all of the same concerns about parties' access to confidential information as in a patent or trade secret case between competitors" because "this case is likely to involve Defendant's trade secrets, and many of the same concerns about experts' potential conflicts of interest may still be present" and it would present only a "limited burden").

In *Kaiser*, the court explained that "[i]n cases involving source code, trade secrets, and other technological information, it is this Court's long experience that the normal and typical practice … is to retain the model language in Section 7.4(a)." *Id.* Because these experts might perform consulting work for competitors, become entrepreneurs themselves, or provide litigation support services to the parties' competitors, there is a need for the model order's disclosure requirements. *Id.* As discussed, ExxonMobil is likely to produce competitively sensitive material—including trade secrets, technical information regarding its advanced recycling business, business planning information, and financial and customer information—that could cause competitive harm if disclosed and thus warrant the protection of an early expert disclosure provision.

The court also upheld the expert disclosure provision in *SMAC*. 2024 WL 251404, at *8-14. The court specifically noted that "[t]he Tier 2 [Model Protective Order's] language is the

result of a recognition that there is a practical and substantial need for pre-disclosure identification of experts before they receive highly confidential materials in a case, because without such a procedure the expert would be exposed to those materials and, even if later disqualified, it is impossible to erase knowledge of those materials from the expert's mind or memory." *Id.* at *10. The court rejected the plaintiff's argument that it should "exempt commercial information from" the expert disclosure provisions, and plaintiff's related argument that the expert disclosure provisions "should not or cannot be used except in certain types of intellectual property cases." *Id.* at *10-11.

Additionally, inclusion of "past or current employee or consultant" would not categorically exclude a category of potential consultants or experts—rather, it provides a procedure to address and mitigate any potential risk of harm of disclosure of "Highly Confidential" information. Further, while ExxonMobil may object, it cannot unilaterally decide on the exclusion of an expert, and ExxonMobil proposes no such "veto" language as cited in *In re Lithium Ion Batteries Antitrust Litig.*, No., 2017 WL 930317, at *3 (N.D. Cal. Mar. 9, 2017). The exclusion of an expert is for the Court to decide. While the Non-Profits assert that they are not competitors to ExxonMobil, ExxonMobil seeks to protect its Protected Material from potential experts who *are* ExxonMobil's competitors. Nor would this provision prevent the Non-Profits from obtaining information from potential fact witnesses (who would not need to be shown ExxonMobil's confidential information if providing fact testimony). Given that this case already involves technical and other information that could cause substantial harm if disclosed to competitors, the Court should uphold the expert disclosure provision as carefully drafted in the Model Order.

***Any Discovery Material and not just Protected Materials, should be subject to the Protective Order.*** The purpose of modifying Section 7.1 to include any Discovery Material is to ensure that discovery material is used for this litigation only (and that this litigation is not a vehicle to obtain information through discovery for other purposes).

***The Court should include the Highly Confidential Model Protective Order's provision for Export Controls.*** Section 12.3 is necessary to protect ExxonMobil's sensitive commercial information. It would not prevent Non-Profits from sharing any information with foreign experts—rather, it allows the Parties to exchange material under conditions that prevent unlawful dissemination and preserve compliance with national-security and export-control rules. Given that this litigation is being funded by a foreign entity, this provision should remain in the Protective Order.

///

Dated: April 23, 2026           **COTCHETT, PITRE & McCARTHY LLP**


By: */s/ Tyson C. Redenbarger*
      NIALL P. McCARTHY
      TYSON C. REDENBARGER
      GRACE Y. PARK
      KEVIN J. BOUTIN
      REGINA R. WANG

*Attorneys for Plaintiffs*


Dated: April 23, 2026           **O'MELVENY & MYERS LLP**


By: */s/ Matthew R. Cowan*
      DAWN SESTITO
      MATTHEW R. COWAN

**WEIL, GOTSHAL & MANGES LLP**
      DAVID J. LENDER

*Attorneys for Defendant*


**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)**

I, Tyson C. Redenbarger, attest that concurrence in the filing of this document has been obtained from the other signatories. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 23th day of April 2026, at Burlingame, California.


By */s/ Tyson C. Redenbarger*
      Tyson C. Redenbarger