July 9, 2026

**Via ECF**
Hon. Laurel Beeler
United States District Court
Northern District of California

**Re:** ***Sierra Club, Inc., et al. v. Exxon Mobil Corporation***
**Case No. 3:24-cv-07288-RS (LBx)**

Dear Judge Beeler:

Plaintiffs Sierra Club, Inc., Surfrider Foundation, Inc., Heal the Bay, Inc., and Baykeeper, Inc., ("Non-Profits" or "Plaintiffs"), and Defendant Exxon Mobil Corporation ("Exxon") have a dispute concerning certain deposition questions. The parties seek guidance on issues of privilege. Plaintiffs seek a protective order to prevent questioning they believe (1) infringes on attorney-client or work product privilege or (2) questions concerning irrelevant claims not at issue in this case, and Exxon seeks to compel non-privileged information, including (where appropriate) non-privileged preliminary facts to establish the claimed privileges so that it can properly assess their application.

Counsel have conferred several times by email, phone, and video but reached an impasse on July 2, 2026. Attached are three exhibits, including Ex. A which contains the relevant deposition transcript excerpts. No hearings or case deadlines are currently set. No trial date has been set.

The parties' respective positions are set forth in the following five pages

## NON-PROFITS' POSITION

On May 29, 2026, Exxon deposed a representative of Plaintiff Baykeeper, Inc. ("Baykeeper"). Exxon repeatedly and intentionally sought information that is clearly protected by attorney-client privilege and the work product doctrine or bears no relevance to the litigation. More troubling, these questions sought information concerning the ***dismissed*** defamation and conspiracy lawsuit Exxon filed against the Non-Profits in Texas.[1] Non-Profits asked Exxon to refrain from such improper discovery going forward. Exxon declined, and Plaintiffs now seek a protective order.

### A. Legal Standards

Courts may enter a protective order when "proposed discovery is outside the scope permitted by Rule 26(b)(1)," which allows discovery into "nonprivileged matter[s]" that are "relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1), (b)(2)(C)(iii); *see also* Fed. R. Civ. P. 30(d)(3). "Attempts to probe a deponent regarding irrelevant information may veer into the realm of harassment or bad faith conduct of the deposition, which are grounds to cease providing testimony in order seek judicial relief." *V5 Techs. v. Switch, Ltd.*, 334 F.R.D. 306, 31 n.9 (D. Nev. 2019). Likewise, courts may prohibit inquiry into matters that reveal an "attorney's mental impressions, theories, conclusions or opinions concerning the case." *Connolly Data Sys., Inc. v. Victor Techs., Inc.*, 114 F.R.D. 89, 96 (S.D. Cal. 1987); *accord Milbeck v. TrueCar, Inc.*, 2019 WL 2353006, at *2 (C.D. Cal. May 23, 2019). Communications between an attorney and client in connection with litigation are also privileged. Cal. Evid. Code § 954.[2] Further, "[p]rospective clients' communications with a view to obtaining legal services are plainly covered by the attorney-client privilege under California law, regardless of whether they have retained the lawyer[.]" *See Barton v. U.S. Dist. Ct. for Cent. Dist. of Cal.*, 410 F.3d 1104, 1111 (9th Cir. 2005).

Work product protection applies to materials (1) "prepared in anticipation of litigation or for trial," and (2) "prepared by or for another party or by or for that other party's representative." *United States v. Richey*, 632 F.3d 559, 567 (9th Cir. 2011) (internal quotations omitted). Materials are protected if they "would not have been created in substantially similar form but for the prospect of litigation." *Id.* at 568. "[A] lawyer need not be involved at all for the work product protection to take effect." *Goff v. Harrah's Operating Co.*, 240 F.R.D. 659, 660 (D. Nev. 2007). Furthermore, "[d]isclosure to [a] person with interest common to that of attorney or client is not inconsistent with intent to invoke the work product doctrine's protection and would not amount to waiver." *Cal. Sportfishing Prot. All. v. Chico Scrap Metal, Inc.*, 299 F.R.D. 638, 645 (E.D. Cal. 2014).

### B. The Court Should Issue a Protective Order to Prevent Further Discovery Abuses

**Plaintiffs' communications with counsel are not discoverable.** During Baykeeper's deposition, Exxon repeatedly sought information falling squarely within the attorney-client privilege. For

[1] *Compare* Exxon's first paragraph in this discovery motion below *with* the Complaint in *Exxon Mobil Corporation v. Bonta et al*, CV 25-00011 (E.D. Tex) ("Texas Case"). "Mr. Bonta, the Sierra Club, and a collection of erstwhile recycling enthusiasts are now attacking a Texas corporation for its advanced recycling operations." **Ex. B** ¶ 4. "Cotchett signed up the US Proxies—Defendants Sierra Club, Surfrider, Heal the Bay, and Baykeeper—as nothing but local placeholders, acting for the foreign business interests competing in U.S. courts rather than the marketplace." **Ex. B** ¶ 6. Non-Profits were dismissed on February 13, 2026. Dkt. 132.

[2] "[The] attorney-client privilege in a diversity case is governed by state law." *KL Grp. v. Case, Kay & Lynch*, 829 F.2d 909, 918 (9th Cir. 1987).

example, Exxon asked the witness, who is herself an attorney: "Can you tell me the content of that first communication, that phone call, between Baykeeper and the Cotchett firm that was in 2022 or 2023." *See* **Ex. A**, Baykeeper transcript excerpts at 306:13-15.[3] Exxon also asked: "please tell me what information was shared with you from your attorneys that forms the basis of your testimony regarding Topic 8." *Id.* at 84:25-85:2. These questions represent Exxon's multiple, blatant attempts to elicit the content of privileged attorney-client communications. Exxon plainly cannot discover the content of the Plaintiffs' communications with their attorneys, including Plaintiffs' communications "with a view to obtaining legal services." *See Barton*, 410 F.3d at 1111.

**Litigation materials concerning the lawsuit are not discoverable.** Exxon asked about "the substance of the work that was done by Baykeeper in-house attorneys" in preparation to file this lawsuit (**Ex. A** at 53:17-20); about other organizations that "were considering joining the lawsuit" (*id.* at 71:7-13); and "Why did Baykeeper sue only Exxon in this case?" (*id.* at 197:25-198:1). Such questions improperly seek the "mental impressions, legal theories, and strategic notes" of Plaintiffs' attorneys, *Haptic, Inc. v. Apple, Inc.*, 2025 WL 1569306, at *6 (N.D. Cal. June 3, 2025), and otherwise probe the details of materials "prepared in anticipation of litigation or for trial." *Richey*, 632 F.3d at 567; *see also Kintera, Inc. v. Convio, Inc.*, 219 F.R.D. 503, 507 (S.D. Cal. 2003).Exxon also asked: "I would like to know the substance of the communications that you had with Sierra Club, Heal the Bay, and Surfrider prior to March of 2024. So please tell me the substance of those communications." **Ex. A** at 313:16-20. This question likewise seeks discovery of the Plaintiffs' protected "mental impressions" and "legal theories." Exxon's reliance *on Persian Gulf, Inc. v. Alon USA Energy, Inc.*, is severely misplaced. *Persian Gulf* does not at all concern attorney work product or attorney client privilege. Rather, it is a Rule 11 case where an attorney's "reasonable and competent inquiry" is fundamental to a Rule 11 violation. Here, the Court denied Exxon's motion to dismiss. CPM's "reasonable and competent inquiry" is not at issue nor relevant to any of Non-Profits' public nuisance and UCL claims or any of Exxon's affirmative defenses.

**Counsel's communications with the California Attorney General regarding the substance of this lawsuit are protected.** Exxon asked for "the content of the communications that Baykeeper, through its outside counsel, had with the California Attorney General's Office." **Ex. A** at 112:14-17. This questioning improperly seeks information protected by work product and the attorney-client privilege, i.e., what the Non-Profits' lawyers did as part of this litigation, which was then communicated to the Plaintiffs in a privileged communication. S*ee California Sportfishing*, 299 F.R.D. at 647 (work product protections preserved where "DA's Office and plaintiff [were] pursuing environmental-impact litigation based on a closely related set of facts"). Non-Profits and the California Attorney General have had a common interest agreement since Summer 2023.

**Counsel's communications with IEJF are not discoverable.** Exxon asked for "the substance of [ ] communications between Baykeeper's outside counsel and IEJF [Intergenerational Environment Justice Fund] regarding this litigation." **Ex. A** at 113:7-9. This material is protected as privileged, work product and by the common interest doctrine, given IEJF's status *as a client* of Cotchett, Pitre & McCarthy ("CPM") and a litigation funder. *Cont'l Cirs. LLC v. Intel Corp.*, 435 F. Supp. 3d 1014, 1022 (D. Ariz. 2020) ("several courts have held that work product protection for litigation funding documents is not waived when such documents contain confidentiality provisions and are disclosed to litigation funders with common interests"). Exxon is aware of the

[3] Baykeeper testified that it considered filing this lawsuit in 2022 or 2023. **Ex. A** at 69:17-70:4.

identity of IEJF and that they are a client of CPM; there is no legitimate basis for Exxon to pry into Plaintiffs' counsel's client communications or work product.

**Improper and *irrelevant* discovery on dismissed claims from the Texas litigation.** During the deposition, Exxon repeatedly asked clearly improper questions, that not only invaded the attorney client privilege, but also sought to explore the defamation and conspiracy claims that are irrelevant here and were dismissed in the Texas case. During several meet and confers, Exxon failed to explain the relevance of those questions while also refusing to forego these questions in future discovery. Exxon's purported relevance (motive, intent, standing, etc.) does not justify asking privileged questions nor seeking discovery related to the Texas case. The *Cont'l Cirs.* court ***denied the discovery*** aside from the funder's identity, which Exxon already knows as it has the agreement between CPM and IEJF. And Non-Profits intend to demonstrate UCL standing through its expenditures *prior* to IEJF's funding of this lawsuit. *See Cal. Med. Assn. v. Aetna Health of Cal.*, 14 Cal. 5th 1075, 1098. Thus, Exxon has not articulated the relevance or need for this information.

Accordingly, Plaintiffs request a protective order precluding Exxon from (1) deliberately asking about privileged information, or (2) seeking testimony or any discovery concerning Exxon's dismissed defamation and conspiracy claims.

## EXXON'S POSITION

This lawsuit filed by four non-profit entities is no ordinary lawsuit. It is being funded by an Australian mining billionaire—who owns a company that competes with Exxon—through his self-funded foreign entity, IEJF. Plaintiffs' counsel, attorneys at CPM, were forced to register as foreign agents under the Foreign Agent Registration Act because of their engagement by IEJF, to file this lawsuit in coordination with a similar one filed by the California Attorney General ("CAAG"), as a part of what CPM referred to as a "public-private partnership," in the joint press conference held among the Non-Profits and CAAG. One Plaintiff testified it sued Exxon based on a publication from another entity funded by the same Australian mining billionaire. And it appears that CPM may have solicited Plaintiffs to file this litigation at the behest of IEJF.

Unsurprisingly, Exxon sought discovery into some of these issues,[4] including whether Baykeeper was approached by CPM or another entity about joining the litigation and what communications occurred between Plaintiffs and CPM's foreign principal, IEJF, or CAAG. On May 29, 2026, Exxon deposed Baykeeper's corporate representative, Ms. Sejal Choksi-Chugh, who was improperly instructed not to answer several questions on the grounds of attorney-client privilege, including (1) when the attorney-client relationship formed between Baykeeper and CPM (Tr. at 302:4-303:3); (2) communications between Baykeeper and CPM before CPM was engaged (*id.* at 306:11-23; 313:7-315:2); and (3) communications between the four Plaintiffs without counsel present (*id.* at 299:14-304:12). Exxon also served document requests seeking similar information

/[4] ExxonMobil's 30(b)(6) deposition notice to Baykeeper included topic 8: "Your communications with any other plaintiff, [CAAG], Rob Bonta or any third party concerning the Action (including plans to file such Action), or any other litigation, enforcement activity, or legal proceeding concerning ExxonMobil, Advanced Recycling, or plastics pollution." Ms. Choksi-Chugh, Baykeeper's 30(b)(6) witness, confirmed she was prepared to testify as to each topic. Tr. at 18:9-19:4. Baykeeper served no written objections to this or any other topic.

(communications between co-Plaintiffs before the litigation was filed, and between Plaintiffs and IEJF or CAAG). RFPs 31-31, 66-67. Plaintiffs objected.

Exxon is entitled to this information or the preliminary facts that support assertion of privilege. "Generally, a party asserting the attorney-client privilege has the burden of establishing the existence of an attorney-client relationship and the privileged nature of the communication." *Greer v. County of San Diego*, 127 F.4th 1216, 1224 (9th Cir. 2025) (cleaned up). The attorney-client privilege applies only to communications between Baykeeper and CPM for the purpose of seeking legal advice. *United States v. Gurtner*, 474 F.2d 297, 298 (9th Cir. 1973). Baykeeper asserts privilege over *all* communications with CPM and the other Plaintiffs starting in 2022 or 2023, but CPM was not engaged by Baykeeper until March 2024, and it is not clear when Baykeeper first sought legal advice from CPM. Tr. at 300:5-302:4. During the meet-and-confer, Plaintiffs refused to state when they first sought legal advice from CPM related to the issues raised in the litigation, and the non-privileged preliminary facts to support the privilege.

Privilege does not automatically attach to every communication; Plaintiffs must show that legal advice was sought, but they refuse to even represent that preliminary fact. *See In re Grand Jury Investigation*, 974 F.2d 1068, 1071 n. 2 (9th Cir. 1992) (citations omitted). At the deposition, Baykeeper refused to answer when it formed an attorney-client relationship with CPM, Tr. at 300:5-7, but the date the relationship began or when Baykeeper first sought legal advice is clearly not privileged. *See Uber Technologies, Inc. v. Google LLC*, 27 Cal. App. 5th 953, 967 (2018) ("When a party asserts . . . privilege it is incumbent upon that party to prove the preliminary fact that a privilege exists.") (cleaned up). Ms. Choksi-Chugh did not know who initiated the first conversation between Baykeeper and CPM (information Exxon is entitled to), but Baykeeper's managing attorney worked at CPM prior to joining Baykeeper and "presented the idea of the litigation to [Ms. Choksi-Chugh]." Tr. at 67:9-69:25; *see also id.* at 295:23-296:13; *id.* at 305:22-306:10. If it was Baykeeper that first sought legal advice from CPM, Exxon is entitled to basic privilege log information to evaluate the privilege. If it was instead CPM who first contacted Baykeeper, then Baykeeper was not seeking legal advice at least in that initial conversation. "Blanket assertions [of attorney-client privilege] are 'extremely disfavored.'" *United States v. Martin*, 278 F.3d 988, 1000 (9th Cir. 2002).

Exxon is also entitled to communications between Baykeeper (whether through CPM or otherwise) and other entities, including other Plaintiffs, the CAAG, Rob Bonta, the Minderoo Foundation, and IEJF. Communications between the Plaintiffs occurred numerous times for 1-2 years before the litigation was filed. Tr. at 306:24-307:6. Plaintiffs refuse to state when each first sought legal advice from CPM, and there were at least some calls CPM did not attend. *Id.* at 313:7-315:2. Baykeeper was instructed not to answer regarding those conversations, too, even though the witness testified any discussion about the litigation involved CPM. *Id.* at 314:1-315:2; 297:2-21. And while Exxon is not seeking to compel most of the questions Plaintiffs identify as seeking "litigation materials concerning the lawsuit," information about pre-suit investigations can be discoverable. *See, e.g., Persian Gulf v. Alon USA Energy, Inc.*, 2023 WL 8889557, at *2 (9th Cir. Dec. 26, 2023) (remand for district court to consider "the level of investigation done by Plaintiffs' attorneys prior to filing the complaints"); *see also Persian Gulf Inc. v. BP W. Coast Prods. LLC*, 2025 WL 863476, at *2 (S.D. Cal. Mar. 19, 2025) (evidentiary hearing with testimony from plaintiffs' attorneys regarding pre-suit investigation).

As to communications between Plaintiffs and CAAG, Plaintiffs now for the first time allege a common-interest agreement was formed in the Summer of 2023. No such objection was made at the deposition or raised during the meet-and-confer. Plaintiffs should provide the preliminary facts so Exxon can evaluate the privilege—the parties to the agreement, the date it formed, oral or written, and the common interest between the parties. And, of course, communications prior to the common-interest agreement are not privileged and ones that are should be logged.

As to IEJF, Ms. Choksi-Chugh testified that Baykeeper as an entity has had no direct communications with IEJF ever. *Id.* at 179:6-7; 297:22-298:8. Communications (including those related to IEJF's funding and IEJF's oversight of the litigation) were funneled through CPM. Tr. at 83:13-20. Baykeeper asserted privilege because Baykeeper would only know the content from CPM. Baykeeper cannot use counsel as the conduit for communications and then refuse to disclose the nonprivileged facts on the ground she learned them from counsel. *See In re Grand Jury Proceedings*, 616 F.3d 1172, 1182 (10th Cir. 2010) (no attorney-client privilege if attorney acting as a "conduit" for non-confidential information). Nor does privilege apply to communications between CPM and third parties like IEJF and CAAG. Tr. at 73:15-24; *see Gurtner*, 474 F.2d at 298 (privileged "communication [must] be made *in confidence* for the purpose of obtaining *legal* advice *from the lawyer*") (emphasis in original) (citation omitted); *see also Shreves v. Frontier Rail Corp.*, 2021 WL 6206635, at *5 (E.D. Wash. Mar. 23, 2021) (corporate deponent "cannot refuse to disclose facts which their attorneys conveyed to them and which the attorneys obtained from independent sources.") (citation omitted).

This information is not sought for the Texas litigation (which was dismissed without prejudice for lack of personal jurisdiction). Plaintiffs sought to transfer the Texas case to this District because it involved "numerous matters" that are "the same or substantially similar" to those in this suit, which shows that the information is relevant here. **Ex. C** at 2 (*Exxon Mobil Corp. v. Bonta*, No. 1:25-cv-00011, Dkt. 46 (E.D. Tex. Apr. 25, 2025)). It is relevant to motive, intent, credibility, conflicts, standing, and whether Plaintiffs have suffered harm. *See Cont'l Circs. LLC v. Intel Corp.*, 435 F. Supp. 3d 1014, 1019 (D. Ariz. 2020) (persons with fiscal interest in litigation relevant to financial resources, witness credibility, juror conflicts, and potential trial themes); *Nunes v. Lizza*, 2021 WL 7186264, at *4-6 (N.D. Iowa Oct. 26, 2021) (third-party funding discovery relevant to whether plaintiffs were coordinating lawsuits, to address "David vs. Goliath" narrative, and to identify real party in interest). The public fee agreement between CPM and IEJF makes clear that IEJF "no longer anticipates being a plaintiff in the litigation" but that it will "financially support other non-profits pursuit of this litigation . . . ." It also contemplates communications between IEJF and the Plaintiffs. Exxon has a right to question the Plaintiffs about these communications. Local Rule 3-15(b) requires disclosure of an "entity … that provides funding for the litigation" and underscores the relevance of this information.[5] Plaintiffs' request for a protective order should be denied. They should be required to provide non-privileged information (including preliminary facts to prove up any claimed privilege) regarding communications between the Plaintiffs, communications with IEJF and CAAG, and communications with CPM (if any) that predate an attorney-client relationship.

[5] Plaintiffs refuse to disclose IEJF under L.R. 3-15. *See* Dkt. 52 (Joint Rule 26(f) Report) at 9.

Dated: July 9, 2026 **COTCHETT, PITRE & McCARTHY, LLP**

By: *__/s/ Tyson C. Redenbarger__*
NIALL P. McCARTHY
TYSON C. REDENBARGER
GRACE Y. PARK
KEVIN J. BOUTIN
REGINA R. WANG

*Attorneys for Plaintiffs*

Dated: July 9, 2026 **WEIL, GOTSHAL & MANGES LLP**

By: *__/s/ David J. Lender__*

DAVID J. LENDER

O'MELVENY & MYERS LLP
DAWN SESTITO
MATTHEW R. COWAN

*Attorneys for Defendant*

Counsel for both parties attest that they met and conferred by videoconference in an attempt to discuss and resolve this issue.

**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)**

I, Tyson C. Redenbarger, attest that concurrence in the filing of this document has been obtained from the other signatories. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 9th day of July 2026, at Burlingame, California.

By: *__/s/ Tyson C. Redenbarger__*
Tyson C. Redenbarger