Exhibit A – Baykeeper Relevant Deposition Excerpts

| Page:line | Q & A |
|---|---|
| 18:9-19:10 | Q. I'll ask the court reporter to mark as Exhibit 1 the deposition notice.<br>…<br>Q. So, Ms. Choksi-Chugh, if you can take a look at this. I think you mentioned this was one of the documents you reviewed. And I'll state for the record that Exhibit 1 is a pleading titled "Defendants' Amended Notice of Deposition of Corporate Representative of Baykeeper, Inc." Okay. So, Ms. Choksi-Chugh, you've seen this document before?<br>A. Yes.<br>Q. And you understand that you're here to testify as a corporate representative for Baykeeper?<br>A. Yes.<br>Q. And are you prepared to testify on the topics that are set forth in the deposition notice?<br>A. Yes.<br>**MR. REDENBARGER**: Can I add something to the record? That counsel met and conferred regarding some of the topics and agreed, or at least discussed and clarified the scope as to some of those. And the witness has been prepared pursuant to that discussion. |
| 48:6-22 | A. It's my understanding that Exxon is one of the biggest producers of plastic polymers.<br>Q. What is that understanding based on?<br>A. Information that I learned in the case.<br>Q. Okay. Can you identify, like, a specific source? Do you recall?<br>**MR. REDENBARGER**: I'll just caution you not to reveal communications with your attorneys. But beside that, you can answer.<br>Q. That's correct. If it's information you got just from your lawyer, then I don't want to know about it. But if it's information that Baykeeper has independently or on its own, then I'm entitled to it.<br>A. Yeah, I would say I won't answer that question. |
| 53:17-54:2 | Q. So can you please tell me the substance of the work that was done by Baykeeper in-house attorneys to investigate whether these products contained ExxonMobil polymers?<br>**MR. REDENBARGER**: We'll object based on attorney-client privilege, and I'll instruct the witness not to answer that question.<br>Q. And are you going to take your attorney's instruction?<br>A. Yes. |
| 67:9-69:25 | Q. I'm going to talk a little bit about the lawsuit and how Baykeeper came to be a plaintiff in the lawsuit. So when did Baykeeper first contemplate filing this litigation against ExxonMobil?<br>A. I would say in 2022 or 2023.<br>Q. And what precipitated it? Did someone reach out to Baykeeper about the possibility of initiating this litigation?<br>**MR. REDENBARGER**: I'll just caution you to not reveal attorney-client privilege. But you can answer. |

| | |
|---|---|
| | A. Okay. Our managing attorney, Eric Buescher, worked at Cotchett prior to coming to Baykeeper.<br>Q. And can you spell his last name, please?<br>A. B-U -- can I? B-U-S-C-H-E-R [sic].<br>Q. So when did -- is it pronounced "Buescher"?<br>A. "Buescher."<br>Q. So when did Mr. Buescher start working at Baykeeper?<br>A. I believe it was about four years ago.<br>Q. So roughly 2022?<br>A. Yeah. 2021-ish. Yeah.<br>Q. And prior to that, he worked at Cotchett?<br>A. Yes.<br>Q. Did Baykeeper have a relationship with Cotchett prior to Mr. Buescher's employment?<br>A. At Baykeeper?<br>Q. Um-hum.<br>A. Yes.<br>Q. So what was -- and obviously don't reveal any attorney-client communications. But what was the nature of Baykeeper's relationship with Cotchett prior to Mr. Buescher's employment at Baykeeper?<br>A. They have provided pro bono support on litigation.<br>Q. Okay. For how long has Cotchett provided pro bono support to Baykeeper?<br>A. As far as I remember, since about 2017. 2016, 2017.<br>Q. And what kind of cases has Cotchett provided pro bono services to Baykeeper for?<br>A. Clean Water Act cases.<br>Q. And are some of those cases cases that were filed publicly?<br>A. Yes.<br>Q. Do you recall who they were against?<br>A. One was against Cargill Corporation.<br>Q. And what was the nature of that case?<br>A. It was a jurisdictional -- Clean Water Act jurisdictional question about the development of landfills -- sorry -- salt ponds in the South Bay.<br>Q. Okay. Can you think of other cases where Cotchett provided pro bono services?<br>A. No.<br>Q. So did the opportunity to participate in this lawsuit come to Baykeeper through Mr. Buescher?<br>**MR. REDENBARGER**: Object. Vague. Form. But go ahead if you can.<br>A. Okay. I was presented with the idea by Eric. So, sorry, that was bad grammar. Eric presented the idea of the litigation to me. |
| 71:7-22 | Q. Other than the entities that are the current plaintiffs in the case, which are – of course I've lost the complaint -- Sierra Club, Surfrider, Heal the Bay, and Baykeeper, were there any other organizations in that 2022 to 2023 time period that you understood were considering joining the lawsuit? |

Exhibit A – Baykeeper Relevant Deposition Excerpts

| | |
|---|---|
| | **MR. REDENBARGER**: I'm going to object. It's outside the scope and to the extent it calls for attorney-client privilege. I also don't see the relevance. So I'm going to instruct the witness not to answer.<br>Q. Are you going to take your attorney's instruction?<br>A. Yes. |
| 73:15-24 | Q. So when did Baykeeper first communicate with the Attorney General's Office about this litigation?<br>**MR. REDENBARGER:** Objection. Form. Go ahead.<br>A. I don't believe Baykeeper ever directly communicated with the AG's office … about the litigation. |
| 78:11-20 | Q. Do you know whether Baykeeper's outside counsel has had continued communications with the Attorney General's Office after the complaints were filed?<br>**MR. REDENBARGER**: I'll object and instruct you not to answer. Attorney-client privilege.<br>Q. Are you going to take your counsel's instruction?<br>A. Yes. |
| 79:18-80:3 | Q. In 2022 or 2023 when Baykeeper was first considering participating in this litigation, did it have an understanding as to whether there would also be a lawsuit filed by the California Attorney General?<br>**MR. REDENBARGER**: Again, I'm going to caution you to not reveal something you learned through an attorney. But if you had an independent understanding, you can answer.<br>A. So I'm not going to answer that question. |
| 82:13-83:20 | Q. Okay. So were -- some of the discussions with the attorneys, are they forming the basis of your testimony on behalf of Baykeeper on Topic 8?<br>**MR. REDENBARGER**: Object to the extent it calls for attorney-client privilege. You can answer "yes" or "no" to this question, I think.<br>A. Could you repeat the question?<br>Q. Sure. Yeah. Were the discussions that you had with your attorneys forming the basis of your testimony on behalf of Baykeeper as to Topic No. 8?<br>**MR. REDENBARGER**: Same objection. Go ahead.<br>A. Forming the basis? So you mean -- are you able to ask that just slightly differently? Because I'm not sure I understand.<br>Q. Sure. Sure. What I'm trying to understand is, because you're testifying on behalf of Baykeeper, you can get information from other sources to prepare for the deposition. So what I'm trying to understand is, were some of the communications you had with your attorneys your means of gathering the information so that you could testify on behalf of Baykeeper for Topic 8?<br>A. Well, because Baykeeper's staff are attorneys, and they're the ones who may or may not have had these communications, yes. |
| 84:25-85:9 | Q. So please tell me what information was shared with you from your attorneys that forms the basis of your testimony regarding Topic 8.<br>**MR. REDENBARGER**: I'll object. It calls for attorney-client privilege. I'll instruct you not to answer.<br>Q. So will you take your attorney's instruction on that? |

| | |
|---|---|
| | A. Yes. |
| 102:4-14 | Q. Okay. Is Baykeeper aware of the parameters? Like, is there a dollar cap? Is there a set amount that will be contributed to the litigation?<br>**MR. REDENBARGER**: I'll object that it calls for attorney-client privilege. I'll instruct the witness not to answer.<br>Q. Well, are you going to take your attorney's instruction?<br>A. Yes. |
| 107:21-108:8 | Q. Okay. Did those coordination calls that occurred with the co-plaintiffs include any agreement regarding kind of public advocacy or public messaging?<br>**MR. REDENBARGER**: I'm going to instruct the witness not to answer. Those are privileged communications, and that reveals the content of the privileged communication.<br>Q. Are you going to take your attorney's instruction?<br>A. Yes. |
| 112:14-24 | Q. And do you know the content, or can you share with me the content of the communications that Baykeeper, through its outside counsel, had with the California Attorney General's Office?<br>**MR. REDENBARGER**: I'll assert the attorney-client privilege and instruct the witness not to answer.<br>Q. Are you going to follow your attorney's instruction?<br>A. Yes. |
| 113:7-16 | Q. And what was the substance of those communications between Baykeeper's outside counsel and IEJF regarding this litigation?<br>**MR. REDENBARGER**: I'm asserting the attorney privilege. I'll instruct the witness not to answer.<br>Q. Will you follow your attorney's instruction?<br>A. Yes. |
| 114:23-115:7 | Q. Do you know if Baykeeper, through its outside counsel, has an agreement with IEJF regarding this litigation?<br>**MR. REDENBARGER**: So I'll instruct the witness not to answer, asserting the attorney-client privilege.<br>Q. Are you going to follow your attorney's instruction?<br>A. Yes. |
| 115:8-17 | Q. Do you know if Baykeeper, through its outside counsel, has an agreement with Minderoo regarding this litigation?<br>**MR. REDENBARGER**: So I'm going to object and instruct the witness not to answer based on the attorney-client privilege.<br>Q. Are you going to follow your attorney's instruction?<br>A. Yes. |
| 145:11-21 | Q. I mean, you made a statement, right –<br>A. Yes.<br>Q. -- that Exxon has brainwashed everyone into thinking that plastic recycling works. So I just want to understand, what's the basis of that statement?<br>**MR. REDENBARGER**: All right. I'm going to instruct her not to answer because that's asked and answered four times. And I've objected to the last three. And so I think she's already answered the question. |

| | |
|---|---|
| 178:25-179:7 | Q. And does Baykeeper have knowledge of who funded this Minderoo-Monaco Commission on Plastics and Human Health?<br>A. No.<br>Q. Do you know if this document was provided to Baykeeper by IEJF?<br>A. We've never had a direct communication with IEJF. So no. |
| 180:12-21 | Q. Okay. Do you know if IEJF provided any scientific materials to the Cotchett firm for purposes of the litigation?<br>**MR. REDENBARGER**: Objection. Attorney-client privilege. I'll instruct the witness not to answer that.<br>Q. Will you accept your attorney's instruction?<br>A. Yes. |
| 180:22-181:4 | Q. Do you know if IEJF reviewed the complaint in this case before it was filed?<br>**MR. REDENBARGER**: Again, I'll instruct her not to answer based on attorney-client privilege.<br>Q. Are you going to take your attorney's instruction?<br>A. Yes. |
| 193:13-194:11 | Q. So this is Exhibit 12, Baykeeper009747. So was this also in that same file of documents from the attorneys?<br>A. Yes.<br>Q. And do you know if this was a document that -- or was this a document that Baykeeper was aware of prior to contemplating this litigation against ExxonMobil?<br>A. I don't believe so, no.<br>Q. And so Baykeeper didn't have any involvement in this; is that correct?<br>A. Correct.<br>Q. And have you reviewed this document?<br>A. I have just skimmed it.<br>Q. I mean, do you know if this was used to help prepare this litigation?<br>**MR. REDENBARGER**: I'll object. To the extent that you have any understanding that came from an attorney, it's privileged. So I'll caution you not to reveal privileged communication. Otherwise, you can answer.<br>A. I don't have separate information from what my attorneys have talked about. |
| 197:25-198:9 | Q. Why did Baykeeper sue only Exxon in this case?<br>**MR. REDENBARGER**: So I'll object. I think that gets into work product and privileged communications. So I'll instruct her not to answer that.<br>Q. Are you going to take your attorney's instruction?<br>A. Yes. |
| 274:8-23 | Q. What investigation did Baykeeper do to determine -- I mean, you're hinging all of this on the fact that any trash -- you know, any Starbucks product is an ExxonMobil polymer. So, like, what investigation did Baykeeper do to validate that assumption?<br>**MR. REDENBARGER**: So I'm going to object. Asked and answered. She's answered this. It's argumentative somewhat. You're arguing with her. And I'll instruct you not to reveal any attorney-client privileged communications about what type of investigation went into drafting and creating the complaint. You can answer. |

| | |
|---|---|
| | A. Yeah, so I'm not going to answer that question on advice of counsel. |
| 294:23-295:19 | Q. When Baykeeper was first approached about the possibility of joining this – or participating in this litigation or initiating this litigation, I guess -- I guess let me ask that. Do you know if -- at the time Baykeeper first heard about this litigation, was your understanding that litigation would go forward and Baykeeper needed to decide whether to participate, or that there was just discussion about whether to initiate some type of litigation along these lines?<br>**MR. REDENBARGER**: Hold on a second. So I'll object. I think it misstates the record. To the extent any of those conversations that you're being asked about are between you and an attorney, I'd instruct you not to answer. I think the way the question is phrased, I'll instruct her not to answer based on attorney-client privilege.<br>Q. Okay. Will you follow that instruction?<br>A. Yes. |
| 295:20-296:13 | Q. Do you have an understanding -- well, I think -- I want to make sure that I understand the testimony then. I think my understanding was that Baykeeper was approached about the possibility of participating in this litigation; is that correct?<br>**MR. REDENBARGER**: Objection. Misstates testimony. But go ahead. And again, don't reveal communications. But to the extent you can, go ahead.<br>A. Yeah, I'm not sure how to answer that question if I'm not --<br>**MR. REDENBARGER**: Okay. So I'll instruct the witness not to answer based on attorney-client privilege.<br>Q. Okay. And you'll follow that instruction?<br>A. Yes. |
| 297:2-21 | Q. So the discussions with Sierra Club, Heal the Bay, and Surfrider, always involved the possibility of litigation against ExxonMobil specifically; is that correct?<br>**MR. REDENBARGER**: So to the extent this is getting into the context of communications between the plaintiffs, if there was an attorney present from my firm, I would instruct you not to answer. If there was non-privileged communications, you can answer.<br>A. Okay. So I believe attorneys were present at all of those conversations.<br>Q. Okay. Because I thought in the prior discussion, you said, when you looked at the calendar invites, that sometimes Cotchett was there, but sometimes not, on those calls.<br>A. If we were discussing the litigation, I'm pretty sure Cotchett was there. |
| 297:22-298:8 | Q. Okay. So then what would the other discussions have been with Sierra Club, Heal the Bay, and Surfrider if they didn't involve the litigation?<br>**MR. REDENBARGER**: Objection. Assumes facts. Go ahead.<br>A. Just partnering, like, how -- how we would partner moving forward if we were to work together. Like, "Who on my staff is going to talk to who on your staff about the press conference?" Those kinds of communications. |
| 299:10-303:03 | Q. But your engagement -- your engagement agreement with Cotchett was not until March of 2024 is what you testified?<br>A. The formal retainer. Yes. |

| | |
|---|---|
| | Q. Okay. Are you asserting attorney-client privilege over communications prior to that date that the Cotchett firm participated in?<br>A. Yes.<br>Q. And what's the basis of asserting attorney-client privilege prior to the date of the engagement?<br>**MR. REDENBARGER**: I'll object. You're asking for a legal conclusion. I don't think she has to answer that. Why she's asserting attorney-client privilege? I don't think that's an appropriate question.<br>Q. Okay. How about I rephrase it? I don't mean to fight over that question.<br>**MR. REDENBARGER:** Okay.<br>Q. When did you form an attorney-client relationship with the Cotchett firm related to this litigation?<br>**MR. REDENBARGER**: Yeah, I have to object to that, too. It's calling for a legal conclusion. I mean, the law is as soon as you reach out to an attorney, there's, like, a relationship. So I don't think -- again, I don't think it's appropriate for her to answer that.<br>Q. I don't think that's the law, that as soon as you reach out to an attorney, there's a relationship.<br>**MR. REDENBARGER**: Well, I'm not going to let her answer that. I'll instruct her not to answer that. "When did you form an attorney-client relationship with a law firm that you work with?" No. So -- yeah, I'm happy to stand on that objection.<br>Q. Okay. So you'll instruct her not to answer?<br>**MR. REDENBARGER**: Yes.<br>Q. And you're going to take that instruction?<br>A Yes.<br>Q. Okay. So your position is the formation of the attorney-client relationship? I mean, that would be on a privilege log, right?<br>**MR. REDENBARGER**: I'm not following.<br>Q. Well, like the date that something occurred, like the date of the -- even if you asserted privilege over an engagement letter, we would get to know the date of it, right?<br>**MR. REDENBARGER**: And she told you.<br>Q. Yeah, but you're not letting her answer questions about communications prior to that. So I'm trying to figure out if there was an attorney-client relationship that occurred prior to that.<br>**MR. REDENBARGER**: And there was, and I'm asserting privilege over those communications.<br>Q. And so I'm trying to figure out when that attorney-client relationship was formed.<br>**MR. REDENBARGER:** Okay. That's different. I agree. "When" is different than what you asked before.<br>Q. Okay. I think that's literally what I asked, but I'll ask it again. When did the attorney-client relationship with the Cotchett firm form related to this litigation?<br>**MR. REDENBARGER**: I object to that because it's a legal conclusion, "When did you form?" If you want to ask "When did you first reach out or have a |

| | |
|---|---|
| | communication," that's different. But asking her when a legal concept was created, that I don't think is appropriate.<br>Q. So you're going to instruct her not to answer?<br>**MR. REDENBARGER**: Yeah. You're asking her -- when she thinks that an attorney-client relationship began isn't for her.<br>Q. Well, she's the client, and she's an attorney. So that's my question: When did the attorney-client relationship with the Cotchett firm form related to this litigation? So you're instructing her not to answer?<br>**MR. REDENBARGER**: Yes, based on that. But I've told you you can ask a different question.<br>Q. That's fine. So you're going to take his instruction?<br>A. Yes. |
| 303:11-304:12 | Q. Okay. So prior to March of 2024, what communications did you have with Sierra Club, Heal the Bay, Surfrider, with or without the Cotchett firm, related to this litigation?<br>**MR. REDENBARGER**: And I'll instruct you, to the extent there was an attorney involved, that's privileged, and I'll instruct you not to answer that. Aside from those conversations, you can go ahead.<br>A. Yes. So I think I said before there were a couple of conversations without attorneys, but most of them involved attorneys.<br>Q. The ones without the attorneys, was there any discussion of who to sue and what claims to bring?<br>**MR. REDENBARGER**: I'll instruct the witness not to answer that based on attorney-client privilege.<br>Q. Even if there were no attorneys present?<br>**MR. REDENBARGER**: Yeah. It implicates attorney-client privilege, and I'm instructing her not to answer.<br>Q. Okay. And you'll take that instruction?<br>A. Yes. |
| 305:22-306:10 | Q. And in that first communication – again, for now don't tell me the content of it – but did – was it by phone, or in writing, or Zoom, or whatever?<br>A. I believe it was a phone call.<br>Q. Do you know who participated in the phone call?<br>A. Our in-house attorney and someone from Cotchett or some people from Cotchett.<br>Q. Did – who called who?<br>A. That, I don't know.<br>Q. So you don't know who initiated the discussion?<br>A. Correct. |
| 306:11-23 | Q. Did -- so now I'll ask you the question, and pause for a second after I ask it. Can you tell me the content of that first communication, that phone call, between Baykeeper and the Cotchett firm that was in 2022 or 2023?<br>**MR. REDENBARGER**: So I'll object, assert the attorney-client privilege, instruct the witness not to answer. I'll also make a scope objection.<br>Q. Are you going to take your attorney's instruction?<br>A. Yes. |

| | |
|---|---|
| 306:24-307:6 | Q. How many calls occurred with the Cotchett firm between that first one and when you engaged them in March of 2024?<br>**MR. REDENBARGER**: Objection. Scope, relevance. Go ahead.<br>A. I don't know the exact number. I would guess six-ish. |
| 311:10-312:1 | Q. So for the communications that occurred prior to March of 2024 with Sierra Club, Heal the Bay, or Surfrider, they all occurred with a Cotchett attorney on them in which the potential litigation was discussed substantively; is that correct?<br>**MR. REDENBARGER**: Hang on a second. I'll object to the form of the question. Just give me a second to think about it. And the question included with a Cotchett attorney?<br>Q. I'm just trying to figure out yes or no.<br>**MR. REDENBARGER**: So I'll instruct her not to answer this question based on attorney-client privilege. Again, relevance. I just cannot, for the life of me, see why this is relevant. |
| 313:7-25 | Q. Her testimony was that you were engaged in March of 2024.<br>**MR. REDENBARGER:** So that has nothing to do with when an attorney-client relationship begins.<br>Q. Well, I asked her that, and you wouldn't let her answer.<br>**MR. REDENBARGER:** Okay. Fair. I still think you're wrong.<br>Q. I need my record that – I would like to know the substance of the communications that you had with Sierra Club, Heal the Bay, and Surfrider prior to March of 2024. So please tell me the substance of those communications.<br>**MR. REDENBARGER**: I'm instructing her not to answer that based on attorney-client privilege.<br>Q. Are you going to take that instruction?<br>A. Yes. |
| 314:1-315:2 | Q. And I just want to confirm that the Cotchett firm participated in all of those calls.<br>**MR. REDENBARGER**: Objection. Form, vague, asked and answered.<br>A. No.<br>Q. So for the calls that the Cotchett firm did not participate in, can you please tell me the substance of them?<br>**MR. REDENBARGER**: Asked and answered. To the extent there were discussions regarding legal advice or something an attorney had told you, that's privileged, and we don't want you to share that. If there's something outside of that where an attorney wasn't present, you weren't talking about legal advice or the lawsuit or whatever, you can answer.<br>A. Okay. I think I'm just going to not answer that question.<br>**MR. REDENBARGER**: So I'll instruct the witness not to answer based on the attorney-client privilege.<br>Q. So you're going to take your attorney's instruction and not answer that based on the attorney-client privilege?<br>A. Yes. |