September 11, 2026

**<u>Via ECF</u>**
Hon. Laurel Beeler
United States District Court
Northern District of California

**Re:** ***Sierra Club, Inc., et al. v. Exxon Mobil Corporation***
**Case No. 3:24-cv-07288-RS (LBx)**

Dear Judge Beeler:

Plaintiffs Sierra Club, Inc., Surfrider Foundation, Inc., Heal the Bay, Inc., and Baykeeper, Inc., ("Non-Profits" or "Plaintiffs"), and Defendant Exxon Mobil Corporation ("Exxon") have a dispute concerning certain deposition questions. The parties seek guidance on issues of privilege and the relevance of Exxon's inquiry into privileged topics. Plaintiffs seek an order from the Court: (1) granting a protective order to preclude Exxon from intentionally asking privileged questions at depositions; (2) providing guidance on the lack of relevance of the dismissed claims previously asserted in the Texas litigation, but not here; and (3) denying Exxon's motion to compel. Exxon (1) seeks to compel non-privileged information, including (where appropriate) non-privileged preliminary facts to establish the claimed privileges so that it can properly assess their application; and (2) asks that the Court deny Plaintiffs' proposed protective order in full.

Plaintiffs previously sought a protective order, and Exxon sought to compel "preliminary facts to establish the claimed privileges." ECF No. 61. The Court found the dispute premature and ordered the Plaintiffs to "provide Exxon with the nonprivileged information supporting their claims of privilege." ECF No. 62 at 2. The Order further stated that "[i]f disputes persist after the parties have met and conferred about the applicability of privilege, the parties may file a joint letter brief (following the court's standing order) addressing the issues." *Id.*

Counsel have conferred several times by email and video but reached an impasse. Attached are four exhibits. No hearings or case deadlines are currently set. No trial date has been set.

The parties' respective positions are set forth in the following five pages.

## NON-PROFITS' POSITION

In compliance with the Court's Order, ECF No. 62 at 2, Non-Profits gave Exxon additional nonprivileged information supporting their privilege claims, identifying the specific dates Cotchett, Pitre & McCarthy, LLP ("CPM") and each non-profit plaintiff "engaged in confidential communication regarding the prospect of litigation regarding the plastic pollution crisis." **Ex. A**. CPM also explained the basis for common interest protection with respect to the California Attorney General ("CAAG"), and the basis for privilege with respect to funder and client Intergenerational Environmental Justice Fund ("IEJF"), with relevant dates. That is all the information the Court requested, and Exxon is entitled to. That should have ended the issue.

But Exxon persists in pursuing its irrelevant and absurd conspiracy theory "that Exxon's foreign competitor [an 'Australian mining billionaire'] is publishing papers to spur litigation against Exxon and funding (and possibly soliciting) that litigation through its foreign agent, CPM." *See* below. That baseless assertion is irrelevant to the claims and defenses here, and Exxon's conclusory assertions of relevance are not supported by authority. Rather, the invasive questions directly relate to the dismissed defamation and conspiracy lawsuit Exxon filed in Texas against Non-Profits, IEJF, and CAAG. Exxon's central allegation in the Texas complaint is that the funder "IEJF did not want to sue in its own name; instead, the law firm's [CPM] first task was to recruit and enlist willing plaintiffs to stand in for [Andrew Forrest's and Minderoo Foundation's] agenda. Cotchett signed up the U.S. proxies—Defendants Sierra Club, Surfrider, Heal the Bay, and Baykeeper—as nothing but local placeholders, acting for the foreign business interests competing in U.S. courts rather than the marketplace." **Ex. B**. Those bogus claims are not at issue here. Thus, discovery into that irrelevant and meritless claim is improper, and Exxon should be precluded from exploring it.[1]

Even if "who contacted who first" was relevant to "motive, intent, credibility, and conflicts,"[2] *see* below, Exxon has all of the non-privileged information it is entitled to. Non-Profits have provided the non-privileged information supporting their privilege claims (**Ex. A**), Exxon has access to the public retainer agreement between CPM and IEF, which specifically states that IEJF's funding "will in no way affect [CPM's] independent professional judgement," and that each Non-Profit will determine the outcome of the case.[3] It is also public knowledge that Andrew Forrest is a supporter of environmental causes and funds IEJF, Minderoo, and other philanthropic organizations, promising to give away at least half of his wealth to charity.[4] IEJF is a registered Australian non-profit in good standing whose mission includes "advanc[ing] the protection and promotion of the environment through [its] own research and by funding research and legal action."[5] Indeed, this Court found that "a cursory glance at [Non-Profits'] complaint confirms that Plaintiffs brought this case solely to protect public interests." ECF No. 47 at 17 (emphasis added).

---

[1] Plaintiffs reserve the right to seek sanctions if Exxon continues to engage in harassing discovery or attempts to invade the attorney-client privilege or other discovery protections.

[2] Nor is the privileged information Exxon seeks relevant to standing, *Cal. Med. Assn. v. Aetna Health of Cal. Inc.*, 14 Cal. 5th 1075, 1098 (2023) ("[E]xpenditures made for UCL litigation itself cannot support UCL standing."), or whether Non-Profits suffered harm. *See* Dkt. 47 at 17 ("no particular plaintiff stands to gain anything the public would not.").

[3] *See* IEJF and CPM agreement, at PDF page 12, ¶¶ 5,6, publicly available at https://efile.fara.gov/docs/7480-Exhibit-AB-20241021-4.pdf.

[4] *See* https://en.wikipedia.org/wiki/Andrew_Forrest#Environment; #Philanthropy.

[5] *See* https://www.acnc.gov.au/charity/charities/17eb1bde-67a9-ec11-9841-002248936a6b.

Exxon does not need privileged information to advance its baseless conspiracy theory asserted in the Texas case. *See Cont'l Cirs. LLC v. Intel Corp.*, 435 F. Supp. 3d 1014, 1022 (D. Ariz. 2020) (denying discovery aside from the funder's identity).

Nor does Non-Profits' motion to transfer the Texas action to this district demonstrate relevance. *See* below. In that motion, Non-Profits compared the similarities between the element of truth—an affirmative defense to the Texas defamation claim—to Non-Profits' nuisance and UCL claims in this action. The discovery Exxon seeks—whether CPM "recruited," "enlisted," or "solicited" Non-Profits—is privileged, irrelevant to this action, directly relevant in Texas, and subject to an Anti-SLAPP motion if transferred to this District. At the hearing on Exxon's motion to strike, Judge Seeborg commented on the "ironic position" Exxon placed itself in by filing an anti-SLAPP motion in this case (which the Court denied) while also bringing "a defamation claim [in Texas] that's connected to this whole thing." In short, Exxon cannot invade privilege by demanding discovery based on a dismissed conspiracy theory from another case.

Contrary to Exxon's claim below, it is seeking obviously privileged information. Exxon asked the Baykeeper representative, who is herself an attorney: "Can you tell me the content of that first communication, that phone call, between Baykeeper and the Cotchett firm that was in 2022 or 2023." *See* ECF 61-1, Baykeeper transcript excerpts at 306:13-15.[6] Exxon also asked: "please tell me what information was shared with you from your attorneys that forms the basis of your testimony regarding Topic 8." *Id.* at 84:25-85:2. These questions represent Exxon's multiple, blatant attempts to elicit the content of privileged attorney-client communications. Exxon cannot discover the content of the Plaintiffs' communications with their attorneys, including Plaintiffs' communications "with a view to obtaining legal services." *See Barton v. U.S. Dist. Ct. for Cent. Dist. of Cal.*, 410 F.3d 1104, 1111 (9th Cir. 2005).

Litigation materials are also not discoverable. Exxon asked about "the substance of the work that was done by Baykeeper in-house attorneys" in preparation to file this lawsuit (ECF 61-1 at 53:17-20); about other organizations that "were considering joining the lawsuit" (*id.* at 71:7-13); and "Why did Baykeeper sue only Exxon in this case?" (*id.* at 197:25-198:1). Such questions improperly probe the details of materials "prepared in anticipation of litigation or for trial." *Richey*, 632 F.3d at 567; *see also Kintera, Inc. v. Convio, Inc.*, 219 F.R.D. 503, 507 (S.D. Cal. 2003). Exxon also asked: "I would like to know the substance of the communications that you had with Sierra Club, Heal the Bay, and Surfrider prior to March of 2024. So please tell me the substance of those communications." ECF 61-1 at 313:16-20. This question likewise seeks discovery of the joint Plaintiffs' protected "mental impressions" and "legal theories." *Am. C.L. Union of N. California v. United States Dep't of Just*., 880 F.3d 473, 483 (9th Cir. 2018).

Similarly, counsel's communications with CAAG regarding the substance of this lawsuit are protected. Exxon asked for "the content of the communications that Baykeeper, through its outside counsel, had with the California Attorney General's Office." ECF 61-1 at 112:14-17. This questioning improperly seeks information protected by work product and the attorney-client privilege, *i.e.*, what the Non-Profits' lawyers did as part of this litigation, which was then communicated to the Plaintiffs in a privileged communication. *Cal. Sportfishing Prot. All. v. Chico Scrap Metal, Inc.*, 299 F.R.D. 638, 647 (E.D. Cal. 2014). Non-Profits and the California Attorney

[6] Baykeeper testified it considered filing this lawsuit in 2022 or 2023. ECF 61-1 at 69:17-70:4.

General have had a common interest agreement since July 13, 2023. And because "a common interest agreement need not be in writing," Exxon's focus on the form of the agreement is irrelevant. *In re California Bail Bond Antitrust Litig.*, 778 F. Supp. 3d 1051, 1063 (N.D. Cal. 2025) (internal quotation marks omitted).

Counsel's communications with IEJF are also not discoverable. Exxon asked for "the substance of [ ] communications between Baykeeper's outside counsel and IEJF regarding this litigation." ECF 61-1 at 113:7-9. This material is protected by privilege, work product, and by the common interest doctrine, given IEJF's status as a client of CPM and a litigation funder. *Cont'l Cirs. LLC*, 435 F. Supp. 3d at 1022. There is no legitimate basis to pry into privileged material or work product.

Courts may enter a protective order when "proposed discovery is outside the scope permitted by Rule 26(b)(1)," which allows discovery into "nonprivileged matter[s]" that are "relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1), (b)(2)(C)(iii); *see also* Fed. R. Civ. P. 30(d)(3). "Attempts to probe a deponent regarding irrelevant information may veer into the realm of harassment or bad faith conduct of the deposition, which are grounds to cease providing testimony in order to seek judicial relief." *V5 Techs. v. Switch, Ltd.*, 334 F.R.D. 306, 31 n.9 (D. Nev. 2019). Likewise, courts may prohibit inquiry into matters that reveal an "attorney's mental impressions, theories, conclusions or opinions concerning the case." *Connolly Data Sys., Inc. v. Victor Techs., Inc.*, 114 F.R.D. 89, 96 (S.D. Cal. 1987).

## EXXON'S POSITION

Exxon is not seeking privileged information; rather, Exxon seeks nonprivileged facts necessary to determine whether and when the asserted privileges attached. Plaintiffs still refuse to provide basic information necessary to draw those lines—including when each Plaintiff first sought legal advice from CPM, who initiated the contact that Plaintiffs say created the attorney-client relationship, and the participants in and effective dates of the common-interest arrangements Plaintiffs invoke.

At the Baykeeper 30(b)(6) deposition, Exxon sought this basic information. Baykeeper was instructed not to answer. Tr. at 302:4-303:3. After this Court's July 15 order, CPM stated: "On August 3, 2023, CPM and Baykeeper engaged in confidential communication regarding the prospect of litigation regarding the plastic pollution crisis." But this did not answer the question. The attorney-client privilege applies only to confidential communications between Baykeeper and CPM ***for the purpose of seeking legal advice***. *See Barton v. U.S. Dist. Ct. for Cent. Dist. of Cal.*, 410 F.3d 1104, 1111 (9th Cir. 2005); *United States v. Gurtner*, 474 F.2d 297, 298 (9th Cir. 1973). Plaintiffs' disclosure that CPM and Baykeeper had a "confidential communication" on August 3 does not establish that predicate. Exxon is entitled to ask when Baykeeper first sought legal advice or services from CPM, who initiated the relevant contact, and whether CPM or another person approached Baykeeper about participating in the contemplated litigation. Those are facts concerning the existence and scope of the asserted relationship—not privileged legal advice.

This information is important to Exxon's defense. This suit is funded by an Australian mining billionaire—who owns a company that competes with Exxon—through his self-funded foreign entity, IEJF. And Baykeeper sued Exxon in reliance on a publication from *another* entity—Minderoo Foundation—funded by the *same* Australian mining billionaire. It thus appears that Exxon's foreign competitor is publishing papers to spur litigation against Exxon and funding (and

possibly soliciting) that litigation through its foreign agent, CPM. (Attorneys at CPM registered as foreign agents under the Foreign Agent Registration Act because of their engagement by IEJF.)

At a minimum, Exxon is entitled to more testimony from Baykeeper because there were communications with CPM and the other Plaintiffs as early as 2022 or 2023—potentially before the August 2023 date Baykeeper asserts privilege.[7] Tr. at 300:5-302:41:23. Plaintiffs have the burden to establish "the existence of an attorney-client relationship and the privileged nature of the communication." *Greer v. County of San Diego*, 127 F.4th 1216, 1224 (9th Cir. 2025) (cleaned up). Baykeeper has not established when it first sought legal advice from CPM, and a communication in which CPM or another third party merely approached Baykeeper about participating in litigation would not be privileged simply because the solicitation came from a lawyer. Plaintiffs must establish that Baykeeper was consulting CPM for legal advice or services.[8] *See, e.g.*, *Barton*, 410 F.3d 1104, 1111-12; *Foster Poultry Farms v. AISLIC*, 2005 WL 8176395, at *4 (E.D. Cal. July 19, 2005).

Exxon is also entitled to communications between Baykeeper and other entities, including other Plaintiffs, the California Attorney General's office ("CAAG"), and IEJF. Communications between the Plaintiffs occurred numerous times, for 1-2 years before the litigation was filed, and there were at least some calls CPM did not attend. Tr. at 306:24-307:6; 313:7-315:2. Baykeeper was instructed not to answer regarding those conversations even though it is not clear why they would be privileged. *Id.* at 314:1-315:2; 297:2-21. Plaintiffs conflate communications concerning contemplated litigation with privilege. The fact that communication concerns contemplated litigation does not, standing alone, establish attorney-client privilege, work-product protection, or common-interest protection. At a minimum, Plaintiffs must establish the basis for protecting those attorney-free communications, including when the asserted common-interest relationship arose, which entities participated, and whether the communication disclosed protected work product.

Exxon also asked Baykeeper about its communications with CAAG, because this suit was filed in coordination with and on the same day as the one filed by CAAG. Again Baykeeper was instructed not to answer. Tr. at 78:11-80:13. After the Court's July 15 order, Plaintiffs stated that "CPM and the Attorney General's Office communicated pursuant to a common interest agreement as of July 13, 2023, which was documented in a common interest agreement with the Attorney General's

[7] Exxon's 30(b)(6) deposition notice included Topic 8: "Your communications with any other plaintiff, [CAAG], Rob Bonta or any third party concerning the Action (including plans to file such Action), or any other litigation, enforcement activity, or legal proceeding concerning ExxonMobil, Advanced Recycling, or plastics pollution." The witness confirmed she was prepared to testify on each topic, and Baykeeper served no written objections. Tr. at 18:9-19:4. As her "means of gathering the information so that [she] could testify on behalf of Baykeeper for Topic 8," the witness spoke to Baykeeper in-house attorneys. *Id.* at 83:9-20. When Exxon asked what "information was shared with [the witness] from [her] attorneys that form[ed] the basis of [her] testimony regarding Topic 8," Exxon sought the underlying facts responsive to Topic 8, including when relevant communications occurred and who participated, not counsel's legal advice or the substance of privileged witness-preparation communications. Baykeeper cannot avoid Rule 30(b)(6) testimony merely because its chosen designee learned those facts through counsel.

[8] The Baykeeper 30(b)(6) witness did not know who initiated the first conversation between Baykeeper and CPM. Tr. at 67:9-69:25; 295:23-296:13; 305:22-306:10.

Office on July 28, 2023." This makes no sense for Baykeeper; Baykeeper does not assert a privileged relationship with CPM until August 4, 2023. Plaintiffs refused to say when Baykeeper joined the CAAG agreement. Exxon also asked Plaintiffs to identify all parties to that agreement with CAAG. Plaintiffs responded only that "[CPM], on behalf of our clients, and the California Attorney's Office are parties to the common interest agreement." Exxon asked whether IEJF, which is also a client of CPM, was a party. Plaintiffs refused to say. The parties to the agreement and when Baykeeper joined are facts—not the substance of protected CAAG communications.

As to IEJF, Baykeeper testified that it has had no direct communications with IEJF. *Id.* at 179:6-7; 297:22-298:8. Communications (including those related to IEJF's funding and oversight of the litigation) were funneled through CPM. Tr. at 83:13-20. Baykeeper is now asserting privilege because IEJF also is a client of CPM's and on the basis of common interest and attorney work product privileges. Baykeeper cannot use counsel as the conduit for communications and then refuse to disclose the nonprivileged facts on the ground it learned them from counsel. *See In re Grand Jury Proceedings*, 616 F.3d 1172, 1182 (10th Cir. 2010). As for the common interest privilege, Exxon asked the date the common interest arrangement formed between IEJF and Baykeeper and the other Plaintiffs. Once again, Baykeeper refused to say.

To try to cut through this dispute, Exxon sent Plaintiffs the specific questions it wanted Plaintiffs to answer. *See* attached Exhibit C. Exxon thought this would end the dispute, but Plaintiffs continue to refuse to provide this basic information. Were Baykeeper and the other Plaintiffs approached to join this litigation by CPM on behalf of IEJF or by another third party? Do the Plaintiffs have a common interest agreement among themselves or with IEJF (or related entities)? When did they form and who are the parties to the common interest agreement with CAAG? Exxon is entitled to seek non-privileged information to evaluate both privilege and waiver.

This information is not sought for the Texas litigation (which was dismissed without prejudice for lack of personal jurisdiction). The same facts bear independently on issues presented here, including the source of Plaintiffs' alleged injury, whether the challenged conduct caused any injury, the bases on which Plaintiffs decided to sue Exxon, the credibility of organizational testimony concerning those matters, and the role of third-party funded materials on which Plaintiffs relied in asserting their claims. *See Cont'l Circs. LLC v. Intel Corp.*, 435 F. Supp. 3d 1014, 1019 (D. Ariz. 2020); *Nunes v. Lizza*, 2021 WL 7186264, at *4-6 (N.D. Iowa Oct. 26, 2021).[9] The overlap does not render otherwise relevant discovery off-limits.

Exxon is willing to tailor its follow-up questioning to avoid disclosure of communications that Plaintiffs establish are protected by attorney-client privilege or the work-product or common-interest doctrines, and is not seeking to compel all the questions identified by Plaintiffs above. *See* Ex. D. But Plaintiffs must first establish that the communications they seek to withhold are, in fact, privileged. Exxon is entitled to the facts necessary to evaluate privilege—including the participants, timing, and scope of the asserted relationship—and to testimony concerning communications and underlying facts that do not reveal privileged or protected information. Plaintiffs' request for a protective order should be denied.

[9] Local Rule 3-15(b) requires disclosure of an "entity … that provides funding for the litigation." Plaintiffs refuse to disclose IEJF under L.R. 3-15. *See* Dkt. 52 (Joint Rule 26(f) Report) at 9.

Dated: September 11, 2026

**COTCHETT, PITRE & McCARTHY, LLP**

By: *\/s/ Tyson C. Redenbarger*
NIALL P. McCARTHY
TYSON C. REDENBARGER
GRACE Y. PARK
KEVIN J. BOUTIN

*Attorneys for Plaintiffs*

Dated: September 11, 2026

**WEIL, GOTSHAL & MANGES LLP**

By: */s/ David J. Lender*

DAVID J. LENDER

O'MELVENY & MYERS LLP
DAWN SESTITO
MATTHEW R. COWAN

*Attorneys for Defendant*

Counsel for both parties attest that they met and conferred by videoconference in an attempt to discuss and resolve this issue.

**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)**

I, Tyson C. Redenbarger, attest that concurrence in the filing of this document has been obtained from the other signatories. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 11th day of September 2026, at Burlingame, California.

By: */s/ Tyson C. Redenbarger*
Tyson C. Redenbarger