United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

SIERRA CLUB, INC., et al.,
Plaintiffs,
v.
EXXON MOBIL CORPORATION, et al.,
Defendants.

Case No. 24-cv-07288-RS (LB)

**DISCOVERY ORDER**

Re: ECF No. 65

**INTRODUCTION**

The plaintiffs, four environmental non-profits (Sierra Club, Surfrider Foundation, Heal the Bay, and Baykeeper) sued Exxon Mobil, contending that its conduct concerning plastics and "advanced recycling" is a public nuisance and violates California's Unfair Competition Law.[1] The lawsuit is funded in part by the Intergenerational Environmental Justice Fund (IEJF), an Australian non-profit that is also a client of the plaintiffs' counsel, Cotchett, Pitre & McCarthy (CPM).[2] Exxon separately sued the plaintiffs, IEJF, and the California Attorney General in Texas for defamation and conspiracy, alleging that IEJF (founded by an Australian mining billionaire

[1] Disc. Letter Br. – ECF No. 65 at 2–3. Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents. Citations to the depositions are to deposition page and line.

[2] *Id.* at 2 & nn.3–5; 7/29/2026 Letter, Ex. A to *id.* – ECF No. 65-1 at 3.

whose company competes with Exxon) used CPM to "recruit and enlist willing plaintiffs" and "signed up" the plaintiffs "as nothing but local placeholders" for a foreign competitor's agenda.[3] The Texas court dismissed that case without prejudice for lack of personal jurisdiction.[4]

The parties' joint letter brief presents a dispute about deposition discovery into how this lawsuit came about. At Baykeeper's Rule 30(b)(6) deposition, Exxon asked when and how Baykeeper came to be represented by CPM, what the plaintiffs discussed with one another before suing (including on calls that no lawyer attended), what CPM communicated to the Attorney General's Office, and what Baykeeper knows (through counsel) about IEJF's funding and role. Counsel instructed the witness not to answer. In July, the court held that the parties' first letter brief was premature and ordered the plaintiffs to give Exxon "the nonprivileged information supporting their claims of privilege."[5] The plaintiffs responded with a letter identifying, for each plaintiff, a date on which it "engaged in confidential communication [with CPM] regarding the prospect of litigation," and asserting work-product and common-interest protections for communications with the Attorney General's Office and IEJF.[6] The parties met and conferred and are at an impasse. Exxon moves to compel the foundational facts about the asserted protections and further Baykeeper testimony. The plaintiffs move for a protective order precluding Exxon from "intentionally asking privileged questions" and ask the court to hold that Exxon's line of inquiry (into whether the lawsuit was solicited and funded on a competitor's behalf) is irrelevant because it serves only the dismissed Texas case.[7]

The court can decide the dispute without a hearing. Civil L.R. 7-1(b). The court grants Exxon's motion in part and denies the plaintiffs' motion. Privilege protects communications, not facts, and the plaintiffs, who bear the burden, have not supplied the facts needed to test their claims of protection. They must supply them: when each plaintiff first communicated with CPM

---

[3] Tex. Compl., Ex. B to Disc. Letter Br. – ECF No. 65-2 at 2 (¶¶ 5–6).

[4] Disc. Letter Br. – ECF No. 65 at 6.

[5] Order – ECF No. 62 at 2.

[6] Ex. A – ECF No. 65-1 at 2–3.

[7] Disc. Letter Br. – ECF No. 65 at 1–2, 4.

about this litigation and whether it did so to obtain legal services; who initiated the contact; whether anyone proposed the plaintiff's participation; and the existence, dates, and parties of the asserted common-interest arrangements. Baykeeper also must answer fact questions about the funding arrangement even though it learned the facts through counsel. By contrast, the substance of the plaintiffs' communications with CPM (including as prospective clients), of counsel's communications with the Attorney General's Office, and of counsel's communications with IEJF is protected and off limits. For the plaintiffs' communications with one another without counsel, the plaintiffs have not established any protection: Baykeeper must answer foundational questions about those communications, and must answer substance questions unless counsel states a specific foundation for protection on the record. Beyond the non-privileged facts ordered here, discovery aimed at the dismissed Texas theory is neither relevant nor proportional. Within fourteen days, the plaintiffs must serve a supplemental written disclosure, and within thirty-five days, Baykeeper must sit for a further deposition session of up to two hours, all as specified below.

## STATEMENT

The operative complaint asserts public-nuisance and Unfair Competition Law claims predicated on plastics pollution.[8] The court denied Exxon's special motion to strike, observing that "a cursory glance at [the plaintiffs'] complaint confirms that Plaintiffs brought this case solely to protect public interests" and that "no particular plaintiff stands to gain anything the public would not."[9] Exxon's Texas lawsuit against the plaintiffs, IEJF, and the Attorney General rested on the allegation that IEJF "did not want to sue in its own name; instead, the law firm's [CPM's] first task was to recruit and enlist willing plaintiffs to stand in for the Foreign Interests' agenda."[10] Those claims were dismissed and are not at issue here.[11]

---

[8] *Id.* 2–3.

[9] Order – ECF No. 47 at 17 (as quoted at Disc. Letter Br. – ECF No. 65 at 2 & n.2).

[10] Ex. B – ECF No. 65-2 at 2 (¶ 6).

[11] Disc. Letter Br. – ECF No. 65 at 2, 6.

United States District Court
Northern District of California

Exxon's Rule 30(b)(6) deposition notice to Baykeeper included Topic 8: Baykeeper's "communications with any other plaintiff, [the Attorney General's Office], Rob Bonta or any third party concerning the Action (including plans to file such Action), or any other litigation, enforcement activity, or legal proceeding concerning ExxonMobil, Advanced Recycling, or plastics pollution."[12] Baykeeper served no written objections; its designee confirmed that she was prepared to testify on each topic and that she prepared for Topic 8 by speaking with Baykeeper's in-house attorneys.[13] At the deposition, she testified that Baykeeper considered filing this lawsuit in 2022 or 2023 and that there were communications with CPM "as early as 2022 or 2023," but she did not know who initiated the first conversation between Baykeeper and CPM.[14] Counsel instructed her not to answer questions about (1) when and how the attorney-client relationship with CPM formed, (2) the plaintiffs' communications with one another before March 2024, including calls that no lawyer attended, (3) CPM's communications with the Attorney General's Office, and (4) IEJF's funding and role.[15] Baykeeper has had no direct communications with IEJF; communications about IEJF's funding and oversight of the litigation "were funneled through" CPM.[16]

After the parties' first letter brief, the court held that the dispute was premature, ordered the plaintiffs to "provide Exxon with the nonprivileged information supporting their claims of privilege," and permitted a further joint letter if disputes persisted.[17] On July 29, 2026, CPM sent Exxon a letter stating that each plaintiff "engaged in confidential communication [with CPM] regarding the prospect of litigation regarding the plastic pollution crisis" on the following dates: Sierra Club, May 19, 2023; Heal the Bay, July 6, 2023; Surfrider, July 14, 2023; and Baykeeper,

[12] *Id.* at 5 n.7.

[13] Tr. – ECF No. 61-1 at 18:9–19:4, 83:9–20; Disc. Letter Br. – ECF No. 65 at 5 n.7.

[14] Tr. – ECF No. 61-1 at 67:9–69:25, 295:20–296:13, 305:22–306:10.

[15] *Id.* at 299:10–303:3, 314:1–315:2, 297:2–21, 78:11–80:13; Disc. Letter Br. – ECF No. 65 at 4–6.

[16] Tr. – ECF No. 61-1 at 179:6–7, 297:22–298:8, 83:13–20; Disc. Letter Br. – ECF No. 65 at 6.

[17] Disc. Letter Br. – ECF No. 61; Order – ECF No. 62 at 2.

August 3, 2023.[18] Each communication, the letter said, "was initiated between lawyers or through a prior professional relationship": Surfrider was an existing CPM client, and Baykeeper had been represented by CPM's co-counsel in earlier joint litigation.[19] The letter asserted that CPM and the Attorney General's Office "communicated pursuant to a common interest agreement as of July 13, 2023, which was documented in a common interest agreement . . . on July 28, 2023," and that their communications are protected work product.[20] As to IEJF, the letter stated that IEJF is a CPM client "relative to plastic pollution," that CPM and IEJF "engaged in confidential communication on May 19, 2022," and that communications involving IEJF are independently protected by the work-product and common-interest doctrines "by virtue of its role as a litigation funder."[21]

On September 2, 2026, Exxon emailed the plaintiffs five questions: (1) whether the plaintiffs claim a common-interest privilege with Minderoo, IEJF, or Andrew Forrest and, if so, the agreement's date and parties; (2) whether they claim a common-interest privilege among the plaintiffs, those entities, and the Attorney General (same); (3) all parties to the common-interest agreement with the Attorney General's Office and when each plaintiff joined it; (4) how each plaintiff became involved in the lawsuit (whether CPM, Minderoo, IEJF, Mr. Forrest, or anyone else approached it and, if so, who and when); and (5) whether the plaintiffs assert a common-interest agreement among themselves and, if so, its date and parties. The plaintiffs identified the parties to the Attorney General agreement only as "[CPM], on behalf of our clients, and the California Attorney[ General]'s Office"; they did not say when Baykeeper joined it or whether IEJF is a party.[22] Exxon then served a tailored list of the deposition questions on which it seeks further testimony, stating that it "is willing to tailor its follow-up questioning to avoid disclosure of communications that Plaintiffs establish are protected" and that it does not move to compel

---

[18] Ex. A – ECF No. 65-1 at 2.

[19] *Id.* at 2–3.

[20] *Id.* at 3.

[21] *Id.*

[22] Disc. Letter Br. – ECF No. 65 at 5–6.

every question the plaintiffs identify.[23] The parties conferred by email and video without success. No case deadlines or trial date are set.[24]

## LEGAL STANDARDS

### 1. Discovery Scope and Protective Orders

Parties may obtain discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). The court must limit discovery outside that scope, Fed. R. Civ. P. 26(b)(2)(C)(iii), and may, for good cause, issue a protective order to protect a party from "annoyance, embarrassment, oppression, or undue burden or expense," Fed. R. Civ. P. 26(c)(1). At a deposition, counsel may instruct a deponent not to answer "only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)." Fed. R. Civ. P. 30(c)(2).

### 2. Attorney-Client Privilege

The attorney-client privilege protects confidential communications between lawyer and client made to obtain or provide legal advice, and it covers a prospective client's communications "with a view to obtaining legal services . . . regardless of whether" the lawyer is ever retained. *Barton v. U.S. Dist. Ct. for Cent. Dist. of Cal.*, 410 F.3d 1104, 1111 (9th Cir. 2005). It attaches only where legal advice is sought from a lawyer acting in that capacity. *United States v. Gurtner*, 474 F.2d 297, 298 (9th Cir. 1973). The party asserting the privilege has the burden of establishing "the existence of an attorney-client relationship and the privileged nature of the communication." *Greer v. County of San Diego*, 127 F.4th 1216, 1224 (9th Cir. 2025) (cleaned up). And the privilege protects communications, not facts: a party "may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to his attorney." *Upjohn Co. v. United States*, 449 U.S. 383, 395–96 (1981)

[23] Ex. D to *id.* – ECF No. 65-4 at 2–3; Disc. Letter Br. – ECF No. 65 at 6.

[24] Disc. Letter Br. – ECF No. 65 at 1.



United States District Court
Northern District of California

(cleaned up). The existence and timing of an attorney-client relationship, the identity of the participants, and the general nature of the engagement thus ordinarily are not privileged. *Clarke v. Am. Com. Nat'l Bank*, 974 F.2d 127, 129–30 (9th Cir. 1992).[25]

**3. Work-Product Protection**

The work-product doctrine protects documents and tangible things "prepared in anticipation of litigation or for trial" by or for a party or its representative, Fed. R. Civ. P. 26(b)(3)(A); *United States v. Richey*, 632 F.3d 559, 567 (9th Cir. 2011), and protects against disclosure of counsel's "mental impressions" and "legal theories," whatever their form, *Hickman v. Taylor*, 329 U.S. 495, 510–11 (1947); *Am. Civil Liberties Union of N. Cal. v. U.S. Dep't of Justice*, 880 F.3d 473, 483 (9th Cir. 2018).

**4. Common-Interest Doctrine**

The common-interest doctrine is not an independent privilege. It is an exception to ordinary waiver rules: it preserves existing attorney-client-privilege or work-product protection for communications shared among parties pursuing a common legal interest as part of a joint strategy. *In re Pac. Pictures Corp.*, 679 F.3d 1121, 1129 (9th Cir. 2012). The agreement need not be in writing, *In re Cal. Bail Bond Antitrust Litig.*, 778 F. Supp. 3d 1051, 1063 (N.D. Cal. 2025), but the proponent must establish an underlying protection and a common legal interest existing when the communication was made.

**ANALYSIS**

**1. The Foundational Facts Are Not Privileged**

The threshold issue is whether Exxon may discover the facts needed to evaluate the plaintiffs' claims of privilege and work-product and common-interest protection. It may.

---

[25] The parties cite federal and California privilege law interchangeably. If state law supplies the rule of decision on the claims, it also supplies the attorney-client-privilege rule. Fed. R. Evid. 501. Federal law governs work product in any event. Fed. R. Civ. P. 26(b)(3). The parties identify no difference that is material.

The plaintiffs' July 29 disclosure identifies, for each plaintiff, a date of "confidential communication regarding the prospect of litigation."[26] That supplies a date, not the privilege's predicate. A communication is privileged only if made to obtain legal advice or services from a lawyer acting as such, including, for a prospective client, a consultation "with a view to obtaining legal services." *Barton*, 410 F.3d at 1111. Whether each plaintiff consulted CPM for that purpose — or instead was approached about joining litigation conceived and funded by others, which is Exxon's theory — cannot be assumed; establishing it is the plaintiffs' burden. *Greer*, 127 F.4th at 1224. The record leaves the predicate genuinely uncertain, at least for Baykeeper: its designee did not know who initiated the first contact with CPM; she testified to communications "as early as 2022 or 2023," before the August 3, 2023, date that the plaintiffs' disclosure fixes as the first confidential communication; and Exxon represents that at the deposition, the relationship appeared to have formed in March 2024.[27] Three candidate dates — 2022 or 2023, August 2023, and March 2024 — are two too many.

The facts Exxon seeks are not communications. When each plaintiff first communicated with CPM about potential plastics litigation, who initiated the contact, whether the plaintiff sought legal advice or services in that communication, whether a third party proposed the plaintiff's participation (and who and when), the existence, formation dates, and parties of the asserted common-interest arrangements, and the existence and general parameters of IEJF's funding — all are facts about the circumstances of the engagements and arrangements, not the content of confidential communications. *Clarke*, 974 F.2d at 129–30; *Upjohn*, 449 U.S. at 395–96. Producing them does not invade any protection; it is how the plaintiffs carry their burden to establish one.

Nor does it matter that Baykeeper's designee learned facts from counsel. The privilege protects her communications with counsel, not the facts conveyed; a party cannot route facts through its lawyers and then withhold the facts as privileged. *Upjohn*, 449 U.S. at 395–96; *accord In re*

[26] Ex. A – ECF No. 65-1 at 2.

[27] Tr. – ECF No. 61-1 at 305:22–306:10, 300:5–302:4; Ex. A – ECF No. 65-1 at 2; Ex. D – ECF No. 65-4 at 2 (Exxon's bracketed note). Exxon's portion of the letter puts the plaintiffs' asserted Baykeeper date at August 4, 2023; the July 29 letter says August 3. Disc. Letter Br. – ECF No. 65 at 6; Ex. A – ECF No. 65-1 at 2. The one-day difference does not matter to this order.

*Grand Jury Procs.*, 616 F.3d 1172, 1182 (10th Cir. 2010). That principle resolves the Topic 8 dispute too. Baykeeper designated a witness, served no objections, and prepared her through in-house counsel; her obligation was to testify to Baykeeper's knowledge of the responsive facts (the existence, timing, participants, and non-privileged subject matter of communications with third parties) however she gathered that knowledge. Exxon's question as phrased ("please tell me what information was shared with you from your attorneys") targeted the communication rather than the facts and was objectionable in form; the facts themselves are fair game, and Baykeeper must provide them.[28]

The court therefore grants this part of the motion. The plaintiffs must serve the supplemental written disclosure specified in the Conclusion (which tracks Exxon's September 2 questions, with modifications), and Baykeeper must answer the foundational questions at a reopened deposition session.

## 2. The Substance of the Communications

The parties' remaining disputes concern four channels of communication. The rulings differ by channel.

### 2.1 Communications with CPM

The substance of the plaintiffs' communications with CPM is privileged, including pre-retention communications "with a view to obtaining legal services." *Barton*, 410 F.3d at 1111. Exxon does not really contend otherwise: it seeks the content of the first Baykeeper–CPM communication only if that communication (or part of it) preceded any consultation for legal services.[29] That sequencing is right, and the foundational facts come first. If the testimony ordered above establishes that the first contact was a consultation for legal services — by an organization then contemplating litigation, or through the prior professional relationships the plaintiffs describe — its content is protected, and the question falls away. If instead the testimony shows a

[28] Tr. – ECF No. 61-1 at 84:25–85:2; Disc. Letter Br. – ECF No. 65 at 3, 5 n.7.

[29] Ex. D – ECF No. 65-4 at 2 (limiting Tr. 306:13–15 to the period before the attorney-client relationship formed).

communication that was not such a consultation (for example, a third party's proposal that Baykeeper lend its name to contemplated litigation, unaccompanied by any request for or provision of legal advice), then that discrete communication is not privileged, and Baykeeper must answer questions about it. The formation and initiation questions themselves (Tr. 295:23–25, 300:5–7, 302:4–6) seek facts and must be answered.

**2.2 Communications Among the Plaintiffs Without Counsel**

The plaintiffs resist questions about their communications with one another (including calls that no lawyer attended) on the ground that the communications concerned the contemplated litigation. That is not enough. A communication does not become privileged because litigation was its subject, and the common-interest doctrine presupposes an underlying protection and a common legal interest existing when the communication was made. *Pac. Pictures*, 679 F.3d at 1129. The plaintiffs have twice declined to supply even the foundation: they refuse to say whether they claim a common-interest arrangement among themselves or when any common interest arose.[30] And communications that predate the earliest asserted CPM consultation (Sierra Club's, on May 19, 2023) cannot borrow protection from attorney-client relationships that did not yet exist.

That said, an order compelling all substance outright would be overbroad. A party's own deliberations in anticipation of litigation can be protected work product even without a lawyer in the room, Fed. R. Civ. P. 26(b)(3)(A) (protecting material prepared in anticipation of litigation "by or for" a party "or its representative"); *Richey*, 632 F.3d at 567–68, and Baykeeper's designee testified that Baykeeper was considering this lawsuit in 2022 or 2023.[31] Sharing such material among aligned prospective co-plaintiffs would not necessarily waive the protection. The problem is that the plaintiffs have asserted the conclusion without the foundation.

The court therefore orders as follows. Baykeeper must answer all foundational questions about the plaintiffs' communications without counsel: when they occurred; who participated; whether an

[30] Ex. C – ECF No. 65-3 at 2 (question 5); Disc. Letter Br. – ECF No. 65 at 5–6.

[31] Tr. – ECF No. 61-1 at 67:9–69:25.

attorney was present (Tr. 311:10–14); the general subject, including whether the participants discussed the contemplated litigation, whom to sue, or what claims to bring, at the topic level (Tr. 303:24–304:1); whether counsel's advice or work product was relayed; and whether the participants reached any agreements, including about public advocacy or messaging (Tr. 107:21–24) (the existence of such an agreement is a fact). As for the substance of those communications (Tr. 313:16–20, 314:7–9), the witness must answer unless the plaintiffs' counsel states on the record, for the specific communication, a particularized foundation: the date and participants, the protection claimed, and its basis (either that the communication conveyed privileged attorney-client material or attorney work product under a then-existing common interest, or that it consisted of the participants' own litigation-preparation strategy developed in anticipation of litigation). A bare instruction invoking "privilege" or "contemplated litigation" does not comply with Rule 30(c)(2), and instructions without the required foundation will expose the plaintiffs to expense-shifting under Rule 37(a)(5) and, potentially, to a finding that the protection is not established.

### 2.3 Communications with the Attorney General's Office

The substance of CPM's communications with the Attorney General's Office about this contemplated and coordinated litigation is protected work product: what counsel for parallel plaintiffs said to each other about investigating and prosecuting overlapping claims reveals counsel's mental impressions, strategy, and legal theories. *ACLU*, 880 F.3d at 483; *Cal. Sportfishing Prot. All. v. Chico Scrap Metal, Inc.*, 299 F.R.D. 638, 647 (E.D. Cal. 2014) (work-product protection preserved where a district attorney's office and a private plaintiff pursued environmental-impact litigation "based on a closely related set of facts"). The asserted common interest as of July 13, 2023, (documented on July 28, 2023) would also preserve any privileged material shared in that channel. The court therefore does not compel the content of those communications (Tr. 112:14–17).

Exxon's timing point is well taken, but it points at facts, not substance. Exxon observes that the plaintiffs date the common interest to July 13, 2023 (three weeks before August 3, 2023, the date the plaintiffs themselves fix as Baykeeper's first confidential communication with CPM) and

United States District Court
Northern District of California

that the plaintiffs refuse to say when Baykeeper joined the agreement or who its parties are.[32] The anomaly is a reason to compel the foundational facts — all parties to the agreement, the date each plaintiff (and specifically Baykeeper) became a party, and whether IEJF is a party — because the plaintiffs cannot carry their burden. It is not a reason to compel the substance of counsel-to-counsel communications, which are the participants' work product regardless of when Baykeeper joined. The remaining questions in this category seek facts and must be answered: whether Baykeeper's outside counsel has had continued communications with the Attorney General's Office after the complaints were filed (Tr. 78:11–14), and whether, in 2022 or 2023, Baykeeper understood that the Attorney General would also file suit (Tr. 79:18–22). A party's understanding is a fact; it does not become privileged because the party may have acquired it from counsel. *Upjohn*, 449 U.S. at 395–96.

**2.4 Communications Involving the Litigation Funder**

IEJF's identity and role are not secret: it funds this litigation, it is a CPM client, and both facts are public.[33] CPM's communications with IEJF are privileged by virtue of that attorney-client relationship, and litigation-funding materials and funder communications are protected work product where they reflect litigation strategy (the point of *Continental Circuits*, on which both sides rely. *Cont'l Cirs. LLC v. Intel Corp.*, 435 F. Supp. 3d 1014, 1019–22 (D. Ariz. 2020)). Baykeeper, which has had no direct communications with IEJF, cannot be examined about the content of CPM–IEJF communications.

But facts remain facts, and Baykeeper cannot avoid them because they reached it through counsel. *In re Grand Jury Proc.*, 616 F.3d at 1182. Baykeeper must answer: whether an agreement with Minderoo concerning this litigation exists (Tr. 115:8–10); how (at the who-approached-whom-and-when level) IEJF came to fund the litigation (Tr. 94:6–7), which is the funding-side counterpart of the initiation questions in Part 1; and whether the funding is subject to parameters such as a cap or set amount (Tr. 102:4–7) (the existence of parameters, not the agreement's terms).

---

[32] Disc. Letter Br. – ECF No. 65 at 5–6.

[33] *Id.* at 3.

The court does not compel the remaining three questions: whether IEJF provided scientific materials to CPM "for purposes of the litigation" (Tr. 180:12–14), whether IEJF reviewed the complaint before it was filed (Tr. 180:22–23), and whether a Minderoo publication "was used to help prepare this litigation" (Tr. 194:2–3). Each asks how counsel assembled and vetted the case (what went into the file and who reviewed the draft pleading), which is litigation preparation. Fed. R. Civ. P. 26(b)(3)(A); *Hickman*, 329 U.S. at 510–11. And the questions' claimed relevance runs through the Texas theory addressed next; whatever marginal impeachment value the answers might hold does not justify discovery into how the lawsuit was built. Fed. R. Civ. P. 26(b)(1).

**3. Relevance and the Texas Theory**

The plaintiffs ask the court to hold that the dismissed Texas claims are irrelevant here. They are mostly right, with one caveat.

Relevance is measured against the claims and defenses in this case. Fed. R. Civ. P. 26(b)(1). Exxon's Texas theory — that the plaintiffs are "local placeholders" recruited to advance a foreign competitor's agenda — is not a claim or defense here, and Exxon identifies no element of the nuisance or UCL claims, and no affirmative defense, to which the plaintiffs' reasons for suing pertain. Its four proffered grounds do not close the gap. The "source of Plaintiffs' alleged injury" and causation turn on Exxon's conduct and its effects, not on who encouraged the lawsuit. "The bases on which Plaintiffs decided to sue" is motive by another name. Credibility is a legitimate but limited ground; it is served by the non-privileged facts ordered in Parts 1 and 2, and it never unlocks privileged substance, which Rule 26(b)(1) puts off limits regardless of relevance. And the Minderoo publication on which the complaint allegedly relies can be tested on its merits; Exxon does not need to know how it reached counsel's files. Exxon's authorities do not hold otherwise: *Continental Circuits* denied funding discovery beyond the funder's identity, and *Nunes* arose in a defamation posture where the funder's role bore directly on the defense. *Cont'l Cirs.*, 435 F. Supp.

3d at 1019–22; *Nunes v. Lizza*, No. 5:19-cv-04064, 2021 WL 7186264, at *4–6 (N.D. Iowa Oct. 26, 2021).[34]

The caveat: overlap with the Texas case does not immunize otherwise-discoverable matter. The foundational facts compelled above are ordered because they are necessary to evaluate the plaintiffs' claims of protection (and bear modestly on witness credibility) — not because the Texas theory is in play.

**4. The Protective Order**

The court denies the plaintiffs' motion for a protective order. Good cause under Rule 26(c)(1) requires a particularized showing of harm, and an order forbidding counsel from "intentionally asking privileged questions" is unnecessary and not administrable because it would convert every disputed question into a fight about intent. The plaintiffs' remedies remain what the rules provide: concise objections; instructions not to answer where, and only where, Rule 30(c)(2) and this order permit; and a motion under Rule 30(d)(3) if an examination is conducted in bad faith or to harass. *See V5 Techs. v. Switch, Ltd.*, 334 F.R.D. 306, 311 n.9 (D. Nev. 2019).[35] The court expects both sides to conduct the reopened session accordingly: Exxon must confine its examination to the topics this order permits and reasonable follow-up, and the plaintiffs must not instruct the witness without the foundation this order requires.

[34] The plaintiffs "brought this case solely to protect public interests," and "no particular plaintiff stands to gain anything the public would not." Order – ECF No. 47 at 16–17 (as quoted at Disc. Letter Br. – ECF No. 65 at 2 & n.2). Under California law, litigation expenditures cannot themselves supply Unfair Competition Law standing. *Cal. Med. Ass'n v. Aetna Health of Cal. Inc.*, 14 Cal. 5th 1075, 1098 (2023).

[35] The plaintiffs' letter cites "334 F.R.D. 306, 31 n.9," which appears to be a typographical error.

## CONCLUSION

The court grants in part and denies in part Exxon's motion to compel and denies the plaintiffs' motion for a protective order.

1. Within fourteen days of this order, the plaintiffs must serve a supplemental written disclosure stating, for each plaintiff: (a) the date of its first communication with CPM concerning potential litigation about plastics pollution, who initiated that communication, and whether the plaintiff sought legal advice or services in it; (b) whether CPM, Minderoo, IEJF, Mr. Forrest, or anyone else proposed the plaintiff's participation in this litigation and, if so, who and when; (c) whether the plaintiffs assert a common-interest arrangement among themselves and, if so, its formation date and parties; (d) all parties to the common-interest agreement with the Attorney General's Office, the date each plaintiff (specifically including Baykeeper) became a party to it, and whether IEJF is a party; and (e) whether the plaintiffs assert common-interest protection with Minderoo, IEJF, or Mr. Forrest and, if so, the arrangement's formation date and parties or, if not, the specific protection claimed for any withheld communications with those entities. Any documents withheld on a claim of privilege or protection must be logged. Fed. R. Civ. P. 26(b)(5)(A).

2. Within thirty-five days of this order, Baykeeper must produce its Rule 30(b)(6) designee for a further deposition session of up to two hours of on-the-record time, at a date, time, and format the parties agree on. The examination is limited to (a) the foundational facts described in Parts 1 and 2 of the Analysis; (b) the Exhibit D questions to the extent Part 2 permits them, including Tr. 295:23–25, 300:5–7, 302:4–6, 303:24–304:1 (topic level), 311:10–14, 107:21–24, 78:11–14, 79:18–22, 115:8–10, 94:6–7, and 102:4–7 (as limited); and (c) reasonable follow-up consistent with this order. Substance questions about the plaintiffs' communications without counsel are governed by Part 2.2's on-the-record foundation procedure. These rulings also govern the Rule 30(b)(6) depositions of the other plaintiffs.

3. The motion to compel is otherwise denied. The court does not compel the content of the plaintiffs' communications with CPM (including Tr. 306:13–15, except as conditioned in Part 2.1), the content of CPM's communications with the Attorney General's Office (Tr. 112:14–17),

United States District Court
Northern District of California

or the funder questions addressed in Part 2.4 (Tr. 180:12–14, 180:22–23, 194:2–3).

4. Each side must bear its own expenses. Fed. R. Civ. P. 37(a)(5)(C).

This resolves ECF No. 65.

**IT IS SO ORDERED.**

Dated: September 14, 2026

LAUREL BEELER
United States Magistrate Judge