United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| SIERRA CLUB, INC., et al.,<br>Plaintiffs,<br>v.<br>EXXON MOBIL CORPORATION, et al.,<br>Defendants. | Case No. 24-cv-07288-RS (LB)<br>**DISCOVERY ORDER**<br>Re: ECF No. 68 |

**INTRODUCTION**

The plaintiffs — four California environmental nonprofits — sue Exxon Mobil Corporation over its production and marketing of single-use plastics, including its "advanced recycling" program, which the operative complaint characterizes as an effort to divert attention from the inability to safely dispose of those plastics.[1] The stipulated protective order has two tiers: "Confidential" and "Highly Confidential – Attorneys' Eyes Only" (AEO).[2] In its first production of 5,886 documents, ExxonMobil designated about 4,500 as AEO.[3] The plaintiffs challenged 321

[1] First Am. Compl. – ECF No. 48 at 6 (¶ 11), 23–26 (¶¶ 76–85); Opp'n – ECF No. 72 at 18. Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] Protective Order – ECF No. 60 at 2–3 (§§ 2.2, 2.8).

[3] Boutin Decl. – ECF No. 72-1 at 2 (¶ 2).

United States District Court
Northern District of California

of those designations. ExxonMobil withdrew about 150 of them during meet-and-confer and one more (Exhibit C to the Boutin Declaration) in its reply.[4] It moves to retain the AEO designation for the rest: 171 documents by its count, 169 by the plaintiffs' count of the table listing them.[5] The plaintiffs concede that every document is at least Confidential and ask only that the designations be downgraded to that tier.[6]

The court grants the motion, except that it is moot as to Exhibit C. ExxonMobil bears the burden, and it carried it: its declarations describe the documents and the harm from disclosure, by category and by exemplar, with enough specificity to show a substantial risk of serious harm if the documents reached the wider group who may see Confidential but not AEO material: the plaintiffs' officers and employees, experts without prior notice to ExxonMobil, and deposition witnesses who are not authors, recipients, or custodians. The plaintiffs' responses (they do not compete with ExxonMobil, the Confidential tier already bars public disclosure, the documents are stale, and AEO treatment prejudices them) do not compel a different result.

## STATEMENT

### 1. The Protective Order

The court entered the stipulated protective order on May 14, 2026, after resolving the parties' disputes about several of its terms.[7] It is a version of this district's two-tier model order. "Confidential Information or Items" are "information . . . or tangible things that qualify for protection under Federal Rule of Civil Procedure 26(c)."[8] AEO information is "extremely sensitive 'Confidential Information or Items,' disclosure of which to another Party or Non-Party would create a substantial risk of serious harm that could not be avoided by less restrictive

[4] Sestito Decl. – ECF No. 68-1 at 6–7 (¶¶ 13, 17–18); Reply – ECF No. 73 at 15 n.5.

[5] Sestito Decl. – ECF No. 68-1 at 7 (¶¶ 17–18) & Table 1; Opp'n – ECF No. 72 at 16 n.6.

[6] Opp'n – ECF No. 72 at 5–6, 15.

[7] Protective Order – ECF No. 60; Joint Letter Brief – ECF No. 54; Order – ECF No. 58.

[8] Protective Order – ECF No. 60 at 2 (§ 2.2).

means."[9] A "Non-Party" is "any natural person, partnership, corporation, association, or other legal entity not named as a Party to this action."[10] A designating party "must designate for protection only those parts of material . . . that qualify," and "[m]ass, indiscriminate, or routinized designations are prohibited."[11] A challenging party must give "written notice of each designation it is challenging and describing the basis for each challenge," and the designating party bears the burden of persuasion.[12]

The tiers differ in who may see the material. Confidential material may be shown, after they sign the Acknowledgment and Agreement to Be Bound, to the receiving party's officers, directors, and employees to whom disclosure is reasonably necessary; to experts; and to witnesses to whom disclosure is reasonably necessary.[13] AEO material may be shown to designated house counsel and experts only after written notice to the designating party and an opportunity to object, and to a deposition witness only if the witness is "the author or recipient of a document containing the information or a custodian or other person who otherwise possessed or knew the information."[14] The court adopted the expert-notice procedure over the plaintiffs' objection and noted the parties' agreement that ExxonMobil was likely to designate material as highly confidential.[15]

**2. The Challenge and the Documents at Issue**

In an August 14, 2026 letter, the plaintiffs challenged 321 AEO designations on the ground that "the documents do not appear to reflect trade secrets, present a risk of competitive or financial harm to Exxon, or otherwise merit AEO protection."[16] ExxonMobil re-reviewed the documents, reclassified seventy-five as Confidential, and said the remaining 246 fell into four categories: (1)

---

[9] *Id.* at 3 (§ 2.8).
[10] *Id.* (§ 2.10).
[11] *Id.* at 4–5 (§ 5.1).
[12] *Id.* at 7–8 (§§ 6.2–6.3).
[13] *Id.* at 8–9 (§ 7.2); Reply – ECF No. 73 at 9 (describing § 7.2(f)).
[14] Protective Order – ECF No. 60 at 9–11 (§§ 7.3–7.4); Reply – ECF No. 73 at 9–10 (quoting § 7.3(f)).
[15] Order – ECF No. 58 at 3–4 (as characterized in Reply – ECF No. 73 at 6–7).
[16] Sestito Decl. – ECF No. 68-1 at 6 (¶ 12); Letter, Ex. 9 to *id.* – ECF No. 68-10.

United States District Court
Northern District of California

financial data, strategy, and projections; (2) customer-acquisition information and marketing strategy and research; (3) contracts with sensitive commercial terms; and (4) feedstock, product, and engineering strategy and analyses. It asked the plaintiffs to explain, document by document, why the designations were wrong.[17] The plaintiffs maintained their challenge without further explanation.[18] In video conferences, they said there would be no competitive harm from disclosure to them because they do not compete with ExxonMobil. ExxonMobil asked whether they wanted to share the documents with anyone in particular, and they did not say.[19] ExxonMobil then withdrew the AEO designation for additional documents that had been designated only because another document in the same family was AEO, leaving the documents listed in Table 1 to the Sestito Declaration (171 by ExxonMobil's count, 169 by the plaintiffs'), and in its reply withdrew the designation for Exhibit C to the Boutin Declaration.[20] The plaintiffs report that, as of October 2, ExxonMobil had not reproduced any de-designated document.[21] They challenged this subset for efficiency, believe all or nearly all of ExxonMobil's AEO designations are improper, and reserve the right to challenge the rest.[22]

ExxonMobil filed eight exemplars under seal (two per category) with a declaration from Zachary Patterson, an ExxonMobil employee, describing them and the harm from disclosure, and a chart describing each disputed document and assigning it to a category.[23] The plaintiffs filed five exemplars of their own, Exhibits A through E to the Boutin Declaration.[24] The court describes the exemplars in the analysis.

The parties also dispute the current shape of ExxonMobil's advanced-recycling business.

---

[17] Sestito Decl. – ECF No. 68-1 at 6 (¶ 13); Letter, Ex. 10 to *id.* – ECF No. 68-11.

[18] Sestito Decl. – ECF No. 68-1 at 6 (¶ 14).

[19] *Id.* (¶ 15).

[20] *Id.* at 7 (¶¶ 17–18) & Table 1; Opp'n – ECF No. 72 at 16 n.6; Reply – ECF No. 73 at 15 n.5; Suppl. Sestito Decl. – ECF No. 73-1 at 4 (¶ 9).

[21] Opp'n – ECF No. 72 at 8.

[22] *Id.* at 5 n.1, 9 n.3, 19 n.7.

[23] Patterson Decl. – ECF No. 68-13 at 2–7 (¶¶ 4–13); Sestito Decl. – ECF No. 68-1, Table 1; Exs. 1–8 to Sestito Decl. – ECF Nos. 68-2 to 68-9 (sealed).

[24] Exs. A–E to Boutin Decl. – ECF Nos. 72-2 to 72-6.

Citing press releases and public filings, the plaintiffs say (1) ExxonMobil operates the business through a joint venture, Cyclyx International, formed with Agilyx in 2020 and later restructured, (2) Agilyx announced in February 2026 that it would leave the U.S. advanced-recycling market; that Agilyx and LyondellBasell have reported losses and an impairment on their Cyclyx stakes, and (3) ExxonMobil has halved its public capacity target.[25] ExxonMobil responds, through a supplemental Patterson declaration, that it does not operate advanced recycling through Cyclyx, which was formed to gather and process plastic-waste feedstock, and that the ownership and operation of ExxonMobil's advanced-recycling business have not changed.[26]

## ANALYSIS

### 1. Governing Standard

Rule 26(c) allows the court, for good cause, to require "that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." Fed. R. Civ. P. 26(c)(1)(G).[27] The party seeking protection bears the burden, "for each particular document it seeks to protect, of showing that specific prejudice or harm will result if no protective order is granted." *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1130 (9th Cir. 2003). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992) (cleaned up). A business must show that disclosure "would cause significant harm to its competitive and financial position" through "specific demonstrations of fact, supported where possible by affidavits and concrete examples." *Contratto v. Ethicon, Inc.*, 227 F.R.D. 304, 307 (N.D. Cal. 2005) (cleaned up). When a receiving party challenges a designation under a stipulated protective order, the designating party bears that burden. *In re Roman Catholic*

[25] Opp'n – ECF No. 72 at 10 (citing Exs. H–N to Boutin Decl. – ECF No. 72-1).

[26] Suppl. Patterson Decl. – ECF No. 73-3 at 2 (¶ 3). The court can decide the dispute without oral argument. Civil L.R. 7-1(b).

[27] The briefs cite Rule 26(c) generally. Subsection (c)(1)(G) authorizes tiered disclosure and governs.

*Archbishop of Portland*, 661 F.3d 417, 424 (9th Cir. 2011);[28] Protective Order § 6.3.

The plaintiffs concede that the documents are Confidential, so they qualify for protection under Rule 26(c) and may not be publicly disclosed. The dispute is about the tier. AEO material must be (1) "extremely sensitive," (2) such that "disclosure . . . to another Party or Non-Party would create a substantial risk of serious harm," and (3) such that the risk "could not be avoided by less restrictive means."[29] The "less restrictive means" is the Confidential tier. So the operative question is whether disclosure to the persons who may see Confidential but not AEO material — the plaintiffs' officers, directors, and employees; experts without prior notice; and deposition witnesses who are not authors, recipients, or custodians — would create a substantial risk of serious harm to ExxonMobil.

AEO treatment is restrictive, and over-designation is a real concern: a receiving party "should not be put in a position where [it is] essentially kept in the dark about the important facts of the case." *Kanbar v. Am. Friends of Magen David Adom*, No. 18-cv-00328-MMC (LB), 2018 WL 5920496, at *1 (N.D. Cal. Nov. 13, 2018) (cleaned up); *see Rabin v. Google LLC*, 702 F. Supp. 3d 880, 882 (N.D. Cal. 2023). Whether to permit an AEO designation "requires a balance of the difficulties imposed upon plaintiff against the need to protect information from abuse by competitors." *Kanbar*, 2018 WL 5920496, at *1 (cleaned up). On the receiving party's side of the balance, the question is whether the designation "actually prejudice[s] presentation of the party's case, not merely increase[s] the difficulty of managing the litigation." *Intel Corp. v. VIA Techs., Inc.*, 198 F.R.D. 525, 528 (N.D. Cal. 2000) (cleaned up); *Stanislaus Food Prods. Co. v. USS-POSCO Indus.*, No. 1:09-cv-00560-LJO-BAM, 2012 WL 6160468, at *5 (E.D. Cal. Dec. 11, 2012).

## 2. ExxonMobil Has Shown a Substantial Risk of Serious Harm

### 2.1 The Four Categories

*Financial data, strategy, and projections.* The exemplars are two spreadsheet excerpts: one

[28] Neither side cites *Roman Catholic Archbishop*, which states the Ninth Circuit rule on the burden in a challenge to designations under a stipulated protective order and governs.

[29] Protective Order – ECF No. 60 at 3 (§ 2.8).

United States District Court
Northern District of California

with actual and projected feed volumes and costs, margins, and revenue for the advanced-recycling business, in some cases through 2026, and one with capital expenditures, expenses, depreciation, and cash flow, with projections into the 2030s.[30] Patterson attests that this data would let a competitor use ExxonMobil's planning to make its own decisions and would give suppliers and counterparties an edge in negotiations.[31] Courts treat profit, cost, and margin data as information whose disclosure to suppliers or competitors causes competitive harm. *Apple Inc. v. Samsung Elecs. Co.*, 727 F.3d 1214, 1225 (Fed. Cir. 2013); *Stanislaus*, 2012 WL 6160468, at *5.[32]

*Customer-acquisition and marketing strategy and research.* The exemplars are a presentation with a two-year marketing plan, scale-up plans through 2025, opportunities under negotiation and under internal discussion, and notes of discussions with customers and prospects, and an email with notes about customers and prospects, including the products for which each might use ExxonMobil's certified circular polymers and the status of ExxonMobil's efforts with each.[33] Patterson attests that the documents reveal ExxonMobil's strategy for winning and keeping customers and would give a competitor a playbook for taking them.[34] *See Nutratech, Inc. v. Syntech (SSPF) Int'l, Inc.*, 242 F.R.D. 552, 555–56 (C.D. Cal. 2007) (upholding AEO designation of customer and supplier lists); *Cont'l Auto. Sys., Inc. v. Avanci, LLC*, No. 19-cv-02520-LHK, 2019 WL 6612012, at *4 (N.D. Cal. Dec. 5, 2019) (sales data and customer identities give "competitors private data about the litigant's performance and business strategy" (cleaned up)).

*Contracts with sensitive commercial terms.* The exemplars are two feedstock-supply agreements (a 2021 license agreement between an ExxonMobil joint venture and a third party, and a 2023 feedstock purchase agreement, still running, between ExxonMobil and a third party) with

---

[30] Patterson Decl. – ECF No. 68-13 at 3–4 (¶¶ 6–7); Mot. – ECF No. 68 at 12.

[31] Patterson Decl. – ECF No. 68-13 at 3–4 (¶¶ 6–7).

[32] Some of ExxonMobil's authorities decide sealing motions, which require a "compelling reason." *Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1178–79 (9th Cir. 2006). They remain persuasive on whether disclosure of a category of information creates a substantial risk of serious harm, which is what the Protective Order asks. Opp'n – ECF No. 72 at 13 n.4.

[33] Patterson Decl. – ECF No. 68-13 at 4–5 (¶¶ 8–9); Reply – ECF No. 73 at 14.

[34] Patterson Decl. – ECF No. 68-13 at 4–5 (¶¶ 8–9).

pricing terms, payment schedules, license and intellectual-property provisions, representations and warranties, and indemnities.[35] Patterson attests that a competitor or counterparty could use the terms to undercut ExxonMobil's deals or gain leverage in negotiating with it.[36] *See In re Elec. Arts, Inc.*, 298 F. App'x 568, 569 (9th Cir. 2008) ("pricing terms, royalty rates, and guaranteed minimum payment terms" are trade secrets whose disclosure "might harm a litigant's competitive standing" (cleaned up)).

*Feedstock, product, and engineering strategy and analyses.* The exemplars are a 2023 presentation on the advanced-recycling venture (projected demand and capacity, growth plans, project and market status, "strategy choices," and feedstock strategy) and a 2023 spreadsheet with start-up timing for refinery components by quarter, installed and projected capacity, reliability and efficiency data, feed volumes, and financial projections through 2028.[37] Patterson attests that these would reveal ExxonMobil's product strategy and technical refinery planning and let others adjust their own plans accordingly.[38] *See Apple*, 727 F.3d at 1225.

These are specific descriptions, by a knowledgeable employee, of what each exemplar contains and why a competitor, supplier, customer, or counterparty could use it, not the "single declaration from counsel" that failed in *Contratto*, 227 F.R.D. at 308, or the reliance on a blanket stipulated order without any allegation of specific harm that failed in *Beckman*, 966 F.2d at 476. Apart from their five exemplars, addressed below, the plaintiffs do not contend that any document in Table 1 falls outside its assigned category. Their objections are the categorical ones addressed in section 3. ExxonMobil has shown that the documents are extremely sensitive and that disclosure to a competitor, supplier, customer, or counterparty would create a substantial risk of serious harm.

**2.2 The Confidential Tier Would Not Avoid the Risk**

The plaintiffs say the Confidential tier is enough because it forbids public disclosure and limits

---

[35] *Id.* at 5–6 (¶¶ 10–11); Reply – ECF No. 73 at 14–15.

[36] Patterson Decl. – ECF No. 68-13 at 5–6 (¶¶ 10–11).

[37] *Id.* at 6–7 (¶¶ 12–13); Reply – ECF No. 73 at 15.

[38] Patterson Decl. – ECF No. 68-13 at 6–7 (¶¶ 12–13).

dissemination to persons reasonably necessary to the litigation who agree to be bound.[39] But the harm from these documents comes from disclosure to persons positioned to use them (competitors, feedstock suppliers, customers and prospects, and negotiating counterparties), and the Confidential tier allows access by such persons in two ways that the AEO tier does not. First, Confidential material may be shown to any witness to whom disclosure is reasonably necessary who signs the Acknowledgment.[40] The plaintiffs will presumably depose third parties in the industry (ExxonMobil's customers, partners, suppliers, or competitors) and could show them ExxonMobil's pricing terms, cost and margin data, and customer-development notes. Under the AEO tier, a deposition witness may see a document only if the witness wrote, received, or already possessed it.[41] Second, Confidential material may be shown to any expert who signs the Acknowledgment, with no notice to ExxonMobil, so ExxonMobil would never learn who has its data and could not object to an expert who is, or works with, a competitor.[42] That notice-and-objection procedure is the protection the court adopted over the plaintiffs' objection when it entered the order.[43] Courts recognize that an expert or consultant affiliated with a competitor cannot unlearn sensitive information once seen. *In re Worlds of Wonder Sec. Litig.*, 147 F.R.D. 214, 216–17 (N.D. Cal. 1992); *La. Pac. Corp. v. Money Mkt. 1 Institutional Inv. Dealer*, 285 F.R.D. 481, 491 (N.D. Cal. 2012) (it is difficult "for the human mind to compartmentalize and selectively suppress information once learned" (cleaned up)).[44] ExxonMobil adds that many of the planning documents come from its New Market Development group and discuss other new products and business lines unrelated to this case, which heightens the sensitivity of wider disclosure.[45]

---

[39] Opp'n – ECF No. 72 at 12–13.

[40] Protective Order – ECF No. 60 at 9 (§ 7.2(f)).

[41] *Id.* at 10 (§ 7.3(f)).

[42] *Id.* at 9–11 (§§ 7.2(c), 7.3(c), 7.4).

[43] Order – ECF No. 58 at 3–4.

[44] ExxonMobil also devotes several pages of its reply to the litigation funder and its principal and to the possibility that they or their affiliates might serve as experts. Reply – ECF No. 73 at 10–11. The court does not rely on those contentions; the structural differences between the tiers suffice.

[45] Suppl. Patterson Decl. – ECF No. 73-3 at 9 (¶ 15); Suppl. Sestito Decl. – ECF No. 73-1 at 4–5 (¶ 12).

The plaintiffs contend that courts presume compliance with a protective order. *Roberts v. Legacy Meridian Park Hosp., Inc.*, 299 F.R.D. 669, 675 (D. Or. 2014). But the concern is not that the plaintiffs will violate the order. It is that the Confidential tier, by its terms, permits disclosure to the persons from whom the risk arises. ExxonMobil has shown that the risk "could not be avoided by less restrictive means."

**3. The Plaintiffs' Remaining Arguments**

**3.1 No Competitive Relationship**

The plaintiffs' lead argument is that they are nonprofits that do not compete with ExxonMobil, so disclosure to them risks no competitive harm.[46] That is true as far as it goes, and it is why the plaintiffs' own officers and employees are not the main concern. But it does not control. The Protective Order's definition turns on disclosure "to another Party or Non-Party," and a "Non-Party" is anyone not a party.[47] On the plaintiffs' reading, no ExxonMobil document (not even a trade-secret formula, which the plaintiffs appear to accept could be AEO[48]) could be designated AEO in this case, which would read the second tier out of the order the plaintiffs stipulated to. Nor does the case law require a competitive relationship between the parties. *Nutratech* upheld AEO designations where the parties were potential, not actual, competitors, 242 F.R.D. at 555–56, and a "substantial risk of serious harm could come from sources other than direct competitors," *Stanislaus*, 2012 WL 6160468, at *5. *Kanbar* is different: the designating party there offered no declaration, called its donor information only "proprietary and confidential," and its own witness testified that it did not compete with anyone for donors.[49] Here the risk runs through the persons the Confidential tier admits, not through the plaintiffs' staff.

**3.2 Staleness and the Cyclyx Restructuring**

The plaintiffs next say the documents are two to six years old and predate changes in

---

[46] Opp'n – ECF No. 72 at 11–12.

[47] Protective Order – ECF No. 60 at 3 (§§ 2.8, 2.10).

[48] Opp'n – ECF No. 72 at 5–6, 9.

[49] 2018 WL 5920496, at *1 & n.6, as characterized in Reply – ECF No. 73 at 17 n.6.

ExxonMobil's business, so they are no longer "presently sensitive."[50] Age matters: information can "los[e] [its] character as commercially sensitive due to the passage of time." *In re Coordinated Pretrial Proc. in Petroleum Prods. Antitrust Litig.*, 101 F.R.D. 34, 40 (C.D. Cal. 1984). But age is not dispositive. The question is whether the information remains useful to a competitor or counterparty now. *Olympic Refining Co. v. Carter*, which modified protective orders from a terminated government antitrust suit so that four- to eight-year-old documents could be used in private litigation, required a showing that the material was "presently sensitive" but recognized that such documents could "still be regarded as trade secrets or sensitive competitive information." 332 F.2d 260, 265–66 (9th Cir. 1964). *In re Coordinated* made no finding that any document had lost protection: it invited the producing parties to show which documents were "currently worthy of protection." 101 F.R.D. at 40, 44.

ExxonMobil made that showing. Advanced recycling is a business that began in 2021 and 2022. The documents date from that start-up period, and many contain projections running through 2026, through 2028, and into the 2030s.[51] The 2023 feedstock purchase agreement runs for several years.[52] Patterson attests that the financial, planning, customer, contract, and product information in the documents "can be extrapolated to predict future strategies and practices."[53] Courts accept that reasoning for business data of this vintage. *Stanislaus*, 2012 WL 6160468, at *2 (information "not stale" because it "can be extrapolated to predict future strategies and practices, and is still relevant today"). The plaintiffs do not engage with it beyond the general point that time erodes sensitivity.

The plaintiffs' account of intervening change does not alter the result. Their account of Cyclyx rests on press releases and other companies' public filings. ExxonMobil's employee attests that Cyclyx is a feedstock-gathering venture, not the vehicle for ExxonMobil's advanced-recycling operations, and that the ownership and operation of that business have not changed.[54] The court

---

[50] Opp'n – ECF No. 72 at 10, 13–16.

[51] Mot. – ECF No. 68 at 17; Patterson Decl. – ECF No. 68-13 at 2–4, 6–7 (¶¶ 4, 7, 13).

[52] Reply – ECF No. 73 at 15.

[53] Patterson Decl. – ECF No. 68-13 at 2–3 (¶ 4).

[54] Opp'n – ECF No. 72 at 10; Suppl. Patterson Decl. – ECF No. 73-3 at 2 (¶ 3).

credits the sworn account. And even on the plaintiffs' account, a partner's exit from Cyclyx or a slower capacity build-out does not make ExxonMobil's own unit costs, margins, capital estimates, contract pricing, customer-development notes, and engineering plans less useful to a competitor trying to enter or expand in the same business. Changed interest rates, the plaintiffs' other example, can be adjusted for.[55]

**3.3 The Exemplars**

The plaintiffs' objections to ExxonMobil's eight exemplars mostly restate the arguments above. Their remaining points do not change the analysis. Superseded projections (Exhibit 2) still reveal ExxonMobil's cost assumptions and planning method. One publicized customer (Amcor, in Exhibit 3) does not make the other customers, or the status of discussions with them, public. Publicly known facts about McDonald's, SC Johnson, and TenCate (Exhibit 4) sit alongside non-public notes about which products each prospect might use ExxonMobil's polymers in and where the discussions stood. A 2021 license agreement (Exhibit 5) still gives a counterparty leverage regardless of later changes in the joint venture. And a presentation that discusses the now-public Cyclyx restructuring (Exhibit 7) also covers growth plans, strategy choices, and market analysis that are not public.[56]

The plaintiffs' five exemplars are the better test of over-designation because the plaintiffs chose them. One succeeds: ExxonMobil concedes that Exhibit C, an October 2023 email with talking points for a government briefing, should have been de-designated, and has withdrawn the designation.[57] The motion is moot as to that document. For the other four, ExxonMobil's reply identifies, document by document, the content it says is extremely sensitive.[58] Exhibit A, an April 2022 team email that the plaintiffs describe as an overview of an "Advanced Recycling Day," open positions, and team-building events, also has a "Technology – In Progress" section identifying technical issues and responses and notes on the status of discussions with third parties.

---

[55] Opp'n – ECF No. 72 at 14 n.5; Reply – ECF No. 73 at 14.

[56] Opp'n – ECF No. 72 at 13–16; Reply – ECF No. 73 at 14–15.

[57] Reply – ECF No. 73 at 15 n.5.

[58] *Id.* at 16; Opp'n – ECF No. 72 at 9, 16–17.

Exhibit B, a 2020 summary of the Cyclyx joint venture, summarizes non-public terms of a commercial agreement in its first bullet point. Exhibit D, a February 2023 email thread about a potential collaboration with SC Johnson, contains a "ballpark" price for advanced-recycling credits, site-visit plans, areas of alignment, information about trials of specific polymers, and the status of the negotiations. Exhibit E, April 2023 talking points prepared after negative press, contains non-public technical data about the efficiency of ExxonMobil's pyrolysis facilities, the team's "key areas of focus," and a "potential new facility." That the talking points were meant for outside audiences does not mean the underlying technical data and planning were, and the plaintiffs do not say the document itself was distributed outside ExxonMobil.

The plaintiffs are right that each of these documents also contains innocuous material. The Protective Order requires restraint, but designations attach at the document level, and a document that contains extremely sensitive information does not lose AEO protection because it also contains routine content.[59] Nothing prevents the parties from agreeing to Confidential versions of such documents with the extremely sensitive portions redacted, which would let the plaintiffs' staff see the rest.[60]

**3.4 Prejudice to the Plaintiffs**

On the other side of the *Kanbar* balance, the plaintiffs say AEO treatment keeps them "in the dark" about documents at the heart of their case, forces premature expert disclosure, and burdens

[59] Protective Order – ECF No. 60 at 4–5 (§§ 5.1–5.2(a)) (as quoted in Reply – ECF No. 73 at 15).

[60] ExxonMobil's showing is thinnest for Exhibits A and B. Exhibit A is a four-year-old internal status email whose claimed sensitivity is a section on in-progress technology issues and notes on third-party discussions. ExxonMobil says only that a competitor could "leverage" that work for a "head start," without explaining why technical issues from 2022 in a now-operating plant remain extremely sensitive. Reply – ECF No. 73 at 16. Exhibit B is a 2020 summary of a joint venture whose existence and purpose have been public for years. ExxonMobil points only to a summary of commercial terms in one bullet, without saying whether those terms remain in force or why a summary of them would give anyone leverage now. *Id.* That is the kind of generalized assertion that *Beckman* and *Foltz* reject. For those two documents, the court considered whether ExxonMobil had shown a substantial risk of serious harm beyond what the Confidential tier addresses. By contrast, Exhibits D and E, which contain pricing, trial, and technical data, are more obviously AEO. Though it is a closer call, the court ultimately determined that ExxonMobil also met its burdens for Exhibits A and B.

United States District Court
Northern District of California

them asymmetrically because they have designated nothing AEO.[61] None of this shows actual prejudice to the presentation of their case. Their outside counsel may review every document, and so may house counsel and experts who follow the notice procedure.[62] The plaintiffs identify no officer, employee, or other person who needs access to a particular document or explain why access is necessary, and they did not answer when ExxonMobil asked.[63] *See Stanislaus*, 2012 WL 6160468, at *6 (no prejudice where the plaintiff "does not offer an adequate reason why its executives would need this information"). The expert-notice procedure is a term of the order the court entered over the plaintiffs' objection, not a new burden.[64] And asymmetry and added expense are ordinary incidents of a two-tier order, not prejudice to the merits. *Intel*, 198 F.R.D. at 528; *Cadence Design Sys., Inc. v. Pounce Consulting, Inc.*, No. 17-cv-04732-PJH (EDL), 2018 WL 10582121, at *4 (N.D. Cal. May 7, 2018). If the plaintiffs later identify a specific need for a specific person to see a specific document, they may raise it with ExxonMobil and, failing agreement, with the court.

## CONCLUSION

The court grants ExxonMobil's motion to retain the Highly Confidential – Attorneys' Eyes Only designation for the challenged documents listed in Table 1 to the Sestito Declaration, except that the motion is moot as to Exhibit C to the Boutin Declaration, which ExxonMobil has de-designated. The ruling is without prejudice to a later, document-specific request to permit disclosure of a particular document to a particular person on a showing of need.

This resolves ECF No. 68.

**IT IS SO ORDERED.**

Dated: October 13, 2026

LAUREL BEELER
United States Magistrate Judge

[61] Opp'n – ECF No. 72 at 18.

[62] Protective Order – ECF No. 60 at 9–11 (§§ 7.3–7.4).

[63] Sestito Decl. – ECF No. 68-1 at 6 (¶ 15); Reply – ECF No. 73 at 18.

[64] Order – ECF No. 58 at 3–4.