October 27, 2026

**Via ECF**
Hon. Laurel Beeler
United States District Court
Northern District of California

**Re:** ***Sierra Club, Inc., et al. v. Exxon Mobil Corporation***
**Case No. 3:24-cv-07288-RS (LBx)**

Dear Judge Beeler:

Plaintiffs Sierra Club, Inc., Surfrider Foundation, Inc., Heal the Bay, Inc., and Baykeeper, Inc. ("Non-Profits" or "Plaintiffs") and Defendant Exxon Mobil Corporation ("Exxon") have a discovery dispute concerning (1) the production of Exxon's corporate organizational charts and (2) the custodians whose records Exxon must search and produce.

Plaintiffs seek an order compelling Exxon to:

1. Produce organizational charts or other documents sufficient to show where proposed document custodians fit within the organization dating back to 2010, including without limitation Exxon's personnel in the following areas: (1) Supply, (2) Sales, (3) Product Solutions, (4) Marketing, (5) Venture Executives, (6) Logistics, (7) New Market Development, and (8) Public & Government Affairs; and

2. Search and produce records from the 44 custodians identified in the table attached as **Exhibit 1**.

Counsel have conferred several times by email and video but reached an impasse. Two exhibits are attached. No hearings or case deadlines are currently set. No trial date has been set.

The parties' respective positions are set forth in the following five pages.

**NON-PROFITS' POSITION**

**Organizational Charts.** Plaintiffs are entitled to Exxon's relevant organizational charts, or something similarly sufficient, dating back to 2010. The organizational charts are relevant as they explain the decision-making structure and relationship between various potential custodians across Exxon's complex corporate operations relating to single-use plastics. *Avila v. Ford Motor Co.*, 680 F. Supp. 3d 1125, 1130 (N.D. Cal. 2023) (organizational charts are relevant); *In re Amazon Return Litig.*, 350 F.R.D. 326, 331 (W.D. Wash. 2025) (ordering relevant organizational charts even where the defendant did not maintain "centrally maintained historical organizational charts").

Exxon's counsel has asserted that the company "does not maintain organizational charts *of the type* Plaintiffs appear to be requesting." (D. Sestito email 7/17/2026 (emphasis added).) In response, Plaintiffs pointed to the fact that ***Exxon had already produced several organizational charts*** relating to Exxon's advanced recycling division. *Id.*[1] Then on October 5, 2026, Exxon offered to "create and produce organizational charts showing where document custodians fit within the organization." (D. Sestito letter 10/5/2026.) However, Exxon has subsequently refused to produce the organizational charts and has not addressed Plaintiffs' follow-up requests. (K. Boutin emails 10/8 and 10/14/2026.) At the time the parties had agreed to exchange drafts of this joint letter, Exxon instead sent a letter vaguely describing a convoluted history of corporate restructurings, including several organizational changes from ***2026***. However, the letter does not provide the clarity an organizational chart would, nor explain where Plaintiffs' proposed custodians work in relation to one another. Instead, the letter reiterates Exxon's support of its custodians only.

Courts have ordered production of organizational charts where, as here, a defendant unilaterally and unduly limits discovery of organizational charts. *See Adams v. Hartz Mountain Corp.*, 2015 WL 11251745, at *3 (W.D. Wash. Apr. 27, 2015) ("Plaintiff's evaluation of potential document custodians should not be circumscribed by defendant's rather arbitrary determination that this case is only about marketing."). The Court should compel organizational charts dating back to 2010.

**Plaintiffs' Proposed Custodians.** Because Exxon has refused to provide organizational charts, Plaintiffs used their best efforts to identify relevant custodians based on asymmetrical information. Using the limited information available, Plaintiffs initially identified potential custodians across eight operations relevant to this case: (1) Supply, (2) Sales, (3) Product Solutions, (4) Marketing, (5) Venture Executives, (6) Logistics, (7) New Market Development, and (8) Public & Government Affairs, which implicated more than 100 custodians. To date, Exxon has only offered 14 custodians that almost exclusively work within the advanced recycling area. In an effort to compromise, Plaintiffs substantially narrowed their proposed custodians to 44, and explained in detail why each has relevant information. *See* Ex. 1.[2] Exxon, by contrast, has insisted that only 14 custodians from advanced recycling are sufficient in this case. That position is baseless.

Fundamentally, the claims in this case extend far beyond advanced recycling. *See e.g.*, ECF No. 47 (Order re Motion to Dismiss: "The Complaint details how Defendant ***promoted and sold***

---

[1] Plaintiffs' claims are not limited to advanced recycling, which began in 2021. Instead, Plaintiffs' theories concern many aspects of Exxon's business dating back to the 1970s. *See* FAC ¶¶ 96–100.
[2] At Exxon's request, Plaintiffs have removed or summarized the "Plaintiffs' Basis" in Exhibit 1 based on Exxon assertion of confidentiality. Plaintiffs can provide more details upon request.

massive amounts of non-biodegradable, non-recyclable plastic ***for decades***, all the while ***pushing a misleading narrative*** that suggested the plastic could be disposed of safely.") (emphasis added). Accordingly, while 14 custodians relating to the 2021 advanced recycling program are relevant, they are inadequate and unresponsive to the other important areas and long timeframe in this case.

Exxon does not dispute that Plaintiffs' proposed custodians have relevant information. Instead, Exxon incorrectly claims that Plaintiffs have not articulated a sufficient basis, which is wrong. *See e.g.,* Ex. 1, row 5 (Adam Gross is "the ***lead author*** of the 2020 white paper on recycling"); row 14 (Jack Williams has "worked at Exxon ***since 1987***" and can provide a long-term view on high-level decision-making, including on recycling). For this reason alone, the Court should order Exxon to search the records of each custodian and produce all relevant and non-privileged information.

Exxon also implausibly contends that its 14 proposed custodians include *all relevant custodians* and that *no other* Exxon custodians possess information *uniquely* relevant to Plaintiffs' claims. *See* Ex. 1 ("ExxonMobil Response"). That contention is incredibly unlikely simply based on the fact that Exxon employs more than 20,000 employees in the US alone and the relevant facts in this case span decades. Moreover, Exxon has not provided any support (*e.g*., an organizational chart) for its *counsel's assertions* that Plaintiffs' proposed custodians would have entirely overlapping records with the 14 individuals Exxon proposes. Indeed, Exxon refuses to provide hit counts to determine whether any custodians have overlapping documents or not. Exxon also fails to propose any custodians outside of advanced recycling, including failing to propose any custodians that relate to supply chain, which Exxon confirmed is placed in a "separate Operations group," from which Exxon *has not offered any custodians*. *See* Ex. 2. Even if some documents might overlap between custodians, what certain custodians knew or were told is highly relevant. For example, establishing that Exxon's CEO knew or was told that plastic was not recyclable is plainly relevant, and other custodians' records will not suffice. Ex. 1, row 8 (Darren Woods).

Courts assess whether custodian proposals are "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Fed. Trade Comm'n v. Uber Techs., Inc.*, 351 F.R.D. 150, 152–53 (N.D. Cal. 2026) (applying Fed. R. Civ. Proc. 26(b)(1)). Each factor favors Plaintiffs' position. First, there is no dispute regarding the importance of the issues at stake. Plaintiffs claim that Exxon created a public nuisance by overproducing single-use plastics and misleading the public into purchasing more by claiming plastics could be safely disposed. That intentional conduct resulted in plastic pollution that affects nearly every Californian and the environment throughout our state. *See, e.g.*, FAC ¶¶ 151–156. Exxon agrees that this case involves topics of "widespread public interest." *See, e.g.*, ECF No. 33 at 8. And the Court has recognized Plaintiffs' allegations that Exxon, "the largest producer" of the polymers that make single-use plastics, "*created products that it knew would harm the environment and lied about the inevitable harm by suggesting it could be mitigated through recycling*." ECF No. 47 at 9, 10 (emphasis in original). Second, Plaintiffs request significant statewide abatement relief that would benefit all Californians, underscoring the magnitude of this case. Third, access to information is entirely asymmetrical as nearly all is in Exxon's possession. Fourth, both parties have sufficient resources for the scope of discovery contemplated by Plaintiffs' proposal.

In refusing to search Plaintiffs' proposed custodians, Exxon has failed to show either (1) that the proposed custodians have unreasonably duplicative information, or (2) that there would be an undue burden to search the proposed custodians. Indeed, Exxon offers virtually no explanation, let alone evidence, on either point. *See Garner v. Amazon.co, Inc.*, 2022 WL 16553158, at *2 (W.D. Wash. Oct. 31, 2022) (granting motion to compel where "Defendants make no attempt to explain how or why running the searches over 36 custodians [with an estimated 3.1 to 4.4 million document hits] is onerous, nor do they provide any data regarding the amount of time or expense incurred in reviewing and producing responsive documents"). *In re Facebook, Inc. Consumer Priv. User Profile Litig.* supports Plaintiffs' position. 2021 WL 10282213 (N.D. Cal. Nov. 14, 2021). There, the court considered whether to compel Facebook's CEO Zuckerberg and COO Sandberg as document custodians. *Id.* at *1. Before the dispute arose, the parties had already agreed on a set of 72 initial custodians, and the court ordered nine more, for a total of *81 custodians*. *Id.* at *5. A special master nonetheless had little trouble finding that it was "likely" the CEO and COO, who were "key decision-makers," were appropriate custodians. *Id.* at *2.

The Court should order Exxon to search the files of all 44 custodians proposed by Plaintiffs, in addition to the 14 custodians Exxon has proposed. Alternatively, Plaintiffs request leave to conduct limited custodian depositions of each of Exxon's 14 proposed custodians, without those depositions counting toward the limit imposed by FRCP 30(a)(2)(A)(i).[3]

## EXXON'S POSITION

**ExxonMobil Does Not Maintain Organizational Charts.** As ExxonMobil has explained, it does not systematically create, maintain, or archive organizational charts showing its structure over time. *See* Fed. R. Civ. P. 34(a); *Acosta v. JY Harvesting, Inc.*, 2017 WL 3437654 at *3 (S.D. Cal. Aug. 10, 2017) ("The Court cannot compel production of that which does not exist or is not in the possession and control of Respondents."). Nevertheless, to resolve this issue, on October 23, 2026, ExxonMobil explained how its relevant business units are organized and why its proposed custodians are comprehensive.[4] The advanced recycling "organizational charts" Plaintiffs cite were prepared for restructuring planning and internal presentations; they do not reflect reporting lines over time. ExxonMobil maintains only employees' job titles and organizational assignments during their tenure, not their reporting relationships.

**Plaintiffs' Have Not Met Their Burden to Compel Additional Custodians.** Defendant Exxon Mobil Corporation ("ExxonMobil") respectfully opposes Plaintiffs' request to compel the designation of additional ESI custodians. As the responding party, ExxonMobil is best positioned to identify the individuals within its organization likely to possess relevant information, and it has done so in good faith—first proposing eight custodians, then expanding to 14 to cover each business area Plaintiffs identified: (1) Public & Government Affairs, (2) New Market Development, (3) Product Solutions, (4) Marketing, (5) Venture Executives, (6) Supply, (7) Sales, and (8) Logistics. ExxonMobil drew its 14 custodians from each business unit relevant to Plaintiffs' claims, at both the leadership and working levels. Plaintiffs nonetheless seek to compel 44 additional custodians, for a total of 58, including ExxonMobil's CEO. Plaintiffs have not shown ExxonMobil's custodian selection is manifestly unreasonable or deficient, or that any of

[3] Plaintiffs also reserve the right to later identify additional custodians.
[4] Not attached given the page limitations, but can be provided at the Court's request.

the proposed additional custodians possesses unique, relevant information unavailable from those already designated. The requested expansion—more than tripling a custodian set that is already expected to yield a review population exceeding 250,000 documents—is also disproportionate to the needs of the case. The Court should therefore deny Plaintiffs' request.

Selecting custodians is ExxonMobil's role. "[T]he [responding] party . . . is entitled to select the custodians it deems most likely to possess responsive information and to search the files of those individuals." *B&G Foods N.A., Inc. v. Embry*, 2024 WL 626962, at *3 (E.D. Cal. Feb. 14, 2024) (citation omitted). To add custodians, Plaintiffs must show that (1) the responding party's selection is "manifestly unreasonable" or "deficient," and (2) the proposed custodians "possess uniquely relevant information that is not available from the sources already designated." *Id.* (citation omitted); *Mortg. Resolution Servicing, LLC v. JPMorgan Chase Bank, N.A.*, 2017 WL 2305398, at *2 (S.D.N.Y. May 18, 2017). That showing requires a factual basis that the additional custodians' ESI would be unique and non-duplicative. *See CoStar Grp., Inc. v. Commercial Real Estate Exch. Inc.*, 2022 WL 22871693, at *3 (C.D. Cal. Feb. 18, 2022) (defendant did not demonstrate that proposed addition was a "necessary custodian who possesses unique, relevant documents that are not available from the designated custodians"). Plaintiffs have neither shown ExxonMobil's custodians are deficient nor good cause to add more.

ExxonMobil's 14 proposed custodians cover all eight areas Plaintiffs identified, for the issues and time period relevant to this case. They are not limited to advanced recycling; they also cover ExxonMobil's plastic polymer business. ExxonMobil's proposed custodians include both senior leaders and the employees who perform the day-to-day commercial, supply, regulatory, and life cycle work. For example, as detailed in the October 23, 2026 Letter, Rebecca Matlock works in Public & Government Affairs. She was specifically requested by Plaintiffs, and they have not explained why they need additional employees in that group. Dave Andrew is (and was during the relevant time period) the Vice President of New Market Development (housed in the Product Solutions division). There are several other employees from these groups among ExxonMobil's proposed custodians and no explanation of why more are needed. Zach Patterson has experience in both regular and certified circular polymers and covers Marketing, Supply, Sales, and Logistics for those materials. Each of the eight areas is covered by multiple custodians. **Ex. 2.**

Plaintiffs point to the long tenure of their proposed additional custodians, but ExxonMobil's proposed custodians have decades of experience, with most reaching back to the January 1, 2010 time period the parties have agreed is relevant for discovery. For example, Michelle Salim held the following polymer marketing and sales roles: Vistamaxx Americas (2009), chemical automotive marketing (2011), global marketing excellence (2013), polymers specialties (2013), and Americas specialty products customer development (2015). ExxonMobil does not, as Plaintiffs suggest, contend that its proposed custodians are the *only* ExxonMobil employees with information relevant to Plaintiffs' claims. Rather, Plaintiffs have not met *their* "initial threshold burden" of showing that any proposed additional custodian holds *unique, relevant* information that ExxonMobil's custodians *will not already produce*. *CoStar*, 2022 WL 22871693, at *3 (refusing to add CEO and president as custodians where defendant did not show that they "possess[] unique, relevant documents that are not available from the designated custodians").

Most of Plaintiffs' 44 additional individuals come from the same business units as ExxonMobil's proposed custodians or from units unrelated to the claims. **Ex. 1.** Given ExxonMobil's proposed custodians' positions within the organization, relevant information about ExxonMobil's advanced recycling business, its certified circular and other plastic polymers businesses, and its statements about those businesses would be expected to be communicated through these individuals. For example, personnel working on circular polymer business development, plastic waste solutions ventures, plastic waste supply, advocacy, and communications reported to, or received functional guidance from, Dave Andrew. *See Handloser v. HCL Am., Inc.*, 2020 WL 7405686, at *2 (N.D. Cal. Dec. 17, 2020) (denying additional executives as custodians based on "[c]onclusory assertions" and "remarkably thin" showing of good cause where heads of relevant departments already custodians). Andrew is a recipient on almost all of the e-mails Plaintiffs cite to support their 44 additional custodians. Similarly, Plaintiffs have not asserted that Adam Gross possesses unique, relevant information not covered by Cynthia Mann, a core team member of the 2020 recycling white paper. And many of Plaintiffs' proposed custodians (such as Craig Kelly, Suzanne McCarron, Bart Vermeulen, Jamie Wall, Gantt Walton, and Ritva Westendorf-Lahouse) were selected based only on their titles and on assumptions about their irrelevant work in international, European, and federal government relations. *See Handloser*, 2020 WL 7405686, at *2 (finding no good cause where plaintiffs relied solely on proposed custodians' job titles). In short, Plaintiffs offer no evidence that these individuals possess uniquely relevant information or that such information would not be duplicative of what other custodians will produce. *See Tanzer v. Salesforce, Inc.*, 2026 WL 1983893, at *1 (N.D. Cal. July 8, 2026) (denying additional custodians where requesting party did not show they would be "non-duplicative and gap-filling").

Plaintiffs likewise have not justified their proposed executive custodians. Plaintiffs seek CEO Darren Woods and other senior executives based on speculation drawn from their titles. None of these executives would possess "unique relevant documents that have not already been captured by" ExxonMobil's proposed custodians, who already span every relevant aspect of this litigation. *Lauris v. Novartis AG*, 2016 WL 7178602, at *4 (E.D. Cal. Dec. 8, 2016) ("[d]ue to their position within the organization," relevant information to the case "would be expected to be communicated through" the already designated executive custodians); *see Roblox Corp. v. WowWee Grp. Ltd.*, 2023 WL 5507176, at *3 (N.D. Cal. Aug. 25, 2023) (denying request to add president of company as custodian where plaintiffs made no showing that the president "has information that would not be discoverable through the other custodians named by defendants"). ExxonMobil has already offered up Andrew, the "key decision-maker" in the NMD organization. *Cf. In re Facebook Inc. Consumer Priv. User Profile Litig.*, 2021 WL 10282213, at *2 (N.D. Cal. Nov. 14, 2021).

Lastly, Plaintiffs have not established that 58 custodians would be proportional to the needs of this case. The right to relevant discovery is not limitless. *Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*, 300 F.R.D. 406, 409 (C.D. Cal. 2014). ExxonMobil estimates that the current comprehensive set of search terms being finalized between the parties will generate a review population of over 250,000 documents from its 14 proposed custodians. More than tripling the number of custodians—without identifying any gap in ExxonMobil's proposal—is neither reasonable nor proportional. *See* Fed. R. Civ. P. 26(b)(1). Plaintiffs' request to compel additional custodians should be denied. The Court should also reject Plaintiffs' alternative proposal to conduct limited custodian depositions as premature, as Plaintiffs have not yet reviewed discovery from Exxon's proposed custodians. *See Tanzer*, 2026 WL 1983893, at *1.

Dated: October 27, 2026

**COTCHETT, PITRE & McCARTHY, LLP**

By: /s/ *Tyson Redenbarger*

NIALL P. McCARTHY
TYSON C. REDENBARGER
GRACE Y. PARK
KEVIN J. BOUTIN

*Attorneys for Plaintiffs*

Dated: October 27, 2026

**WEIL, GOTSHAL & MANGES LLP**

By: /s/ *David J. Lender*

DAVID J. LENDER

O'MELVENY & MYERS LLP
DAWN SESTITO
MATTHEW R. COWAN

*Attorneys for Defendant*

Counsel for both parties attest that they met and conferred by videoconference in an attempt to discuss and resolve this issue.

**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)**

I, Tyson Redenbarger, attest that concurrence in the filing of this document has been obtained from the other signatories. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 27th day of October 2026, at Burlingame, California.

By: /s/ *Tyson Redenbarger*
Tyson Redenbarger